**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

HEADWATER RESEARCH LLC

        *Plaintiff*,

v.

SAMSUNG ELECTRONIC CO., LTD and
SAMSUNG ELECTRONICS AMERICA, INC.,

        *Defendants*.

Case No. 2:22-CV-00422-JRG-RSP

<u>**SAMSUNG'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**</u>

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD........................................................................................... 2

III.    LEVEL OF ORDINARY SKILL IN THE ART ................................................ 3

IV.     ARGUMENT ....................................................................................................... 3

        A.      Whether a User Is "Perceiving Any Benefit" From an Application is a
                Subjective Inquiry ..................................................................................... 4

        B.      Neither the Claims Nor the Specification Provide Objective Boundaries to
                Rescue the Subjective Claims From Indefiniteness................................... 8

                1.   The Specification Fails to Provide Objective Boundaries for the Disputed
                     Term ................................................................................................. 8

                2.   The Claims Fail to Provide Objective Boundaries for the Disputed Term..... 13

        C.      Headwater Rewrites the Disputed Claims To Try To Avoid Indefiniteness ........ 15

        D.      Headwater's Expert Could Not Defend Headwater's Claim Interpretation
                Without Introducing Further Ambiguity................................................. 17

        E.      Headwater's Remaining Arguments Also Fail ....................................... 19

V.      CONCLUSION................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                            **Page(s)**

*Autogiro Co. of Am. V. United States*,
    384 F.2d 391 (Ct. Cl. 1967) ...........................................................................................15

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
    224 F.3d 1308 (Fed. Cir. 2000).......................................................................................14

*Comark Commc'ns, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998).........................................................................................2

*Constant v. Advanced Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988).........................................................................................2

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005).............................................................................4, 5, 6, 7

*Datanet LLC v. Dropbox, Inc.*,
    No. 622-CV-001142-OLG-DTG, 2023 WL 7545234
    (W.D. Tex. Nov. 10, 2023) .................................................................................................3

*Gigamon Inc. v. Apcon, Inc.*,
    No. 2:19-CV-300-JRG, 2020 WL 3605622 (E.D. Tex. July 2, 2020)....................................14

*Grace Instrument Indus., LLC v. Chandler Instruments Co.*
    57 F.4th 1001 (Fed. Cir. 2023) ..................................................................................20, 21

*Innova Pat. Licensing, LLC v. Alcatel-Lucent Holdings*,
    No. 2:10-CV-251-DF-CE, 2011 WL 8318221 (E.D. Tex. Sept. 22, 2011)............................12

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)...................................................................................14, 17

*Intell. Ventures I LLC v. T-Mobile USA, Inc.*,
    902 F.3d 1372 (Fed. Cir. 2018).........................................................................................5

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)................................................................................. *passim*

*Ironburg Inventions Ltd. v. Valve Corp.*
    64 F.4th 1274, 1287-91 (Fed. Cir. 2023) ..........................................................................20

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999).................................................................................15, 16

*Motion Games, LLC v. Nintendo Co.*,
   No. 6:12-cv-878-JDL, 2015 U.S. Dist. LEXIS 180229
   (E.D. Tex. Jan. 16, 2015) ...........................................................................................19

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)..................................................................................1, 2, 5, 9, 11

*Pfizer Inc. v. Ranbaxy Labs.*,
   457 F.3d 1284 (Fed. Cir. 2006)......................................................................................2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)......................................................................................4

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
   No. C 13-03644 SI, 2014 WL 3870016 (N.D. Cal. Aug. 6, 2014) ................................8, 11, 19

*PSC Computer Products, Inc. v. Foxconn Intern., Inc.*,
   355 F.3d 1353 (Fed. Cir. 2004)....................................................................................15

*RevoLaze LLC v. Penney Company, Inc.*
   No. 2:19-cv-00043-JRG, 2020 WL 697891 (E.D. Tex. 2020) ...........................................12, 13

*Semcon IP Inc. v. Louis Vuitton N. Am., Inc.*,
   No. 2:19-CV-00122-JRG, 2020 U.S. Dist. LEXIS 87492
   (E.D. Tex. May 19, 2020) ..............................................................................................2

*SmartPhone Techs. LLC v. Huawei Devices USA, Inc.*,
   No. 6:12CV245, 2013 WL 4586414 (E.D. Tex. Aug. 27, 2013) .......................................14

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
   844 F.3d 1370 (Fed. Cir. 2017)..............................................................................4, 5, 9

*Staton Techiya, LLC v. Samsung Elecs. Co., Ltd.*,
   No. 221-CV-00413-JRG-RSP, 2023 WL 8875922 (E.D. Tex. Feb. 8, 2023) .........................5

*Ultravision Techs., LLC v. Holophane Europe Ltd.*,
   No. 219-CV-00291-JRG-RSP, 2020 WL 6271231 (E.D. Tex. Oct. 26, 2020) ........................5

*Versata Software, Inc. v. Zoho Corp.*,
   213 F. Supp. 3d 829 (W.D. Tex. 2016)...........................................................................7

**Statutes**

35 U.S.C. § 112...........................................................................................................2

## I.     INTRODUCTION

The disputed term, which requires a determination as to whether a "user of the device [is]…*perceiving any benefit* from [an] application," is facially subjective, and the patent provides no indication as to the term's objective boundaries.  As a result, a person skilled in the art is left uncertain about the scope of the invention, and the claims are indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014).

Headwater cannot defend the definiteness of the disputed term as it is written.  Headwater therefore impermissibly reads the word "benefit"—i.e. the term that makes the claims subjective—out of the claims, and rewrites the claims, under the guise of a "plain meaning" construction, in a misguided attempt to cure their indefiniteness.  For example, in its brief, Headwater suggests that "perceiving a benefit from [an] application," as claimed, actually means that the application is "providing information *perceptible to a user*…."  Headwater Opening Claim Construction Brief (Dkt. No. 82) (hereinafter "Opening Brief") at 1.  And Headwater's claim construction expert attempts to defend this claim reauthoring by arguing that any "information from an application that is *noticeable to a user* is *expected to be perceived* by the user and to be beneficial to the user." *Id.* at 7-8.  In other words: anything noticeable is beneficial.  But the claims do not recite a user "perceiving *anything* from an application;" they require a user "perceiving a *benefit* from [an] application."  Nothing in the specification or the claims justifies Headwater's attempted re-writing of the disputed claim language.

Headwater next wrongly contends that, assuming the disputed term is found to be subjective, the specification and claims provide the "objective boundaries" required to avoid indefiniteness.  But the specification only roughly parrots the claim language with no standard to reasonably determine the scope of the claims, and the surrounding claim language fares no better.

1

Finally, Headwater's proposed claim reauthoring is such a departure from the literal claim language that Headwater's expert—in trying to defend the rewrite—was forced to introduce ambiguity in separate, undisputed claim terms, thus making the scope of the claims even less clear.

The Court should decline Headwater's proposal to rewrite the claims and instead find them indefinite.

## II.    LEGAL STANDARD

A patent claim is "invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1369-70 (Fed. Cir. 2014) (citing *Nautilus*, 572 U.S. at 901). Merely being able to ascribe "some meaning" to a patent's claims is insufficient to satisfy the definiteness requirement of 35 U.S.C. § 112. *Nautilus*, 572 U.S. at 911. Further, courts "should not rewrite claims to preserve validity." *Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006).

"[W]hen a subjective term is used in a claim, the court must determine whether the patent's specification supplies some standard for measuring the scope of the term [and that] standard must provide objective boundaries for those of skill in the art." *Semcon IP Inc. v. Louis Vuitton N. Am., Inc.*, No. 2:19-CV-00122-JRG, 2020 U.S. Dist. LEXIS 87492, at *13-14 (E.D. Tex. May 19, 2020) (internal citations and quotations omitted). Where no such boundaries are present, the claims are indefinite. *Interval Licensing*, 766 F.3d at 1371 ("The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art."). "'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed.

Cir. 1988)).  Nor is a mere parroting of the subjective claim language in the specification sufficient to provide a POSITA with objective boundaries.  *See Datanet LLC v. Dropbox, Inc.*, No. 622-CV-001142-OLG-DTG, 2023 WL 7545234, at *10 (W.D. Tex. Nov. 10, 2023) ("[T]he Court agrees with Dropbox that the passages Datanet cites either essentially repeat the claim language or simply recite that an impact should have 'little or no perceptible impact on system performance' . . . . [These passages fail to] provide a POSITA guidance to determine what is a . . . 'substantially imperceptible impact' [as claimed]." (citations omitted)).

## III.  LEVEL OF ORDINARY SKILL IN THE ART

While modest differences exist between the parties' proposed level of ordinary skill in the art, the parties agree that these differences do not affect the present dispute.  *See* Chrissan Decl. (Dkt. No. 82-9) ¶ 20.

## IV.  ARGUMENT

### "user of the device … perceiving any benefit from that application"

| Headwater's Proposed Construction | Samsung's Proposed Construction |
|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite |

The parties' sole claim construction dispute concerns whether the phrase "user of the device … perceiving any benefit from that application," which appears in a dependent claim in seven of the nine asserted patents, is indefinite.[1]  As set forth below, whether a device's user "perceiv[es] a benefit" from a particular application is purely subjective, there is no intrinsic

_____

[1] The disputed phrase appears in the following asserted claims: U.S. Patent No. 9,137,701, claim 2; U.S. Patent No. 9,143,976, claim 2; U.S. Patent No. 9,271,184, claim 2; U.S. Patent No. 9,277,433, claim 3; U.S. Patent No. 9,277,445, claim 2; U.S. Patent No. 9,521,578, claim 4; and U.S. Patent No. 9,609,544, claim 2.

evidence providing objective boundaries for this determination, and thus the associated asserted claims are invalid for indefiniteness.

A.     **Whether a User Is "Perceiving Any Benefit" From an Application is a Subjective Inquiry**

The claimed determination into whether an individual user "perceives a benefit from [an] application" is inherently subjective given that such a determination will necessarily vary for different end-users based on their particular preferences, experiences, or opinions. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1378 (Fed. Cir. 2017) (stating subjective claim terms are those that "turn[] on a person's tastes or opinion."). Indeed, Alireza Raissinia, a named inventor on all nine asserted Headwater patents, and presumed person of ordinary skill in the art at the time of his invention, expressly testified that the disputed phrase could indeed require a subjective determination. *See* Raissinia Dep. Tr. 129:15-20 ("Is whether a user of a device perceiving a benefit subjective?  A. It could be.") (objections omitted)) (Ex. A); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (describing the "well-settled understanding that inventors are typically persons skilled in the field of the invention").

Courts routinely find that claim terms dependent on an individual's preferences, experiences, or opinions are subjective and subject to further scrutiny for indefiniteness. *See, e.g.*, *Interval Licensing*, 766 F.3d at 1371 (finding that the phrase "unobtrusive manner that does not distract a user" was highly subjective given that it "depends on the preferences of the particular user"); *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) (finding the term "aesthetically pleasing" to be subjective given that, without further guidance, the inquiry would "depend solely on the unrestrained, subjective opinion of a particular individual"),

4

*abrogated by Nautilus,* 572 U.S. at 901, 907;[2] *Staton Techiya, LLC v. Samsung Elecs. Co., Ltd.*, No. 221-CV-00413-JRG-RSP, 2023 WL 8875922, at *16 (E.D. Tex. Feb. 8, 2023) ("Because 'natural sounding ... to the user' is subjective and the intrinsic record provides no objective standard by which a skilled artisan can determine what is, and what is not, a 'natural sounding voice,' this term is indefinite."); *Ultravision Techs., LLC v. Holophane Europe Ltd.*, No. 219CV00291JRGRSP, 2020 WL 6271231, at *28 (E.D. Tex. Oct. 26, 2020) ("Here, the term 'desired' depends on an individual designer's subjective decision, and thus, is indefinite.").

Indeed, the Federal Circuit has made clear that "[t]he scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize,* 417 F.3d at 1350.  In *Datamize*, the Federal Circuit found that the claim term "aesthetically pleasing" was: (1) subjective, because its assessment was "completely         dependent         on         a         person's         subjective         opinion,"         and (2) indefinite, because the patent lacked the required "objective anchor" to reasonably define the claim's scope.  *Id.* ("While beauty is in the eye of the beholder, a claim term, to be definite, requires an objective anchor.").  Similarly, in *Interval Licensing*, the Federal Circuit found that the claim term "unobtrusive manner that does not distract a user"—recited in a patent directed towards displaying content on a device—was subjective and indefinite.  766 F.3d at 1371.  Quoting the district court, the Federal Circuit acknowledged that "whether something distracts a user from his primary interaction depends on the preferences of the particular user and the circumstances under

---

[2] *Datamize* applied the pre-*Nautilus* indefiniteness standard, however, courts have continued to cite to, and rely on, *Datamize* when assessing the infiniteness of subjective claim terms.  *See, e.g.*, *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018); *Sonix Tech. Co.,* 844 F.3d at 1378; *Ultravision Techs., LLC v. Holophane Europe Ltd.*, No. 219-CV-00291-JRG-RSP, 2020 WL 6271231, at *4 (E.D. Tex. Oct. 26, 2020).

which any single user interacts with the display." *Id.* at 1371 (quoting *Interval Licensing, LLC v. AOL, Inc.*, No. C10-1385MJP, 2013 WL 792791, at *2 (W.D. Wash. Feb. 28, 2013)).  The Federal Circuit further explained that "the claim language offer[ed] no objective indication of the manner in which content images are to be displayed to the user" and further found the "lack of objective boundaries in the claim language" to be "particularly troubling."  *Id.*

In the present case, the disputed term is indisputably subjective in a manner similar to those terms found subjective (and ultimately indefinite) in *Datamize* and *Interval Licensing*.   For example, the disputed term here ("user of the device … perceiving any benefit from that application") necessarily requires a determination into whether a particular user "perceives any benefit" from an application.  But a determination into whether a user perceives such a benefit is based entirely on that specific user's preferences and experiences interacting with the device.  That is no different than the determination claimed in *Interval Licensing*, where the Federal Circuit similarly found that determining whether content was presented in an "unobtrusive manner that does not distract a user" would vary based on a user's preferences and experiences.

Headwater's contention that whether a user of the device is "perceiving any benefit" from an application is not subjective relies on just two arguments, neither of which withstand scrutiny.  First, Headwater's hypothetical scenario that both parties would agree falls outside the claim scope is factually and legally irrelevant. Opening Brief at 7.  For instance, Headwater imagines a scenario where, because an application presents "no output at all," "there is nothing for a user to perceive, making it impossible for a user to be 'perceiving any benefit' from that application."   *Id.* Headwater then concludes "[t]here is no subjectivity at all in this situation." *Id.*  This argument misses the mark.  As a factual matter, the asserted independent claims (upon which the challenged claims depend) expressly or inherently require a determination into whether a "first end-user

6

application is running in a background state" or is "running as a foreground application."  *E.g.*, '701 patent, cl. 1.  In other words, there is never a scenario in which the claimed "first end-user application," is not running at all.  Regardless, even if an application is running in the background, and thus presents "no output," an end-user may or may not still believe its operation to be beneficial.  For example, a user might find an email or messaging application that operates in the background to keep an end-user's device caught up on email to be beneficial even if the user is not currently interacting with that application or otherwise perceiving any of those updates. Accordingly, even in the context of Headwater's unclaimed hypothetical, whether an end-user is "perceiving any benefit" from an application is a purely subjective determination.

Headwater's hypothetical is also legally irrelevant.  Even if Headwater's hypothetical was valid, the law is clear—subjective claims cannot be saved by simply providing hypothetical scenarios where the subjective claims may or may not be satisfied.  *See Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 836 (W.D. Tex. 2016) ("As in *Datamize*, where the Federal Circuit concluded the claims could not be saved simply by providing examples of the items generally found 'aesthetically pleasing,' providing examples of displays that are commonly considered 'space constrained' does not change the subjective nature of the term 'space-constrained display.'" (quoting *Datamize*, 417 F.3d at 1352)).  A POSITA must be able to know "not only what falls inside the scope of the claim term, but also what falls outside of it."  *Id.*

Headwater's remaining argument that the disputed claim phrase is not subjective relies only on Headwater's complete rewrite of the disputed phrase, which is addressed in § IV.C below.

**B.      Neither the Claims Nor the Specification Provide Objective Boundaries to Rescue the Subjective Claims From Indefiniteness**

Because the disputed term is subjective, it is indefinite unless the claims or specification[3] provide an "objective boundary" for a POSITA to understand the term with reasonable certainty. *Interval Licensing*, 766 F.3d at 1373 (finding indefiniteness as a result of "facially subjective claim language without an objective boundary").  As explained below, no such "objective boundary" exists in the intrinsic record.

**1.      The Specification Fails to Provide Objective Boundaries for the Disputed Term**

Where a court is faced with a "purely subjective" term, it must look to the written description for guidance.  *Id.* at 1371.  As the Federal Circuit has stated, "[a]lthough absolute or mathematical precision is not required, it is not enough, as some of the language in our prior cases may have suggested, to identify ***some*** standard for measuring the scope of the phrase." *Id.* at 1370-71 (internal citations omitted) (emphasis added).  Instead, "[t]he claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art. *Id.* at 1371.  In this vein, merely pointing to examples from the specification is insufficient to provide a POSITA with objective boundaries of a claim term.  *See Prolifiq Software Inc. v. Veeva Sys. Inc.*, No. C 13-03644 SI, 2014 WL 3870016, at *6 (N.D. Cal. Aug. 6, 2014) ("However, that the specifications provide these examples does not mean that the patents provide an objective standard for determining what is meant by the term 'differently versioned.'").  Generally, limiting facially subjective claim terms to examples in the specification leaves a POSITA "still left to wonder what other [conditions would satisfy the subjective term] . . . thus leaving the skilled artisan

_____

[3] Samsung agrees with Headwater that the prosecution histories of the relevant patents do not provide information sufficient to render the claims definite.  *See* Opening Brief at 14 n.3.

8

to consult the unpredictable vagaries of any one person's opinion." *Sonix Tech. Co.*, 844 F.3d at 1378 (internal citation omitted).

Here, the patent specification provides no such objective boundaries or other standard by which to assess the disputed subjective term.  Indeed, the specification contains only a single reference to a portion of the disputed term within the below paragraph, mostly parroting the claim language with no further explanation:

> Another example of device service activity behavior that can impact network performance is applications that maintain persistent network communication that generates a relatively high frequency of network data packets. Some applications have persistent signaling that falls into this category. Specific examples include frequent device signaling sequences to update widgets on a desktop; synchronize user data such as calendars, contacts, email, and/or other information/content; check or update email or RSS feeds; access social networking websites or tools; online text, voice or video chat tools; update real-time information; and conduct other repetitive actions. Additional application behavior that can significantly tie up network resources and capacity include, for example, conference meeting services, video streaming, content update, software update, and/or other or similar application behavior. For example, even when the user is not directly interacting with ***or benefiting from this type of application***, the application can be running in the background and continuing to consume potentially significant network resources.

'701 Patent at 8:4-22.[4]  Nothing in this paragraph provides objective boundaries or any other standard by which to determine when a user "perceives a benefit" from an application, thereby falling woefully short of the standards outlined in *Nautilus* and *Interval Licensing* (*see supra* Section II).  Headwater's arguments to the contrary are unconvincing.

First, Headwater incorrectly argues that "the specification provides numerous examples of applications that . . . indicat[e] what constitutes a 'benefit' of an application in the context of the claimed invention."  Opening Brief at 11-12.  But even a cursory review of Headwater's cited

---

[4] The cited excerpts appear within all the relevant asserted patents; the '701 patent is cited as representative.

9

excerpts reveals that its alleged examples fail to create even a "hazy relationship" between the claims and written description, and fall far short of providing the level of clarity required to elucidate the subjective term's boundaries.  *See Interval Licensing*, 766 F.3d at 1372 ("The hazy relationship between the claims and the written description fails to provide the clarity that the subjective claim language needs.").   In fact, the specification makes clear that the alleged "examples" Headwater emphasizes in its brief (Opening Brief at 10-11), are examples of instances when a "device service activity" can "impact network performance" or "reduce network capacity and/or network resource availability."   '701 Patent at 8:4-56.  The specification never states, or even implies, that these "examples" define when a user would be "perceiving a benefit" from an application.

For the sake of clarity, reproduced below is every excerpt from Headwater's brief (with Headwater's underlining of its purported supporting "examples") with additional highlighting that indicates what the specification actually says they are examples of:

> Another example of device service activity behavior that can impact network performance is applications that maintain persistent network communication that generates a relatively high frequency of network data packets. Some applications have persistent signaling that falls into this category. Specific examples include frequent device signaling sequences to update widgets on a desktop; synchronize user data such as calendars, contacts, email, and/or other information/content; check or update email or RSS feeds; access social networking websites or tools; online text, voice or video chat tools; update real-time information; and conduct other repetitive actions. Additional application behavior that can significantly tie up network resources and capacity include, for example, conference meeting services, video streaming, content update, software update, and/or other or similar application behavior. **For example, even when the user is not directly interacting with or benefiting from this type of application, the application can be running in the background and continuing to consume potentially significant network resources**.

> For example, the types of service activities and/or device behavior that can reduce network capacity and/or network resource availability include software updates for OS and applications, frequent OS and application background network accesses and signaling, frequent network discovery and/or signaling (e.g., EtherType

messages, ARP messages, and/or other messaging related to network access), cloud synchronization services, RSS feeds and/or other background information feeds, application (e.g., web browser) or device behavior reporting, background email downloads, content subscription service updates and downloads (e.g., music/video downloads, news feeds, etc.), text/voice/video chat clients, virus updates, peer to peer networking applications, inefficient network access sequences during frequent power cycling or power save state cycling, large downloads or other high bandwidth accesses, and/or greedy application programs that continually and/or frequently access the network with small transmissions or requests for information. Various other examples will now be apparent to one of ordinary skill in the art.

Thus, not only can network capacity, network performance, and/or network resource availability be degraded by high device transmission bandwidth demand, but other types of persistent or frequent traffic resulting from network resource requests, network data accesses or other network interaction can also degrade network capacity, network performance, and/or network resource whether or not the aggregate bandwidth demand as measured by the total data throughput is high or not. Thus, techniques are needed to preserve network capacity by, for example, differentially controlling these types of network service usage activities in various ways depending on the type of service activity requesting network access and/or requesting transactions with network resources.

Opening Brief at 10-11 (citing '701 patent at 8:4-56).  To be fair, Headwater's cited excerpt *does* include the specification's only reference to a "benefit" from an application (as shown in bold above), but nowhere within the cited excerpt is any definition, explanation, or guideline as to when a user would "perceive a benefit" from an application and when he/she would not.

Regardless, even if the specification identified the examples within Headwater's cited excerpts as instances when a user would "perceive a benefit" from an application (it does not), merely pointing to examples in a patent's specification does not equate to providing an objective standard for a POSITA.  *See Prolifiq Software Inc.*, No. C 13-03644 SI, 2014 WL 3870016, at *6 ("[T]hat the specifications provide these examples does not mean that the patents provide an objective standard for determining what is meant by the term 'differently versioned.'").  The Court should not engage in *post hoc* efforts to ascribe "some meaning" to the facially subjective disputed term when Headwater failed to do so in the first instance.  *See Nautilus*, 572 U.S. at 911 (disfavoring "*post hoc*" efforts to "ascribe some meaning to a patent's claims").

11

Second, Headwater's attempt to liken the specification's disclosure here to that in *Innova Patent Licensing, LLC v. Alcatel-Lucent Holdings* should be rejected.  No. 2:10–CV–251-MHS, 2012 WL 2958231 (E.D. Tex. July 19, 2012).  In *Innova*, the district court considered whether the term "useful to the recipient" was indefinite.  *Id.* at \*3.  Ultimately, the court found that the term was definite because the specification explicitly explained the term at issue by stating useful information was "information which is useful to the recipient in understanding more about the sender." *Innova Pat. Licensing, LLC v. Alcatel-Lucent Holdings*, No. 2:10-CV-251-DF-CE, 2011 WL 8318221, at \*6 (E.D. Tex. Sept. 22, 2011) (quoting the asserted patent), *report and recommendation adopted*, No. 2:10-CV-251, 2012 WL 2958231 (E.D. Tex. July 19, 2012).  Reading that excerpt along with the patent's remaining disclosure about what constituted "useful information" made clear to the court that "useful information," in the claimed context, was "additional information about the sender (his or her name and location) or the sender's organization name and geographic location." *Id.*  The specification of the asserted Headwater patents provides no such clarity.  It does not contain any examples or explanations which make clear or otherwise define when a given user would "perceive a benefit" from an application and when he/she would not.

Third, Headwater's reliance on *RevoLaze LLC v. Penney Company, Inc.* is inapposite.  In *RevoLaze*, the disputed claim limitations centered around the terms "desired" and "undesired," which defendants argued were subjective and indefinite.  No. 2:19-cv-00043-JRG, 2020 WL 697891, \*9 (E.D. Tex. 2020).  The *RevoLaze* claims containing the disputed terms described a method of using a controllable laser to produce a pattern, e.g. on leather or fabric material.  *Id.* The claims included the steps of "obtaining an indication of the desired pattern" and "controlling [the] laser to produce … the desired pattern" in a way that does not produce certain "undesired"

effects.  *Id.* at *10.  The court found the disputed "desired/undesired" terms to be not subjective in the *Revolaze* claims because the claims plainly expressed the user's intent to create a specific laser pattern, thereby making it necessarily the "desired pattern" of that user.  *Id.* ("While an unexpressed desire, such as a desire for a laser system to create a specific marking design, may be subjective, once it is expressed, such as in providing instructions to the laser system to create the marking, it is no longer subjective.").  Unlike the *RevoLaze* claims, the disputed claims at issue provide no understanding as to what types of application activity would be "perceived [as a] benefit" by a user.  Nor do the disputed claims provide any inherent assumption that a user would perceive a benefit from the claimed application.  Quite the opposite.  The claims expressly state that a binary determination is being made as to whether the user is "perceiving any benefit."

### 2.    The Claims Fail to Provide Objective Boundaries for the Disputed Term

Headwater also wrongly contends that the surrounding claim language provides adequate boundaries for the disputed term.  First, Headwater's argument that language related to whether a user is "directly interacting" with an application in claims 1 and 2 of the '701 patent provides sufficient guidance to a POSITA regarding the meaning of a user "perceiving any benefit," Opening Brief at 7, turns the well-known canon of claim differentiation on its head.  Contrary to Headwater's argument, in the claims, whether a user is "directly interacting" with an application and whether a user is "perceiving any benefit" from an application are two distinct inquiries.

For example, claim 2 of the '701 patent, in relevant part, states: "the one or more processors are configured to determine that the first end-user application is running in a background state when a user of the device is not <u>directly interacting with that application</u> *or* <u>perceiving any benefit from that application</u>."  '701 Patent at Claim 2 (emphasis added).  At base, the claim language instructs a POSITA that "perceiving a benefit" is something distinct from determining user

interaction.  *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms."); *see also Gigamon Inc. v. Apcon, Inc.*, No. 2:19-CV-300-JRG, 2020 WL 3605622, at *10 (E.D. Tex. July 2, 2020) ("'In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.'" (quoting *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000))); *SmartPhone Techs. LLC v. Huawei Devices USA, Inc.*, No. 6:12CV245 LED-JDL, 2013 WL 4586414, at *8 (E.D. Tex. Aug. 27, 2013) (explaining that "different claim terms are presumed to mean different things").  Yet even with this minimal guidance, a POSITA is still left in the dark regarding how to measure, test, account for, or otherwise identify when a particular user is "perceiving a benefit."  Simply put, this is not an objective boundary to inform a POSITA as to the scope of the claim with reasonable certainty.

Second, Headwater's argument that Claim 1 of the '701 patent somehow confirms the meaning of the disputed term is unclear.  *See* Opening Brief at 9.  For example, Headwater fails to explain how Claim 1's discussion of foreground and background applications in any way defines the scope of whether a particular user is perceiving any benefit from an application.  *Id.* Headwater's citation to its expert's testimony similarly fails to connect the dots, with Dr. Chrissan arguing that "if the user is perceiving a benefit from the application, then it would be reasonable to allow the application to access network resources so that the application can continue to provide the benefit to the user."  *Id.* at 9-10.  But this testimony is nothing more than a re-packaging of the claim language.  Dr. Chrissan's opinion fails to indicate how the claim 1 language offers any clear guidance as to ***when*** a user is perceiving a benefit from an application.

14

**C.      Headwater Rewrites the Disputed Claims To Try To Avoid Indefiniteness**

Because Headwater cannot adequately defend the claim language as written, the bulk of its arguments are based on its rewrite of the claim language, which attempts to read out the very word that makes the disputed phrase subjective: the word "benefit."  But courts should not re-write claims.  *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."); *PSC Computer Products, Inc. v. Foxconn Intern., Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004) ("Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth." (quoting *Autogiro Co. of Am. V. United States*, 384 F.2d 391, 396 (Ct. Cl. 1967))).  Headwater's attempted re-authoring of the disputed phrase should be rejected.

Headwater's wordsmithing starts on the very first page of its brief.  For example, in its introduction, Headwater argues that the "claimed processor classifies an application based on whether it is providing information ***perceptible to a user*** (e.g., displaying video or playing audio), something which can be determined objectively…."  Opening Brief at 1.  *Id.* (emphasis added). But the disputed claim language, on its face, requires an inquiry into whether a user is perceiving a "***benefit***" from an application, not whether a user is merely perceiving "***information***" provided by an application.  It cannot be disputed that whether a user is "perceiving a benefit" from an application is different from whether the application is providing any information that is "perceptible," and thus by focusing on whether a user perceives the application at all, Headwater is removing the term "benefit" from the disputed claim language.

Headwater's expert, Dr. Chrissan, fully embraces Headwater's surgical removal of the word "benefit" from the claims and uses this alternative phrasing to underpin his opinions.  He attempts to justify Headwater's claim reauthoring by arguing that any activity a user ***could*** notice on a device should be ***assumed*** to benefit a user, stating that any "information from an application

that is noticeable to a user is expected to be perceived by the user and to be beneficial to the user, or else the application would not waste resources presenting it (i.e., making it noticeable)." *Id.* at 7-8 (quoting Chrissan Decl.).  Headwater and Dr. Chrissan go so far as to argue that anything a user senses via sight, hearing, or touch would necessarily be perceived as a benefit, making the disputed term, according to Headwater, just as objective as the terms "visible" or "audible." *Id.* at 8.  Dr. Chrissan confirmed during his deposition that he effectively replaced the word "benefit" with "anything noticeable," or at least he could not think of any difference between his interpretation of the two:

> **Q:** If I ***replace the word "benefit" in a claim with "noticeable operation***," does that change the scope of the disputed term?
>
> **A:** I believe in my declaration that I say -- this is paragraph 27 – "This determination considers whether a user is or is not perceiving a benefit from the application which a POSITA would understand to be indicated by whether the device is or is not performing operations that are noticeable to the user."
>
> ***So I'd say you're pretty close****. I would -- again, I can't give you a yes or no without going back and evaluating every word just to be sure that I don't make a mistake, **but noticeable operation is -- seems to be pretty close to the opinion I state in 27**, which is the opinion of a person of skill.").

Chrissan Dep. Tr. 62:10-63:3 (emphasis added) (Ex. B).  Again, this interpretation gives no meaning to the term "benefit," and nowhere does the patent specification support replacing the claim language "perceiving any benefit," with "perceiving anything at all," as Headwater's interpretation would suggest.  Headwater's attempt to bolster its expert's reinterpretation of the claim language by citing several dictionary definitions of the word "perceive"—while citing no definitions for "benefit"—speaks for itself.  Opening Brief at 8.

Under well-settled principles of patent law, Headwater's attempts at revisionist claim drafting should be rejected.  *See K-2 Corp.*, 191 F.3d at 1364 ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").  Headwater could have drafted the

disputed claims to be directed to whether application activity is merely perceptible or noticeable, but instead chose to draft claims to cover a determination into whether a user is "perceiving any benefit" from an application.  Thus, the Court should not entertain Headwater's arguments which read the term "benefit" out of the disputed claim language in its entirety.  *See Innova/Pure Water*, 381 F.3d at 1119 ("Furthermore, we observe that Safari's interpretation largely reads the term 'operatively' out of the phrase 'operatively connected.' While not an absolute rule, all claim terms are presumed to have meaning in a claim.  If, as Safari proposes, the claim refers in the abstract to the creation of a filter assembly structure, without any grounding to an intended use, the term 'operatively' is unnecessary and superfluous as the patentee could have as easily used the term 'connected' alone." (citations omitted)).

Relatedly, it should be noted that Headwater purports to propose a "plain and ordinary meaning" construction, but is instead asking the Court to replace the word "benefit" with "noticeable operation."  Headwater's backdoor attempt to seek a rewritten construction for this term, under the guise of a "plain meaning" construction, should also be rejected.  Headwater could have proposed its construction at the appropriate stage, but opted not to do so.

### D.    Headwater's Expert Could Not Defend Headwater's Claim Interpretation Without Introducing Further Ambiguity

Headwater's revisionist claim interpretation is so far afield of what is expressly written in the claims that Headwater's expert could not analyze the scope of the claims without introducing additional ambiguity into the separate, undisputed claim term, "user," which would otherwise be straightforward.

As previously explained, Headwater and its expert effectively re-write the claims such that any "noticeable" application operation must be perceived as a "benefit" to every user.  *See supra* Section IV.C.  One example Headwater imagines to support its position is a scenario where a user

17

is listening to music on the Spotify application, and thereafter sets his or her phone down on a table while the music continues playing.  Opening Brief at 9; Chrissan Decl. (Dkt. No. 82-9) ¶ 30. Headwater argues that in this scenario, the end-user is perceiving a benefit from the application because he or she would still notice (i.e. hear) the music.  Opening Brief at 9.

Headwater's expert, Dr. Chrissan, was challenged on this hypothetical during his deposition.  Specifically, Dr. Chrissan was asked whether a user who sets the phone down while playing music and takes a flight to China, leaving his or her phone behind, is still perceiving a benefit.  In response, Dr. Chrissan explained that "[a]t that point they're not even a user of the device." Chrissan Dep. Tr. 70:18-24 (Ex. B).  Taking this example further, Dr. Chrissan was asked whether a user who sets their phone down while playing music on Spotify and thereafter takes their dog out in the front yard, leaving their phone inside, is still perceiving a benefit—e.g. because presumably that user would no longer be able to notice the music. *Id.* at 71:4-8.  In response, Dr. Chrissan stated "[m]y answer is the same. The back yard or the next door neighbor or China, at some point they don't even qualify as a user of the device, even if they happen to be the owner of it."  *Id.* at 71:9-13.  Dr. Chrissan then testified that his claim interpretation, which replaces "benefit" with "noticeable," builds in a vague proximity requirement for the word "user," under which a person that moves far enough away from the device is no longer a "user" within the scope of the claims." *Id.* at 77:20-24 (testifying that "a person far enough from the device that they have no connection to it, a person of skill would understand that that is not a user of the device.").  But, how far does a person need to go to lose their "connection" and no longer be a "user"?  That too becomes too ambiguous to define under Headwater's claim interpretation, but according to Dr. Chrissan, there would be "some point, you know, a lack of association or connection or distance

you can have with your phone such that you would not be considered a user of it under the -- under the scope of this claim." *Id.* at 77:25-78:18.

As shown above, Headwater's interpretation of "perceiving a benefit" which requires a "noticeable" operation only creates more confusion as to the claim scope, even according to Headwater's own expert, because it introduces ambiguity regarding when a person qualifies or does not qualify as the claimed "user." Thus, Headwater's re-writing of the claims should be rejected on this additional ground.

### E.  Headwater's Remaining Arguments Also Fail

Headwater's argument that "[w]ithout supporting expert evidence . . . Samsung cannot meet its heavy burden of proving indefiniteness by clear and convincing evidence" contradicts legal precedent.  *See* Opening Brief at 5.  It is perfectly acceptable for a court to find a claim indefinite without considering any extrinsic evidence such as expert testimony.  *See Interval Licensing*, 766 F.3d at 1371 n.6 ("[W]e find it unnecessary to rely on [expert] testimony (or any other extrinsic evidence) to reach our conclusion.  Like the district court, we find the claims indefinite based on the claims, the written description, and the prosecution history."); *see also Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878-JDL, 2015 U.S. Dist. LEXIS 180229, at *10 (E.D. Tex. Jan. 16, 2015) (finding that expert evidence was not necessary to decide a motion for summary judgment of indefiniteness); *Prolifiq Software Inc.*, No. C 13-03644 SI, 2014 WL 3870016, at *8 ("Although expert testimony is generally helpful in determining whether a claim is indefinite, expert testimony is not always required to make that determination.").  Notably, Headwater cites no authority to support its assertion that this Court cannot find the disputed term indefinite without expert testimony from Samsung.  *See* Opening Brief at 5.  Nonetheless, absent its own expert, Samsung's position that the disputed claims require a subjective inquiry still finds

support in the testimony of both Alireza Raissinia (named inventor) and Dr. Chrissan (Headwater's expert).  *See supra* Section IV.A.

Second, Headwater wrongly argues that the purpose of the patents somehow resolves the subjective nature of the disputed claims.  Relying on *Ironburg Inventions Ltd. v. Valve Corp.* and *Grace Instrument Indus., LLC v. Chandler Instruments Co.*, Headwater incorrectly contends that the purpose of the claimed inventions provides objective guidance as to the scope of the disputed claims.  64 F.4th 1274, 1287-91 (Fed. Cir. 2023); 57 F.4th 1001, 1010 (Fed. Cir. 2023); Opening Brief at 12-13.  Indeed, the purported purpose of the asserted patents, i.e., providing "techniques . . . to preserve network capacity by, for example, differentially controlling these types of network service usage activities in various ways depending on the type of service activity requesting network access and/or requesting transactions with network resources," '701 Patent at 8:51-56, "fails to permit a person of ordinary skill in the art to understand the scope of the [disputed] term with reasonable certainty," *Ironburg*, 64 F.4th at 1287.  Even if a POSITA considered the purported purpose of the patents, he or she would still have no reasonable certainty as to whether a user "perceiv[es] a benefit" from a particular application, because such a "benefit" is entirely subjective and based on the opinions of the user.  For example, one user may find a particular application's activity to be a benefit despite said activity negatively affecting network capacity, whereas another user might feel the exact opposite.  Merely knowing that the patents aim to differentially control network service usage activities to preserve network capacity does not inform a POSITA of any objective measure of "perceiving any benefit."  Unsurprisingly, neither *Ironburg* nor *Grace Instrument Indus.* dealt with purely subjective claim terms; instead, each dealt with disputed dimensional terms of degree related to tangible items, rendering their applicability to the present case weak at best.  *See Ironburg*, 64 F.4th at 1287 (considering an indefiniteness challenge

to the claim term: "substantially the full distance between the top and bottom edge"); *Grace Instrument Indus.*, 57 F.4th at 1010 (considering an indefiniteness challenge to the claim term: "enlarged chamber").

## V.    CONCLUSION

Samsung respectfully requests that the Court find the disputed, subjective claims indefinite.

Dated: January 19, 2024                          Respectfully submitted,

By:  */s/ Benjamin K. Thompson*
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman
DC Bar No. 1034255
hartzman@fr.com
Joshua Carrigan (*pro hac vice*)
VA Bar No. 96911
carrigan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Nicholas A. Gallo (*pro hac vice*)
GA Bar No. 546590
gallo@fr.com
Steffen Lake (*pro hac vice*)
GA Bar No. 512272
lake@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavid@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD AND
SAMSUNG ELECTRONICS AMERICA, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on January 19, 2024, with a copy of this document via the Court's CM/ECF.

*/s/ Benjamin K. Thompson*
Benjamin K. Thompson
