**PUBLIC VERSION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>Defendants. | Case No. 2:22-cv-00422-JRG-RSP<br><br>**JURY DEMANDED** |

**PLAINTIFF HEADWATER'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL SUPPLEMENTATION OF PRIVILEGE LOG AND PRODUCTION OF DOCUMENTS PROTECTED BY PRIVILEGE AND WORK PRODUCT**

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ....................................................................................... 2

    A.  Samsung's "Exemplary Issues" ........................................................................ 2

        1.  "StockLayouts" Entries ........................................................................ 2

        2.  Entries With "No Author or Recipient" ............................................... 3

        3.  Entries with "No Attorneys and No Enabling Descriptions" ............. 4

        4.  Entries for "Communications with Third Parties" ............................. 4

        5.  Entries Described by Samsung as "Common Interest" Entries ........................................................................................................ 6

    B.  Other ItsOn-Related Entries .............................................................................. 7

III. ARGUMENT ................................................................................................................... 9

    A.  Headwater's Privilege Logs Provide More than Sufficient Description for Samsung to Evaluate Headwater's Claim of Privilege ............................................................................................................ 9

    B.  The Entries Mentioning ▓▓▓▓▓▓▓▓▓▓▓▓ Are Privileged or Have Been Produced ............................................................ 9

    C.  The Common Interest Exception Applies to Communications between Headwater and ItsOn, and Headwater and ▓▓▓▓▓ ......................... 10

        1.  ▓▓▓▓▓▓▓ ......................................................................................... 12

        2.  ItsOn ..................................................................................................... 13

    D.  The Other ItsOn-Related Entries Are Privileged ........................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Certain Computing or Graphics Systems, Components Thereof, and Vehicles Containing Same*,
  Inv. No. 337-TA-984, Order No. 40 (June 17, 2016) .............................................................. 12

*FastVDO LLC v. AT&T Mobility LLC*,
  2016 WL 6138036 (S.D. Cal. Oct. 21, 2016) ......................................................................... 12

*Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*,
  219 F.R.D. 396 (E.D. Tex. 2003) ............................................................................................ 11

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
  115 F.R.D. 308 (N.D. Cal. 1987) ............................................................................................ 11

*Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*,
  768 F.2d 719 (5th Cir. 1985) .................................................................................................. 11

*In re Regents of Univ. of California*,
  101 F.3d 1386 (Fed. Cir. 1996) ......................................................................................... 11, 14

*MPT, Inc. v. Marathon Labels, Inc.*,
  No. 1:04 CV 2357, 2006 WL 314435 (N.D. Ohio Feb. 9, 2006) ............................................ 14

*United States v. Homeward Residential, Inc.*,
  2016 WL 1031154 (E.D. Tex. Mar. 15, 2016) ....................................................................... 10

*Wm. F. Shea, LLC v. Bonutti Research, Inc.*,
  No. 2:10-cv-615, 2013 WL 1386005 (S.D. Ohio Apr. 4, 2013) .............................................. 12

I.  **INTRODUCTION**

Headwater's initial privilege log dated January 5, 2024 (Dkt. 100-7) spans hundreds of pages and thousands of entries, and provides the required information. When Samsung identified alleged deficiencies with Headwater's log, the parties met and conferred on January 25 and February 1. The next day, February 2, Headwater amended its privilege log to address Samsung's concerns and did so again on February 7. Headwater also made supplemental productions of documents removed from its privilege log. Headwater understood that its February 7, 2024 privilege log and ongoing document productions would resolve Samsung's concerns.

Notwithstanding Headwater's prompt and diligent efforts to respond to Samsung's issues, Samsung filed this Motion on February 13, 2024. Samsung neither informed Headwater it would do so, nor try to meet and confer with Headwater after it served amended privilege logs on February 2 or February 7 and made corresponding document productions. Had Samsung done so, Headwater could have resolved issues such as a technical error in the conversion of Headwater's draft February 7 privilege log (from Microsoft Excel) to an Adobe Acrobat PDF format; this error unintentionally "cut off" (Mot. at 6 n. 10) text in some of the cells (which Samsung incorrectly characterizes as Headwater "removing" information from in earlier logs). *Id.* at 6-8. These and numerous other issues could have been quickly addressed had Samsung satisfied Local CV-7(h)'s meet-and-confer requirement instead of rushing to file its scattershot Motion.

In any event, many of the "specific exemplary issues" discussed in Motion were already addressed before it was filed or have since been addressed in the ordinary course. For example, Samsung overlooks that many of the documents it identifies were produced weeks earlier. Further, Headwater has provided supplemental privilege logs dated February 28, 2024, the date of this response, to include additional detail to address certain of Samsung's arguments including that certain entries lack "enabling descriptions." Again, had Samsung properly requested these

1

descriptions, Headwater would have promptly provided it without burdening the Court with unnecessary motion practice. The key remaining issues posed by the Motion are (1) the production of certain materials involving ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (2) entries where Samsung incorrectly assumes certain email addresses of Headwater and ItsOn board members belonged to "third parties" for the purposes of waiver; (3) whether communications of Dr. Gregory Raleigh—who founded both Headwater and ItsOn and used both of his Headwater and ItsOn email addresses—and other Headwater employees with lawyers may be withheld as privileged even if they used their ItsOn email addresses. As explained below, because Samsung fails to establish entitlement to discover privileged information, its Motion should be denied.

## II.  FACTUAL BACKGROUND

### A.  Samsung's "Exemplary Issues"

Samsung seeks to compel the production of certain documents and an additional privilege log relating to five "exemplary" issues. *See* Mot. at 3-8. As explained below, each of these five issues were either already resolved or are unsupported.

#### 1.  "StockLayouts" Entries

Samsung first identifies a set of eight (8) entries, each dated March 6, 2018, it describes as "StockLayouts." Mot. at 3; Dkt. 100-13 (Exhibit L, listing the eight "StockLayouts" documents). Headwater's initial log populated the author/sender of these entries using the preexisting metadata of the underlying documents, which listed identified the "author" as "StockLayouts." As the Motion says, after Samsung identified this issue, Headwater provided updated privilege logs which corrected the "sender/author" information for those eight entries to reflect that they were authored by Seth Reigh or Greg Gardella, both attorneys who were Headwater's outside counsel in March 2018 with the law firm, Gardella Grace. Declaration of Jason Wietholter ("Wietholter Decl.") ¶ 3.

2

The eight "StockLayouts" documents are patent validity claim charts prepared by Headwater's outside counsel at Gardella Grace, at Headwater's request, to analyze the validity of certain Headwater patents in evaluating whether the patents infringement claims should be asserted against infringers. *Id.* ¶ 3. The privileged nature of these documents is clear to Samsung given that the authors of the documents were Headwater's outside lawyers (which Samsung already knows) and the fact that the documents are in Headwater's possession. Samsung also does not contend or explain why it believes the eight documents authored by outside lawyers and in Headwater's possession are not privileged. Nonetheless, Headwater's February 28, 2024-dated privilege log provides updated descriptions of these entries. Ex. 1 (identifying subject matter: "patent claim validity claim charts prepared by outside counsel at Headwater's request, and transmitted to Headwater, in anticipation of litigation").

### 2.  Entries With "No Author or Recipient"

Next, Samsung's Exhibit M identifies 23 entries it says for which Headwater's initial privilege log "did not include either a sender/author or a recipient." Mot. at 3. These 23 entries, dating from 2016 through 2020, correspond to "loose" electronic, non-email files which were collected by Headwater in its custodial ESI, such as Word, PowerPoint, and PDF files. Wietholter Decl. ¶ 5. As Samsung notes, Headwater's February 2 and 7 privilege logs added additional information to most of these entries. *See* Dkt. 100-14. Here, Samsung does not contend that any of these 23 entries are not privileged—it argues instead that it wants more detailed "enabling descriptions." At minimum, Samsung has sufficient basis to evaluate 16 of the 23 entries, which list attorneys as a sender/author or recipient. Nonetheless, Headwater's February 28, 2024 privilege log provides updated descriptions of these entries. Ex. 2.

3

### 3. Entries with "No Attorneys and No Enabling Descriptions"

Samsung's third "exemplary issue" refers to entries it says had "no attorneys and no enabling descriptions." Mot. at 4. Though the Motion fails to make it clear, this category concerns the 10 documents listed in Exhibit O to Samsung's Motion. *See* Hartzman Decl., Ex. O. All but one of the 10 documents were produced to Samsung on February 2, 2024. Wietholter Decl. ¶ 7. The sole remaining document, control number 301228, is an internal discussion between Dr. Raleigh and Dave Johnson (of ItsOn and Headwater) about an email chain with patent prosecution counsel. Patent prosecution counsel worked with both Headwater and ItsOn employees (who were often the same individuals) to prosecute patents ultimately assigned to Headwater, communicating with those individuals' Headwater and also their ItsOn email addresses. *Id.* ¶ 8.

### 4. Entries for "Communications with Third Parties"

Samsung's fourth "exemplary issue" concerns entries listed in Exhibits P, Q, and V to the Hartzman Declaration – that is, its requested relief relates to the entries listed in those exhibits. *See* Dkts. 110-17 (Ex. P), 110-18 (Ex. Q), 110-23 (Ex. V). *See* Mot. 4-7.

As an initial matter, Samsung asserts that certain information was "removed" from Headwater's February 7, 2024 privilege log. *See, e.g.*, Mot. at 6 n. 10; Dkt. 110-17. This is incorrect. Headwater did not "remove" any information from its February 7, 2024 privilege log. The absence of certain information from the February 7 log which was present in earlier logs is due to a technical error resulting from the conversion of Headwater's draft February 7 privilege log (in Microsoft Excel format) to a service-ready Adobe Acrobat PDF format, which unintentionally cut off some text in some cells. Wietholter Decl. ¶ 10.

In any event, Samsung says that its 17 "Exhibit P" entries are entries involving either ItsOn or Headwater email addresses and third parties with email addresses with the domains for ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. 110-17. Headwater produced all entries listed in Samsung's "Exhibit

4

P" where any participant had an Intel or Best Buy domain email address on February 2, 2024: control numbers 409917 and 611376. Wietholter Decl. ¶ 11. The remaining 15 entries are attorney-client privileged communications between outside counsel and with Headwater and ItsOn personnel, including specifically the representatives of the board members of those companies. *Id.* ¶ 12. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[1] *Id.*; *see* Ex. 4 (P). For example, outside counsel at Wilson Sonsini provided legal advice to both Headwater and ItsOn over many years. Headwater's February 28-dated privilege log provides updated descriptions of these entries. *Id.*

Samsung's 76 "Exhibit Q" entries are all communications (and attachments to communications) exchanged between Headwater and Headwater's counsel, and ███ and ███ counsel. *See* Dkt. 100-18, at 3-10 (listing the 76 relevant entries from Headwater's February 7, 2024 privilege log). These entries contain information protected under attorney-client privilege, which was not waived when shared with ███████████████ ███ . This is reflected in Headwater's February 28 log, which provide updated descriptions of these entries. Wietholter Decl. ¶ 14, Ex. 5.

---

[1] In addition, the email addresses in Samsung's Exhibit P also include emails of other board members of Headwater and ItsOn who were investors into both companies, including, for example, ███████████████████. *See, e.g.*, Dkt. 100-17, at 1 (control number 1). Samsung does not complain about the presence of these other recipients--except for Oak Hill (*see* Mot. at 7-8; Dkt. 100-19 (Ex. R.), but only because Samsung assume ████████████████████████████ ████████████████████.

5

Samsung's Exhibit V is a list of 606 log entries, which it says should be produced because Headwater supposedly "fail[ed] to provide authority for its position that a common interest necessarily exists merely because ItsOn had been Headwater's non-exclusive licensee." Mot. at 6; Dkt. 100-23. This is incorrect. Following the parties meet and confer, Headwater's counsel provided Samsung with three different sources of authority. Wietholter Decl. Ex. 6. Though the Motion fails to articulate reason why any of the specific entries should be produced or otherwise describe them with particularity, the entries are emails (and attachments to emails) between attorneys and non-attorneys, where both ItsOn email addresses and Headwater email addresses are participants. TThey are privileged communications with attorneys representing both Headwater and ItsOn, both of whom share a common legal interest. Wietholter Decl. ¶ 17.

### 5. Entries Described by Samsung as "Common Interest" Entries

Samsung's last "exemplary" issue concerns entries which it says Headwater has improperly withheld under a common interest theory of non-waiver. *See* Mot. at 7-8. The entries which Samsung categories in this group are listed in its Exhibits R, S, T, and U. *See, e.g.*, Dkts. 110-19, 110-20, 110-21, 100-22. None of these exhibits reflect entries that are improperly withheld. First, though Samsung says in its exhibits that Headwater "removed" information (*e.g.*, Dkt. 110-19, at 1), that is incorrect because the allegedly "removed" information was omitted due to a technical and formatting error. Wietholter Decl. ¶ 18.

Exhibit R relates to a list of four entries (Dkt. 110-19, at 2-3) which Samsung says involve either ███████████████████████████████████. *See* Mot. at 7. ███████████
████████████████████████████████████████████████████████████████████
Likewise, the 170 entries identified by Samsung in its Exhibit T (Dkt. 100-21) are ███████
████████████████████████████████████████████████████████████████████

6

██████████████████████████████████████████████████████████████

is not a "third party" to whom disclosure waives Headwater's privilege.

Samsung's Exhibit S is a list of 14 entries for communications involving Headwater, Headwater's attorneys, ██████████████████████████████████████████████████████████████████████████████. *See* Dkt. 100-20. Headwater has or will provide a supplemental privilege log concerning these 14 entries to clarify that they are subject non-waiver under the common interest between ████ and Headwater. Wietholter Decl. ¶ 19.

Samsung refers to Exhibit U, which is a list of 34 entries for communications that Samsung asserts "are only between counsel such that Samsung does not know what alleged third party relationship is being asserted/at issue," and for which "one entry has no sender/recipient." Mot. at 8. These entries were added to Headwater's privilege log on February 7, 2024, and Samsung did not previously identify them to Headwater or attempt to meet and confer about them. Wietholter Decl. ¶ 20. These entries are communications between Headwater (represented by Headwater's in-house counsel, James Harris, and outside counsel with the Cooley and Wilson Sonini firms) and ██████ outside counsel (with the McKool Smith and Dechert law firms) in connection ██ ████████████████████████████████████████████████. The withheld communications are attorney-client privileged, with the privilege belonging to both Headwater and, presumably, ████████ both of whom shared a common legal interest in the subject of the communications at the time. The "one entry" which Samsung says has "no sender/recipient" has fields which were inadvertently included due to a technical error, and Headwater has produced that document. Wietholter Decl. ¶ 21.

   **B.  Other ItsOn-Related Entries**

Samsung also refers to its Exhibits W and X, in cursory fashion, as a part of its argument that Headwater is allegedly asserting privilege on behalf of ItsOn. Mot. at 15. Like with several of the other issues identified in its Motion, Samsung failed to meet and confer at all on this.

Dr. Gregory Raleigh founded both Headwater and ItsOn in 2008. Until ItsOn wound up in 2018, Headwater and ItsOn shared their many of their key employees, physical offices, and members of their respective boards of directors. Both Headwater and ItsOn were generally represented by the same outside counsel, and Headwater's in-house counsel provided legal counsel to both Headwater and ItsOn employees. Headwater and ItsOn served distinct roles: for instance, Headwater held the intellectual property rights, and ItsOn was tasked to develop and sell the patented technology in the market. *See, e.g.*, Wietholter Decl., ¶¶ 22-24, Ex. 7 ("[REDACTED]"). As a result, though most Headwater and ItsOn employees had email addresses with both Headwater and ItsOn domains, employees of both companies often their ItsOn-domain email addresses to communicate even if the subject matter was, for example, the prosecution of Headwater's pending patent applications. This is reflected throughout Headwater's privilege log, including in the "Exhibit V" entries listed by Samsung. *See* Dkt. 100-24 (*e.g.*, control number 80286, a 5/18/210 email from Michael Schallop, Headwater's patent prosecution counsel, to Dr. Raleigh and Dave Johnson's ItsOn email addresses, regarding patent prosecution of Headwater's pending applications).

Samsung describes the 155 entries in Ex. W as communications "between ItsOn and third parties." *Id.* It suggests that because Headwater employees (such as Dr. Raleigh) used their ItsOn email addresses to correspond with attorneys who represented both Headwater and ItsOn, Headwater cannot withhold emails where there were no Headwater email addresses involved. But the entries in "Exhibit W" are privileged because they are attorney-client privileged

8

communications with counsel for both Headwater *and* ItsOn, with the asserted privilege here belonging to at least Headwater. As for Ex. X, the Motion asserts that the 250+ entries listed there do not have "corporate association" information such that it cannot identify "which corporate entity—Headwater or ItsOn—is asserting privilege/work product." Mot. at 15. The entity Headwater contends is asserting privilege is Headwater.

### III. ARGUMENT

#### A. Headwater's Privilege Logs Provide More than Sufficient Description for Samsung to Evaluate Headwater's Claim of Privilege

Samsung's first category is about "the documents specified in Sections II.C1-3" of its motion. Mot. at 12. For these documents, Samsung is not disputing privilege or seeking in camera review. Its only request is to provide more detail in the entries. But the level of detail that Headwater provided is sufficient and allows Samsung to readily understand the claim of privilege. This is why, given the attorneys involved in the entries and other context, Samsung is not requesting their production. Nevertheless, Headwater has mooted this category by serving a supplemental privilege log dated February 28, 2024, to provide the additional information that Samsung is requesting. This includes information about many entries that Samsung never adequately raised before and identifies for the first time in this motion.

#### B. The Entries Mentioning ███████████████ Are Privileged or Have Been Produced

Samsung next identifies "200 communications with third parties ███████████ ███████████" (citing Exs. P, S, T). Mot. at 12–13. Samsung improperly assumes the entries are "communications with third parties" and its only basis for production is that "Headwater has not asserted common interest" with those parties. *Id.* This fails.

, Headwater already produced all entries in Samsung's Ex. P where any participant had an ███ or ██████ email address on February 2, 2024 (before Samsung filed this Motion). The

9

remaining 15 entries are attorney-client privileged communications between outside counsel and Headwater and ItsOn personnel, including specifically the representatives of the board members of those companies. For example, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Outside counsel at Wilson Sonsini provided legal advice to both Headwater and ItsOn over many years.

Similarly, the 170 entries listed in Samsung's Exhibit T are at issue only because Samsung incorrectly assumes that ███████████████████████████████████████████████████████████████████████████████████████████ This demonstrates that Samsung's assertion that the entries are communications "with third parties" is incorrect. The mere fact of the domain email addresses does not show otherwise. Headwater's February 28-dated privilege log provides updated descriptions of the identified entries. Headwater understands that the updated descriptions resolve Samsung's concerns with Exhibit P.

As for the "Exhibit S" entries, Headwater has or will soon provide a supplemental privilege log clarifying that its communications with ██████████████ are protected under common interest privilege. The subject of those withheld communications is the potential funding of patent litigation by Headwater, which is protected. *See, e.g.*, *United States v. Homeward Residential, Inc.*, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) ("The Court finds that the litigation funding information is protected by the work product doctrine. The litigation funding documents were between Fisher and actual or potential litigation funders and were used to possibly aid in future or ongoing litigation.").

    **C.**    **The Common Interest Exception Applies to Communications between Headwater and ItsOn, and Headwater and ██████████**

In Section IV.C.1 of Motion, Samsung argues that no common interest protection applies to shield certain communications and materials exchanged between lawyers for Headwater and lawyers for ▮▮▮▮▮ which are listed as the 76 entries in Samsung's Exhibit Q. Mot. at 13. And, in Section IV.C.2, Samsung says that no common interest protection applies to protect communications and information exchanged between employees and lawyers of both Headwater and ItsOn, which (though Samsung never says) appear to be the 606 entries listed in Samsung's Exhibit V. Both arguments are wrong and fail to support production.

The common interest doctrine protects communications between two parties or attorneys that share a common legal interest. *See Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). "The common interest doctrine applies to cases involving co-defendants, an insurer and an insured, and a patentee and a licensee." *Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003).

The Federal Circuit has extended the common interest doctrine to protect communications and information exchanged between a patentee and a prospective licensee, even prior to or without the consummation of an agreement. *See In re Regents of Univ. of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (communications between patentee and third party's attorneys negotiating for exclusive license to patents were protected under the common interest exception, reasoning in part that the communications were designed to reduce or avoid litigation). Likewise, communications between an company and a potential ***acquirer*** of the that company about the strength of the another party's patents, are protected. *See, e.g.*, *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987) ("it seems clear that defendant and GEC anticipated litigation in which they would have a common interest. Moreover, their common interest would have been in identical issues of law and of fact: was plaintiff's patent valid and enforceable, and, if so, did the one product

11

that defendant and GEC marketed at different times infringe that patent?"). And communications between a patentee and a potential acquirer of the former's patents for anticipated litigation are subject to the common interest protection. *See FastVDO LLC v. AT&T Mobility LLC*, 2016 WL 6138036, at *2-*4 (S.D. Cal. Oct. 21, 2016) (holding common interest exception applied to claim charts and other litigation-related materials exchanged between plaintiff and original patentee prior to purchase of the patent).

1. ▮▮▮▮▮▮▮

On November 6, 2019, Headwater and ▮▮▮▮▮▮▮ signed a Non-Disclosure Agreement (Dkt. 100-26), under which the parties agreed to the following:



Dkt. 100-26, at 3 (¶7: "Common Interest"). The parties signed this agreement to ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This is more than sufficient to create a "common interest" privilege. *See, e.g., Wm. F. Shea, LLC v. Bonutti Research, Inc.*, No. 2:10-cv-615, 2013 WL 1386005, at *3 (S.D. Ohio Apr. 4, 2013) (finding common-interest privilege between entities that did not control each other, based on shared legal and financial interests created by patent purchase agreement); *Certain Computing or Graphics Systems, Components Thereof, and Vehicles Containing Same*, Inv. No. 337-TA-984, Order No. 40 (June 17, 2016) at 2, 4 (finding common-interest privilege between entities that did

PUBLIC VERSION

not control each other, based on aligned legal interests of patent holder and litigation funder because they both had a legal and financial interest in the outcome of the litigation).

As a result, common-interest privilege applies to privileged communications exchanged between Headwater and ▮▮▮▮ at least ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Dkt. 100-26, ¶7). As Samsung acknowledges, Headwater has produced the majority of the emails and other materials exchanged between ▮▮▮▮ and Headwater (*see* Mot. at 7), which Headwater has done after having determined those materials to be not covered by parties' shared common interest in the enforcement of the patents.

For the remaining 76 entries in Exhibit P, Samsung does not argue that there is no privilege or that it was waived. Rather, its sole argument is that that "Headwater's description is insufficient to enable Samsung to evaluate" the claim of privilege. Mot. at 13. Though Headwater's February 7, 2024 log provided sufficient information, Headwater has also provided privilege logs dated February 28, 2024 specifically to address Samsung's concern. *See* Wietholter Decl. Ex. 4.

### 2.  ItsOn

On March 24, 2009, Headwater and ItsOn signed a License Agreement, through which ItsOn obtained a license to use and commercialize Headwater's patents. *See* Wietholter Decl., ¶ 25, Ex. 8 (HW_00054355). That license ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The License Agreement also notes that, among other things, Headwater ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

The entries listed in Samsung's Exhibit V are attorney-client privileged communications between Headwater employees and its counsel **and** between ItsOn employees and its lawyers—who are, for practical purposes and also in connection with the Exhibit V entries, the same people. In other words, Headwater and ItsOn were jointly counseled by the same attorneys. Even where

13

both Headwater and ItsOn email addresses are on communications with attorneys (whether in-house or outside counsel), there is no issue of "waiver" because "[i]f two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged [] and relates to matters of common interest is privileged as against third persons." Restatement (Third) of the Law Governing Lawyers § 75 (2000).[2]

Even if the only assertable privilege extant in the "Exhibit V" entries belonged to Headwater, they are protected from disclosure because Headwater and ItsOn shared a common legal interest as to the licensing and enforcement of Headwater's patents. Like in *In re Regents*, both Headwater and ItsOn had at all relevant times "the same interest in obtaining strong and enforceable patents." *In re Regents*, 101 F.3d at 1390. ItsOn is not simply the type of "nonexclusive" licensee alluded to by Samsung for which the shared community of interest between licensee and patentee is not sufficiently congruent for the common interest exception to attach. *See, e.g.*, *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, at *7 (N.D. Ohio Feb. 9, 2006) (upholding common interest exception between otherwise privileged communications shared between "closely affiliated" patentee and licensee, and stating: "the license at issue here is much more than a bare nonexclusive license").

ItsOn "was more than a non-exclusive licensee" and "shared the interest that [Headwater] would obtain valid and enforceable patents." *In re Regents*, 101 F.3d at 1390. Likewise, "[Headwater] is a university seeking valid and enforceable patents to support royalty income. [ItsOn] is an industrial enterprise seeking valid and enforceable patents to support commercial activity. Valid and enforceable patents on the [Headwater] inventions are in the interest of both

---

[2] To the extent the Court deems it necessary, Headwater will provide Samsung a supplemental privilege log identifying "common interest" as a basis for withholding otherwise privileged communications involving both ItsOn and Headwater email addresses.

14

parties." *Id.* This shared legal interest was not merely theoretical or an *ex post facto* construction—it is borne out by the countless email communications between ItsOn or Headwater, outside counsel relating to the prosecution of patent applications assigned to Headwater. *See, e.g.*, Dkt. 100-24 (three examples: control numbers 24281, 80286, and 362847). Privilege in such circumstances is not waived.

### D.   The Other ItsOn-Related Entries Are Privileged

The fifth category is what Samsung identifies as "150 emails that do not include anyone from Headwater, but instead are between ItsOn and third parties" (citing Ex. W). Mot. at 15.[3] This description is itself incorrect and misleading. The entries plainly involve personnel from Headwater, such as Mr. Raleigh. And by "third parties," Samsung means attorneys from firms such as Wilson Sonsini. And even a cursory review of the entries supports privilege.

These entries are Headwater's privilege or work product, and Headwater is asserting the privilege/work product. The fact that certain communications were sent from Dr. Raleigh's ItsOn email address, for example, doesn't change that privilege, as discussed in the background above and in the supporting declaration that will be submitted. There is no authority that communications sent from a different address (whether an ItsOn address or a "mac.com") cannot be privileged. Even if, for the sake of argument, the use of an ItsOn address is assumed to be a disclosure to ItsOn, that would be immaterial. The communication is nonetheless privileged and remains privileged given the common interest between Headwater and ItsOn. Samsung provides no basis for disclosure or waiver. The Motion assumes that only ItsOn's privilege is implicated (and argues that the privilege cannot be asserted by ItsOn or Headwater). This is incorrect because the privilege and work product implicated is Headwater's.

To the extent not mooted, Samsung's motion to compel should be denied in its entirety.

---

[3] As to the 250 entries in Ex. X, the privilege/work product is asserted by Headwater. Samsung does not and cannot dispute that this is proper.

15

| | |
|---|---|
| Dated: February 28, 2024 | Respectfully submitted, |
| | */s/ Marc Fenster* |
| | Marc Fenster |
| | CA State Bar No. 181067 |
| | Email: mfenster@raklaw.com |
| | Reza Mirzaie |
| | CA State Bar No. 246953 |
| | Email: rmirzaie@raklaw.com |
| | Brian Ledahl |
| | CA State Bar No. 186579 |
| | Email: bledahl@raklaw.com |
| | Ben Wang |
| | CA State Bar No. 228712 |
| | Email: bwang@raklaw.com |
| | Dale Chang |
| | CA State Bar No. 248657 |
| | Email: dchang@raklaw.com |
| | Paul Kroeger |
| | CA State Bar No. 229074 |
| | Email: pkroeger@raklaw.com |
| | Neil A. Rubin |
| | CA State Bar No. 250761 |
| | Email: nrubin@raklaw.com |
| | Kristopher Davis |
| | CA State Bar No. 329627 |
| | Email: kdavis@raklaw.com |
| | James S. Tsuei |
| | CA State Bar No. 285530 |
| | Email: jtsuei@raklaw.com |
| | Philip Wang |
| | CA State Bar No. 262239 |
| | Email: pwang@raklaw.com |
| | Amy Hayden |
| | CA State Bar No. 287026 |
| | Email: ahayden@raklaw.com |
| | Jason M. Wietholter |
| | CA State Bar No. 337139 |
| | Email: jwietholter@raklaw.com |
| | **RUSS AUGUST & KABAT** |
| | 12424 Wilshire Blvd. 12th Floor |
| | Los Angeles, CA 90025 |
| | Telephone: 310-826-7474 |
| | |
| | *Attorneys for Plaintiff* |
| | *Headwater Research LLC* |

16

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System under seal, and served defendants with a copy via electronic mail.

*/s/ Marc Fenster*
Marc Fenster

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Marc Fenster*
Marc Fenster