**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| HEADWATER RESEARCH LLC<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONIC CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:22-CV-00422-JRG-RSP<br><br>███████████████ |

## DEFENDANTS' MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37(E)(1)

**PUBLIC VERSION**

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND .................................................................................................... 1

    A.    ItsOn and HW (2008-2018) ..................................................................... 1

    B.    ItsOn, Sprint, and Samsung (2011-2015/2016) ...................................... 2

    C.    ItsOn ███████████████████████ ........................ 3

    D.    ████████████████████████ ........................ 4

    E.    This Case: Code-Based Claims, ItsOn Story, Confusion (2022-now) .................. 5

        1.    What is the "ItsOn Solution," exactly? And who has that information?.......... 6

        2.    Did the ItsOn Solution Practice Any Asserted Patent Claims?....................... 6

        3.    ItsOn's Status; Location of its ESI.................................................... 8

        4.    Initial Disclosures Never Identify an Existing ABC with Discovery. ............. 9

        5.    What ItsOn ESI Did HW (Selectively) Retain?................................. 9

        6.    Discovery Closes; No ItsOn Code .................................................. 9

II.    LEGAL STANDARD........................................................................................... 9

III.    ARGUMENT ..................................................................................................... 10

    A.    HW Had Duty to Preserve ItsOn Solution Code ████ ................................ 10

        1.    When: Anticipation of Litigation ................................................ 11

        2.    What: Relevant Evidence in Possession, Custody, Control. ........................ 11

    B.    HW Did Not Do So; Failed to take Reasonable Preservation Steps..................... 13

    C.    The ItsOn Solution Code cannot be Restored or Replaced................................... 14

    D.    HW's Failure to Preserve Significantly Prejudices Samsung.............................. 14

    E.    HW should be Precluded from Offering Code-Dependent Arguments................ 15

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                         **Page(s)**

*Allstate Texas Lloyd's v. McKinney*,
 964 F. Supp. 2d 678 (S.D. Tex. 2013) ..................................................................11

*American Technical Ceramics Corp. v. Presidio Components, Inc.*,
 2019 WL 2330855 (E.D. N.Y. 2019) ..............................................................12, 15

*Arctic Cat Inc. v. Bombardier Rec. Prods*.
 (876 F.3d 1350 (Fed. Cir. 2017)) .......................................................................1, 7

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
 No. 2:15-CV-1047-RSP, 2016 WL 11750180 (E.D. Tex. Nov. 30, 2016).....................12, 15

*Ashton v. Knight Transp., Inc.*,
 772 F. Supp. 2d 772 (N.D. Tex. 2011) .......................................................10, 11, 12, 14

*Balancecxi, Inc. v. Int'l Consulting*,
 No. 2020 WL 6886258 (W.D. Tex. Nov. 24, 2020) ..............................................10

*Edwards v. Junior State of Am. Found.*,
 No. 4:19CV140SDJ, 2021 WL 1600282 (E.D. Tex. Apr. 23, 2021)......................................15

*Guzman v. Jones*,
 804 F.3d 707 (5th Cir. 2015) .................................................................................11

*U.S. ex rel. Harman v. Trinity Indus., Inc.*,
 No. 2:12cv89JRG, 2014 WL 12603247 (E.D. Tex. July 11, 2014) (*amend. on reconsid.
 denial*, 2014 WL 12603897 (E.D. Tex. Oct. 10, 2014)).............................................12, 14, 15

*Jim S. Adler, P.C. v. McNeil Consultants, LLC*,
 2023 WL 2699511 (N.D. Tex. Feb. 15, 2023).......................................................10

*LendingTree, LLCv. Zillow, Inc*,
 2014 WL 1309305 (W.D.N.C. Mar. 31, 2014)......................................................11

*Mullin v. Bayline, Inc.*,
 2021 WL 5811716 (D. Mass. 2021) ......................................................................12

*In re NTL, Inc. Secs. Litig.*,
 244 F.R.D. 179 (S.D.N.Y. 2007) ..........................................................................13, 14

*Pers. Audio, LLC v. Apple, Inc.*,
 2011 WL 6148587 (E.D. Tex. June 16, 2011).......................................................10

*Quantlab Technologies Ltd. (BGI) v. Godlevsky*,
   2014 WL 651944 (W.D. Tex. Feb. 19, 2014)........................................................................11

*Realtime Data, LLC v. Metropcs Texas, LLC*,
   2012 WL 12904706 (E.D. Tex. Oct. 23, 2012) ...................................................................11

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharma. Inc., USA*,
   748 F.3d 1354 (Fed. Cir. 2014)..........................................................................................11

*Stephenson v. Caterpillar Inc.*,
   No. 216CV71JRGRSP, 2018 WL 11351531 (E.D. Tex. Oct. 30, 2018)..............................12

*Wallace v. Tesoro Corp.*,
   2016 WL 7971286 (W.D. Tex. Sept. 26, 2016)..............................................................12, 13

*Williams v. Basf Catalysts LLC*,
   2016 WL 1367375 (D.N.J. Apr. 5, 2016) .............................................................................11

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) .........................................................................................11

**Statutes**

35 U.S.C. § 287.................................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 34(a)(1)(A) ...........................................................................................................12

Fed. R. Civ. P. 37(e)(1)......................................................................................................1, 10, 14

**PUBLIC VERSION**

## EXHIBIT INDEX & NOTES

| Exhibit | Description | Date |
|---------|-------------|------|
| A | ECF No. 134, Declaration of Dr. Gregory Raleigh[1] | March 14, 2024 |
| B | Headwater's Response to Interrogatory No. 13 | July 5, 2023 |
| C | Deposition of David Johnson | February 21, 2024 |
| D | Deposition of James Harris, Esq. | November 27, 2023 |
| E | Deposition of James Lavine | January 31, 2024 |
| F | Deposition of Dr. Gregory Raleigh | November 15, 2023 |
| G | Deposition of Dan During | March 6, 2024 |
| H | Deposition of Dr. Gregory Raleigh | March 8, 2024 |
| I | Email between ███████████████████ | July 2018 |
| J | Email between ███████████████████ | July-August 2018 |
| K | ████████████████████████████████ | January 9, 2018 |
| L | ████████████████████████████████ | January 22, 2018[2] |
| M | Headwater's RFA Responses | March 11, 2024 |
| N | Deposition of Jeffrey Green | February 24, 2024 |
| O | Letter from Samsung to Headwater re Headwater's Responses to ROGs 14-17. | August 18, 2023 |
| P | Email Chain between Headwater and Samsung re ItsOn and discovery | August-September 2023 |
| Q | Letter from Samsung to Headwater re Headwater's Infringement Contentions | March 20, 2023 |
| R | Email from Samsung counsel to Headwater counsel | July 11, 2023 |
| S | Partial email chain between Samsung counsel and Headwater counsel re RAK accepting service of ItsOn subpoena | June 20-July 5, 2023 |
| T | ItsOn's responses and objections to Samsung's subpoena | August 16, 2023 |
| U | Email chain between Samsung counsel and Headwater counsel re ItsOn subpoenas | August 16-September 19, 2023 |
| V | Internal Sprint Email re ItsOn Issues | October 16, 2016 |
| W | Samsung's *Artic Cat* letter | June 20, 2023 |
| X | Headwater Responses to ROGs 14-16 | August 11, 2023 |
| Y | Deposition of James Fitzgerald | January 23, 2024 |

---

[1] While Samsung disputes many of the declaration's claims (as contrary to documents produced and prior testimony from Dr. Raleigh and James Harris), HW cannot have it both ways. For this motion, Samsung holds Dr. Raleigh (*i.e.,* HW) to his word. But Samsung does not waive the right to otherwise challenge Dr. Raleigh's declaration.

[2] Document date contains a typo. The date should be January 22, 2018, not 2017. Ex. AA at 165:12-166:4.

**PUBLIC VERSION**

| Exhibit | Description | Date |
|---------|-------------|------|
| Z | Chart showing ESI HW produced in this case with @ItsOn emails (except Dr. Raleigh's ItsOn email address) and no @Headwater emails | 2009-2016 |
| AA | Deposition of Dr. Gregory Raleigh | March 7, 2024 |
| BB | Headwater Responses to Samsung's First Set of ROGs | March 15, 2024 |

\*        Emphasis added unless otherwise noted.

\*\*       Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\*      Quotations including "Headwater" are replaced with "HW" unless otherwise noted.

\*\*\*\*     In this brief, "Headwater" or "HW" refers to Plaintiff and its purported predecessors.

\*\*\*\*\*    "Russ, August, & Kabat" is abbreviated herein as "RAK."

**PUBLIC VERSION**

The cornerstone of HW's 2022 complaint is a copying narrative surrounding software it refers to as the "ItsOn Solution."  Despite HW admitting it anticipated this litigation for more than a decade, asserting that HW and ItsOn were commercially-intertwined entities, and selectively retaining some ItsOn ESI, HW did nothing to preserve the evidence supporting its copying claims: the ItsOn Solution's source code ("ItsOn Solution code").  As made plain herein, ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.  Either way, the code is gone, prejudicing Samsung's ability to defend itself against HW's copying narrative.

To protect the judicial process's integrity and cure this prejudice, Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (together, "Samsung") respectfully seek an order imposing sanctions against Plaintiff Headwater Research LLC ("Headwater" or "HW") under Fed. R. Civ. P. 37(e)(1) for failure to preserve evidence.  Specifically, Samsung asks the Court to preclude HW from: (1) offering arguments or evidence that Samsung allegedly copied (*i.e.*, duplicated, stole, reverse engineered) the ItsOn Solution; (2) asserting willful infringement based on the ItsOn Solution; and (3) taking positions contrary to those in its Complaint as to the ItsOn Solution embodying the asserted patents, as memorialized in Samsung's *Arctic Cat* letter.

## I.   BACKGROUND

### A.   ItsOn and HW (2008-2018)

According to Dr. Raleigh, he founded both ItsOn and HW in 2008 to create technology and obtain patents covering that technology.  HW owned the patents and ItsOn developed a product that, according to HW, practiced the patents: the ItsOn Solution.  ItsOn could not use/sell/offer the ItsOn Solution without a license to HW's patents; and HW ██████████████████████████

██████.  As to the relationship between ItsOn and HW, Dr. Raleigh declares as follows (Ex. A):

1



- *Id.* ¶¶ 4-5.; *see also* Ex. B at 8-9.

- Ex. A, ¶ 6.

- *Id.* ¶ 12.

- *Id.* ¶ 7.

- *Id.*

- *Id.* ¶ 8.

- *Id.*

- *Id.*

- *Id.* ¶ 11.

**B.    ItsOn, Sprint, and Samsung (2011-2015/2016)**

2

**PUBLIC VERSION**

In early ████████████████████████████████████████████

██████████████████████████████████████████████████████.

To that end, Sprint ████████████████████████████████████

████████████████████████████████. In or around █████████████

███████████████████████████████████████████████████

███████████████████████████████. Dkt. 42, ¶36; Ex. V.  At Sprint's behest,

███████████████████████████████████████████████████

████████████████████████████. Samsung later █████████████████

████████████████████████████████████████████████.

    **C.**   ██████████████████████████████████

As █████████████████████████████████████,[3] and ItsOn

had █████████████████████████████████████████████████

█████████████████████████. Ex. D at 83-86; Ex. F at 232-233; Ex. B at 8-9.  This meant

███████████████████████████████████████████████████

███████████████████████████████████████. *E.g.,* Exs. I, J.

The plan went into effect ████████████████████████████████

████████████████████████ Ex. K); then, two weeks later █████████████

████████████ Ex. L. ████████████████████████████████████

███████████████████████████████████████████████████

██ Ex. A, ¶5. ██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.*

---

[3] Ex. C (Johnson Dep.) at 96-97; Ex. D (Harris Dep.) at 83; Ex. E (Lavine Dep.) at 31.

HW and ItsOn ████████████████████████. *Id.,* ¶ 11 ("███████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.").

**D.**   ███████████████████████████████████████████████

HW began ██████████████████████████████████████. Ex.

M at RFA 14 ("████████████████████████████████████████████

██████████████████████████); Ex. F at 196:3-197:25.  On advice of counsel, HW ████

████████████████████████████████████████████████████████████

██████████████████████████. *See* Dkts. 116, 145 (pending); Ex. F at 186:13-198:9.

During this time ██████, HW and ItsOn ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████. Ex. D at 128-132.

But HW's (and Ms. Jacobsen's) ██████████████████████████████████

████████████████████████████████████.[4]  HW alone ██████████████

████████████████████████████████████████████. Dkt. 100-11.

Despite this, HW did not retain the ItsOn Solution code or issue a document retention/litigation hold to ItsOn.  It did not do so in ████████████████████████████████████

████████; it did not do so in 2018 when ItsOn went into receivership; and it did not do so post-

2018 as to ██████████████████████████

██   ████████████████████████████████████████████████████████████
██████████████████████

---

[4] Dkt. 100-11 at, *e.g.*, Control Nos. 341452; 342694; 360234; 363828; 406469; 407236; 407263; 407302; 408841; 408935; 662204; 664453; 686162; 702895; 743888.



Further, while in business, ItsOn ███████████████████████████████████ ███████████████████████████████ including those exchanged as part of engineering efforts. Ex. E at 210:5-211:11. Rather, ItsOn used ███████████████████████████████████ ████████████████████████████████. *Id.*; Ex. N at 99-100.  During ItsOn's wind-up, ItsOn employees ██████████████████████████. Ex. E at 210:5-211:19.

### E.    This Case: Code-Based Claims, ItsOn Story, Confusion (2022-now)

HW sued Samsung on October 26, 2022 (amended March 13, 2023, D42).  Not a straightforward patent infringement case (*i.e.,* Samsung allegedly infringes certain HW patents), the complaint focuses on ItsOn (D42, ¶¶ 14, 17-23, 25-33, 35-39, 70, 84, 98, 112, 140, 154, 168, 183), creating a narrative as to Samsung's prior dealings with ItsOn via Sprint, and generally alleging that Samsung copied the "ItsOn solution**s**" (¶¶ 23, 26, 70, 84, 98, 112, 140, 154, 168, 183)—which HW also calls, *inter alia,* the: (i) "unique and unconventional technological solution**s**" (¶ 18); "(ii) "ItsOn software" (¶¶ 21, 70, 84, 98, 112, 140, 154, 168, 183); (iii) "ItsOn application" (¶¶ 27, 28); (iv) "ItsOn proprietary technology" (¶ 30); and (v) "ItsOn implementation project" (¶ 35).

For seven of the eight (remaining) asserted patents, HW: (i) bases its willfulness claims on the "installation of the ItsOn software and solutions into [Samsung's] operating systems, source code, and kernels in 2013-2016."  D42, ¶¶ 70, 84, 98, 112, 140, 154, 168; and (ii) claims Samsung knew of/was willfully blind to its alleged infringement because "the ItsOn software installed on [Samsung] phones and tablets in 2013-2016 included a patent marking notice." *Id.*

**PUBLIC VERSION**

Samsung sought discovery on the bases for these claims, including: (1) details/clarification as to the ItsOn Solution Samsung allegedly copied; (2) support for HW's claims that the ItsOn Solution practiced (one or more of) the asserted patents; and (3) any ItsOn Solution code.  None was forthcoming, and HW's positions were all over the place.

### 1.   What is the "ItsOn Solution," exactly? And who has that information?

***First,*** HW said Samsung had this information.  When, via interrogatories, Samsung sought details as to what it allegedly copied (*i.e.*, to what specific code/product/version thereof was HW referring as the "ItsOn Solution"), HW said this information was "***uniquely within Samsung's possession, custody, and control***" because "Samsung is the entity which installed ItsOn software on Samsung's devices that contained ItsOn software… ."  Ex. O at 1-2.  When Samsung said HW should have this information "given the allegations in its Complaint," which occurred nearly ten years ago (*id.*), HW doubled down, saying Samsung "is the party to this case that has unique access to th[is] information."  Ex. P.  Finally, during a September 1, 2023 meet and confer, HW said it was not withholding any relevant, responsive ItsOn ESI, including the ItsOn Solution code "to the extent it exists."  *Id.*  HW ***never*** supplemented its responses to these interrogatories.

***Then***, HW admitted Samsung never had access to ItsOn Solution code.  Despite saying information about the ItsOn Solution (*i.e.,* its bounds/versions/details) was "uniquely" in Samsung's possession, HW later admitted that at no point did Samsung have access to the ItsOn Solution code.  Ex. M at RFA 11 ███████████████████████████████████████ ██████████████ )); Ex F at 173:10-20 (████████████████████████████████████ ).

### 2.   Did the ItsOn Solution Practice Any Asserted Patent Claims?

***First***, HW claimed the ItsOn Solution practiced seven asserted patents, all subject to proper marking.  D42, ¶¶ 70, 84, 98, 112, 140, 154, 168.  Given these willfulness, copying, and marking claims—all of which depend on the ItsOn Solution practicing an asserted patent claim—Samsung

**PUBLIC VERSION**

sent HW a letter on June 20, 2023: (i) identifying unmarked patented articles subject to 35 U.S.C. § 287 (*i.e.*, unmarked Samsung devices with the ItsOn Solution), (ii) notifying HW of its reciprocal burden, per *Arctic Cat Inc. v. Bombardier Rec. Prods*. (876 F.3d 1350, 1368 (Fed. Cir. 2017)), to prove the identified products (*i.e.*, the ItsOn Solution on Samsung devices) did not practice the asserted patents; and (iii) asking for HW's prompt reply.  Ex. W.  HW never responded.

**_Then_**, in discovery, HW said the ItsOn Solution practiced four asserted patents, but would not provide its bases.  On August 11, 2023, in response to ROG 14 seeking "identif[ication of] each of the Asserted Patent(s)' claims that HW believes were practiced by" the ItsOn Solution, HW said:



Ex. X.  HW refused to disclose the ███████ and ██████ on which it based this ██████  Ex. P.  HW never supplemented its response to this interrogatory.

Likewise, when asked to explain what asserted patents allegedly practiced the ItsOn Solution (ROG 16), HW ████████████████████████████████ ████████████████████████████████████ ███████████.  Ex. P.  HW never substantively responded to this interrogatory.

**_Then_**, in deposition, no one could provide this information.  Neither the named inventors (all of whom were both ItsOn and HW employees) nor ItsOn engineers could answer questions about ███████████████████████████.  For example, James Fitzgerald, former ItsOn software engineer who managed the Android development team, was ████████████████████████████████████ ████████████████████.  Ex. Y at 19:25-20:5, 17:21-18:3. Likewise, James Lavine, a named inventor, ████████████████████████ ██████████████████████████.  Ex. E at 169:16-23.

### 3. ItsOn's Status; Location of its ESI

***First***, HW reserved the right to seek discovery from ItsOn.  HW failed to produce conception/reduction to practice/design documents per P.R. 3-2(b), so Samsung said it understood that "HW has no such documents and will not rely in this case on any documents evidencing earlier conception."  Ex. Q at 8.  But on the April 5, 2023 meet and confer, HW expressly reserved its right to collect, find, and produce such documents ***from ItsOn***.  B. Thompson Decl., ¶ 30.

***So***, Samsung tried (again) to get clarity on what ItsOn ESI existed.  On July 11, 2023, Samsung emailed HW, stating: "HW has still yet to confirm whether there exists a repository of ItsOn documentation including . . . communications [], meeting agendas/notes, notebooks, memoranda, technical specifications, manuals, source code."  Ex. R.  HW never responded.

***Then***, Samsung subpoenaed ItsOn, RAK accepted service, and responded.  RAK, counsel for HW, said it could accept service on ItsOn's behalf.  Ex. S.  Samsung subpoenaed ItsOn on August 1, 2023.  On August 16, "ItsOn" responded, represented by RAK; produced two documents regarding ItsOn's assignment for the benefit creditors; and, as to all topics, said "ItsOn no longer exists." Ex. T.  In these responses, RAK said the same were "based on diligent investigation by ItsOn," that "ItsOn has not completed its investigation of all facts related to the subject matter of this action or discovery," and that "ItsOn has produced all documents responsive to" certain requests "in its possession, custody, or control located after a reasonable search."  *Id.*

***Then***, RAK backtracked.  When Samsung followed up, RAK said "[a]s we have informed you several times, ItsOn, Inc. no longer exists, and thus we are unable to provide a witness for ItsOn, Inc. in its corporate capacity."  Ex. U.  Samsung sought clarification, to which RAK said: (i) "[W]e're surprised at Samsung's continued insistence on scheduling a deposition of ItsOn, Inc;" "ItsOn, Inc. does not exist — your team is free to confirm that fact by consulting publicly available sources;" and, importantly, (ii) "RAK agreed to accept service of the subpoena because it is, and

**PUBLIC VERSION**

continues to be, our understanding that ***the only documents of ItsOn, Inc. which remain from its wrap-up are those [two] which our firm produced on August 16, 2023***." *Id.* Thus, according to RAK, no other ItsOn ESI exists outside of what HW produced/logged in this case; the rest is gone.

### 4. Initial Disclosures Never Identify an Existing ABC with Discovery.

HW served three sets of initial disclosures in this case (in April, June, and July 2023). None disclose an ItsOn LLC, █████████████████, or any other entity potentially possessing ItsOn documents or ESI, including ItsOn Solution code.

### 5. What ItsOn ESI Did HW (Selectively) Retain?

In response to RFA 15, HW █████████████████████████████



█████████  Ex. M.  So HW maintained *some* ItsOn ESI ██████████████████  What?

RAK said the only ItsOn documents that remain from its wrap-up are those which RAK produced on August 16, 2023.  Ex. U.  And Dr. Raleigh declared that ██████████████████

███████████████████████████.  Ex. A, ¶ 5.

But this is not so; HW chose to retain much more ItsOn ESI.  Specifically, HW produced █████████████████████████ that lack both (1) Dr. Raleigh's ItsOn email address, and (ii) an @Headwater email address (*i.e.,* they are ItsOn ESI, produced with HW bates labels).  Ex. Z.  HW retained this, but not other, ItsOn ESI (*e.g.,* the ItsOn Solution code).

### 6. Discovery Closes; No ItsOn Code

Discovery closed March 15, 2024.  HW never introduced, nor suggested any attempt to acquire, the allegedly copied technology (ItsOn Solutions code).

## II.   LEGAL STANDARD

"If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced

through additional discovery, the court… upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1); *Jim S. Adler, P.C. v. McNeil Consultants, LLC,* 2023 WL 2699511, at *8-15 (N.D. Tex. Feb. 15, 2023) (synthesizing post-2015 5th Circuit law). The curative options include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies." Rule 37(e), committee note. The Court does not need to find intent or bad faith to impose these measures. Rule 37(e)(1); *Adler*, 2023 WL 2699511, at *9 ("Rule 37(e)(1) does not contain an 'intent' requirement; a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith.") (quotations/citations omitted).

"The duty to preserve evidence is a duty owed to the court." *Ashton v. Knight Transp*., *Inc*., 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011). To that end, "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Pers. Audio, LLC v. Apple, Inc*., 2011 WL 6148587, at *2 (E.D. Tex. June 16, 2011) (quotations omitted).

## III.   ARGUMENT

"[F]our predicate elements must be established before a court grants sanctions under Rule 37(e): a party was (1) obligated to preserve ESI (2) but did not do so (3) because they failed to take reasonable steps to preserve it, and (4) the ESI cannot be restored or replaced." *Balancecxi, Inc. v. Int'l Consulting*, No. 2020 WL 6886258, at *12 (W.D. Tex. Nov. 24, 2020), *adopted* 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021). Here, each is satisfied, significantly prejudicing Samsung.

### A.   HW Had Duty to Preserve ItsOn Solution Code ▮▮▮▮▮▮

"Identifying the boundaries of the duty to preserve involves two related inquiries: when

does the duty to preserve attach, and what evidence must be preserved?" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

### 1. When: Anticipation of Litigation

"A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 684 (S.D. Tex. 2013); *Realtime Data, LLC v. Metropcs Texas, LLC,* 2012 WL 12904706, at *3 (E.D. Tex. Oct. 23, 2012); *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

Here, HW had a continuing duty to preserve since ▮▮▮▮▮▮▮, when HW ▮▮▮▮▮▮▮▮▮▮▮▮



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Sect. II.D., *supra*.  But HW has maintained, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Dkts. 100, 114.  As a party's duty to preserve arises "no later than its assertion of the attorney work product," HW's (and Ms. Jacobsen's) logs confirm that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *LendingTree, LLC v. Zillow, Inc*., 2014 WL 1309305, at *10 (W.D.N.C. Mar. 31, 2014); *see also Allstate*, 964 F. Supp. 2d at 684; *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharma. Inc., USA*, 748 F.3d 1354, 1362-63, (Fed. Cir. 2014).  HW need not have anticipated litigation against Samsung, in particular.  *See Williams v. Basf Catalysts LLC*, 2016 WL 1367375, at *7 (D.N.J. Apr. 5, 2016).

### 2. What: Relevant Evidence in Possession, Custody, Control.

Once litigation is reasonably anticipated, potential parties must preserve evidence that is (i) relevant to a claim or defense and (ii) within its possession, custody, or control.

#### a. Relevant Information

Relevant information includes that which "the disclosing party may use to support its claims or defenses." *Quantlab Technologies Ltd. (BGI) v. Godlevsky*, 2014 WL 651944, at *8 (W.D. Tex. Feb. 19, 2014).  *See also Ashton*, 772 F. Supp. 2d at 801 ("[L]ost or destroyed evidence

11

**PUBLIC VERSION**

is 'relevant' if a 'reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'"")  The duty to preserve extends to the party's or potential party's employees "likely to have relevant information—the 'key players.'" *Id.*

There is no doubt that the ItsOn Solution code was materially relevant to HW's future litigation against Samsung, as the basis of HW's copying and willfulness allegations.  Indeed, "[e]vidence of copying" is "legally irrelevant ***unless*** the copied product is shown to be an embodiment of the asserted claims."  *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2:15-CV-1047-RSP, 2016 WL 11750180, at *4 (E.D. Tex. Nov. 30, 2016) (quotations/citations omitted); *American Technical Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, *10 (E.D. N.Y. 2019).  In other words, unless the ItsOn Solution embodied an asserted claim, HW's copying claims are null, making the ItsOn Solution code—the only evidence that can conclusively (dis)prove any such embodiment—not only relevant, but crucial.

Even though HW did not file its lawsuit until 2022, "[HW] should have known that the [ItsOn Solution code] would be highly relevant to impending litigation given that [it] retained counsel at that time." *Stephenson v. Caterpillar Inc.*, No. 216CV71JRGRSP, 2018 WL 11351531, at *5 (E.D. Tex. Oct. 30, 2018).

### b.  Possession, Custody, Control

A party's obligation to produce discovery within its possession/custody/control (Rule 34(a)(1)(A); DO ¶3(b)) ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

HW cannot credibly claim that it had no duty to preserve the ItsOn Solution code because this evidence was "ItsOn's," and thus outside of HW's possession/custody/control.  HW's duty to preserve began *well before* ItsOn "wound up" in 2018, when HW either (i) possessed the relevant evidence or, if not, (ii) had the "practical ability" to obtain it from ItsOn.  *See* Sect. II.A., *supra*.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██. ████████████████████████████████████████████

████████████████████████████████████████████████████

### B.    HW Did Not Do So; Failed to take Reasonable Preservation Steps

HW did not fulfill its preservation duties.  If a party "turned relevant 'held' documents and ESI over to [another entity] without itself preserving (or insuring [the other entity] would preserve) such information for possible production in [a] litigation, it failed in its obligation to preserve

relevant material, and thus spoliated evidence (assuming the other requirements for spoliation are met)." *In re NTL*, 244 F.R.D. at 197. *See also Harman*, 2014 WL 12603247, at *2-3. HW did not: (i) ███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████ In short: HW

did ***nothing*** to ensure that ItsOn evidence—including the ItsOn Solution code—was preserved.

### C.    The ItsOn Solution Code cannot be Restored or Replaced

The code is gone and cannot be replaced. RAK reserved HW's right to seek evidence from ItsOn to support HW's conception/reduction to practice, but ultimately did not do so. While (i) RAK asserted that the only ItsOn documents remaining from its wrap-up were the two documents RAK produced on August 16, 2023; and (ii) Dr. Raleigh declared that ███████████████████

██████████████; (iii) HW actually retained much more ItsOn ESI. HW's initial disclosures never included any entity or person who would possess the ItsOn Solution code (over which HW would retain all IP rights). In short, HW selectivity retained some ItsOn ESI and let the rest go.

### D.    HW's Failure to Preserve Significantly Prejudices Samsung

Prejudice only requires showing that a party's "ability to present its case or to defend [has been] compromised." *Ashton*, 772 F. Supp. 2d at 801. To that end, Rule 37(e) "does not place a burden of proving or disproving prejudice on one party." Rule 37(e)(1), committee note.

HW's failure to preserve the ItsOn Solution code has compromised Samsung's ability to defend itself against HW's copying allegations. The ItsOn Solution code's significance to this narrative is plain. HW argues that the ItsOn Solution was so inventive and successful that Samsung duplicated it, and HW relies on this narrative for its damages and validity arguments (*e.g.*, willful-ness, "copying" as a secondary consideration). *E.g.,* Ex. BB. Samsung has been denied the ability to rebut this narrative by looking at the actual ItsOn Solution code, which is now gone.

### E.     HW should be Precluded from Offering Code-Dependent Arguments

"[HW's] failure to institute and enforce a litigation hold, or take *any* steps to ensure relevant [ItsOn] documents were preserved, not only warrants but demands sanctions." *Harman*, 2014 WL 12603247, at *2.  To cure the resulting prejudice, the Court should preclude HW from:

1.  Offering arguments or evidence of copying (*i.e.,* duplicating, stealing, reverse engineering) the ItsOn Solution;

2.  Asserting willful infringement allegations that are based on the ItsOn Solution; and

3.  Taking positions contrary to those articulated in its Complaint regarding whether the ItsOn Solution embodied the asserted patents.  In other words, HW cannot now take a position that the ItsOn Solution did/did not practice the asserted patents in rebuttal to Samsung's June 2023 *Artic Cat* letter.

These measures will cure the unfair imbalance and significant prejudice to Samsung were HW allowed to offer evidence on matters for which it failed to preserve the underlying ESI.  *Edwards v. Junior State of Am. Found.*, No. 4:19CV140SDJ, 2021 WL 1600282, at *10 (E.D. Tex. Apr. 23, 2021).  Allowing these arguments at trial (all based on the ItsOn Solution allegedly practicing asserted patent claims) would significantly prejudice Samsung, who cannot effectively cross-examine or rebut them without the lost code.  Any "limited probative value" that evidence of copying *not* tied to asserted claims may provide "is outweighed by the danger that the jury will unfairly view [Samsung] as a wholesale copyist."  *Arthrex*, 2016 WL 11750180, at *4; *Am Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, *10 (E.D. N.Y. 2019) ("[T]here is significant prejudice associated with copying evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products infringe the patents-in-suit.") (quotations/citations omitted).  And copying arguments untethered to asserted claims "cast[] doubt that the alleged copying of the [ItsOn Solution] is probative of willful infringement."  *Am. Tech.,* 2019 WL 2330855, *10 (plaintiff "precluded from offering proof of copying related to [the patentee's products] to prove willful infringement" where the patentee's products did not practice the asserted patents).

Dated: April 5, 2024                    Respectfully submitted,

                                        By:   /s/ Thad C. Kodish
                                              Michael J. McKeon
                                              DC Bar No. 459780
                                              mckeon@fr.com
                                              Jared Hartzman (*pro hac vice*)
                                              DC Bar No. 1034255
                                              hartzman@fr.com
                                              Joshua Carrigan (*pro hac vice*)
                                              VA Bar No. 96911
                                              carrigan@fr.com
                                              FISH & RICHARDSON P.C.
                                              1000 Maine Avenue, SW, Ste 1000
                                              Washington, D.C. 20024
                                              Telephone: (202) 783-5070
                                              Facsimile: (202) 783-2331

                                              Thad C. Kodish
                                              GA Bar No. 427603
                                              tkodish@fr.com
                                              Benjamin K. Thompson
                                              GA Bar No. 633211
                                              bthompson@fr.com
                                              Nicholas A. Gallo (*pro hac vice*)
                                              GA Bar No. 546590
                                              gallo@fr.com
                                              Steffen Lake (*pro hac vice*)
                                              GA Bar No. 512272
                                              lake@fr.com
                                              FISH & RICHARDSON P.C.
                                              1180 Peachtree St. NE, Fl. 21
                                              Atlanta, GA 30309
                                              Telephone: (404) 892-5005
                                              Facsimile: (404) 892-5002

                                              Leonard E. Davis
                                              TX Bar No. 05521600
                                              ldavid@fr.com
                                              Andria Rae Crisler
                                              TX Bar No. 24093792
                                              crisler@fr.com
                                              FISH & RICHARDSON P.C.
                                              1717 Main Street, Suite 5000
                                              Dallas, TX 75201
                                              Telephone: (214)747-5070

16

Facsimile: (214) 747-2091

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendants*
*Samsung Electronics Co., LTD and*
*Samsung Electronics America, Inc.*

17

**PUBLIC VERSION**

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff and counsel for Defendants have met and conferred in compliance with Local Rule CV-7(h).  Plaintiff opposes this motion.

*/s/ Thad C. Kodish*
Thad C. Kodish

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on April 5, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Thad C. Kodish*
Thad C. Kodish

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Thad C. Kodish*
Thad C. Kodish

18