**PUBLIC VERSION**

███████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| Plaintiff, | Case No. 2:22-cv-00422-JRG-RSP |
| v. | **JURY DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | ████████████████ |
| Defendants. | |

**PLAINTIFF HEADWATER RESEARCH LLC'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37(E)(1)
(DKT. 172)**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ......................................................................................... 3

III.   RELEVANT FACTUAL BACKGROUND ....................................................... 4

     A.    ██████████████████████████████████████ .......................................................... 4

     B.    Headwater Has Not Destroyed or "Lost" Any Evidence, Including
          the "ItsOn Code" Sought by Samsung .................................................... 6

          1.    The ItsOn Source Code Was Purchased by Sherwood
               Partners and is in the Custody and Control by ItsOn ABC ....................... 6

          2.    Headwater Told Samsung Where to Find ItsOn's Source
               Code .......................................................................................... 8

          3.    Headwater Did Not "Selectively" Keep ItsOn ESI .................................... 9

IV.   ARGUMENT .................................................................................................... 10

     A.    Samsung Fails Show That Headwater Ever Possessed, Controlled,
          or Had a Duty to Obtain and Preserve The Highly Confidential
          Source Code of Its Licensee ................................................................. 11

     B.    Samsung Cannot Meet its Burden to Show The "ItsOn Code"
          Cannot Be Restored or Replaced Through Additional Discovery ....................... 14

     C.    Samsung Fails To Show Any Prejudice Due to Headwater's
          Conduct .............................................................................................. 15

V.    CONCLUSION ................................................................................................. 16

## **TABLE OF AUTHORITIES**

**Cases**

*Coastal Bridge Co., L.L.C. v. Heatec, Inc.*,
  833 F. App'x 565 (5th Cir. 2020) ...................................................................... 11, 13

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*,
  102 F.3d 1224 (Fed. Cir. 1996) ................................................................................ 3

*Commerce and Indus. Ins. Co. v. Grinnell Corp.*,
  2001 WL 96337 (E.D. La. 2001) ............................................................................. 4

*Diamond Consortium, Inc. v. Manookian,*
  No. 4:16CV94-ALM, 2017 WL 3301527 (E.D. Tex. Aug. 3, 2017) ......................... 4

*Gerling Int'l Ins. Co. v. Commissioner*,
  839 F.2d 131 (3rd Cir.1988) .................................................................................... 3

*In re NTL, Inc. Sec. Litig.*,
  244 F.R.D. 179 (S.D.N.Y. 2007) ........................................................................... 12

*Mullin v. Bayline, Inc*.,
  2021 WL 5811716 (D. Mass. 2021) ................................................................. 12, 13

*Peals v. QuikTrip Corp.*,
  No. 4:20-CV-22-KPJ, 2021 WL 2043185 (E.D. Tex. May 21, 2021) .................... 14

*Searock v. Stripling*,
  736 F.2d 650 (11th Cir.1984) .................................................................................. 3

*United My Funds, LLC v. Perera*,
  No. 4:19-CV-00373, 2020 WL 1225042 (E.D. Tex. Mar. 12, 2020) .................. 4, 13

*United States ex rel. Harman v. Trinity Indus., Inc.,*
  No. 2:12-CV-00089-JRG, 2014 WL 12603247 (E.D. Tex. July 11, 2014) ....... 12, 13

*Wallace v. Tesoro Corp*.,
  No. SA-11-CA-00099-FB, 2016 WL 7971286 (W.D. Tex. Sept. 26, 2016) ...... 12, 13

**Rules**

Fed. R. Civ. P 26(a) ....................................................................................................... 9

Fed. R. Civ. P. 37(e) ......................................................................................... 1, 3, 14, 15

## I.     INTRODUCTION

The fundamental premise underlying Samsung's Motion for Sanctions Under Fed. R. Civ.

P. 37(e)(1) (Dkt. 172, the "Motion") is that ItsOn's "code is gone and cannot be replaced." Mot.

at 14. Samsung argues that, because Headwater allegedly did not preserve ItsOn's code and did

not issue a "litigation hold" that preserved ItsOn's code starting in ███ or even earlier, it should

be granted outsized relief: that Headwater—an entity which licensed its patents to ItsOn but never

had a right to control or possess ItsOn's code—should be precluded from even arguing that

Samsung "duplicated" or reverse-engineered ItsOn's software.

The Motion's fundamental premise is simply false. The "ItsOn code" is not "gone." The

"ItsOn code" and "ItsOn ESI" (such as ItsOn emails, compiled software, and uncompiled source

code) is in the possession of the Sherwood Partners, Inc. ("Sherwood") and ItsOn ABC, LLC

("ItsOn ABC")—the vehicle used by Sherwood to purchase ItsOn's assets in 2018. Samsung

knows this is the case. Headwater told Samsung this was the case many times during this litigation,

including in telephonic meet-and-confers and in depositions in 2023 and 2024. On December 15,

2023, Headwater sent a letter to Samsung re-stating these facts:



Declaration of James S. Tsuei, Ex. A, at 3 (12/15/23 Headwater Letter to Samsung). If Samsung

wanted to review and use ItsOn's source code and other ESI to support its claims and defenses in

this case, it simply needed to serve a subpoena on ItsOn ABC, whose contact information and

agent for service is available through the California Secretary of State's public database at
https://bizfileonline.sos.ca.gov/search/business. Headwater *told Samsung this was the case* and in
fact fully expected Samsung to subpoena ItsOn ABC.

Samsung, however, either deliberately chose to not obtain "ItsOn code" or "ItsOn ESI"
from ItsOn ABC, or forgot to do so before fact discovery closed on March 15, 2024. Whatever the
reason for Samsung's failure, it cannot credibly claim that the "ItsOn code" and "ItsOn ESI" is
"gone and cannot be replaced" because (1) the "ItsOn code" is ***not gone***, (2) Samsung knew ItsOn
ABC has the "ItsOn code" and "ItsOn ESI," and (3) Samsung did nothing to obtain it. But because
the "ItsOn code" and "ItsOn ESI" does, in fact, exist and was accessible in this case to any party
that actually tried to obtain it, Samsung's Motion should be denied in full.

Even counterfactually assuming that the "ItsOn code" and "ItsOn ESI" was "gone" and
Samsung were excused from its failure to try to obtain discovery from ItsOn ABC, the Motion
should be denied because it relies on an unsupported legal theory that imposes a duty on Headwater
to "preserve" source code (belonging to a third party) which it never possessed and never had a
legal right to obtain. Indeed, Samsung includes in its Motion numerous mischaracterizations about
the record in this case to support its novel legal theory to falsely suggest, among other things, that
Headwater "selectively" retained only certain "ItsOn ESI", such that Headwater is concealing or
has concealed relevant information. In reality, Headwater produced what was in its possession,
custody, and control, and pointed Samsung to the very discovery it claims now is "gone."

Finally, Samsung's Motion relies on a fundamentally incorrect assumption: that the "ItsOn
code" is the exclusive evidence through which the parties' arguments about willfulness, patent
marking, and certain related secondary considerations of non-obviousness may be resolved. But
the "ItsOn code" that is probative of the willfulness, patent marking, and secondary considerations

issues is the software code which ItsOn shared with Samsung: that is, the **compiled** code that ItsOn provided to Samsung, i.g., ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████

Samsung ignores these issues and fails to reconcile its arguments with the evidence in this the case. Instead, Samsung waited until after the close of discovery to file a "gotcha" Motion which in effect seeks summary judgment on several disputed issues, based on a fundamentally untrue assertion. Samsung's Motion should be denied.

## II.   LEGAL STANDARD

"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court … upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "[T]he discovery rules of the United States courts require that a party have ownership, custody, or control of a demanded document before a sanction may properly be imposed for failure to produce the document. 'In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce.'" *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229–30 (Fed. Cir. 1996) (quoting *Gerling Int'l Ins. Co. v. Commissioner*, 839 F.2d 131, 140 (3rd Cir.1988)). "'Control' with respect to the production of documents is defined 'not only as possession, but as the legal right to obtain the documents requested upon demand.'" *Id.* (citation omitted). Importantly, "[t]he burden … is on the party seeking discovery to make a showing that the other party has control over the documents sought." *United My Funds, LLC v.*

*Perera*, Case No. 4:19-CV-00373, 2020 WL 1225042, at *8 (E.D. Tex. Mar. 12, 2020); *see also Diamond Consortium, Inc. v. Manookian*, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017) ("Typically, what must be shown to establish control over documents in the possession of a non-party is that there is 'a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession.'" (citation omitted).

## III.   RELEVANT FACTUAL BACKGROUND

   **A.**   

Samsung's Motion states:

" Mot., at 3. Samsung leaves out an important fact: at the direction of Samsung's

. A Samsung engineer, Dan Durig, had personal knowledge of these facts and testified about these events:

Declaration of James S. Tsuei ("Tsuei Decl."), Ex. I, at 131:17-132:2 (objection omitted).

Contemporaneous                                    also show Samsung's

4

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Tsuei Decl., Ex. D, at 1 (10/28/15 email). Those ██████ also show "█████████
████████████████████████████████████████████████████████████
██████████. Mr. Durig confirmed ████████████████████████████.
*See* Tsuei Decl., Ex. I, at 136:8-137:2 ("████████████████████████████
█████████████████████████████████████████████████").

Samsung's Motion mentions none of these facts, thus creating the false impression that there is no software code produced in this case probative of the copying and willful infringement issues. Samsung also fails to mention that ████████████████████████████
████████████████████ (*see* Tsuei Decl. ¶ 12) (which, should Samsung desire to do so, can be decompiled into source code and reviewed using industry-standard techniques and tools). This is why, among other reasons, Headwater told Samsung during discovery that the facts about which versions of ItsOn software Samsung copied were "uniquely within Samsung's possession, custody, and control" (*see* Mot. at 6)—Samsung, not Headwater, ████████████
█████████████████████████; Samsung, not Headwater, ████████████
████████████████████████████ There is simply no credible basis for Samsung to say "the code is gone, prejudicing Samsung's ability to defend itself against HW's copying narrative," when Samsung ████████████████████████████████
█████.

**B.      Headwater Has Not Destroyed or "Lost" Any Evidence, Including the "ItsOn Code" Sought by Samsung**

In § I.D of its Motion, Samsung rehashes arguments it has used in its other motions seeking the production of attorney-client privileged documents and information. For example, Samsung says: "***On advice of counsel***, HW ████████████████████████████████ ████████████████████████████████████████████████████████████" (Mot. at 4 (emphasis added)), apparently to create the false impression that Headwater disclosed privileged legal advice. This assertion is wrong for reasons already briefed by at Dkts. 130 & 156.

In any event, the issue discussed in Samsung's § I.D germane to the Motion is whether and when Headwater anticipated litigation for sufficiently concrete reasons such that there arose a duty for it to begin preserving evidence that would be relevant to issues in future litigation. First, Samsung argues that Headwater contemplated litigation "for more than a decade" (that is, since 2009), because items included on Headwater's privilege log dating back to 2009 have as their basis for withholding: "Attorney client and work product." *See* Mot. at 4 & Dkt. 100-11. Samsung has, however, also argued the opposite: that work product immunity does ***not*** apply to entries predating ████████████ because, it says, that is the time frame in which Headwater ██████████████ ████████████. *See* Dkt. 123, at 5 (§ V). Though Headwater did, in fact, ████████████ ████████████, the point is irrelevant because Headwater has not actually spoliated any evidence, including specifically the "ItsOn [source] code" at the heart of Samsung's Motion.

**1.      The ItsOn Source Code Was Purchased by Sherwood Partners and is in the Custody and Control by ItsOn ABC**

The facts about how ItsOn's source code (among other assets) were transferred to Sherwood (via its ItsOn ABC vehicle) is now well-documented. Multiple different individuals, including Dr. Raleigh, James Harris, former counsel for Headwater, and James Lavine, named inventor and ItsOn's former Vice President of Engineering, have given deposition testimony about

those facts. Mr. Lavine has first-hand knowledge about the transfer: he was the person who made it happen. In 2018, after Sherwood purchased ItsOn's assets, Mr. Lavine personally collected ItsOn's uncompiled source code, emails, and physical computer servers for the purpose of transferring those items to ItsOn ABC. Declaration of James Lavine ("Lavine Decl."), ¶ 7. After Mr. Lavine completed that collection, a Sherwood employee visited ItsOn's former offices, during which Mr. Lavine gave that Sherwood employee all passwords needed to access the transferred data, source code, email accounts, and the physical servers. *Id.* That Sherwood employee also took the servers (which had the drives containing the ItsOn source code) during that visit. *Id.*

As of today, Headwater understands that the "ItsOn code" is still in the possession, custody, and control ItsOn ABC. This belief is supported by statements and information provided by Sherwood's current administrator of the ItsOn ABC assets, Bernie Murphy, to trial counsel for Headwater. *See* Declaration of Reza Mirzaie ("Mirzaie Decl.") ¶¶ 3-7. The ItsOn ABC assets, including the "ItsOn code" at issue, is still stored in servers controlled by Sherwood. *See id.* ¶¶ 7-9; Lavine Decl. ¶ 8. Mr. Murphy confirmed in writing to Russ, August & Kabat ("RAK") attorneys that the ItsOn assets were still being kept:



On August 7, 2023, in a telephone call between counsel for Headwater and Mr. Murphy, Headwater informed Mr. Murphy that Samsung had served a subpoena on the defunct "ItsOn, Inc." entity and would likely also serve a subpoena on ItsOn ABC. Mirzaie Decl. ¶ 10. On this phone

call, Mr. Murphy confirmed that he understood the issue and indicated that he would await a subpoena or other discovery request served in the ordinary course. *Id.*

### 2.      Headwater Told Samsung Where to Find ItsOn's Source Code

Since August 2023, Samsung has known and has been on notice that ItsOn's source code was in the possession of ItsOn ABC. This is because Headwater, its attorneys at RAK, and its witnesses have been open and forthcoming in discovery responses, correspondence, meet and confers, document productions, and in depositions: all pointing Samsung directly, by name, to the entity that currently has the ItsOn source code. To illustrate:

- On August 16, 2023, attorneys with RAK provided ItsOn, Inc.'s responses to Samsung's subpoena request regarding "source code" (Request No. 7), which stated that "ItsOn does not possess any non-privileged and non-work product documents in its possession, custody, and control that are responsive to this Request." Mot. at 8, Ex. T at 11-12.

- Also on August 16, 2023, ItsOn, Inc. (through its attorneys at RAK) produced a January 9, 2018-dated "General Assignment" to "Itson (assignment for the benefit of creditors), LLC" which confirmed that ItsOn, Inc. in 2018 "assign[e]d, convey[ed] and transfer[red] to Assignee… all of the property of Assignor… including, but not limited to … ***source code***, software, and related documentation." Mot. at 8, Ex. K, ¶1(a) (emphasis added).

- On September 19, 2023, RAK stated in email correspondence that the documents produced on August 16, 2023 included "a general assignment of ***all*** ItsOn, Inc. assets." Mot. at 8, Ex. U.

- On November 15, 2023, Dr. Gregory Raleigh testified that "███████████████ ████████████████████████" and that ██████████████████████████ ███████████████ Tsuei Decl., Ex. J (11/15/23 Raleigh Depo. Tr.) at 162:12-163:9 and 228:15-229:4.

- On November 27, 2023, Samsung took the deposition of James Harris, who testified that ███████████████████████████████████" that "████████████████████████ ██████" Tsuei Decl., Ex. H (11/27/23 Harris Depo. Tr.) at 129:20-130:12.

- On December 15, 2023, RAK sent a letter to Samsung confirming that ███████████ █████████████████████████████████████" but instead was "█████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████" Tsuei Decl., Ex. B, at 3.

- On January 5, 2024, the substantial completion deadline for fact discovery, Headwater produced to Samsung all communications between Headwater and Sherwood relating to the sale of ItsOn's assets to Sherwood—around 93 emails. *See* Tsuei Decl., ¶ 13.

Samsung's Motion glosses over this extensive record that demonstrates Samsung *knows* where it could find the "ItsOn code." In addition, the Motion falsely suggests that RAK hid the fact that ItsOn, Inc. did not exist but then supposedly "backtracked"  when it said, on September 19, 2023, that ItsOn, Inc. "does not exist." *See* Mot., at 8 & Dkt. 172-22. In reality, no "backtracking" occurred—RAK told Samsung this fact on July 5, 2023. *See* Dkt. 172-20 (7/5/23 email from Tsuei to Lake: "We can agree to accept subpoenas for … ItsOn Inc., though it is our understanding that those entities no longer exist.").[1]

Finally, the parties telephonically conferred on April 2, 2024 specifically about the relief sought in this Motion. During that meet-and-confer, counsel for Headwater verbally informed Samsung that the "ItsOn code" was in the possession of a third party, ItsOn ABC, and reminded Samsung that Headwater had specifically disclosed that fact to Samsung multiple times throughout this case, including in Headwater's December 15, 2023-dated letter. Tsuei Decl. ¶ 14. Headwater specifically stated that Samsung had not served a subpoena on ItsOn ABC and that it should have done so if it wanted to see the "ItsOn code"; Samsung's counsel had no response. *Id.*

### 3.      Headwater Did Not "Selectively" Keep ItsOn ESI

Samsung accuses Headwater of selectively "cho[osing] to retain much more ItsOn ESI" but "not other, ItsOn ESI (e.g., the ItsOn Solution code)." Mot. at 9. Samsung's sole argument in support is that Headwater has produced "███████████████████ that lack both (i)

---

[1] Samsung complains that Headwater did not include Sherwood or ItsOn ABC in its initial disclosures. But Fed. R. Civ. P 26(a) requires the disclosure of the identities of parties and people who have information "that the disclosing party may use to support its claims or defenses." Headwater did not include Sherwood or ItsOn ABC in its disclosures because did not intend to rely on any information in Sherwood or ItsOn ABC's possession.

Dr. Raleigh's ItsOn email address, and (ii) an @Headwater email address" (*id.*), and so Headwater must have strategically kept those ███████ but not the "ItsOn code."

Samsung's argument is both wrong and reflects a failure to understand how email is kept. Headwater produced the "███████████████████████████" not through some process to "selectively" keep and produce only some information, but because they are relevant documents. In many cases, many of these produced emails were directed to an email "reflector" (such as ████ ████████████████████) which transmitted those emails to, for example, the engineering team at ItsOn (like with █████████████████) or all ItsOn employees (like with ████████████), both of which Dr. Raleigh received and kept. Such emails appear to make up at least ███████ of the entries in Samsung's Exhibit Z. *See, e.g.*, Dkt. 172-27.

In other cases, the produced emails were attachments to emails either received or sent by ████████████████████████████████████ or by some other Headwater email address—meaning that they were retained (and produced) by Headwater because they are ██████████████████████████. The remainder of the entries in Samsung's Exhibit Z are largely emails to and from third parties outside of ItsOn. They were located by Headwater in the custodial email accounts used by ████████████████████████████████ ████████████████ and whose email was not transmitted to Sherwood or ItsOn ABC— meaning that Headwater possesses them and, to be clear, ***produced them*** in this case.

## IV.   ARGUMENT

Rather than diligently seeking discovery from ItsOn ABC to obtain the "ItsOn Code" that it now claims is "gone," Samsung instead chose wait until after the close of fact discovery to file this "gotcha" Motion. Samsung's failure is neither Headwater's fault, nor is it excusable. The documents, depositions, and correspondence between the parties all show that Headwater specifically informed Samsung, multiple times, that the "ItsOn code" was in the custody of a third

party that Samsung needed to contact. Even as of the date of this Response, Headwater understands the "ItsOn code" is still available. All Samsung needed to do was serve a subpoena during discovery. When Headwater counsel told Samsung's lawyers that they needed to have subpoenaed ItsOn ABC, **Samsung had no response**; and it ultimately provided none in its Motion.

### A. Samsung Fails Show That Headwater Ever Possessed, Controlled, or Had a Duty to Obtain and Preserve The Highly Confidential Source Code of Its Licensee

A "spoliation claim has three elements: (1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020). Even assuming that the "ItsOn" code were "gone" or destroyed (which it is not), Samsung fails to show that Headwater had a duty to preserve it.



This is a novel theory of "control" never applied by any court to find a preservation duty. None of the cases cited or discussed by Samsung are remotely close to the facts of this case: Headwater and ItsOn were two legally separate entities with no common ownership, different shareholders and board members, no special relationship subordinating one to the other, and, from ▇▇ through ItsOn's dissolution, had different CEOs and had adverse legal interests due to ItsOn's continuing failure to pay royalties owed to Headwater. In fact, Samsung identifies no evidence that

Headwater (the entity) had the ██████████████████████—and Headwater had neither the legal right nor authority to do so. Samsung instead treats Dr. Raleigh as if he ***personally*** were vested with Headwater's corporate personhood: it says that "██████████████████████ ████████████████████," as if that meant Headwater needed to send a document preservation memorandum to ItsOn. None of Samsung's case law supports such a theory.

*Mullin v. Bayline, Inc*., 2021 WL 5811716 (D. Mass. 2021) found that the owner of a boat had a duty to preserve it after it had been conveyed to the owner's insurance carrier, Progressive Insurance. *Id.* \*1. In that case, the owner's duty—not an entity that the boat owner was employed by—persisted even after Progressive took custody of the ship because it was still "in the possession of ***his*** insurance carrier." *Id.* (emphasis by the court). In *United States ex rel. Harman v. Trinity Indus., Inc.,* No. 2:12-CV-00089-JRG, 2014 WL 12603247, at \*1 (E.D. Tex. July 11, 2014), the Court found that the Relator had a duty to preserve and produce "relevant documents from the companies under ***his*** ownership and control," but during the relevant period had "knowingly and continuously deleted emails from his SPIG and Selco accounts." *Id.* Likewise, in *Wallace v. Tesoro Corp*., No. SA-11-CA-00099-FB, 2016 WL 7971286, at \*8 (W.D. Tex. Sept. 26, 2016), the court there found that the defendants needed to obtain from the Deloitte firm, which the defendants had hired as consultants to conduct studies relevant to the plaintiff's claims. *Id.* at \*7-8. And, in *In re NTL, Inc. Sec. Litig*., 244 F.R.D. 179, 195 (S.D.N.Y. 2007), the court found the defendant "had both the legal 'right' and certainly the 'practical ability' to obtain relevant documents" from a closely-related non-party where the defendant and non-party had signed an information sharing agreement. *See id.* at 181-182.

In this case, Headwater never possessed nor had any legal right to obtain "ItsOn code," like in *NTL*. Headwater did not commission and convey any "ItsOn code" to ItsOn for safekeeping,

like in *Mullin*. Headwater did not own ItsOn, like in *Trinity*. And Headwater did not hire ItsOn to write the "ItsOn code," like in *Wallace*. Notwithstanding these clear differences, Samsung still argues that ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

     Though Samsung does not explain what it means by ███████████████ it appears to believe that Dr. Raleigh, by virtue of his roles at Headwater and ItsOn, could have just unilaterally ordered the source code be transferred from one company to the other—but this would not be evidence of ████████████████ of one company to obtain documents from another so much as a total disregard for corporate formalities and rules. Just as Tesla would not be obligated to seize and preserve SpaceX's source code despite sharing a CEO, Headwater was not required to either obtain "ItsOn code" or to notify ItsOn to preserve that code—they were different companies with no special relationship that subordinated one to the other or provided a right of one party to take the source code of the other. This is why, "[t]ypically, what must be shown to establish control over documents in the possession of a non-party is that there is 'a relationship, either because of some affiliation, employment or statute, such that a ***party*** is able to ***command*** release of certain documents by the non-party person or entity in actual possession." *United My Funds*, 2020 WL 1225042, at *8 (emphasis added) (citation omitted).

     This discussion is, to be frank, academic. A spoliation claim requires proof of "destruction," that the information have been "intentionally destroyed," and that the alleged spoliater "acted in bad faith." *Coastal Bridge*, 833 F. App'x at 574. Samsung cannot prove any of these elements. The "ItsOn code" has not been destroyed by Headwater, much less "intentionally" or in "bad faith." *See supra* § II.B. In any event, if Samsung is suggesting that Headwater ought to

have commanded ItsOn ABC to produce the "ItsOn code," it has identified no evidence to suggest that Headwater could ask for and then obtain the "ItsOn code" from ItsOn ABC, either under a legal right or as a practical matter. Headwater does not, and has never had, control over ItsOn ABC or any right to obtain the "ItsOn code" or any other ItsOn assets held by ItsOn ABC. Mirzaie Decl. ¶ 11.  Headwater did not subpoena ItsOn ABC in this case for a simple reason: it did not believe it needed discovery from ItsOn ABC; in fact, Headwater expected *Samsung* to do so. *Id.*

### B.  Samsung Cannot Meet its Burden to Show The "ItsOn Code" Cannot Be Restored or Replaced Through Additional Discovery

Further, Fed. R. Civ. P. 37(e) (the section under which Samsung is moving) provides that sanctions may be issued: "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and *it cannot be restored or replaced through additional discovery*." Fed. R. Civ. P. 37(e) (emphasis added). This is a threshold element needed for Samsung's request. *See Peals v. QuikTrip Corp.*, No. 4:20-CV-22-KPJ, 2021 WL 2043185, at *5 (E.D. Tex. May 21, 2021) ("The four predicate elements are: (1) the ESI should have been preserved; (2) loss of that ESI; (3) the lost ESI resulted from a party's failure to take reasonable steps to preserve it; and (4) the lost ESI cannot be restored or replaced through additional discovery."). Only after the "four predicate elements are established" may the court consider whether sanctions are warranted. *Id.*

Samsung cannot meet any of the "predicate elements"—because  the "ItsOn [source] code" *has not been lost. It exists.* It is in the possession of ItsOn ABC, to whom RAK directed Samsung multiple times in this case. *See supra* § III.B. Samsung knew this to be the case for *seven months* before the close of fact discovery. Either Samsung deliberately chose to not pursue that discovery, or it neglected to do so. Either way, Samsung provides no explanation why it should be allowed to leverage its own discovery failure into a sanctions windfall against Headwater.

14

Moreover, the relevant "ItsOn code" ███████████████. *See* Tsuei Decl. ¶ 13. It is this code—the ItsOn APK file created from compiling source code—███████ ██████████████████████████. It not only can be decompiled into human readable source code through ordinary methods of reverse-engineering APK files, ██████████████████████. *See supra* § III.A. Whether to address the marking, willful infringement, or copying, Samsung can do it with ████████████████████████.

### C.   Samsung Fails To Show Any Prejudice Due to Headwater's Conduct

Finally, Samsung fails to show the the required prejudice justifying sanctions under Fed. R. Civ. P. 37(e)(1). The entirety of its "prejudice" arguments are based on the untrue assertion that HW "fail[ed] to preserve the ItsOn Solution code." Mot. at 14. That code, Samsung says, is needed to show whether the "ItsOn Solution was so inventive and successful that Samsung duplicated it" and whether HW's "narrative for its damages and validity arguments" are likewise supported. *Id.*

As already explained, the "ItsOn code" exists. The uncompiled source code is in the custody of ItsOn ABC. More importantly, █████████████████████████ ████████████████████████████████████████ ████████████████████. It is through the ItsOn APK that Samsung may, for example, confirm for itself that the ItsOn application (installed through the APK) contained a link to ItsOn's virtual marking page listing at least several of the numbers of the Asserted Patents in this case, or to confirm for itself whether the ItsOn software practiced the asserted claims in this case. And Samsung is free to review its own internal emails to confirm ██████████████████ ████████████████████████████████. *See supra* § III.A. Whatever Samsung decides to do at trial, prejudice under Fed. R. Civ. P 37(e) cannot follow from an untrue premise.

## V.     CONCLUSION

Samsung's Motion should be denied.


Dated:  April 22, 2024                                    Respectfully submitted,

                                                         /s/ James S. Tsuei
                                                         Marc Fenster
                                                         CA State Bar No. 181067
                                                         Email: mfenster@raklaw.com
                                                         Reza Mirzaie
                                                         CA State Bar No. 246953
                                                         Email: rmirzaie@raklaw.com
                                                         Brian Ledahl
                                                         CA State Bar No. 186579
                                                         Email: bledahl@raklaw.com
                                                         Ben Wang
                                                         CA State Bar No. 228712
                                                         Email: bwang@raklaw.com
                                                         Paul Kroeger
                                                         CA State Bar No. 229074
                                                         Email: pkroeger@raklaw.com
                                                         Neil A. Rubin
                                                         CA State Bar No. 250761
                                                         Email: nrubin@raklaw.com
                                                         Kristopher Davis
                                                         CA State Bar No. 329627
                                                         Email: kdavis@raklaw.com
                                                         James S. Tsuei
                                                         CA State Bar No. 285530
                                                         Email: jtsuei@raklaw.com
                                                         Philip Wang
                                                         CA State Bar No. 262239
                                                         Email: pwang@raklaw.com
                                                         Amy Hayden
                                                         CA State Bar No. 287026
                                                         Email: ahayden@raklaw.com
                                                         James Milkey
                                                         CA State Bar No. 281283
                                                         Email: jmilkey@raklaw.com
                                                         Jason M. Wietholter
                                                         CA State Bar No. 337139
                                                         Email: jwietholter@raklaw.com
                                                         James Pickens
                                                         CA State Bar No. 307474

Email: jpickens@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
headwater@raklaw.com

*Attorneys For Plaintiff,*
*Headwater Research LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 22, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System under seal, and served defendants with a copy via electronic mail.

*/s/ James S. Tsuei*
James S. Tsuei