# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:22-CV-00422-JRG-RSP |

**SAMSUNG'S MOTION TO STRIKE AMENDED EXPERT REPORTS
OF DR. ANDREAS GROEHN AND MR. DAVID KENNEDY**

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | FACTUAL BACKGROUND | 2 |
| II. | LEGAL STANDARD | 6 |
| III. | THE AMENDED DAMAGES REPORTS SHOULD BE STRICKEN | 7 |
| | A. Headwater Cannot Justify the Untimeliness of its Amended Reports | 7 |
| | B. Any Alleged Importance of Headwater's Amended Damages Reports is Belied by the Fact They Were Only Issued After Samsung's Experts Identified Inconsistencies That Rendered The Opening Reports Unreliable | 9 |
| | C. Samsung is Substantially Prejudiced by the Amended Damages Reports, Which Cannot be Cured with a Continuance | 10 |
| IV. | CONCLUSION | 11 |

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Errata Statement by Dr. Andreas Groehn, dated April 22, 2024 |
| 2 | Report of Dr. Andreas Groehn, served March 29, 2024 |
| 3 | Expert Report of Mr. David Kennedy, served March 29, 2024 |
| 4 | Excerpts from the Expert Report of Sarah Butler, served April 19, 2024 |
| 5 | Excerpts from the Expert Report of Philip W. Kline, served April 19, 2024 |
| 6 | Excerpts from the Rebuttal Expert Report of Keith R. Ugone, Ph.D., served April 19, 2024 |
| 7 | April 22, 2024 email from counsel serving amended Groehn report |
| 8 | April 22, 2024 email from counsel serving corrected Kennedy report |
| 9 | Redlined version of the Amended Report of Dr. Andreas Groehn, as provided by Headwater's counsel on April 22, 2024 |
| 10 | Corrected Expert Report of Mr. David Kennedy, served April 22, 2024 |
| 11 | Email correspondence between counsel, dated April 23, 2024 |

# **TABLE OF AUTHORITIES**

**Cases**                                                            **Page(s)**

*Akeva L.L.C. v. Mizuno Corp.*,
  212 F.R.D. 306 (M.D.N.C. 2002) ...........................................................................................11

*Avance v. Kerr–McGee Chem. LLC*,
  2006 WL 3484246 (E.D. Tex. 2006) .........................................................................................8

*Beller ex rel. Beller v. United States*,
  221 F.R.D. 696 (D.N.M. 2003)...............................................................................................11

*CEATS, Inc. v. TicketNetwork, Inc.*,
  No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732 (E.D. Tex. Jan. 17, 2018).....................7, 11

*CQ, Inc. v. TXU Min. Co., L.P.*,
  565 F.3d 268 (5th Cir. 2009) ....................................................................................................7

*Daedalus Blue LLC v. SZ DJI Tech. Co.*,
  No. W-20-CV-00073-ADA, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022)..............................7

*Matter of Ensco Offshore Co.*,
  CV H-09-2838, 2013 WL 12384726 (S.D. Tex. July 9, 2013).................................................8

*Kumar v. Frisco Indep. Sch. Dist.*,
  476 F. Supp. 3d 439 (E.D. Tex. 2020).....................................................................................7

*Luke v. Family Care & Urgent Med. Clinics*,
  323 F. App'x 496 (9th Cir. 2009) .............................................................................................7

*Perez v. First Am. Title Ins. Co.*,
  810 F. Supp. 2d 986 (D. Ariz. 2011) ........................................................................................9

*Reliance Ins. Co. v. Louisiana Land & Expl. Co.*,
  110 F.3d 253 (5th Cir. 1997) ..............................................................................................7, 11

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
  725 F.3d 1377 (Fed. Cir. 2013).................................................................................................6

*Tracbeam, L.L.C. v. Google, Inc.*,
  Case No. 6:13-cv-00093-LED, Dkt. No. 179 (E.D. Tex. April 14, 2014)................................6

*Young v. Brand Scaffold Servs., LLC*,
  2009 WL 4674050 (E.D. Tex. Feb. 24, 2009) ..........................................................................9

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................................................6, 7, 8

Fed. R. Civ. P. 37 .......................................................................................................................6

███████████████████████████████████████████

After receiving Samsung's rebuttal reports criticizing Headwater's opening damages reports—and while the scheduling of expert depositions was underway, Headwater *sua sponte* served amended damages reports from Dr. Groehn and Mr. Kennedy that now nearly **triple** its damages demand ██████████████████████████. Specifically, without leave of Court and contrary to the Court's docket control orders, Headwater fundamentally changed its damages contentions by changing the underlying data on which its damages numbers are based. Dr. Groehn openly admits that the reason he—and by extension, Mr. Kennedy—amended his report was to address criticisms from Samsung's rebuttal experts. *See* Ex. 1 at ¶¶ 2-3. But that is not how the process is supposed to work. Dr. Groehn should not have offered erroneous opinions in the first place, and the fact that modifications to his opinion results in a ████████ swing upward on damages reveals how absurd and preposterous Headwater's damages case is.

There can be no legitimate dispute that permitting Headwater to proceed with the opinions in the Amended Damages Reports would severely prejudice Samsung. Headwater's amendments are far from trivial—they represent new opinions that transform Samsung's potential exposure by a substantial magnitude, which is fundamentally prejudicial to Samsung as the parties reach the end of expert discovery and approach trial. Indeed, Dr. Groehn's "amended" results change Dr. Kennedy's ultimate opinions so significantly that it calls into question the soundness of Headwater's entire damages theory. Not only are Samsung's experts prejudiced with little to no time to review and consider the import of the Amended Damages Reports, they are afforded no real opportunity to respond, as the Court's schedule does not permit—nor is there time for—any additional expert reports. And a continuance cannot cure that prejudice.

Accordingly, Samsung respectfully requests that the Court grant its motion to strike the Amended Damages Reports in their entirety.

1

### I. FACTUAL BACKGROUND

Headwater served the opening reports of Dr. Groehn and Mr. Kennedy on March 29, 2024. *See generally* Ex. 2; Ex. 3. *See also* Dkt. No. 186. In his opening report, Dr. Groehn conducted a conjoint survey and analysis to supposedly "measure the economic value of increased battery life in mobile phones" designed by Samsung. From the results of his survey that tested respondents' preferences for different combinations of the features in Table 3, Dr. Groehn decided "an improvement in battery life shifts demand outwards." Ex. 2 at ¶¶ 9, 148. He then conducted conjoint analysis and regression calculations using specific software to estimate the incremental per unit profit supposedly gained by Samsung for different levels of battery improvement. Ex. 2 at ¶¶ 9, 148.

Mr. Kennedy then used Dr. Groehn's incremental profits as the starting point for the *entirety* of his reasonably royalty calculations, alleging Dr. Groehn's values represent the measure of incremental benefit provided by the Asserted Patents. Ex. 3, ¶¶ 58, 88-114, Kennedy Exhibits 1-4. Mr. Kennedy then took a weighted average of Dr. Groehn's dollar value per percentage of increased battery life, and used that value as the "Upper Bound of Bargaining Range Before Adjustments" in Mr. Kennedy's calculations, which Mr. Kennedy further adjusts to reach his reasonable royalty conclusion. Accordingly, any change to Dr. Groehn's incremental profit calculations necessarily affects all of Mr. Kennedy's reasonable royalty calculations. In short, the original damages contentions were reviewed and approved by two different Headwater experts.

Samsung's experts timely served rebuttal damages reports on Friday, April 19, 2024. Ms. Sarah Butler (Samsung's survey expert) and Mr. Philip Kline (Samsung's regression expert) both criticized Dr. Groehn's methodology, data, and conclusions. In particular, they criticized Dr. Groehn for choosing prices in his conjoint analysis calculations that were *different* than the prices actually shown to respondents in Dr. Groehn's survey:

2

| Prices Listed In Dr. Groehn's Report and Used in Conjoint Analysis Calculations | Prices Actually Shown to Respondents in Conjoint Survey |
|---|---|
| **Figure 30** Dr. Groehn's Report – Conjoint Survey Price Levels[179] <br><br> Price \| Apple \| Samsung \| Motorola <br> 1. \| $599 \| $699 \| $499 <br> 2. \| $699 \| $749 \| $549 <br> 3. \| $799 \| $799 \| $599 <br> 4. \| $899 \| $859 \| $649 <br> 5. \| $1099 \| $899 \| $699 | **Figure 31** Dr. Groehn's Conjoint Survey – Conjoint Survey Price Levels[180] <br><br> Price Tiers \| Apple \| Samsung \| Motorola <br> 1 \| $599 \| $599 \| $499 <br> 2 \| $699 \| $699 \| $549 <br> 3 \| $799 \| $799 \| $599 <br> 4 \| $899 \| $899 \| $649 <br> 5 \| $1,199 \| $1,119 \| $699 |

Ex. 4 at ¶ 29; Ex. 5 at ¶¶ 140-144. In fact, when Dr. Groehn later input his survey data into the software programs to conduct his conjoint analysis, he again used *different* prices than those actually shown to and selected by the survey respondents. Mr. Kline specifically concluded that this type of fundamental error would "***necessarily distort Dr. Groehn's demand curves and therefore his results***." Ex. 5 at ¶ 144.[1]

On Monday, April 22, 2024, the next business day following service of Samsung's rebuttal reports—and without the Court's permission or any prior notice to Samsung—Headwater issued the Amended Damages Reports to address these rebuttal criticisms. Ex. 7; Ex. 8. First, Headwater served an "amended" report for Dr. Groehn together with an "Errata Statement" at approximately 5:30 pm CT. Ex. 7. In the "Errata Statement," Dr. Groehn admitted that "the Price Levels set out in Table 3 [of his opening report] and used in [his] survey analysis code did not reflect the Levels [actually] used in the survey" (as shown in redline below):

---

[1] Dr. Keith Ugone (Samsung's damages expert) also concluded that because the entirety of Mr. Kennedy's royalty analysis "begins with Dr. Groehn's estimated economic value of increased battery life in smartphones," the errors in Dr. Groehn's analysis flow through to Mr. Kennedy's royalty rate opinions, rendering them even more unreliable. Ex. 6 at ¶¶ 228-229.

*Table 3 – Attributes and Levels*

| # | Attribute | Levels | | |
|---|---|---|---|---|
| 1 | Brand/Model | 1. Apple iPhone 15<br>2. Samsung Galaxy S24<br>3. Motorola Edge | | |
| 2 | Storage Capacity | 1. 128 GB<br>2. 256 GB<br>3. 516 GB | | |
| 3 | Battery Life | 1. Standard<br>2. 5% more<br>3. 10% more | | |
| 4 | Low Light Camera | 1. Yes<br>2. No | | |
| 5 | Water Resistance | 1. IP ~~65~~66<br>2. IP 68 | | |
| 6 | Screen Size | Apple | Samsung | Motorola |
| | | 1. 6.1 inches | 6.2 inches | 6.1 inches |
| | | 2. 6.7 inches | 6.8 inches | 6.6 inches |
| 7 | Price | Apple | Samsung | Motorola |
| | | 1. $599 | $~~699~~599 | $499 |
| | | 2. $699 | $~~749~~699 | $549 |
| | | 3. $799 | $799 | $599 |
| | | 4. $899 | $~~859~~899 | $649 |
| | | 5. $~~1099~~1,199 | $~~899~~1,119 | $699 |

Source: Own compilation

Ex. 1 at ¶ 2 (redlines in original). Dr. Groehn re-ran his analysis with the prices actually shown to survey respondents, and concluded that the economic premium associated with improved battery life was markedly different compared to his opening report (shown in redline below):

4

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Table 6 – Incremental Profit Per Unit for Different Levels of Battery Life Improvement

| Improvement | Low | Median | High |
|---|---|---|---|
| 4 | 7.13 | 13.59 | 23.63 |
| 5 | 10.20 | 16.98 | 26.73 |
| 6 | 13.27 | 20.38 | 29.83 |
| 7 | 16.34 | 23.78 | 32.92 |
| 8 | 19.42 | 27.17 | 36.02 |
| 9 | 22.49 | 30.57 | 39.11 |
| 10 | 25.56 | 33.97 | 42.21 |

| ~~Improvement~~ | ~~Low~~ | ~~Median~~ | ~~High~~ |
|---|---|---|---|
| ~~4~~ | ~~3.08~~ | ~~5.92~~ | ~~10.28~~ |
| ~~5~~ | ~~4.43~~ | ~~7.4~~ | ~~11.63~~ |
| ~~6~~ | ~~5.78~~ | ~~8.88~~ | ~~12.98~~ |
| ~~7~~ | ~~7.13~~ | ~~10.36~~ | ~~14.33~~ |
| ~~8~~ | ~~8.48~~ | ~~11.84~~ | ~~15.68~~ |
| ~~9~~ | ~~9.83~~ | ~~13.32~~ | ~~17.03~~ |
| ~~10~~ | ~~11.18~~ | ~~14.8~~ | ~~18.38~~ |

Ex. 9 at ¶ 148 (redline sin original). Dr. Groehn's prior range of incremental improvement per unit was $3.08-$18.38, depending on percentage increase. *Id.* Dr. Groehn's newly revised range of incremental improvement per unit shifts dramatically to $7.13-$42.21. *Id.* Dr. Groehn admitted in his Errata Statement that the only reason he amended his report was to address the pricing "noted by" and "brought to [his] attention" by Ms. Butler and Mr. Kline. Ex. 1 at ¶¶ 2-3, 5-7. However, Dr. Groehn offered no explanation, justification, or confirmation that he evaluated his new results for reasonableness, accuracy, or any remaining errors—despite the substantial quantitative change.

Two hours later, Headwater then served a "corrected" report for Mr. Kennedy, stating "[t]his corrected report reflects the corrections to Mr. Groehn's amended report" and that certain exhibits "have been corrected to reflect Mr. Groehn's updated numbers[.]" Ex. 8. Because Mr. Kennedy's damages opinions are all based on Dr. Groehn's estimated economic value of battery life improvement, Mr. Kennedy also issued an amended report that modified all of his royalty rate opinions. Mr. Kennedy's new damages demand—based on Dr. Groehn's new incremental value— yield was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ :

5



## II.   LEGAL STANDARD

A party must disclose its experts' opinions "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D) (emphasis added). Pursuant to Rule 37, courts have the authority to exclude untimely opinions. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."). Specifically, "Rule 37(c) provides that a party's failure to comply with Rule 26(a) mandates exclusion of that party's disclosures, unless that party can demonstrate that its failure to comply is substantially justified or harmless." *See Tracbeam, L.L.C. v. Google, Inc.*, Case No. 6:13-cv-00093-LED, Dkt. No. 179 at p. 2 (E.D. Tex. April 14, 2014) (*citing Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1365 (Fed. Cir. 2011); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) ("The burden is on the party facing sanctions to prove that its failure to comply with Rule 26(a) was 'substantially justified or harmless.'"). This Court must consider four factors to determine

6

whether to exclude untimely reports: "(1) [The untimely party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009). Rule 26 does not provide a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through a supplemental report. *See CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *4 (E.D. Tex. Jan. 17, 2018) ("Most significantly, however, CEATS has no good explanation for its delay in proffering this new information, which was available well before the deadline for its initial expert reports."); *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 469 (E.D. Tex. 2020); FED. R. CIV. P. 26(e)(2).

Critically, and "[w]ithout more, a desire to respond to the conclusions reached in the rebuttal reports is not enough to justify a supplemental report." *See Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). District judges therefore "have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997).

### III.   THE AMENDED DAMAGES REPORTS SHOULD BE STRICKEN

#### A.   Headwater Cannot Justify the Untimeliness of its Amended Reports

Headwater cannot justify the untimeliness of its Amended Reports and cannot show that the "amendments" are harmless. Instead, Headwater and Dr. Groehn freely admit that the Amended Damages Reports were only created to address criticisms by Samsung's experts in their rebuttal reports. *See* Ex. 1 at ¶ 2; Ex. 11. While the Federal Rules allow experts to supplement expert reports to account for otherwise incomplete reports, they are not a loophole to allow an effective re-do of initial reports in order to cure problems raised by opposing experts. *Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. W-20-CV-00073-ADA, 2022 WL 831619, at *7 (W.D. Tex.

7

Feb. 24, 2022) (striking second expert report where expert conceded the changes made in the second report were prompted by considering opposing expert's opinions). And when an expert's supplemental report "effectively replace[s] the earlier report," it is not a supplemental report within the meaning of Rule 26(e) of the Federal Rules. *Matter of Ensco Offshore Co.*, CV H-09-2838, 2013 WL 12384726, at *2 (S.D. Tex. July 9, 2013) (citing *Brennan's, Inc. v. Dickie Brennan & Co., Inc.*, 376 F.3d 356, 374–75 (5th Cir. 2004)).

Further, the Amended Damages Reports cannot be justified as simple corrections for "typographical" and "data entry errors," as Headwater argues. Ex. 1 at ¶¶ 2-6; Ex. 11. That argument defies common sense and cannot explain why Headwater's *two* experts—as well as its counsel—wholly endorsed (and supposedly vetted) theories and numbers that were apparently off by billions of dollars. To the contrary, Dr. Groehn's errata does not explain why he ***repeatedly chose*** to use different pricing data that he now runs from in the face of expert criticism. Ex. 1 at ¶ 2. There is no doubt the results stemming from Dr. Groehn's revised analysis make a significant and substantial departure from his conclusions regarding the economic premium associated with improved battery life in his opening report. *See* Ex. 9 at Table 6. Headwater cannot justify such egregious changes simply because Samsung's experts identified that Dr. Groehn made poor choices in the data he repeatedly relied on in his original opening report.

Finally, Dr. Groehn admits that his amended report uses pricing data that was available to him for his original opening report. Courts routinely reject untimely amended expert reports where the opinions are based upon information available prior to the deadline for expert disclosures. *See e.g.*, *Avance v. Kerr–McGee Chem. LLC*, 2006 WL 3484246, *7 (E.D. Tex. 2006) (excluding late-filed report where plaintiffs failed to demonstrate "substantial justification" why the revisions and new affidavits were filed after the expert deadline).

8

▋

**B.      Any Alleged Importance of Headwater's Amended Damages Reports is Belied by the Fact They Were Only Issued After Samsung's Experts Identified Inconsistencies That Rendered The Opening Reports Unreliable**

As an initial matter, Headwater's failure to change its reports before Samsung's criticisms proves these changes are far more than just typographical errors. Nor are Headwater's changes based on any late-discovered evidence that bears on the merits of the parties' claims, which is an exception to the rule proscribing untimely expert reports. *See, e.g., Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 989 (D. Ariz. 2011) ("The Court concludes that a supplemental expert report was substantially justified . . . [b]ecause this data was produced after the deadlines for disclosing expert and rebuttal reports, it could not have been included in Plaintiffs' earlier expert report.") Indeed, if Headwater genuinely believed that the revised contentions were important and substantially supported by the evidence, it should have followed the Court's rules and filed a motion for leave. Instead, Headwater inappropriately shifts the burden of filing a motion to strike to Samsung.

Regardless of what Headwater will now claim, "[t]he importance of a witness's testimony cannot singularly override the enforcement of local rules and scheduling orders." *Young v. Brand Scaffold Servs., LLC*, 2009 WL 4674050, at *3 (E.D. Tex. Feb. 24, 2009) (internal quotation omitted). Any feigned importance of the revisions flies in the face of the fact that the "corrections" were made ***solely*** in response to the criticisms of Dr. Groehn's analysis identified by Samsung's experts. Ex. 1 at ¶¶ 2-3 ("[A]s noted in the reports of [Mr. Kline and Ms. Butler] . . . the Price Levels set out in Table 3 and used in my survey analysis did not reflect the Levels used in my survey. . . . I have corrected the above Price Level error and rerun my survey analysis."). Given that it was only Ms. Butler's and Mr. Kline's rebuttal reports that prompted the preparation of Dr. Groehn's and Mr. Kennedy's amended reports, Headwater should not now be able to argue that

9

the importance of the amended opinions outweighs its failure to identify these issues in accordance with schedule set forth in the Docket Control Order.

### C. Samsung is Substantially Prejudiced by the Amended Damages Reports, Which Cannot be Cured with a Continuance

The prejudice to Samsung is overwhelming and uncurable. Headwater had nearly a month after serving its opening reports to correct its purported "data entry" errors, but failed to do so. Its Amended Damages Reports were only issued the next business day after Samsung served its rebuttal reports, and specifically to remedy inconsistencies in Dr. Groehn's and Mr. Kennedy's opening reports identified by Samsung's experts. *See* Ex. 1 at ¶¶ 2-3. All of Dr. Groehn's amended analyses could and should have been included in his opening report and incorporated into Mr. Kennedy's opening report.

Samsung should not be punished for the fact that its own experts' criticisms were problematic enough to cause Headwater to re-do its damages contentions and triple its damages demand under the guise of correcting data entry errors. Samsung already spent hundreds of hours and hundreds of thousands of dollars to respond to Dr. Groehn's and Mr. Kennedy's opinions. Allowing the Amended Damages Reports to address the flaws pointed out in Samsung's rebuttal damages reports will undoubtedly require Samsung to expend significantly more time and money addressing these new opinions. Additionally, the Court's schedule does not afford Samsung any opportunity to meaningfully rebut the Amended Damages Reports. Opening reports were due March 29, rebuttal reports were served April 19, expert depositions are underway, and the deadline to complete expert discovery and the deadline for motions to strike expert testimony are just over two weeks away.[2] Dkt. No. 186.

---

[2] The Amended Damages reports were served just three days before Dr. Groehn's scheduled

██████████████████████

There is no provision in the Court's docket control order for submitting amended reports, reply reports, or any other reports. *Id.* Even if there were, with just over three months until trial, the schedule leaves no room to cure the prejudice faced by Samsung by a continuance to allow Samsung's experts—Ms. Butler, Mr. Kline, and Mr. Ugone—to serve reply reports, and to further extend expert discovery to allow for depositions on these new reports. *See Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d at 257, 258 (5th Cir. 1997); *CEATS, Inc. v. TicketNetwork*, No. 15-cv-01470, 2018 WL 453732, at * 4 (E.D. Tex. Jan. 17, 2018) ("[A] continuance would greatly undermine the Court's trial schedule and is impractical at this stage of the proceeding."). There is no remedy that would allow for fulsome discovery on the Amended Damages Reports and cure the significant prejudice faced by Samsung in view of these new, amended expert opinions within the current schedule. Allowing Headwater to use a continuance forced by untimely reports would upend the pre-trial process, cast doubt on the finality of expert discovery, and further delay the expeditious resolution of cases in this Court. *See Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003) ("To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports"); *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) ("To construe supplementation to apply whenever a party wants to bolster expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation.").

## IV.   CONCLUSION

Headwater's Amended Damages Reports are neither substantially justified, nor harmless, and exclusion of the Amended Damages Reports is the only appropriate remedy. Thus, and for

---

deposition. Samsung has requested to reschedule Dr. Groehn's deposition and is simultaneously moving this Court for expedited relief on this Motion, to determine whether Headwater's experts can offer and should be deposed on their Amended Report opinions at all.

11

the foregoing reasons, Samsung respectfully asks that the Court grant its motion and strike the Amended Damages Reports served on April 22, 2024, as improper and untimely under Rules 26(a) and 37(c).

Dated: April 25, 2024                    Respectfully submitted,

By:   */s/ Thomas H. Reger II*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman (*pro hac vice*)
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Nicholas A. Gallo (*pro hac vice*)
GA Bar No. 546590
gallo@fr.com
Steffen Lake (*pro hac vice*)
GA Bar No. 512272
lake@fr.com
Sara Fish
sfish@fr.com
GA Bar No. 873853
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

███████████████████████████████

Leonard E. Davis
TX Bar No. 05521600
ldavid@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
Harry L. Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Grant Schmidt

█████████████████████████████

                              Texas Bar No. 24084579
                              gschmidt@hilgersgraben.com
                              Jon Hyland
                              jhyland@hilgersgraben.com
                              Texas Bar No. 24046131
                              Theodore Kwong
                              tkwong@hilgersgraben.com
                              Texas Bar No. 4087871
                              **HILGERS GRABEN PLLC**
                              7859 Walnut Hill Lane, Suite 335
                              Dallas, Texas 75230
                              Telephone: 469-751-2819

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on Plaintiff through its counsel of record via email on April 25, 2024.

*/s/ Thomas H. Reger II*
Thomas H. Reger II

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on April 24, 2024. The parties were unable to reach agreement as to Samsung's requested relief.

*/s/ Katherine H. Reardon*
Katherine H. Reardon

## CERTIFICATE OF AUTHORIZATION TO SEAL

The undersigned hereby certifies that pursuant to the protective order in the above-captioned case, this document contains confidential information. Accordingly, this document is to be filed under seal.

*/s/ Thomas H. Reger II*
Thomas H. Reger II