**PUBLIC VERSION**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| Plaintiff, | Case No. 2:22-cv-00422-JRG-RSP |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | ███████████ |

**PLAINTIFF HEADWATER RESEARCH LLC'S OPPOSITION TO MOTION TO
STRIKE EXPERT REPORTS OF DR. ANDREAS GROEHN AND
MR. DAVID KENNEDY**

## <u>TABLE OF CONTENTS</u>

I.      Introduction .......................................................................................................... 1

II.     Dr. Groehn And Mr. Kennedy Properly Corrected Their Reports Under Federal Rule of Civil Procedure 26(e) ................................................................................ 4

III.    The Corrections Are Important to Dr. Groehn's and Mr. Kennedy's Testimony ............... 8

IV.   Any Prejudice to Samsung Is Minimal and Can Easily Be Cured................................... 10

V.    The Need for Correction Was Not the Result of Any Intentional Error, Gamesmanship, or Bad Faith ........................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Akeva L.L.C. v. Mizuno Corp.,*
212 F.R.D. 306 (M.D.N.C. 2002) ................................................................. 11, 12

*Avance v. Kerr-McGee Chem. LLC,*
No. 5:04CV209, 2006 WL 3484246, at *7 (E.D. Tex. Nov. 30, 2006)..................................... 5

*Ayon v. Austin Indep. Sch. Dist.,*
No. 1:21-CV-00209-RP, 2023 WL 3294604 (W.D. Tex. May 4, 2023)........................... 11, 12

*Beller ex rel. Beller v. United States,*
221 F.R.D. 696, 697, 701 (D.N.M. 2003)................................................................. 11

*CEATS, Inc. v. TicketNetwork,*
No. 15-cv-01470, 2018 WL 453732  (E.D. Tex. Jan. 17, 2018) ........................ 11, 12

*Dynamic Motion Rides GMBH v. Universal City Dev. Partners, Ltd,*
No. 6:21-CV-752-RBD-LHP, 2022 WL 2774301, at *6 (M.D. Fla. June 3, 2022) .................. 6

*Firtiva Corp. v. Funimation Glob. Grp., LLC,*
No. 221-CV00111-JRG-RSP, 2022 WL 1792818 (E.D. Tex. June 1, 2022) ........................... 8

*Grant v. CRST Expedited, Inc.,*
No. 1:18-CV-433, 2021 WL 1151560 (E.D. Tex. Jan. 28, 2021).............................................. 6

*Hoke v. Anderson,*
No. 1:18-CV-00232-RP, 2019 WL 2128631(W.D. Tex. May 15, 2019) ............................... 10

*Huawei Techs. Co. v. Yiren Huang,*
No. 4:17-CV-00893, 2019 WL 2077821 (E.D. Tex. May 9, 2019).............................. 3, 11, 12

In *Matter of Ensco Offshore Co.,*
CV H-09-2838, 2013 WL 12384726 (S.D. Tex. July 9, 2013)................................................... 5

*In re Complaint of C.F. Bean L.L.C.,*
841 F.3d 365 (5th Cir. 2016) ................................................................................ 8

*Kumar v. Frisco Indep. Sch. Dist.,*
476 F. Supp. 3d 439 (E.D. Tex. 2020)............................................................... 4, 5

*Lincoln Rock, LLC v. City of Tampa,*
No. 8:15-CV-1374-T-30JSS, 2016 WL 6138653(M.D. Fla. Oct. 21, 2016)...................... 3, 6

*Perez v. First Am. Title Ins. Co.,*
810 F. Supp. 2d 986 (D. Ariz. 2011) .............................................................. 10

*United States v. 9.345 Acres of Land,*
No. CV 11-803-JJB-EWD, 2016 WL 5723665(M.D. La. Sept. 30, 2016)..................... 6, 11

*Young v. Brand Scaffold Servs., LLC,*
2009 WL 4674050 (E.D. Tex. Feb. 24, 2009) ...................................................... 10

**Rules**

Fed. R. Civ. Proc. 26 (a)(3) ................................................................................................ 4

Fed. R. Civ. Proc. 26(e)(1)(a) ........................................................................................... 4

Fed. R. Civ. Proc. 26(e)(2) ................................................................................................ 4

Fed. R. Civ. Proc. 26(e)(1) ................................................................................................ 4

Fed. R. Civ. Proc. 26 (e) ........................................................................................... *passim*

Fed. R. Civ. Proc. 26 ......................................................................................................... 1

## I.      Introduction

Samsung's motion is premised on the misstatement that "Headwater fundamentally changed its damages contentions by changing the underlying data on which its damages numbers are based." Mot. at 1.  However, the corrections at issue were made solely to comport Headwater's experts' reports with the "underlying data," the price points used in the survey conducted by survey expert Andreas Groehn.  The correct price points were provided by Mr. Groehn with his report, and Samsung and its experts fully understood that this was the correct data.

When Dr. Groehn input data from the questions and responses of his survey into the software code he uses to perform regression analysis, he inadvertently did not input some of the price points from his survey, leaving in the code numbers from a prior, unrelated case.  Ex. A, Declaration of Dr. Andreas Groehn In Support of Headwater's Opposition ("Groehn Decl.") ¶¶ 3-4.[1]  As soon as Dr. Groehn learned of this error, he corrected the code in his software and repeated his analysis using the exact same methodology as he had in his original report, and served the correction the next business day.  Groehn Decl. ¶ 5.  For example, one option presented in the survey was priced at $599.  This price was reflected in the survey materials produced by Dr. Groehn, but in coding his analytic software he left that price at $699.  Dr. Groehn's errata uses the correct $599 that was used in the survey on which he is opining.

Dr. Groehn had no choice but to make this correction.  Fed. R. Civ. Pro. 26(e) required that he correct such an error in his report, and he had an ethical duty not to propound an opinion in his report or at trial based on data he knew had inadvertently been entered incorrectly.  Samsung

---

[1] Dr. Groehn's declaration is not being offered under Fed.R.Civ.Proc. 26 and is not disclosing opinions he intends to offer at trial.  It is provided for the purpose of responding to Samsung's complaint that the explanation provided paragraph 2 of his errata of April 22, 2024 is insufficient to explain his error.  Normally an expert would provide such details in deposition, but Dr. Groehn's deposition has been postponed, at Samsung's request, to May 13, 2024.

claims that Dr. Groehn "chose" to use the wrong prices (Mot. at 8), but this makes no sense. While Dr. Groehn may have had control over what price points to use before he administered the survey, once the survey was taken using those price points, the prices were fixed. Both Headwater's and Samsung's experts were clear on what the correct prices were and understood Dr. Groehn's intent to run his analysis based on those prices. Dr. Groehn has affirmed that this was a data entry error, not a choice. Groehn Decl. ¶ 4. And Samsung's expert in statistical analysis, Philip W. Kline, confirmed that this could only have been an unintentional error. Ex. 6[2] at ¶144.

As Samsung notes, Headwater's damages expert David Kennedy uses the results of Dr. Groehn's survey and regression analysis as an input in his determination of a reasonable royalty. Once Mr. Kennedy learned that, as a result of the data entry error, an input into his numbers was incorrect, he also had no choice but to use the correct numbers and rerun the calculations in his opinion, in compliance with Rule 26(e) and to avoid propounding at trial an opinion he knew to be in error. Mr. Kennedy issued a corrected report on the same day as Mr. Groehn's correction, and, like Dr. Groehn, made no changes whatsoever to his methodology. In fact, Mr. Kennedy did not change a word in the text of his report, only updating the calculations in the exhibits to his report. Ex. 8.

By immediately issuing their corrections, Dr. Groehn and Mr. Kennedy made sure that Samsung had them before either of their depositions and before the depositions of Samsung's experts, leaving sufficient time before the close of expert discovery for Samsung's experts to respond. Moreover, these corrections could not have been a surprise to Samsung and its experts. Samsung's survey expert Sarah Butler spotted the error in Dr. Groehn's coding, and all three of Samsung's survey and damages experts addressed the error in their reports. Nor can the fact that

---

[2] References to numbered exhibits are to the exhibits attached to Samsung's motion.

the error had a significant effect on Mr. Kennedy's reasonable royalty have been a surprise.  Mr. Kline opined ███████████████████████████████████████████

███ " (Ex. 6 ¶ 144). In fact ,it appears that Mr. Kline used his own software to replicate at least part of Dr. Groehn's analysis using both the correct and the incorrect price points.  With this code, Mr. Kline would have been able to see just how much correcting Dr. Groehn's error would affect his analysis.  Groehn Decl. ¶¶ 6-8.

Headwater does not deny that the effect of correcting Dr. Groehn's data entry error had a significant effect on the demand curve in his analysis, or that Mr. Kennedy using the correct numbers had a significant effect on his reasonable royalty rate.  But in using the correct price points from the survey, and applying the same methodology, Dr. Groehn and Mr. Kennedy did not have control over the final numbers that resulted for the correction, which, after all, had always been the *correct* numbers resulting from the analysis they disclosed in their original reports.

The caselaw addressing corrections under Rule 26(e) or the Fifth Circuit's test for motions to strike untimely disclosures are consistent: where, as here, the correction merely fixes an unintentional error, does not overwrite the original report and change methodology, is served before the expert is deposed and before the close of discovery, and is provided months before trial, the motion to strike is denied.  *See, e.g., Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2016 WL 6138653, at *5 (M.D. Fla. Oct. 21, 2016) (expert "required" to correct initial report containing miscalculations based on coding error); *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2019 WL 2077821, at *7 (E.D. Tex. May 9, 2019) (denying motion to strike expert's errata where it was served before the expert's deposition and approximately three months before trial).  Samsung bases its motion on cases in which corrections provide new facts and opinions, come as a surprise to opposing counsel, smack of gamesmanship, and are served after

the expert has already been deposed, after the expert discovery deadline, or even on the eve of trial.  *See, e.g., Kumar v. Frisco Indep. Sch. Dist*., 476 F. Supp. 3d 439, 468-469 (E.D. Tex. 2020) (expert issued new report using new methodology on the day before pretrial order was due).

Samsung's motion should be denied.

## II.   Dr. Groehn And Mr. Kennedy Properly Corrected Their Reports Under Federal Rule of Civil Procedure 26(e)

Federal Rule of Civil Procedure 26(e)(1)(A) and 26(e)(2) requires parties to supplement expert disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(1).  "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  *Id.* at 26(e)(2).

When Dr. Groehn learned that he had made an error in entering  the prices from his survey questions into the software he used to analyze that survey data – in other words, that his disclosure was incorrect in a material respect – he promptly entered the correct prices into his software, reran his analysis using exactly the same methodology as before, and produced the errata on April 22, 2024, the next business day after having first learned of the error.  This was well before the May 24, 2024 deadline in this case for pre-trial disclosures under Rule 26(a)(3).

When Mr. Kennedy learned that the numbers he relied on from Dr. Groehn's report, and an input into his own calculation was thus in error, he also was required to correct his report. As soon as he had Mr. Groehn's corrected numbers, Mr. Kennedy reran his calculations using the same methodology as in his original report, and likewise provided this corrected disclosure on April 22, 2024.

Dr. Groehn's and Mr. Kennedy's corrections were therefore proper under Rule 26(e).

Samsung disagrees and argues that a correction subject to Rule 26(e) is permitted only where it is based on new information unavailable at the time of the expert report.  As Samsung notes, experts are not permitted to just have a do-over, adding new information and opinions that they could have provided in their original report.  The cases Samsung cites illustrate the kind of abuse of Rule 26(e) courts have sought to discourage, under facts very different from those here.  For example, in *Kumar*, an expert learned from a rebuttal report that a different methodology than the one he employed was customary in the field, and then issued a new report the using that new methodology one day before the deadline for submission of the joint final pretrial order.  476 F. Supp. 3d at 468-69 ("Dr. Morrison admitted that the only reason the supplement was necessary was because he did not see the relevance of a communities of interest analysis when he constructed his initial report.").  In *Matter of Ensco Offshore Co.*, CV H-09-2838, 2013 WL 12384726, at *2 (S.D. Tex. July 9, 2013), the expert issued a new report containing new sections applying new methodology five months after his original report.  Further, in all these cases, the very late timing of the supplement was a factor.  For example, in *Avance v. Kerr-McGee Chem. LLC*, No. 5:04CV209, 2006 WL 3484246, at *7 (E.D. Tex. Nov. 30, 2006), new disclosures were filed not just after the expert report deadline, but after the expert discovery deadline, after *Daubert* and summary judgment motions were filed, and less than a week from the *Daubert* hearing.

An inadvertent error like a miscalculation or data entry mistake does not fit this model, and in such cases courts have looked to whether the error was truly inadvertent and the supplement just fixes the error, rather providing new opinions and surprising the opposing party. Hence, as one court in this circuit has put it, "[s]upplementation is proper when it corrects a previously rendered opinion based on new information that was unavailable to the expert at the time of his initial report. **It is also proper** when an expert uses it to identify information that he *inadvertently*,

5

rather than strategically, omitted from his first report." *United States v. 9.345 Acres of Land*, No. CV 11-803-JJB-EWD, 2016 WL 5723665, at *10 (M.D. La. Sept. 30, 2016) (bold added). *See also Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 1151560, at *7 (E.D. Tex. Jan. 28, 2021) ("Courts generally 'distinguish "true supplementation" (e.g., correcting inadvertent errors or omissions) from gamesmanship'").

For example, in *Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2016 WL 6138653 (M.D. Fla. Oct. 21, 2016), an expert served a supplemental report at the discovery deadline correcting several errors, including miscalculations based on a "coding error" first identified by the opposing party's rebuttal expert. *Id.* at *5. On these facts that are highly similar to those here (except that Headwater's corrections were fewer and served earlier), the court denied a motion to strike, holing that the supplementation was appropriate under Rule 26(e):

> Although, as Defendant contends, Dr. Fishkind's corrections are based on information available to him at the time of his Initial Report, **Rule 26(e)(1)(A) required Dr. Fishkind to correct his Initial Report**. ... These corrections did not advance a new theory of damages, but instead corrected Dr. Fishkind's calculation under the method of calculating damages he espoused in his Initial Report.

*Id*. at *7 (citations omitted, emphasis added).

Similarly, in *Dynamic Motion Rides GMBH v. Universal City Dev. Partners, Ltd*, No. 6:21-CV-752-RBD-LHP, 2022 WL 2774301, at *6 (M.D. Fla. June 3, 2022), the court denied a motion to strike found the correction of an error – in that case the mislabeling of an illustrative diagram – was appropriate under Rule 26(e) as it "did not espouse a new theory." The fact that the error was identified by an opposing expert "does not, by itself, establish that the 'errata sheet' is a 'new report,' or levy any ulterior or fraudulent motive." *Id.*

Perhaps recognizing that the caselaw permits supplementation to correct data entry errors such as those here, Samsung argues Dr. Groehn's error was *not* unintentional, but was rather a

6

choice.  Mot. at 8.  But there is no question that Dr. Groehn's error was inadvertent, and there is no gamesmanship here.  Besides his own statements to that effect (Ex. 1, ¶ 2, Groehn Decl, at¶ 4), and Samsung's own expert on statistical analysis recognizing there was clearly an error (Ex. 6, ¶144), Dr. Groehn's whole model is set up to conduct a survey and analyze the actual results of that survey, with the survey questions, survey responses, and the code used in his analysis of those results, to be produced to all parties.  Using the wrong price points did not benefit Dr. Groehn or Headwater.  And not only was the error not hidden away from Samsung, the results of the error and its correction were clear to Samsung.  Again, Mr. Kline understood that ██████████ ████████████████████████████████████████" (Ex. 6 ¶ 144), and in fact had set up his own software to replicate at least part of Dr. Groehn's analysis using both the correct and the incorrect price points.  With this code, Mr. Kline would have been able to see just how much correcting Dr. Groehn's error would affect his demand curve.  Groehn Decl. ¶¶ 6-8.

Samsung also argues that the fact that the error was not caught by Headwater's experts is itself evidence that it was not unintentional.  Samsung questions how the error could have gotten by both Dr. Groehn and Mr. Kennedy.  Mot. at 2.  Mr. Kennedy was relying on the expertise of Dr. Groehn and had no reason to review the code Dr. Groehn used in his specialized software.  But more importantly, it is an unfortunate truism that the simpler an error is, the harder it can be to spot in review.  This is especially true when that simple error is part of a more complex analysis that received greater scrutiny.  For example, in 1999, NASA's Mars Climate Orbiter was lost because engineers used English rather than metric units in some launch calculations.  As a result the Orbiter went significantly off course, because even a small change in launch instructions becomes very significant over the long distances from Earth to Mars.  Even though the numbers were undoubtably reviewed by many people many times, and despite the large consequence of

even a small error, "[n]one of JPL's rigorous quality control procedures caught the error in the nine months it took the spacecraft to make its 461-million-mile flight to Mars."[3]  There was no suggestion, however, that NASA's engineers intentionally used the wrong units.  Hundreds of engineers missed a simple error precisely because it was simple.

Here too the fact that the code was reviewed, the error was clear once recognized, and the downstream effect of the error was large does not mean that the error was intentional.  The data entry error here was innocent, apparent to Samsung, and fixed immediately.  Headwater's corrections were not only permitted under Rule 26(e) but required by it.

## III.   The Corrections Are Important to Dr. Groehn's and Mr. Kennedy's Testimony

If the Court determines that Rule 26(e) does not apply, Samsung's motion to strike should still be denied under the Fifth Circuit's standard for admission of untimely disclosures, which includes these factors: "(1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing any such prejudice by a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order or rules." *Firtiva Corp. v. Funimation Glob. Grp., LLC*, No. 221-CV00111-JRG-RSP, 2022 WL 1792818, at *1 (E.D. Tex. June 1, 2022).

The Fifth Circuit has held that the testimony of an expert is important where the expert is the only one who can testify on a subject, and that subject is important.  *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 373 (5th Cir. 2016).  Mr. Kennedy is the only expert testifying on reasonable royalty, and damages are clearly an important issue in the case.  *See Firtiva,* 2022 WL 1792818, at *2.  His corrections are important, as he otherwise may have to testify without being able to provide the jury with the most accurate numbers in his calculation of a reasonable royalty.

---

[3] https://www.latimes.com/archives/la-xpm-1999-oct-01-mn-17288-story.html

Dr. Groehn's survey is important to Mr. Kennedy's analysis, and thus to the damages case, and Dr. Groehn is the only expert who can testify on that survey. While Dr. Groehn could testify on the questions and responses in that survey without his correction, his testimony on the key question of the value of battery savings to smartphone customers requires his correction at the analysis stage.[4]

Samsung claims that because Dr. Groehn's correction was made only after his error was identified in rebuttal reports, his corrections are not important. Mot. at 9. The case law does not support Samsung's argument; not does logic. Many of the cases discussed above permit correction where the error was identified by the opposing expert. Moreover, it is logical that the opposing expert would be the first to spot the error. If Dr. Groehn had spotted the error before he issued his report, he would not have issued the report with the error. Once the report issued, he did not have reason to go back to immediately carefully review the data again, while Mr. Kline and Ms. Butler did have reason to then closely examine his report, and with fresh eyes.

Although the cases cited by Samsung involved error that were first identified by opposing experts, those cases did not turn on that fact. For example, in *Daedalus*, that the error was pointed out by the rebuttal expert was not a salient fact in the court's analysis, except to the incidental degree it affected timing. Rather, the key fact was that the expert provided an entirely new analysis of the hypothetical negotiation, such that "[e]verything he said in his rebuttal report is different than what he had in his initial report, other than numbers." 2022 WL 831619, at *4-5. Moreover, because the supplement was served the night before the expert's deposition and the close of discovery, opposing counsel could not effectively depose him on the new opinions, prejudicing

---

[4] ███████████████████████████████████████████████████████

████████████████████████████ Headwater therefore had to retain Dr. Groehn to conduct a new survey.

the ability to cross examine the expert at trial.  Also, the hearing on the motion to strike was a week before trial.  *Id.* at *6-7.[5]  The facts here are very different.

Samsung also says that "if Headwater genuinely believed that the revised contentions were important and substantially supported by the evidence, it should have followed the Court's rules and filed a motion for leave."  Mot. at 9.  Headwater's understanding was that Rule 26(e) required the corrections by its experts and did not call for a motion to be filed to comply with the rule.  Moreover, Headwater recognized that time was of the essence, as it was important to provide the corrections before its experts were deposed.  At the time the reports were issued, Dr. Groehn's deposition was scheduled for April 25, although the parties have since agreed to reschedule that Mr. Kennedy's deposition to May 9, and Dr. Groehn's deposition to  May 13.

## IV.    Any Prejudice to Samsung Is Minimal and Can Easily Be Cured

Samsung says it is prejudiced by the corrections because it has spent a lot on experts, and because there is not time to address the corrections in depositions and rebuttal reports.  Mot. 10-11. The first point is irrelevant.  *Hoke v. Anderson*, No. 1:18-CV-00232-RP, 2019 WL 2128631, at *3 (W.D. Tex. May 15, 2019) ("[T]he Defendants argue that a continuance would not cure any prejudice to them as they would have to incur the unexpected costs of deposing an additional expert. But cost is not the issue on this factor, so this argument misunderstands the point.").  And even if additional expert costs were relevant to the prejudice inquiry under the law, cost shifting would eliminate that "prejudice." In contrast, there would be no way to undo the significant prejudice to Headwater by excluding the errata.

---

[5] Samsung's case *Young v. Brand Scaffold Servs., LLC*, 2009 WL 4674050, at *3 (E.D. Tex. Feb. 24, 2009) ,just says that importance alone cannot vitiate the need to look to the other three factors, and *Perez v. First Am. Title Ins. Co*., 810 F. Supp. 2d 986, 989 (D. Ariz. 2011), permitted a supplemental report a year after the deadline because it was based on newly produced discovery, but does not say that is the only possible basis for supplementation under the law.

Samsung is, however, correct that timing is key to evaluating prejudice.  Rulings in this district and other have consistently held that relevant factors in evaluating the prejudice prong of the Fifth Circuit's test, and of whether any such prejudice can be remedied by adjustments to the case schedule, are: (1) whether the expert issuing the report had been deposed before the errata; and (2) how long before trial the errata was issued.   For example, in *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2019 WL 2077821, at *7 (E.D. Tex. May 9, 2019), the court rejected striking an errata where it was served before the expert's deposition and approximately three months before trial.  The court in *Ayon v. Austin Indep. Sch. Dist.*, No. 1:21-CV-00209-RP, 2023 WL 3294604, at *4 (W.D. Tex. May 4, 2023), similarly denied a motion to strike where, as in this case, the expert had not been deposed, and trial was still around 3 months away.

The cases Samsung cites on prejudice confirm this point.  In *CEATS,* the supplement at issue was served a month after the close of expert discovery. While the court excluded part of the supplement that contained new bases for opinions, it allowed another part because it was not wholly new and *"*in part because service was not egregiously late under Rule 26." *CEATS, Inc. v. TicketNetwork,* No. 15-cv-01470, 2018 WL 453732, at *2-4 (E.D. Tex. Jan. 17, 2018).  The key point in *Beller* was that the new report was issued two months after the deposition of the expert and the close of fact discovery.  Moreover, it was "unknown whether these [were] simply new opinions, or whether the original amounts were typographical or calculation errors." *Beller ex rel. Beller v. United States,* 221 F.R.D. 696, 697, 701 (D.N.M. 2003). The suggestion here is that supplementation would have been allowed if it were before the expert had been deposed, and if the supplement was to fix a typographical or calculation error – like here.  In *Akeva L.L.C. v. Mizuno Corp.,* 212 F.R.D. 306, 310 (M.D.N.C. 2002), after the plaintiff's expert's deposition, the plaintiff identified an entirely new expert and disclosed a report based on entirely new testing by

that new expert, and also offered a new report from the original expert, also based on new testing – entirely unlike the facts here.

When Headwater served Dr. Groehn's report, it offered to reschedule depositions. Samsung took up Headwater's offer, proceeding with Ms. Butler's deposition the next day (as addressed below, Ms. Butler has no opinions affected by the corrections), but pushing off the depositions of Dr. Groehn, Mr. Kline and Dr. Ugone.  Ex. 11 at 1-2.  In addition to the parties having agreed to reschedule Mr. Kennedy for May 9 and Dr. Groehn for May 13, Mr. Kline's deposition has been rescheduled to May 7, and Dr. Ugone's deposition to May 9.

Thus, like in *Huawei* and *Ayon,* and unlike in *CEATS, Beller and Akeva*, the corrected reports were served prior to the deposition of Dr. Groehn and Mr. Kennedy, and well before the close of expert discovery.  Moreover, Dr. Groehn provided a redline and a cover errata making it clear exactly what errors had been fixed, producing his corrected code at the same time.  Exs. 1, 7, 10.  The e-mail serving Mr. Kennedy's corrected report informed Samsung that Mr. Kennedy did not change a word of the text of his report and identified the specific exhibits to the report that contained corrected numbers.  Ex. 8.  By the time they are deposed on May 9 and 13, Samsung will have had around three weeks, to prepare to depose Dr. Groehn and Mr. Kennedy on the narrow corrections clearly identified in their supplemental disclosures.  This is not prejudice.

On the related but separate question of whether Samsung's experts will have the opportunity to analyze the corrections, and, should Samsung choose to do so, issue supplemental rebuttal reports before their depositions, Samsung's experts have already addressed Dr. Groehn's error in their report, and have little to do to address the correction of that error.  And the specific amount of Mr. Kennedy's reasonable royalty plays little to no role in their reports.

Ms. Butler critiques in her report the design of Dr. Groehn's survey, and so, as it is not related to the design of the survey, mentions only in passing that the prices he has in Figure 2 of his report do not match the numbers actually used in his survey. Ex. 4 ¶ 29. But Ms. Butler is not at all confused about what price points were actually used in the survey. It is therefore unclear why she would have any additional rebuttal opinions on the correction. This is likely why Samsung proceeded with her deposition the day after the receiving the corrections, despite Headwater's offer to reschedule.

Mr. Kline, who critiques Dr. Groehn's analysis of the survey results, says a bit more about the error, spending three paragraphs explaining what the error was, and showing that it results from an error in the code Dr. Groehn used for his regression model. Ex. 5 ¶ 143, Fig. 33. As noted above, Mr. Kline recognizes this was an unintentional error and " ████████████████████████ ████████████████████ " *Id.* ¶ 144. Moreover, as also noted above, Mr. Kline already has set up his own software code with which he can analyze Dr. Groehn's correction, if he has not done so already. Thus, there appears to be little if any rebuttal analysis or report-drafting necessary for Mr. Kline to respond to the correction.

Relying on the analysis of Mr. Kline and Ms. Butler, Dr. Ugone takes note of the error in Dr. Groehn's report, and points to it as one reasons he believes that Mr. Kennedy's report is unreliable. Ex. 6 ¶¶ 228-229. But Dr. Ugone does not analyze the Groehn report himself, and so the correction does not deprive him of any affirmative point or necessitate any new analysis.

On the separate question of what responding to Mr. Kennedy's correction demands of Samsung's experts, neither Ms. Butler nor Mr. Kline address Mr. Kennedy's calculations or his specific reasonable royalty opinion. So presumably neither would need to conduct any new analysis.

Dr. Ugone does, of course, address in his rebuttal report Mr. Kennedy's calculations and the reasonable royalty resulting therefrom, but to a surprisingly small degree, in only 7 or 8 out of 259 paragraphs in his report.  Dr. Ugone opines that "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Ex. 6 ¶ 229.  But the change in Mr. Kennedy's per unit royalty rate based on the correction of Dr. Groehn's report does not affect this point, except that it requires Dr. Ugone to replace the two numbers in this paragraph with the corrected ones.  Dr. Ugone also opines that the total damages resulting from Mr. Kennedy's calculations is overstated because it is many multiples of other numbers that he thinks are relevant, such as licenses and offers to purchase Headwater.  *See, e.g.,* Ex. 6 ¶ 211.a ("█████████████████████████████████████████████████████████████████████").  The new, higher total royalty resulting from Mr.  Kennedy's correction may require Dr. Ugone to repeat this exercise in division, but if anything the result strengthens the point he is making (assuming one agrees these licenses et al. are relevant in the first place).  At another point, Dr. Ugone does devote two paragraphs to criticizing Mr. Kennedy's apportionment calculations, but this critique is about the methodology used, not the specific numbers at issue.  *Id.* ¶¶ 231-232.  Finally, Dr. Ugone criticizes Mr. Kennedy for using his royalty range as the upper range of the hypothetical negotiation, without, Dr. Ugone claims, identifying a lower range.  *Id.* ¶¶ 240-242.  Again, Mr. Kennedy's specific numbers are not at issue, but rather how they are being used.  As

14

Mr. Kennedy has not changed his methodology, at most Dr. Ugone would have to replace his old numbers.

Mr. Kline and Dr. Ugone had only 21 days after opening reports to draft their entire rebuttal reports. Mr. Kline and Dr. Ugone will have had over two weeks between the service of the corrected reports and their depositions to conduct this minor amount of additional analysis and to revise a few paragraphs of their report. This does us no great or incurable prejudice. Moreover, should Samsung need some additional time for its experts to address the corrected reports, there is room in the schedule to push out the deadline for opening reports a few more days and still complete briefing well before the pre-trial conference on July 2, 2024.

**V.   The Need for Correction Was Not the Result of Any Intentional Error, Gamesmanship, or Bad Faith**

The final factor in the Fifth Circuit test is the explanation for the late disclosure. This factor has been addressed by the discussion in Section II above of why Dr. Groehn and Mr.. Kennedy's corrections were proper under Rule 26(e): the error was clearly unintentional, and its correction was not gamesmanship. There is no evidence of bad faith anywhere in the record. The corrections were made as quickly as possible once Dr. Groehn and Mr. Kennedy learned of the error, so that the corrections issued before the deposition of the experts and before the close of discovery. That the error was not caught before reports were issued, and that the error significantly affected on Mr. Kennedy's calculations, does not change these facts. The circumstances here are similar to those of the cases discussed herein denying motions to strike, and wholly dissimilar to the cases discussed herein and in Samsung's motion granting such motions.

Samsung's motion should be denied.

Dated:  April 30, 2024                    Respectfully submitted,

*/s/ Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Brian Ledahl
CA State Bar No. 186579
Ben Wang
CA State Bar No. 228712
Paul Kroeger
CA State Bar No. 229074
Neil A. Rubin
CA State Bar No. 250761
Kristopher Davis
CA State Bar No. 329627
James S. Tsuei
CA State Bar No. 285530
Philip Wang
CA State Bar No. 262239
Amy Hayden
CA State Bar No. 287026
James Milkey
CA State Bar No. 281283
Jason M. Wietholter
CA State Bar No. 337139
James N. Pickens
CA State Bar No. 307474
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
headwater@raklaw.com

Robert Christopher Bunt
Parker, Bunt & Ainsworth, P.C.
Texas State Bar No. 00787165
100 E. Ferguson Suite 418
Tyler, Texas 75702
Tel.: (903) 531-3535
rcbunt@pbatyler.com

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF System per Local Rule CV-5(a)(3).

/s/ *Marc Fenster*
Marc Fenster