# Exhibit 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:18-cv-00654-JAK-JDEx | Date | November 3, 2021 |
|---|---|---|---|
| Title | Linksmart Wireless Technology LLC v. Gogo Inc, et al. | | |

#

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Recorded |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER UNSEALING ORDER DENYING PLAINTIFF LINKSMART'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY AND DENYING PLAINTIFF'S MOTION TO EXCLUDE EXPERT (DKT. 293) AND ORDER RE PLAINTIFF'S MOTION TO EXCLUDE OPINIONS OF MICHAEL C. NEWELL (ECF NO. 296)**

The parties submitted a joint statement agreeing that no part of the Orders needs to be maintained under seal. (J. Statement, ECF No. 299.) Accordingly, the Court directs the Clerk to unseal the Orders.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | TJ |

Page **1** of **1**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | 8:18-CV-00654-JAK (JDEx) | Date | September 3, 2021 |
|---|---|---|---|
| Title | Linksmart Wireless Technology LLC v. Gogo, LLC | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) SEALED ORDER RE PLAINTIFF'S MOTION TO EXCLUDE OPINIONS OF MICHAEL C. NEWELL (DKT. 164)**

### I. Introduction

On April 20, 2018, Linksmart Wireless Technology, LLC ("Plaintiff") brought this action accusing Gogo, LLC ("Defendant" or "Gogo") of infringing U.S. Reissued Patent No. RE46,459 ("the '459 Patent"). Dkt. 1. Plaintiff moved to exclude the testimony of Michael C. Newell. ("Motion" (Dkt. 164-1)); Dkt. 190-1 (sealed version). Defendant filed an opposition to the Motion. ("Opposition" (Dkt. 198)); Dkt. 275-1 (sealed version). Plaintiff filed a reply. ("Reply" (Dkt. 230)); Dkt. 267 (sealed version). A hearing on the Motion was conducted on April 26, 2021, and a ruling was deferred until a ruling on Defendant's Motion for Summary Judgment of Non-Infringement (Dkt. 149) issued. Dkt. 278.

Based on a review of the briefing of the Motion, it has been determined it is appropriate for decision without oral argument. For the reasons stated in this Order, the Motion is **GRANTED**.[1]

---

[1] Portions of the briefs with respect to the Motions were filed under seal. Within seven days of the issuance of this Order, the parties shall file a joint statement as to whether any matter stated in this Order is information that one or more of them contends should remain under seal. Thereafter, a determination will be made as to whether any portions of this Order will be redacted in the version filed on the public docket, with a corresponding, non-redacted version filed under seal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:18-CV-00654-JAK (JDEx) | Date | September 3, 2021 |
|---|---|---|---|
| Title | Linksmart Wireless Technology LLC v. Gogo, LLC | | |

**II.    Background**

Newell's Damages Report includes what is offered as a reasonable royalty analysis for the '459 Patent. *See generally* Dkt 163-3; Dkt. 190-2 (sealed version). In his analysis, Newell used two license agreements between Plaintiff and a third-party to determine a royalty rate used to calculate a lump sum of damages. *See id*. ¶¶ 37–46, 69, 81–82, 133. Newell also considered six additional license agreements granting third-parties a license to the '459 Patent, its predecessor, and related patents or applications ("the Six Settlements"), but did not directly use these licenses to arrive at the royalty rate that he determined. *See id*. ¶¶ 53–58, 62, 101–104. For each of the Six Settlements, Newell opined that, although he was not able to identify the portion of each licensees' total revenue covered by the patented technology, the agreements established that large companies were only willing to pay a fraction of a percent of their total revenue for the licensed patents. *See id*. ¶¶ 55, 58, 62; *see also id*. ¶¶ 81, 154. Newell states that "these agreements are also the best available agreements to determine the royalty that would have been negotiated between Linksmart and Gogo at the time of the hypothetical negotiation." *See id*. ¶ 68. Newell also opines that the royalty opinion of Defendant's expert, Dr. Stephen E. Dell, is "overstated and unreliable" because it fails to consider the Six Settlements. *See id*. ¶¶ 154, 161–162.

**III.    Analysis**

   A.    Legal Standards

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93, 597 (1993), the Supreme Court explained that "the trial judge plays a 'gatekeeping role,' which 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). "The Court emphasized that the focus 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Id.* (quoting 509 U.S. at 595). "This admissibility assessment, while a flexible one, may consider the following factors: (1) whether the methodology is scientific knowledge that will assist the trier of fact; (2) whether the methodology has been tested; (3) whether the methodology has been published in peer-reviewed journals; (4) whether there is a known, potential rate of error; and (5) whether the methodology is generally accepted." *Id.*; *see also* Fed. R. Evid. 702, 703.

"Under these rules, a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6*, 802 F.3d at 1295. "But the question of whether the expert is credible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:18-CV-00654-JAK (JDEx) | Date | September 3, 2021 |
|---|---|---|---|
| Title | Linksmart Wireless Technology LLC v. Gogo, LLC | | |

or the opinion is correct is generally a question for the fact finder, not the court." *Id.* at 1296. Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

    B.    Application

Plaintiff argues that Newell's opinions concerning the Six Settlements should be excluded because he "fails to establish any actual, expected or future extent of use of the patents licensed under" those agreements. *See* Dkt. 164-1 at 6. Specifically, Plaintiff highlights that Newell "admits he has no knowledge of any sales or extent of use related to any of the Six Settlements." *Id*. at 8 (*citing* Dkt. 164-3 ¶¶ 55, 58, 62; Dkt. 164-4 at 79:1–80:9, 85:23–86:12, 91:16–21, 92:18–24; Dkt. 190-3 (sealed version)). Plaintiff argues that, rather than trying "to estimate a level of implicated sales," Newell "simply compares the lump sums of the Six Settlements to an irrelevant figure – the total corporate-wide revenues of the settling parties – and calculates a very low implicated rate from that irrelevant comparison." *Id*. at 8.

Plaintiff also argues that "Newell's opinions concerning the Six Settlements should be stricken under Fed. R. Evid. 403 and the principles delineated in the Federal Circuit's *Uniloc* case." *See id*. at 10 (*citing Uniloc U.S.A. v. Microsoft Corp*., 632 F.3d 1292, 1320–21 (Fed. Cir. 2011)). In support of these positions, Plaintiff argues that "Newell is presenting the very large and irrelevant overall revenue numbers of licenses to generate a very small implied license rate to purportedly support his overall opinion." *Id*. According to Plaintiff, by presenting "large and irrelevant overall corporate revenues and attendant miniscule implied royalty rate numbers," Newell intends "improperly [to] 'skew the damages horizon' for the jury." *Id*. Moreover, Plaintiff asserts that the prejudice to it outweighs the probative value of the evidence because "Newell does not use these agreements in his actual royalty rate calculation." *Id*. at 11.

Defendant responds that Newell properly considered the Six Settlements because the parties "would have considered [them] as part of the hypothetical negotiation." *See* Dkt. 198 at 4. Defendant argues that the Six Settlements are highly probative because they are licenses to the '459 Patent. *See id*. at 4–5. Defendant highlights that "Newell found that the Six Settlement Agreements 'provide[] an independent assessment of the value of the patented technology across relevant products and markets' and 'are the best available agreements to determine the royalty that would have been negotiated between Linksmart and Gogo at the time of the hypothetical negotiation.'" *Id*. at 5 (*citing* Dkt. 198-2 ¶ 68).

Defendant adds that "Newell simply concluded that the value of the '459 Patent to these large corporations as well as Linksmart is reflected in the amounts that they paid for a license to the '459 Patent, irrespective of their differences in annual revenue." *Id*. (*citing* Dkt. 198-2 ¶ 62). Further, Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-CV-00654-JAK (JDEx) | Date | September 3, 2021 |
| Title | Linksmart Wireless Technology LLC v. Gogo, LLC | | |

argues that Newell "used the existence of these settlement agreements to conclude that 'the vast majority of the patent licenses entered into by Linksmart for the Patent-in-Suit … are structured as licenses with lump sum royalty payments.'" *Id*. (*citing* Dkt. 198-2 ¶ 92). Thus, Defendant asserts that "[b]oth of these facts … are reliable indicators of the 'patented invention's economic value in the marketplace' and the 'form [e.g. lump sum] that a hypothetical license agreement would likely have taken." *Id*. (*quoting LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 80 (Fed. Cir. 2012) (cited as *ActiveVideo*, 694 F.3d at 80); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co*., 853 F.3d 1370, 1381 (Fed. Cir. 2017)). Defendant argues that this only "demonstrates that Linksmart was not seeking a back-end royalty through the flat fee amount because the percentages indicated when revenue was considered were each quite different." *Id*. at 6.

Plaintiff replies that Defendant's "Opposition attempts to rewrite Mr. Newell's expert report to side-step and ignore the aspects of Mr. Newell's opinions challenged by Linksmart." *See* Dkt. 230 at 1. Thus, Plaintiff argues that Defendant's positions in support for Newell's opinions are "*ex poste* attorney justification that contradicts Mr. Newell's report." *See id*. at 2. Plaintiff then argues that Defendant's "Opposition also fails to address Mr. Newell compounding his methodological error by (1) associating license lump sums with total licensee corporate revenues that have nothing to do with licensee use of the licensed patents, and (2) calculating miniscule and misleading implied royalty rates by dividing the royalty by irrelevant total corporate revenue." *Id*. at 1. Further, Plaintiff asserts that it is "undisputed between the experts that the agreed royalty would be a nonexclusive, lump sum based on a royalty rate derived from" two other agreements. *Id*. at 4. Therefore, Plaintiff contends that the Six Settlements are unnecessary to prove the form of the royalty. *Id*.

Newell did not properly account for the technological and economic differences between the Six Settlements and the license to which the parties would have agreed at the hypothetical negotiation. *Georgia–Pacific* factor 1 considers: "The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty." *Georgia–Pacific*, 318 F.Supp. at 1120. "When damages experts rely on past patent licenses in constructing their reasonable royalty analysis, they must account for 'the technological and economic differences between' the licenses, and the alleged infringement and hypothetical negotiation at issue." *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, Case No. 8:14-cv-01352-JLS (KESx), 2019 WL 8138163, at *4 (C.D. Cal. Nov. 20, 2019) (*quoting Wordtech Sys., Inc. v. Integrated Network Sols., Inc*., 609 F.3d 1308, 1320 (Fed. Cir. 2010)). *Wordtech* reversed the district court's denial of motion for new trial under Fed. R. Civ. P. 59(a), because the jury's lump-sum royalty award was "clearly not supported by the evidence" and "based only on speculation or guesswork." 609 F.3d at 1322. In rejecting respondent's argument that two lump-sum licensing agreements to the patents-in-suit in that case supported the jury's award, *Wordtech* held that the licenses "provide no basis for comparison with [the] infringing sales." *Id*. As explained in in the opinion, "[n]either license describes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-CV-00654-JAK (JDEx) | Date | September 3, 2021 |
| Title | Linksmart Wireless Technology LLC v. Gogo, LLC | | |

how the parties calculated each lump sum, the licensees' intended products, or how many products each licensee expected to produce," and respondent's counsel conceded that the record did not supply "any idea of the volume of sales or projected sales." *Id*. For these reasons, the Federal Circuit concluded that, "without additional data, the licenses offered the jury 'little more than a recitation of royalty numbers.'" *Id*. (*quoting Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1329 (Fed. Cir. 2009)).

The shortcomings in Newell's report are very similar. It provides no analysis about the technological and economic differences between the license the parties would have negotiated in a hypothetical negotiation and the terms in the Six Settlements. Newell conceded he was unable to identify the portion of each licensees' total revenue covered by the patented technology in the Six Settlements. *See id*. ¶¶ 55, 58, 62; *see also id*. ¶¶ 81, 154. Rather than taking these issues into account in his analysis, e.g., by "consider[ing] how many licensed products the licenses could be expected to make [or sell]," *see Labyrinth Optical Techs. LLC v. Alcatel-Lucent USA, Inc*., No. 5:12-cv-0759-AG (MLGx), 2015 WL 12720323, at *4 (C.D. Cal. Mar. 10, 2015), Newell simply concluded that large companies were willing to pay a small lump-sum royalty compared to their overall revenues. *See* Dkt. 198-2 ¶¶ 55, 58, 62. This position, if presented at trial, would be akin to *Wordtech*, where, "without additional data, the licenses offer[] the jury 'little more than a recitation of royalty numbers.'" *Wordtech*, 609 F.3d at 1322. Although Newell's comparison of overall revenues could potentially qualify as an economic difference, "alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 79 (Fed. Cir. 2012). Additionally, as Defendant concedes, Newell's conclusion was "irrespective of [the] differences in annual revenue" of Plaintiff and the licensees of the Six Settlements. *See* Dkt. 198 at 5 (*citing* Dkt. 198-2 ¶ 62).

Also persuasive is Plaintiff's position that Newell's opinions on the Six Settlements would improperly "skew the damages horizon for the jury." *Uniloc*, 632 F.3d at 1320. *Uniloc* affirmed a district court decision to grant a new trial on damages because "the jury's damages award was fundamentally tainted by the use of a legally inadequate methodology[.]" *Id*. at 1295. In reaching this determination, the Federal Circuit considered the methodology used by Plaintiff's damages expert, i.e., his use of "a check to determine whether his $564,946,803 royalty figure was reasonable by comparing it to his calculation of Microsoft's approximate total revenue for Office and Windows of $19.28 billion." *See id*. at 1318–21 (internal quotation marks removed). *Uniloc* held that this "'check' was improper under the entire market value rule." *See id*. at 1319. *Uniloc* concluded that, "[t]he disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Id*. at 1320. *Uniloc* also rejected plaintiff's argument that the check was not intended to invoke the entire market value rule: "[e]ven if the jury's damages calculation was not based wholly on the entire market value check, the award was supported

Case 8:18-cv-00654-JAK-JDE Document 296 Filed 09/03/21 Page 6 of 7 Page ID #:11672

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:18-CV-00654-JAK (JDEx) | Date | September 3, 2021 |
|---|---|---|---|
| Title | Linksmart Wireless Technology LLC v. Gogo, LLC | | |

in part by the faulty foundation of the entire market value." *See id*. at 1321. Thus, the "check" improperly "lend[ed] legitimacy to the reasonableness" of the faulty damages calculation. *See id*.

Defendant seeks to use the overall revenue of the licensees of the Six Settlement to lend legitimacy to the reasonableness of its proposed royalty. By contrast, in *Uniloc*, Plaintiff used the overall revenue *of the accused product* to lend legitimacy to the reasonableness of its proposed royalty. *See id*. Thus, the "check" in *Uniloc,* although deficient, was better tethered to the facts of that case because it was associated with revenue from the accused product. Here, Defendant relies only on the licensee's overall revenues.

In general, the "degree of comparability" of licenses, "as well as any failure on the part of [the proponent's] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Communs., Inc*., 694 F.3d 1312, 1333 (Fed. Cir. 2012). However, if an expert fails to account for the technological and economic differences of a license, the opinion must be excluded. *See Pavo*, 2019 WL 8138163, at *5–6 (excluding expert testimony regarding lump-sum licensing agreements for failing adequately to explain technological and economic differences).

Defendant's arguments in support of Newell's opinions on the Six Settlements are unpersuasive. Although licenses to the patent-in-suit are certainly relevant, this alone is not sufficient to overcome the failure of Newell to account for the technological and economic differences between the Six Settlements and the hypothetical license the parties would have negotiated. *See Wordtech*, 609 F.3d at 1322 (lump sum licenses to the patents-in-suit were insufficient to support the jury award where there was no testimony discussing the technological and economic differences). Further, the parties do not dispute that a lump sum royalty is the proper form in this case is. *See* Dkt. 230 at 4. Thus, Defendant's argument that the licenses are necessary to prove the form of the royalty is unpersuasive.

Defendant's attempts to distinguish *WordTech* and *Uniloc* are also unpersuasive. Defendant argues that the decision in *Wordtech* does not apply to the present case because there, the plaintiff "offered no expert opinion on damages." *See* Dkt. 198 at 7–8 (*citing Wordtech*, 609 F.3d at 1319). However, Newell's discussion of the Six Settlements offers little more than the testifying witness offered in *Wordtech*. Defendant also argues that the decision in *Uniloc* is distinguishable because there the plaintiff was offering its expert's testimony "to attack the veracity of the defendant's damages expert by asserting these large overall revenues suggested that defendant's damages expert's opinion was unreasonably low and that a much higher royalty value should have been used." *See* 198 at 9 (*citing Uniloc*, 632 F.3d at 1320). However, by reciting the lump-sum amounts as a percentage of the licensee's total revenue, Newell suggests that Plaintiff's damages expert's opinion was unreasonably high and that a much lower royalty value should have been used. That the challenged opinions in this case are ones offered by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-CV-00654-JAK (JDEx) | Date | September 3, 2021 |
| Title | Linksmart Wireless Technology LLC v. Gogo, LLC | | |

Defendant to seek to show that the royalty value should be lower, rather than by Plaintiff to seek to show that the royalty value should be higher, does not affect the applicability of *Uniloc*.

IV.     **Conclusion**

For the reasons stated in this Order, Defendant's Motion to Exclude Testimony of Michael C. Newell is **GRANTED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer     TJ