**PUBLIC VERSION**

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>　　　　　Defendants. | Case No. 2:22-cv-00422-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF HEADWATER RESEARCH LLC'S MOTION TO EXCLUDE OR STRIKE CERTAIN REBUTTAL EXPERT OPINIONS OF PHILIP W. KLINE**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................ 1

II. Legal Standards .......................................................................................................... 2

III. Mr. Kline's opinions concerning how Dr. Groehn designed his pilot and conjoint surveys should be excluded because he is not qualified to offer them. ............................................... 3

IV. Mr. Kline's opinions concerning how Dr. Groehn's survey design should be also excluded or struck because they are largely duplicative with those of Ms. Butler. ............................... 5

V. Mr. Kline's speculation concerning what prices Dr. Groehn intended to show survey respondents should be excluded under *Daubert* as unsupported by and contrary to the facts of the case. ................................................................................................................... 6

VI. Conclusion .................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................................... 2, 3, 4, 6

*Droplets, Inc. v. Yahoo! Inc.*,
  No. 12-cv-037333-JST, 2021 WL 9038355 (N.D. Cal. Aug. 9, 2021) ...................... 5

*Elliott v. Google, Inc.*,
  860 F.3d 1151 (9th Cir. 2017) .................................................................................. 5

*Hearing Components, Inc. v. Shure, Inc.*,
  No. 9:07-cv-104, 2008 WL 5572824 (E.D. Tex. Dec. 1, 2008) ................................ 6

*King v. Cardinal Servs., LLC*,
  No. 2:19-cv-00217-RSP, 2021 WL 1377261 (E.D. Tex. Apr. 11, 2021) .................. 2

*Metaswitch Networks Ltd. v. Genband US LLC*,
  No. 2:14-cv-744-JRG-RSP, 2016 WL 874775 (E.D. Tex. Mar. 7, 2016) ................. 3

*Niblock v. Univ. of Ky.*,
  No. 5:19-cv-394-KKC, 2023 WL 4842315 (E.D. Ky. July 28, 2023) ....................... 5

*Senne v. Kansas City Royals Baseball Corp.*,
  591 F. Supp. 3d 453 (N.D. Cal. 2022) ...................................................................... 4

*State of New York v. United Parcel Serv.*,
  No. 15-cv-1136-KBF, 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) ...................... 5

*Thomas v. T.K. Stanley, Inc.*,
  No. 9:12-cv-158, 2014 WL 12814614 (E.D. Tex. Oct. 18, 2014) ............................ 6

**Rules**

Fed. R. Evid. 702(a) ............................................................................................................ 2

I.  **Introduction**

Samsung seeks to offer rebuttal testimony from Philip W. Kline criticizing the design of the consumer survey performed by Headwater's survey expert Dr. Andreas Groehn.[1] This testimony should be excluded for several reasons.

*First*, Mr. Kline lacks any training or experience that qualifies him to offer opinions on consumer survey design. Mr. Kline is an economist who has never designed or conducted a survey. His survey-related experience is limited to use of data that results from a survey in economic analyses. Despite this, he offers multitudinous opinions on the design of Dr. Groehn's "pilot" and "conjoint" surveys. Put simply, a conjoint survey presents survey respondents with different purchasing options (here, different phone configurations with varying pricing and features); Dr. Groehn used a pilot survey to aid in determining which features survey respondents care most about to inform which to include in his conjoint study. Given his entire lack of experience with survey design, Mr. Kline is not qualified to testify concerning the design of either of Dr. Groehn's surveys.

*Second*, Mr. Kline's survey-design opinions are duplicative and cumulative with those of another of Samsung's experts, Sarah Butler, who is qualified as a survey expert and who has provided her own rebuttal opinions criticizing the design of Dr. Groehn's surveys. Even if his survey-design opinions did have any probative value (they do not since he is not qualified to give them), that probative value would be outweighed by the prejudice that duplicative testimony brings to Headwater via the dangers of confusing the issues and misleading the jury, as well as simply wasting valuable trial time.

---

[1] Dr. Kline also offers opinions criticizing Dr. Groehn's use of the survey data to perform subsequent calculations, and criticizing Headwater's damages expert David Kennedy for relying upon the result of Dr. Groehn's calculations. Headwater does not seek to exclude these opinions.

1

*Third*, in his supplemental report, Mr. Kline offers speculative opinions related to corrections Dr. Groehn made to his original report, in which he questions the veracity of Dr. Groehn's statements in his errata and in his deposition testimony under oath. Dr. Groehn made an error in his original report resulting from failing to enter the correct price points from his survey into both a table in his original report and in the software he used to analyze the survey results. The correct price points were the prices actually shown to the survey respondents when they were asked to choose from various sets of smartphone options.  When he was made aware of this error, Dr. Groehn reran his analysis using the correct price points—not those in the body of his original report or code, but those actually shown to survey respondents.  Mr. Kline speculates that the incorrect price points in the original report were actually the prices Dr. Groehn intended to use in his survey all along, such that his amended report does not effectively correct Dr. Groehn's prior error. He offers no evidence, facts, or data supporting this conclusion. In fact, the evidence of record establishes that Mr. Kline's speculation is simply wrong. Mr. Kline's "intent" opinions should be excluded under *Daubert* as bald speculation that is unsupported by any facts or data. In addition, these opinions improperly venture into territory that is within the sole province of the jury as fact-finder—whether Dr. Groehn is telling the truth about the origin and cause of the errors in his original report. Mr. Kline's "intent" opinions are improper for this additional reason.

| II. | Legal Standards |
|---|---|

Federal Rule of Evidence 702 requires that a witness proffered as an expert be "***qualified*** as an expert by knowledge, skill, experience, training, or education" such that the proffered "expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a) (emphasis added); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also King v. Cardinal Servs., LLC*, No. 2:19-cv-00217-RSP, 2021 WL 1377261, at *1-2 (E.D. Tex. Apr. 11, 2021) (excluding

expert testimony from an engineer, rather than a medical doctor, concerning "medical causation of [plaintiff]'s injuries" because the testimony "exceed[ed] [the engineer's] scientific knowledge").

In addition to the proffered expert possessing adequate qualifications and experience concerning the subject matter of his testimony, an expert's opinions must also be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 592. "An absence of information is not a license to speculate"; rather, expert opinions must be "supported by sufficient facts or data." *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 874775, at *3 (E.D. Tex. Mar. 7, 2016) (quotation marks omitted).

### III. Mr. Kline's opinions concerning how Dr. Groehn designed his pilot and conjoint surveys should be excluded because he is not qualified to offer them.

Mr. Kline is not a survey expert. In fact, he admitted at his deposition that he has never independently designed and conducted a consumer survey of any kind. Ex. 1 (Kline Depo.) at 18:3-16; *see also id.* at 11:3-12:9, 14:2-25, 16:8-18:2. He has only "[a]dvis[ed]" those who do design surveys "as to the ***uses that the data would be put***, the types of people we would be interested in surveying, probably … ***as someone who would be using the survey data***." *Id.* at 18:9-16 (emphases added); *see also id.* at 12:10-14:1, 15:1-16:16. And he has only participated in such "advising" "a few" times, "less than five." *Id.* at 18:17-22. Moreover, none of those instances involved a conjoint survey, the type of survey involved here. *Id.* at 18:23-19:1; *see also id.* at 46:5-12. Aside from this case, he has also never before "criticized the design of a consumer survey presented by an opposing expert." *Id.* at 20:8-14.

Put simply, the only experience Mr. Kline appears to have related to consumer surveys is "the ***use*** of survey data" in economic analyses. *Id.* at 20:18-21:1 (emphasis added). This is unsurprising since he has an academic background in economics (*id.* at 9:19-22) and the "primary

3

focus of [his] practice is on intellectual property, licensing, valuation, and quantification of damages in litigation" (*id.* at 15:10-12). *See also generally id.* at 11:3-18:2; Ex. 2 (Kline Original Report) at App'x A. This is in contrast to Headwater's survey expert Dr. Groehn, who has "conducted … well over 100 consumer surveys, possibly up to 200," with "approximately half" being conjoint surveys. Ex. 4 (Groehn Depo.) at 220:5-19.

Yet in this case, Mr. Kline offers numerous opinions and criticisms concerning the ***design*** of Dr. Groehn's surveys. Ex. 2 ¶¶16, 57-107, 116-128; *see also* Ex. 3 (Kline Supplemental Report) ¶15. Mr. Kline's opinions on survey design are wide-reaching, relating to (1) the target population of Dr. Groehn's survey (Ex. 2 ¶¶60-66); (2) the features or "attributes" included in his pilot survey (*id.* ¶¶67-70); (3) the "decoy" attributes included in his conjoint survey (*id.* ¶¶71-81); (4) the demographics of the respondents to the conjoint survey (*id.* ¶¶85-89); (5) the way "battery life" is defined and presented in the conjoint survey (*id.* ¶¶90-102); (6) the way Dr. Groehn chose to present models and brands in his conjoint survey (*id.* ¶¶103-107); and (7) the phone model names that Dr. Groehn chose to present in his conjoint survey (*id.* ¶¶116-128). And despite admitting he has no experience with conjoint surveys at all, he also offers a lengthy discussion of conjoint surveys and associated academic literature. *Id.* ¶¶30-42. This cannot pass muster under *Daubert*.

Indeed, numerous courts have excluded expert testimony concerning consumer survey design where the expert lacked sufficient background in that specific field. For example, in *Senne v. Kansas City Royals Baseball Corp.*, the court excluded a defense expert that "offer[ed] opinions about purported flaws in [plaintiff's expert's] survey" because she was "an expert in statistics," not "survey design or fielding surveys." 591 F. Supp. 3d 453, 486-88 (N.D. Cal. 2022) (cleaned up). This is in part because "permitting a non-survey … expert to testimony on the[se] topics is likely to prejudice [the opposing party] through the aura of authority experts often exude."

4

*Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-037333-JST, 2021 WL 9038355, at *8 (N.D. Cal. Aug. 9, 2021) (quotation marks omitted); *see also Niblock v. Univ. of Ky.*, No. 5:19-cv-394-KKC, 2023 WL 4842315, at *4 (E.D. Ky. July 28, 2023) (excluding expert testimony regarding survey design and noting that the expert's "expertise in other areas … does not render her an expert on survey methodology"); *State of New York v. United Parcel Serv.*, No. 15-cv-1136-KBF, 2016 WL 4735368, *8 (S.D.N.Y. Sept. 10, 2016) (excluding expert testimony concerning a consumer survey where the expert "ha[d] never before designed a consumer survey" and "testified that his primary experience as an expert is in providing opinions regarding damages in employment cases"); *cf. Elliott v. Google, Inc.*, 860 F.3d 1151, 1160 (9th Cir. 2017) (affirming exclusion of expert testimony concerning surveys designed and conducted by counsel, rather than by someone qualified to design or interpret surveys).

The Court should do the same here, and exclude Mr. Klein's opinions concerning Dr. Groehn's survey design because he lacks any education or experience that would qualify him to offer those types of opinions.

**IV.    Mr. Kline's opinions concerning how Dr. Groehn's survey design should be also excluded or struck because they are largely duplicative with those of Ms. Butler.**

In addition to Mr. Kline lacking the appropriate qualifications to opine as to survey design in the first place, Mr. Kline's survey-design opinions are also largely duplicative and cumulative with those from Ms. Butler, another of Samsung's experts, who the parties agree is qualified to offer survey-design opinions. Like Mr. Kline, Ms. Butler offers opinions and criticisms concerning (1) the target population of Dr. Groehn's survey (Ex. 5 (Butler Report) ¶¶90-91); (2) the "decoy" attributes included in his conjoint survey (*id.* ¶¶78-83); (3) the way "battery life" is defined and presented in the conjoint survey (*id.* ¶¶36-67); (4) the way Dr. Groehn chose to present models and brands in his conjoint survey (*id.* ¶¶69-74, 77); and (5) the phone model names that Dr. Groehn

5

chose to present in his conjoint survey (*id.* ¶¶74, 77).

Mr. Kline's survey-design opinions should be excluded or struck for this additional independent reason because even if his testimony were admissible under *Daubert*, "[m]ultiple experts testifying on the same subject is unhelpful and needlessly cumulative," rendering any "probative value … substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time" under Federal Rule of Evidence 403. *Thomas v. T.K. Stanley, Inc.*, No. 9:12-cv-158, 2014 WL 12814614, at *2 (E.D. Tex. Oct. 18, 2014); *see also Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-cv-104, 2008 WL 5572824, at *3-4 (E.D. Tex. Dec. 1, 2008) (excluding testimony of one expert concerning "background knowledge of one of ordinary skill in the art" as "cumulative and of marginal probative value" in view of a second expert's testimony concerning patent validity).

**V.     Mr. Kline's speculation concerning what prices Dr. Groehn intended to show survey respondents should be excluded under *Daubert* as unsupported by and contrary to the facts of the case.**

With his April 22, 2024 amended report, Dr. Groehn submitted an Errata Statement indicating that the "error was inadvertent and due to a data entry error," nothing else. Ex. 6 (Groehn Errata Statement) ¶2. Dr. Groehn also submitted a declaration to this Court on April 30, 2024, providing even more color: "The software that I used to perform certain computations … requires that I input into a code file various information about the attributes shown to respondents, including the price points …. However, as a result of an inadvertent data entry error, I failed to enter [certain values] correctly into the Mathematica code file. Instead, I left values in these files from a prior, unrelated study that I had used the Mathematica software with." Dkt. No. 207-1 (Groehn Decl.) ¶4. Dr. Groehn further explained the origin and nature of his error in the same way when questioned about it repeatedly at his deposition. *See* Ex. 4 at 67:11-68:11, 69:6-9, 70:14-75:2, 82:9-83:17. The record is therefore clear that Dr. Groehn did not intend to show the prices in his original

6

report to survey respondents; he intended to (and did) show them the prices in his amended report. *See* Ex. 7 (Groehn Amended Report, redlined version) ¶76 (Table 3).

Despite this, in his May 9, 2024 supplemental report, Mr. Kline speculates as to what prices Dr. Groehn intended to show survey respondents, ultimately concluding that the "highly probably case [is] that Dr. Groehn truly intended to test the prices that appeared in his [original rather than amended] report and code, that could not be achieved absent re-running his Conjoint Survey." Ex. 3 ¶23. He bases that conclusion not on facts or data, but on mere speculation that "it is more likely that Dr. Groehn's error occurred in the price levels of the Conjoint Survey itself, which were not easily reviewed." *Id.* ¶20. He testified similarly at his deposition, admitting that he did not have any evidence to support his conclusions. Ex. 1 at 148:18-158:12. But his conclusions are not only speculative and unsupported by any facts or data, but are also contrary to the actual evidence of record, as discussed above.

To the extent Samsung argues that other of Mr. Kline's opinions provide support for his conclusions, despite Dr. Groehn's sworn testimony to the contrary, those other opinions are also unsupported speculation and lack any rooting in facts or data. For example, Mr. Kline alleges that the price points listed in the original report "appear to be more logical …, following a more consistent pattern," but provides no explanation or evidence of why this means that Dr. Groehn intended to use price points that Mr. Kline subjectively believes are "more logical;" nor does he provide any evidence that the prices listed in the original report are in fact "more logical." Ex. 3 ¶¶21-22.

In addition, Mr. Kline further alleges that "the top Samsung price level in the Conjoint Survey (**$1,199**) stands out for not ending in either $49 (e.g., $749) or $99 (e.g., $799) and does not reflect a price level that customers would be likely to see in the actual market." *Id.* ¶22

7

(emphasis added). He again provides no evidence for either of these conclusions. And despite being shown a capture of a Samsung's own website that shows a price of ***$1,119.99*** for a real-world Samsung device (Ex. 8 at 1 (emphasis added)) with what he admits is a "similar" configuration as a device profile shown in the conjoint survey, he refused to change his opinions on this point. Ex. 1 at 160:2-164:5, 165:22-166:5. He also oddly claimed that Dr. Groehn does not cite this website in his report (*id.* at 246:23-247:16), although a cursory review of Dr. Groehn's report reveals that he does. Ex. 7 ¶67 & n.40. At his deposition, Dr. Groehn confirmed numerous times that he cites Samsung's website, and particularly the portion of it concerning the S24 series of devices, in support of his price choices for his conjoint survey. Ex. 4 at 85:14-86:1, 86:23-88:2, 91:16-92:13, 95:6-97:2, 181:7-182:5.

Mr. Kline's opinions concerning what set of price points Dr. Groehn "intended" to show his survey respondents should be excluded because they are based on nothing more than unsupported speculation that is also contrary to the facts of the case. Moreover, Mr. Kline's testimony on this point ventures into issues that are exclusively within the province of the jury as fact-finder—evaluating Dr. Groehn's credibility and the veracity of his testimony on the origins and causes of the errors that he corrected.

### VI.   Conclusion

For the foregoing reasons, Headwater respectfully requests that the Court exclude or strike the portions of Mr. Kline's opinions that concern survey design, including those addressing which price points that Dr. Groehn intended to show in his survey.

| | |
|---|---|
| Dated: May 16, 2024 | Respectfully submitted,<br><br>/s/ *Marc Fenster*<br>Marc Fenster<br>CA State Bar No. 181067<br>Reza Mirzaie<br>CA State Bar No. 246953<br>Brian Ledahl<br>CA State Bar No. 186579<br>Ben Wang<br>CA State Bar No. 228712<br>Paul Kroeger<br>CA State Bar No. 229074<br>Neil A. Rubin<br>CA State Bar No. 250761<br>Kristopher Davis<br>CA State Bar No. 329627<br>James S. Tsuei<br>CA State Bar No. 285530<br>Philip Wang<br>CA State Bar No. 262239<br>Amy Hayden<br>CA State Bar No. 287026<br>James Milkey<br>CA State Bar No. 281283<br>Jason M. Wietholter<br>CA State Bar No. 337139<br>James N. Pickens<br>CA State Bar No. 307474<br>RUSS AUGUST & KABAT<br>12424 Wilshire Blvd. 12th Floor<br>Los Angeles, CA 90025<br>Telephone: 310-826-7474<br>headwater@raklaw.com<br><br>Robert Christopher Bunt<br>Parker, Bunt & Ainsworth, P.C.<br>Texas State Bar No. 00787165<br>100 E. Ferguson Suite 418<br>Tyler, Texas 75702<br>Tel.: (903) 531-3535<br>rcbunt@pbatyler.com<br><br>**ATTORNEYS FOR PLAINTIFF,**<br>**Headwater Research LLC** |

9

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System under seal, and served defendants with a copy via electronic mail.

/s/ Marc Fenster
Marc Fenster

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Headwater has complied with the meet and confer requirement in Local Rule CV-7(h) by meeting and conferring with counsel for Defendants on May 9, 2024. For Headwater, Kristopher Davis, James Tsuei, and Jason Wietholter of Russ August & Kabat LLP attended the conference. For Samsung, Sara Fish, Thad Kodish, and Jared Hartzman of Fish & Richardson P.C. attended the conference. Plaintiff explained the basis for its proposed motion to exclude or strike, and Defendants explained why they believe the motion lacks good cause. The parties could not reach an agreement, and discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve. Defendants oppose this motion.

/s/ Marc Fenster
Marc Fenster