**PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC<br><br>            *Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>            *Defendants*. | Case No. 2:22-CV-00422-JRG-RSP |

**SAMSUNG'S *DAUBERT* MOTION AND**
**MOTION TO STRIKE EXPERT TESTIMONY OF MR. DAVID KENNEDY**

**PUBLIC VERSION**

## <u>TABLE OF CONTENTS</u>

I.    LEGAL STANDARD ................................................................................................ 2

II.    ARGUMENT ......................................................................................................... 3

    A.    Mr. Kennedy's Damages Demand Is Not Sufficiently Reliable To Be
    Presented To The Jury ................................................................................ 3

        1.    Mr. Kennedy's Opinions Rely on the Flawed Testing Data and
        Unfounded Opinions of Dr. Wesel ................................................ 3

        2.    Mr. Kennedy's Opinions are Based on an Unreliable Conjoint
        Analysis by Dr. Groehn ................................................................ 5

        3.    Mr. Kennedy's "Corrected" Report Highlights the Fundamental
        Unreliability Associated with His Analysis ................................... 6

        4.    Mr. Kennedy's Apportionment "Adjustments" Are Not Tied to
        the Facts of this Case ................................................................... 7

    B.    Mr. Kennedy's Use of Non-Comparable Licenses is Improper ............................ 9

    C.    Mr. Kennedy's Accounting of Samsung's Internal Marketing Documents
    is Nothing More Than a Recitation of Irrelevant Hearsay .................................. 11

    D.    Mr. Kennedy Improperly Addresses Future Damages ........................................ 12

III.    CONCLUSION ..................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*In re Apotex, Inc.*,
   49 F. App'x 902 Fed. Cir. 2002 ...............................................................................12

*Apple v. Wi-LAN*,
   25 F.4th 960 (Fed. Cir. 2022) .....................................................................................9

*BMC Software, Inc., v. ServiceNow, Inc.*,
   2:14-cv-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) .................................9

*Bonin v. Sabine River Auth. of Texas*,
   No. 1:19-CV-00527-MJT, 2022 WL 19731177 (E.D. Tex. Nov. 9, 2022) ..............6

*Dart v. Kitchens Bros. Mfg. Co.*,
   253 F. App'x 395 (5th Cir. 2007) ..............................................................................7

*Daubert v. Merrill Dow Pharms.*,
   509 U.S. 579 (1993)..........................................................................................2, 3, 7

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) .....................................................................................6

*Finjan LLC v. SonicWall, Inc.*,
   84 F.4th 963 (Fed. Cir. 2023) ....................................................................................4

*IP Innovation L.L.C. v. Red Hat, Inc.*,
   705 F. Supp. 2d 687 (E.D. Tex. 2010)......................................................................4

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)................................................................................11

*M2M Sols. LLC v. Motorola Sols., Inc.*,
   No. 12-cv-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016)...............................5

*Omnitracs, LLC and XRS Corp. v. Platform Science, Inc.*,
   Dkt. No. 451, No. 20-cv-958 (S.D. Cal. Apr. 8, 2024)...........................................13

*Open Text S.A. v. Box, Inc.*,
   No. 13-CV-04910-JD, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) .......................8

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)..................................................................................11

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
   No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) .................6

*Sci. Applications Int'l Corp. v. U.S.*,
  No. 17-CV-825, 2024 WL 94499 (Fed. Cl. Jan. 9, 2024) ......................................................13

*Therasense, Inc. v. Becton, Dickinson and Company*,
  No. C 04-02123 WHA, 2008 WL 2323856 ( N.D. Cal. May 22, 2008)..................................12

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)..............................................................................................11

*United States v. Mejia*,
  545 F.3d 179 (2d Cir. 2008)....................................................................................................12

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)..................................................................................................9

*VLSI Technology LLC v. Intel Corporation*,
  87 F.4th 1332 (Fed. Cir. 2023) ...............................................................................................11

**Statutes**

35 U.S.C. § 284...........................................................................................................................12

**Other Authorities**

Fed. R. Evid. 702 ...........................................................................................................................2

Fed. R. Evid. 703 ................................................................................................................6, 11, 12

**PUBLIC VERSION**

████████████████████████████

## EXHIBIT INDEX & NOTES

| Exhibit | Description |
|---------|-------------|
| A | Excerpts from the Corrected Expert Report of Mr. David Kennedy with attachments, dated April 22, 2024 |
| B | Excerpts from the Original Expert Report of Mr. David Kennedy with attachments, March 29, 2024 |
| C | Excerpts from the Expert Report of Dr. Richard D. Wesel, dated March 29, 2024 |
| D | Excerpts from the Deposition Transcript of Mr. David Kennedy (Rough), May 14, 2024 |
| E | Excerpts from ███████████ License Agreement, HW_00014219 |

\*       Emphasis added unless otherwise noted.

\*\*       Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\*       In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

**PUBLIC VERSION**

███████████████████████████████

Headwater's damages expert Mr. David Kennedy seeks a (newly asserted) range of ████ ████████ as an alleged "reasonable" royalty through trial, based wholly on two substantively flawed inputs—one from Dr. Richard Wesel and one from Dr. Andreas Groehn.  First, Mr. Kennedy relies on Dr. Wesel's "battery savings testing" to measure the power savings of the accused features – not the technical footprint of the patents.  Further exacerbating the unreliability of Dr. Wesel's opinions for Mr. Kennedy, Dr. Wesel admitted some unnamed consultant performed most of the tests, and Dr. Wesel **never** previously performed battery testing, **never** previously tested smartphones, and examined only **one** accused feature before drawing his broad conclusions about "battery savings."  Dkt. 234 (M. to Strike Wesel Testing) at 1.  None of this was known to Mr. Kennedy, who wrongly opined and testified that Dr. Wesel did his own "rigorous" testing.  Second, Mr. Kennedy relies on Dr. Groehn's conjoint analysis to assign an "economic value of additional battery life to smartphone owners," despite the fact that conjoint analysis is not an accepted way to reliably estimate the price of a feature (let alone a benefit) of a complex product in a complex market.  Dkt. 251 (M. to Strike Groehn) at 6-8.  Indeed, without Dr. Groehn's (improper) numbers, Mr. Kennedy's damages would be zero.

Even setting his flawed inputs aside, Mr. Kennedy's approach is not tied to the facts of the case, is out of touch with economic reality, and should not withstand the scrutiny of this Court. The fundamental unreliability of Mr. Kennedy's opinion is proven by the fact that—less than two months ago—Mr. Kennedy originally concluded "upper bound" damages of █████████ based on the very same methodology, and stated this "**upper bound is an economically reasonable price for Samsung to pay for the Hypothetical License.**" Ex. A (Kennedy Rpt.) at ¶ 424 (emphasis added); *see also* Ex. B (Kennedy Original Rpt.) at ¶ 424.  That Mr. Kennedy initially analyzed the *Georgia-Pacific* factors and determined that "prudent" and "reasonable" parties at the hypothetical

1

**PUBLIC VERSION**

███████████████████████

negotiation would agree to ████████ as an "upper bound" and then—without explanation—equally agree that the same parties would agree to more than ████████ as an "upper bound" proves that his analysis lacks the sufficient rigor, review, or reliability to legitimately be presented to a jury.

Separate from his reasonable royalty opinion, Mr. Kennedy offers several other fundamentally improper opinions that have no relevance to his damages calculations and are meant only to prejudice the jury to further inflate his already astounding damages number.  He cherry-picks statements and charts from Samsung's marketing documents while ignoring the documents' content and context, despite the fact that they have no bearing on his methodology and adjustments.  He relies on a non-comparable license agreement (and its amendments) between ████████████ ████—entities that this Court has **already determined are not arm's length**—as a "reasonableness" check on his damages demand, despite the fact that he admits 1) he has no idea how these rates were calculated, 2) no third party ever paid these rates, and 3) the license has "significant" differences from the hypothetical negotiation.  Finally, he calculates an additional ████████ as future damages owed to Headwater, despite the approach being barred by statute.

## I.   LEGAL STANDARD

The Court is familiar with Fed. R. Evid. 702's requirement that an expert's testimony be (a) based on specialized knowledge helpful to the trier of fact, (b) based on sufficient facts or data, (c) based on reliable methods, and (d) reliably applied to the facts of the case, as well as the gatekeeping task with which the Court is charged under *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 589 (1993).

## II.     ARGUMENT

### A.     Mr. Kennedy's Damages Demand Is Not Sufficiently Reliable To Be Presented To The Jury

The Court should exclude the entirety of Mr. Kennedy's reasonable royalty damages opinions.  **First**, as the foundation of his opinions, Mr. Kennedy relies on testing data from Dr. Wesel that are inherently improper and that test the wrong footprint of the patented invention. **Second**, Mr. Kennedy compounds the unreliability of his analysis by basing his opinions on the flawed survey results from Dr. Groehn.   The fundamental unreliability of Mr. Kennedy's methodology is best exemplified by the fact that he originally sponsored, based on the same verbatim *Georgia-Pacific* analysis, that Samsung would agree to pay—and Headwater would agree to accept—nearly ███████████ *less* than the ██████ of dollars damages demand he now claims would be "reasonable."   As another example, Mr. Kennedy conducted a series of "adjustments" that are based on generic Samsung data untethered to the facts of this case.   For these reasons, the Court should exclude the entirety of Mr. Kennedy's reasonable royalty opinions pursuant to its gatekeeping responsibilities under *Daubert.*

### 1.     Mr. Kennedy's Opinions Rely on the Flawed Testing Data and Unfounded Opinions of Dr. Wesel

Mr. Kennedy relies entirely on Headwater's technical expert, Dr. Wesel, and "his" battery testing, to assume that the technology claimed in the asserted patents results in a "5-10% increase in effective battery capacity" for the accused features, attributable to the asserted patents.   Ex. A (Kennedy Rpt.) at ¶ 108.  Mr. Kennedy never spoke to Dr. Wesel about the methodology or results of his testing before relying on it—Mr. Kennedy instead just parroted Dr. Wesel's report the same day Mr. Kennedy finalized his report.   As explained in Samsung's Motion to exclude "Battery Testing" Opinions offered by Dr. Wesel, there are serious errors in Dr. Wesel's testing, including that some unknown person actually did most of the tests in unknown conditions.   Beyond the fact

that he did not do most of the testing, Dr. Wesel has no relevant expertise in running or even managing these tests. *See* Dkt. 234. Moreover, Dr. Wesel failed to establish any direct connection between the battery testing and the actual limitations of the asserted patents' claims, and thus Mr. Kennedy's analysis is untethered to the actual benefits of the asserted patents. *Id.* at 15-16. *See Finjan LLC v. SonicWall, Inc*., 84 F.4th 963, 976 (Fed. Cir. 2023) (holding "district court did not abuse its discretion by concluding that Finjan's expert failed to carefully tie his analysis to allegedly infringing features and to exclude value attributable to unpatented features" where the technical expert analysis "never established 'the extent to which [allegedly apportioned] sub-features involve'" the claim limitations). To the extent the Court excludes Dr. Wesel's testing analysis, Mr. Kennedy's opinions relying on Dr. Wesel must also be excluded, including at Ex. A (Kennedy Rpt.) at ¶¶ 88-114, 117-118, 144-145, 159, 162-163, 401-405, 423-428, 430, 432-437, Exs. 1-6, 10B, 11. *See IP Innovation L.L.C. v. Red Hat, Inc.,* 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010) (excluding reasonable royalty damages opinions where "methodology [] does not show a sound economic connection between the claimed invention and this broad proffered royalty base").

Even if Dr. Wesel's testing data were somehow reliable, Mr. Kennedy's damages opinions are improperly based on evaluating only **one** accused feature. Dr. Wesel tested only **one** accused feature, **Power Savings Mode,** and concluded, based on no other tests or evidence, that his battery savings testing data could be applied equally to **all** of the accused features. Ex. C (Wesel Rpt.) ¶¶ 2372-78. From this unfounded opinion, Mr. Kennedy applies Dr. Wesel's test results to a separate accused feature, **Doze Mode**, and bases the entirety of his damages opinion on the "increase in effective battery capacity attributable to Standard **Doze's** use of the patented technology"—no other feature. Ex. A (Kennedy Rpt.) at ¶ 108. Because this is the fundamental basis on which Mr.

Kennedy bases his "upper bound" royalty rate opinions, all of Mr. Kennedy's damages are rendered unreliable.

### 2. Mr. Kennedy's Opinions are Based on an Unreliable Conjoint Analysis by Dr. Groehn

Dr. Groehn's conjoint analysis opinions—which are also foundational "economic" inputs to Mr. Kennedy's analysis—are similarly unreliable and untethered to the facts of this case. As set forth in Samsung's separate Motion to exclude Dr. Groehn's opinions, conjoint analysis cannot reliably establish a price for a single feature within a complex product in a complex market. *See gen.* Dkt. 251 (M. to Strike Groehn). And even if it were possible, the design of Dr. Groehn's survey is divorced from the patented technology and not sufficiently objective such that it could reliably estimate the value of the accused features relevant to the asserted claims. *Id.*

Moreover, the fact that Dr. Groehn had to correct price data in his report, leading to Mr. Kennedy's over ▮▮▮▮▮▮ correction, shows the lack of rigor and unreliability of his analysis as an input to Mr. Kennedy's numbers. In designing his analysis for this case, Dr. Groehn chose to use screen size as an attribute in this survey despite having chosen to **not** include screen size in his "prior, unrelated study," which Dr. Groehn used as the template for his analysis here. Dkt. 207-1 (Groehn Decl.) at ¶ 4. This singular choice, wholly unrelated to the patents or "technical benefit" in this case, results in radically different "incremental profit" prices. *Id.* at ¶ 8. Should the Court grant Samsung's Daubert motion to exclude Mr. Groehn's Report, the Court must also exclude Mr. Kennedy's foundational reliance on it, including Ex. A (Kennedy Rpt.) at ¶¶ 154-159, 164-165, 354-357, 401-405, Exs. 1-6, 10B, 11. *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-cv-33-RGA, 2016 WL 767900, at *7 (D. Del. Feb. 25, 2016). Indeed, Mr. Kennedy admitted his damages are zero if Dr. Groehn's flawed numbers are disregarded or given no weight. *See* Ex. D (Kennedy Rough Tr.) at 126:18-22.

Separately, should Dr. Groehn for some reason not present his opinions at trial, the Court should not permit Headwater to present Mr. Kennedy as a mouthpiece for Dr. Groehn's conjoint survey or regression analysis. "An expert cannot parrot the opinions and conclusions of other experts whose testimony is not subject to cross-examination." *Bonin v. Sabine River Auth. of Texas*, No. 1:19-CV-00527-MJT, 2022 WL 19731177, at *6 (E.D. Tex. Nov. 9, 2022), *adopted*, 2022 WL 19731176 (E.D. Tex. Dec. 20, 2022).[1] Mr. Kennedy admitted he cannot sponsor Mr. Groehn's analysis because he is not a survey expert, did not collaborate with Dr. Groehn on his analysis, was not a member of Dr. Groehn's team, never spoke to Dr. Groehn about his analysis or results, and never verified his numbers. Ex. D (Kennedy Rough Tr.) at 11:15-21, 134:6-16, 137:8-20. If the Court does not strike Mr. Kennedy's opinions, then it should at least prevent Mr. Kennedy from providing such opinions to the jury before Dr. Groehn testifies himself.

### 3. Mr. Kennedy's "Corrected" Report Highlights the Fundamental Unreliability Associated with His Analysis

The reliability of Mr. Kennedy's ███████████ damages range is belied by his original report in this case, where he concluded that ████████████ was the "upper bound" reasonable royalty that "prudent" parties would agree to in the **exact same hypothetical negotiation**.[2] Ex. B (Kennedy Original Rpt.) at ¶ 424, Ex. 1; Ex. D (Kennedy Rough Tr.) at 159:25-160:17. Mr. Kennedy originally concluded that Dr. Groehn's original numbers were "the best available metric" of the "economic value of the Hypothetical License to Samsung." Then,

---

[1] *See also Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose . . . opinions the expert purports to base his opinion." (cleaned up)); *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017).

[2] The Court denied Samsung's motion to strike the untimely corrected reports. Dkt. 217. As allowed by the Court in that same Order, this motion is instead focused on the opinions found within the corrected reports.

after conducting his own *Georgia-Pacific* analysis, Mr. Kennedy blessed his own "upper bound" royalty as "an economically reasonable price for Samsung to pay for the Hypothetical License." Ex. A (Kennedy Rpt.) at ¶¶ 405, 424; Ex. D (Kennedy Rough Tr.) at 162:20-163:12. Mathematical errors and the use of flawed data can be significant in the *Daubert* calculus. *See, e.g., Dart v. Kitchens Bros. Mfg. Co.*, 253 F. App'x 395, 398 (5th Cir. 2007) (mathematical errors in another expert's underlying calculations on which expert relied was, in part, one of the reasons the district court found the expert's methodology unreliable, thus warranting exclusion).

Here, Mr. Kennedy never explains why he previously believed the parties at the hypothetical negotiation would agree the appropriate "upper bound" was ███████, only to then say the parties would agree to more than ████ that "upper bound." To put a finer point on it, Mr. Kennedy spent dozens of pages in his original report walking through his *Georgia-Pacific* analysis to conclude that Headwater would accept that ████████ is an acceptable upper bound. If that final number can change so easily to ████, without his *Georgia-Pacific* analysis changing one whit, then Mr. Kennedy is simply adopting numbers from others and then working backwards from that conclusion to supposedly support whatever conclusion someone else gives him. Ultimately, this proves his methodology (and conclusions) cannot be sound.

### 4.  Mr. Kennedy's Apportionment "Adjustments" Are Not Tied to the Facts of this Case

Further illustrating the flaws in his approach, Mr. Kennedy attempts alleged conservatism to further apportion "the realizable profit that should be credited to the invention as distinguished from non-patented elements" by applying three effective apportionments—"SG&A Adjustment," "R&D Adjustment," and "Bargaining Range Adjustment." Ex. A (Kennedy Rpt.) at ¶¶ 405, 414-428, Exs. 2-3, 7-9, 12. These arbitrary "adjustments"—offered by Mr. Kennedy under the guise of conservatism—have no nexus whatsoever to the claimed invention of the asserted patents, and

PUBLIC VERSION

████████████████████████████

no grounding in economic theory.  *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015) (finding cuts made by expert to the royalty base were "arbitrary," not "conservat[ism]".)

Mr. Kennedy first offers a "SG&A Adjustment" where he takes the per phone increase in profits from Dr. Groehn ████████████ and applies a ████████████ to account for Samsung's SG&A contributions, using Samsung's SG&A expenses expressed as a percentage of Samsung's **entire** revenue.  Ex. A (Kennedy Rpt.) at ¶¶ 417-419, Exs. 3, 8, 9.  Mr. Kennedy next offers a "R&D Adjustment" where he further reduces these figures by applying a ████████████ ████ to account for Samsung's R&D contributions, expressed as Samsung's R&D expenses as a percentage of Samsung's **entire** revenue.  *Id.* at ¶¶ 420-422, Exs. 3, 8, 9.  Mr. Kennedy lastly applies a "Bargaining Outcome Share Adjustment" by calculating the average gross margin of Samsung and reducing the rates in accordance with Samsung's ██████████████ ████████████  Ex. A (Kennedy Rpt.) at ¶¶ 425-426, Exs. 2, 3.  Astonishingly, Mr. Kennedy's analysis results in Headwater having more bargaining power than Samsung at the hypothetical negotiation.  *Id.*

Mr. Kennedy does not articulate why SG&A expenses, R&D expenses, and the gross margin of Samsung would reflect the value of the asserted patents as it relates to Samsung's smartphones, which is notable considering Samsung's overall expenses and revenues would necessarily include a multitude of products that have nothing to do with this case, such as consumer appliances such as TVs, washing machines, and vacuum cleaners.  Nor does Mr. Kennedy explain why gross margin is an appropriate metric to analyze the parties' relative bargaining share at the hypothetical negotiation.  His decision to use Samsung-wide data leads to an untethered analysis, as Mr. Kennedy's calculations would always result in the same adjustment percentage—for **any**

PUBLIC VERSION

Headwater patent and **any** Samsung product.  This violates the Federal Circuit's instruction that opinions must be based on particular facts, not "too crude a generalization."  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332 (Fed. Cir. 2014).

Critically, not one of Mr. Kennedy's "adjustments" is an accepted method for apportioning the incremental value specific to a patented invention.  He cites no evidence from the record or academic literature to support his claim, nor does he perform any economic analysis to validate the results of his apportionments.  In fact, the only support he provides to use these adjustments to allegedly isolate the value of the accused features is his own conclusory *ipse dixit*, claiming that "[i]n [his] experience, [these are the] most effective metrics available to the parties to assess Samsung's contributions."  Ex. A (Kennedy Rpt.) at ¶ 416.  This bare allegations is "untethered to the facts."  *Apple v. Wi-LAN*, 25 F.4th 960, 973-74 (Fed. Cir. 2022) (holding Mr. Kennedy's opinion "untethered to the facts," requiring a new trial); *VirnetX*, 767 F.3d at 1332.  Each of Mr. Kennedy's adjustments must therefore be excluded, including Ex. A (Kennedy Rpt.) at ¶¶ 416-426, Exs. 1, 2, 3, 8 and 9. *See also VirnetX, Inc*., 767 F.3d at 1328 (explaining that a district court must exercise "its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury"); *BMC Software, Inc., v. ServiceNow, Inc.*, 2:14-cv-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016) (excluding damages opinion that "failed to specify, distinguish, and then separate the value of BMC's patented features from the unpatented features of ServiceNow's products").

### B.    Mr. Kennedy's Use of Non-Comparable Licenses is Improper

Mr. Kennedy improperly relies on a license agreement (and its subsequent amendments)[3]

---

[3]          ▮▮▮▮▮▮▮▮▮▮▮▮ entered the original agreement on March 24, 2009, and entered three subsequent amendments, October 24, 2016, December 29, 2016 and July 31, 2017. Ex. A (Kennedy Rpt.) at ¶¶ 185-199.



(collectively, the "███████ Agreement") between █████████ that he tacitly
acknowledges is not actually comparable, and that this Court found was not negotiated by parties
sitting at arm's length.  Dkt. 198 ("█████████ are not arms-length entities, rather they
are the opposite.")  Critically, Mr. Kennedy's ultimate opinions on the amount of damages are not
at all based on the █████████ Agreement.  But despite the fact that the █████████
███ Agreement play no role in his damages calculations, Mr. Kennedy nonetheless relies on it
to opine that "the ███ License, as the only license in the record to the Patents-in-Suit (and the
only one with royalty rates) demonstrates the reasonableness of the rate" he proposes.  Ex. A
(Kennedy Rpt.) at ¶ 427.  Mr. Kennedy goes on to claim that although ███ paid only a ███
███████ royalty rate" under the agreement given the "strong relationship between █████████
███████," the "███████ rate" agreed to by the parties as a "███ rate" is the most
relevant rate to the hypothetical negotiation—despite that there is no evidence anyone has ever
paid it, and despite having no idea how those "███" rates were calculated.  Ex. A (Kennedy
Rpt.) at ¶ 428, fn. 467; Ex. D (Kennedy Rough Tr.) at 82:4-6; 82:20-83:4.

Mr. Kennedy concedes that the origins of the █████████ License Agreement was
"not at arm's length." Ex. A (Kennedy Rpt.) at ¶ 205.  He acknowledges that there was "significant
overlap between the management and boards of █████████," at the time the original
agreement was entered, and that "█████████████████████████████████
█████████." Ex. A (Kennedy Rpt.) at ¶ 182.  In 2013, when █████████ was still CEO
of both entities, the agreement was amended to expressly include "███ rates," which █████
sought to introduce as evidence of "███████ royalty rates," despite the fact that ███ was
not subject to those rates, and no other entity ever paid them.  Ex. E (License Agreement) at 6.

Because the █████████ Agreement was not negotiated at arm's length and the

**PUBLIC VERSION**

██████████████████████████████████

██████████████████████████████, Mr. Kennedy cannot rely on it in an effort to prejudice the jury to further inflate his already absurd damages figures.  Indeed, in *VLSI*, the Federal Circuit recently reiterated the notion that "the law restricting use of noncomparable licenses" would bar admission of evidence regarding licenses that the patentee admits are non-comparable.  *VLSI Technology LLC v. Intel Corporation*, 87 F.4th 1332, 1349 (Fed. Cir. 2023); *see also Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (reversing on this basis); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010) (same).  In addition, Mr. Kennedy cannot use an otherwise inadmissible data point as a "check" of reasonableness, particularly given Mr. Kennedy's total failure to address how differently situated Samsung would be as potential licensee as compared to ████ as licensee.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir. 2011).  The Court, therefore, should exclude Mr. Kennedy's opinions based on the ██████████████ Agreement, as set forth in Ex. A (Kennedy Rpt.) at ¶¶ 17, 181-199, 204-206, 337-338, 390, 427.

    **C.**    **Mr. Kennedy's Accounting of Samsung's Internal Marketing Documents is Nothing More Than a Recitation of Irrelevant Hearsay**

Mr. Kennedy goes on for pages recounting cherry-picked mentions of "battery life" from selected Samsung internal documents despite not using such information in his analysis anywhere.  While Rule 703 permits an expert to rely on hearsay "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject," that does not mean that an expert can simply serve the role of reading hearsay to the jury.  Fed. R. Evid. 703.  Mr. Kennedy's report goes on for pages parroting Samsung's ██████████████

████████████████████████████████████

████████████████████████████████████

████ Ex. A (Kennedy Rpt.) at ¶¶ 119-143.  As a preliminary matter, not one of the documents

11

Mr. Kennedy recites discuss any of the accused features in this case.  Further, Mr. Kennedy did not speak with anyone at Samsung regarding the proper context and interpretation of these documents, nor is Mr. Kennedy personally knowledgeable about Samsung's marketing practices, procedures, or terminology, which would be required to accurately present this information to the jury.  *See id.*  Mr. Kennedy only recounts his high-level gloss on the documents in the hopes that the jury will see Samsung as blessing the flawed battery life testing methodology on which his entire analysis is based.  But an expert cannot recite hearsay documents to the jury.  *See United States v. Mejia,* 545 F.3d 179, 197 (2d Cir. 2008) (finding that an expert who simply repeats information read or heard is not acting as an expert, but instead as a case agent that "[t]he expert may not ... simply transmit that hearsay to the jury."); *Therasense, Inc. v. Becton, Dickinson and Company,* No. C 04-02123 WHA, 2008 WL 2323856, *1 ( N.D. Cal. May 22, 2008) (recognizing that a court should not allow an expert to promulgate favorable hearsay to the jury via Rule 703).  Mr. Kennedy's mouthpiece for Samsung marketing documents that are not part of his conclusions should be excluded as irrelevant and improper, including Ex. A (Kennedy Rpt.) at ¶¶ 119-143.

### D.    Mr. Kennedy Improperly Addresses Future Damages

Nearly ▮▮▮▮▮▮ of Mr. Kennedy's damages calculations relate to royalties for alleged *future* infringement, on top of his alleged reasonable royalty range.  Ex. A (Kennedy Rpt.) at Ex. 6B.  Mr. Kennedy's future damages approach is not authorized by statute.  Under the Patent Act, "the court shall award the claimant damages adequate to compensate for *the infringement*." 35 U.S.C. § 284.  On its face, this statute does not apply to infringement that has not yet happened. *See In re Apotex, Inc.*, 49 F. App'x 902, 903 Fed. Cir. 2002) (finding that "there can be no damages" in a case "involving only possible future infringement").  Mr. Kennedy does not offer a lump sum opinion, but rather a running royalty disguised as a lump sum, and tacks on running royalties from 2024 through 2030.  Ex. A (Kennedy Rpt.) at ¶¶ 432-437, Exs. 6A-6C.  Mr.

Kennedy "appears to conflate [lump sum and running royalties] by calculating a 'lump sum' that applies a per-unit royalty rate to all accused devices that have been ***and may still be*** delivered." *Sci. Applications Int'l Corp. v. U.S.*, No. 17-CV-825, 2024 WL 94499, at *18 (Fed. Cl. Jan. 9, 2024) (emphasis original). However, "the proper course of action to address future infringement is to address it ***after*** infringement has actually occurred." *Id.* (emphasis original). To allow future damages would be speculative and prejudicial—it assumes that Samsung continues to sell the accused products, that the designs of the accused products would remain unchanged, that battery capacity will increase annually in a linear pattern, that the relative percentage benefit from the patents remains consistent despite likely other developing mobile device technologies, and that the PTAB will not find the patents unpatentable during any of the pending IPR proceedings. *Omnitracs, LLC and XRS Corp. v. Platform Science, Inc.*, Dkt. No. 451, No. 20-cv-958 (S.D. Cal. Apr. 8, 2024) ("It is speculative and prejudicial to assume Defendant will continue to practice any of the patents it is alleged to infringe until their expiration.") The Court should thus exclude Mr. Kennedy's future damages opinions, including Ex. A (Kennedy Rpt.) at ¶¶ 432-437, Exs. 6A-6C.

## III.   CONCLUSION

Accordingly, the Court should exclude Mr. Kennedy from testifying at trial as to his unreliable and prejudicial opinions set forth in Exhibit A.

**PUBLIC VERSION**

Dated: May 16, 2024                    Respectfully submitted,

By:   */s/ Thomas H. Reger II*
       Ruffin B. Cordell
       TX Bar No. 04820550
       Michael J. McKeon
       DC Bar No. 459780
       mckeon@fr.com
       Jared Hartzman (*pro hac vice*)
       DC Bar No. 1034255
       hartzman@fr.com
       **FISH & RICHARDSON P.C.**
       1000 Maine Avenue, SW, Ste 1000
       Washington, D.C. 20024
       Telephone: (202) 783-5070
       Facsimile: (202) 783-2331

       Thad C. Kodish
       GA Bar No. 427603
       tkodish@fr.com
       Benjamin K. Thompson
       GA Bar No. 633211
       bthompson@fr.com
       Nicholas A. Gallo (*pro hac vice*)
       GA Bar No. 546590
       gallo@fr.com
       Steffen Lake (*pro hac vice*)
       GA Bar No. 512272
       lake@fr.com
       Sara Fish
       sfish@fr.com
       GA Bar No. 873853
       Noah C. Graubart
       GA Bar No. 141862
       graubart@fr.com
       Katherine H. Reardon
       NY Bar No. 5196910
       reardon@fr.com
       **FISH & RICHARDSON P.C.**
       1180 Peachtree St. NE, Fl. 21
       Atlanta, GA 30309
       Telephone: (404) 892-5005
       Facsimile: (404) 892-5002

       Leonard E. Davis

14

**PUBLIC VERSION**

TX Bar No. 05521600
ldavid@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
Harry L. Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
James Travis Underwood
State Bar No. 24102587
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

15

Grant Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
Jon Hyland
jhyland@hilgersgraben.com
Texas Bar No. 24046131
Theodore Kwong
tkwong@hilgersgraben.com
Texas Bar No. 4087871
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 469-751-2819

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**

**PUBLIC VERSION**

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff and counsel for Defendants have met and conferred in compliance with Local Rule CV-7(h).  Plaintiff oppose this motion.

/s/ Thomas H. Reger II
Thomas H. Reger II


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on May 16, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

/s/ Thomas H. Reger II
Thomas H. Reger II


## CERTIFICATE OF AUTHORIZATION TO SEAL

The undersigned hereby certifies that pursuant to the protective order in the above-captioned case, this document contains confidential information.  Accordingly, this document is to be filed under seal.

/s/ Thomas H. Reger II
Thomas H. Reger II