## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

HEADWATER RESEARCH LLC

       *Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD and
SAMSUNG ELECTRONICS AMERICA, INC.,

       *Defendants*.

Case No. 2:22-CV-00422-JRG-RSP

**SAMSUNG'S MOTION TO STRIKE EXPERT REPORT OF ERIK DE LA IGLESIA
AS TO SECONDARY CONSIDERATIONS BASED UPON THE ITSON SOLUTION**

PUBLIC VERSION

## **TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND ................................................................................2

    A.   HW Alleges the ItsOn Solution Embodied Asserted Claims Across Eight Patents Covering Different Inventions, but Never Gave Any Basis or Details ................................................................................................ 2

    B.   The ItsOn Marking Website listed more than Eighty Patents, but never listed Four of the Asserted Patents ................................................................. 4

    C.   Report: Opines that a Nexus Exists between the ItsOn Solution and All Asserted Claims of All Eight Asserted Patents; No Basis for this Opinion ........... 5

        1.   Opines on Four Bases for Requisite Nexus ..................................................6

        2.   Nexus based on ItsOn Solution Applied to Secondary Considerations .......7

    D.   Deposition: ItsOn Solution Nexus based Entirely on "Marking" ........................... 9

II.   LEGAL STANDARDS ................................................................................9

    A.   Rule 702/*Daubert* ................................................................................. 9

    B.   Nexus ................................................................................................. 10

III.   DE LA IGLESIA'S ITSON SOLUTION-BASED SECONDARY CONSIDERATION OPINIONS LACK THE REQUIRED NEXUS AND SHOULD BE STRICKEN AS IRRELEVANT AND UNRELIABLE ................................................................11

IV.   CONCLUSION ................................................................................13

PUBLIC VERSION

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Bosch Automotive Service Solutions, LLC v. Matal*,
    878 F.3d 1027 (Fed. Cir. 2017)..........................................................................................10

*Datatreasury Corp. v. Wells Fargo & Co.*,
    2010 U.S. Dist. LEXIS 150694 (E.D. Tex. Feb. 26, 2010) ....................................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...........................................................................................................9, 10

*Fox Factory, Inc. v. SRAM, LLC*,
    944 F.3d 1366 (Fed. Cir. 2019)..................................................................................2, 11, 12

*Genband US LLC v. Metaswitch Networks Corp.*,
    2016 WL 98745 (E.D. Tex. Jan. 8, 2016) ..........................................................................10, 13

*Henny Penny Corp. v. Frymaster LLC*,
    938 F.3d 1324 (Fed. Cir. 2019)............................................................................................13

*Johnson v. Arkema, Inc.*,
    685 F.3d 452 (5th Cir. 2012) ................................................................................................10

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 (5th Cir. 1998) (en banc) .................................................................................9

*Volvo Penta of the Americas, LLC v. Brunswick Corp.*,
    81 F.4th 1202 (Fed. Cir. 2023) ........................................................................................10, 11

**Statutes**

35 U.S.C. § 287(a) ...................................................................................................................4

**Other Authorities**

Fed. R. Evid. 702 .................................................................................................................9, 10

## EXHIBIT INDEX & NOTES

| Exhibit | Description |
|---------|-------------|
| 1 | Expert Report of Erik de la Iglesia Regarding Validity, dated April 19, 2024 |
| 2 | Excerpts from the Deposition of Dr. Gregory Raleigh, taken November 15, 2023 |
| 3 | Excerpts from Headwater Responses to Interrogatory Nos. 14-17, dated August 11, 2023 |
| 4 | Letter from Samsung to Headwater re Headwater's Responses to Interrogatory Nos. 14-17, dated August 18, 2023 |
| 5 | Email Chain between Headwater and Samsung re ItsOn and discovery, dated August-September 2023 |
| 6 | HW_00010163-171 and SAM-HW00226450-512 |
| 7 | Excerpts from the Deposition of Erik de la Iglesia, Day 1 (rough), taken May 2, 2024 |
| 8 | Excerpts from the Deposition of Gregory Raleigh, taken March 7, 2024 |
| 9 | Excerpts from the Deposition of David Johnson, taken February 21, 2024 |
| 10 | Excerpts from the Deposition of Erik de la Iglesia, Day 2 (rough), taken May 3, 2024 |

\*       Emphasis added unless otherwise noted.

\*\*      In this brief, "Headwater" or "HW" refers to Plaintiff and its purported predecessors.

PUBLIC VERSION

███████████████████████

Samsung asks the court to preclude Mr. Erik de la Iglesia from testifying about secondary considerations based upon the ItsOn Solution[1] where, in his expert report on validity, served April 19, 2024, Mr. de la Iglesia (1) opined that a nexus existed between the ItsOn Solution and the twenty-seven asserted claims of eight different patents, but (2) did not provide a basis for this assertion, and thus the report contains (3) no evidentiary basis for the alleged nexus between the asserted patents and the ItsOn Solution.[2]

HW punted this issue to expert discovery, refusing to answer an at-issue interrogatory as premature in light of forthcoming HW expert opinions.  But Mr. de la Iglesia's report provides no such opinions (nor does any other HW expert).  Instead, at his deposition, Mr. de la Iglesia revealed that his entire basis for ***presuming*** a nexus between the ItsOn Solution and the asserted claims is his understanding that this ItsOn Solution had been marked with the asserted patents.

Mr. de la Iglesia is wrong for three reasons.  *First*, half of the asserted patents never appeared on the ItsOn marking website.  *Second*, the marking website listed more than eighty patents spanning distinct inventions, which, as the Federal Circuit explains, is a barrier to his nexus conclusion.  Specifically, the bare listing of four asserted patents, among scores more, concerning multiple, differing versions, does not support a presumption that the ItsOn Solution and the asserted claims are coextensive, as the case law requires.  *Third*, the vast majority of products sold had no marking at all, completely undermining Mr. de la Iglesia's stated inference.

Absent this presumption for his ItsOn Solution-based secondary consideration opinions, Mr. de la Iglesia must provide ***some*** analysis tying the ItsOn Solution to the alleged inventions in

---

[1] A shortname for a collection of several products as will be explained in further detail herein.

[2] Samsung seeks only to preclude testimony regarding, and strike paragraphs opining on, secondary considerations based on the ItsOn Solution.  Samsung does not seek to preclude/strike those secondary consideration opinions based on the accused features of Samsung products.

███████████████████████████████

the eight asserted patents.   In other words, because "[t]he same evidence of secondary considerations cannot be presumed to be attributable to [different inventions]," Mr. de la Iglesia must show the "degree to which evidence of secondary considerations tied to a product is attributable to a particular claimed invention." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1378 (Fed. Cir. 2019).   As an example: for the secondary consideration of praise/industry recognition, one cannot rely on the praise of a product (either as a whole or of a specific product feature) when that product/feature is not claimed in an asserted patent.   In the same way, Mr. de la Iglesia cannot rely on the alleged industry praise of the ItsOn Solution as a secondary consideration of nonobviousness without tying the ItsOn Solution praised as a whole, or the specific praised feature, to the asserted claims.   Without such a tie to an actual at-issue claim (*i.e.*, invention), such praise is irrelevant and unreliable "evidence" of the **asserted claims'** nonobviousness.

But Mr. de la Iglesia fails to do this, offering no evidence tying the alleged secondary considerations based on the ItsOn Solution to a particular asserted patent or claim, as required by Federal Circuit law.   Thus, to allow his secondary consideration opinions based on the ItsOn Solution to proceed would be highly prejudicial, as they are based on unreliable and irrelevant "evidence" of nexus between the ItsOn Solution and asserted claims— which is to say, none at all.

## I.   FACTUAL BACKGROUND

### A.   HW Alleges the ItsOn Solution Embodied Asserted Claims Across Eight Patents Covering Different Inventions, but Never Gave Any Basis or Details

HW currently asserts twenty-seven claims of eight patents against Samsung.[3]  Ex. 1 (de la Iglesia Rebuttal Report) ¶ 17.   As Dr. Raleigh—HW founder, HW corporate designee, and primary

---

[3]U.S. Patent Nos.:  9,137,701;  9,271,184;  9,521,578;  9,277,445;  11,405,224;  9,143,976; 9,277,433; and 9,609,544.   HW dropped 10,237,773 in March 2024.

███████████████████████

inventor of all asserted patents—testified, the asserted patents are "███████████." Ex.

2 (11-15-23 Raleigh Dep. Tr.) at 41:10-15.

In its complaint, HW alleges that the ItsOn Solution[4] practiced every asserted patent.  Dkt.

42 at ¶¶ 23, 26, 70, 84, 98, 112, 140, 154, 168, 183.  The ItsOn Solution was implemented on

certain devices from 2013-2016 before ItsOn folded in 2018.

In its August 2023 response to Samsung's Interrogatory No. 14, which asked that HW

"identify each of the Asserted Patent(s)' claims that Headwater believes were practiced by what is

referred to as the 'ItsOn Software,'" HW identified one asserted claim from four asserted patents

(four asserted claims total) that it "believed" the ItsOn Solution had practiced:

> Based on information and belief and discovery currently available to it, Headwater believes
> that at least the following claims of the Asserted Patents were practiced by ItsOn software, at
> least as of the time such patents were included in ItsOn's virtual marking page and linked to
> from devices, such as Samsung's devices, that included ItsOn software: claim 1 of U.S. Patent
> No. 9,137,701, claim 1 of U.S. Patent No. 9,143,976; claim 1 of U.S. Patent No. 9,271,184;
> and U.S. Patent No. [*sic*] claim 1 of 9,609,544.

Ex. 3.  HW never supplemented its response to this interrogatory.  *Id.*

Samsung's Interrogatory No. 16 sought HW's basis for this "belief."  *Id.*  HW refused to

provide any basis, saying Samsung's Interrogatory 16 "is ***prematurely calling for expert opinion***."

Exs. 4 at 2-3 (Samsung correspondence detailing information sought in Interrogatory No. 16), 5

(summarizing HW's responsive position).  HW never provided a substantive response to this

interrogatory.  *See* Ex. 3.

As Dr. Raleigh testified, the ItsOn Solution was not one, static product directed at solving

---

[4]As discussed in prior briefing, HW has referred to the at-issue ItsOn technology by various
names, including, *inter alia,* the: (i) ItsOn solution**s**" (Dkt. 42 at ¶¶ 23, 26, 70, 84, 98, 112, 140,
154, 168, 183); (ii) "unique and unconventional technological solution**s**" (¶ 18); (iii) "ItsOn
software" (¶¶ 21, 70, 84, 98, 112, 140, 154, 168, 183); (iv) "ItsOn application" (¶¶ 27, 28); (v)
"ItsOn proprietary technology" (¶ 30); and (vi) "ItsOn implementation project" (¶ 35).  For ease,
and consistent with other briefing, Samsung refers to this technology as the "ItsOn Solution."

████████████████████████████████████

a single problem, but rather "████████████████" that "████████████████." Ex. 2 (11-15-23 Raleigh Dep. Tr.) at 143:5-23.   To that end, as Dr. Raleigh testified, the ItsOn Solution necessarily comprised ████████████████████. *Id.* at 143:25-146:20.

### B.   The ItsOn Marking Website listed more than Eighty Patents, but never listed Four of the Asserted Patents

In its complaint, HW alleges that it satisfied the marking requirement of 35 U.S.C. § 287(a) by means of links to a website with the address http://www.itsoninc.com/patent-notices.  Dkt. 42 at ¶ 28.  HW alleges that the ItsOn Solution installed on mobile products allowed users to link to this website (the "ItsOn marking website").[5]

The ItsOn marking website contained a list of more than eighty patents over at least four years, along with the following text:

> ***ItsOn services and devices*** are protected by patents in the U.S. and elsewhere.  This notice is provided to satisfy the virtual patent marking provisions of various jurisdictions, including the virtual patent marking provisions of 35 U.S.C. A§ 287 [sic] as amended by the America Invents Act.  The ItsOn service, and the devices that provide the ItsOn service, embody technology claimed in the following U.S. Patents.

Ex. 6.  The ItsOn marking website did not associate particular patents with particular products, especially since there were multiple ItsOn versions and releases, and the website does not say "all" products or "all" patents.  *See id.*; Ex. 2 (11-15-23 Raleigh Dep. Tr.) at 146:1-20; Ex. 3 (Resp. to Interrogatory 15) (referencing "versions" and "builds"); Ex. 7 (5-2-24 de la Iglesia Dep. Tr) at 111:19-20 (HW expert does not know "how many versions existed").

This list of eighty patents on ItsOn's marking website included (at certain times) the '701, '976; '184; and '544 patents.  *See* Ex. 6.  It never included the other four asserted patents.  *Id.*

Finally, as further detailed in Samsung's co-pending motion for summary judgment on

---

[5] Samsung disputes this.  *See, e.g.,* Samsung's Motion for Summary Judgement ("MSJ") re Notice, Marking, and Pre-Suit Damages (concurrently filed).



marking, the vast majority of products incorporating ItsOn Solution—responsible for any "success"—were not marked at all. ██████████████████████████████████ ██████████████████████████████████████████ Ex. 8 (3-7-24 Raleigh Rule 30(b)(6) Dep. Tr.) at 300:12-21. ██████████ ████████████████████████████████████████████████ ██████████████ Ex. 9 (Johnson Dep. Tr.) at 184:11-185:1. ████████████ ████████████████████████████████████████████. *Id.* at 125:12-19. *See also* Samsung's MSJ re Notice, Marking, and Pre-Suit Damages (concurrently filed) at § II.B. This completely undermines Mr. de la Iglesia's stated basis for inferring that these products practiced the asserted patents.

### C. Report: Opines that a Nexus Exists between the ItsOn Solution and All Asserted Claims of All Eight Asserted Patents; No Basis for this Opinion

In his April 19, 2024 rebuttal report on validity, Mr. de la Iglesia opined that "the asserted claims of the asserted patents are not invalid on . . . obviousness in light of the asserted references." Ex. 1 (de la Iglesia Rebuttal Report) ¶ 100. As to obviousness, Mr. de la Iglesia addresses secondary considerations in section 19 of this report, opining that "there is a clear nexus between secondary considerations and the asserted claims, supporting my opinion that they are not obvious." *Id.* § 19.1. To that end, Mr. de la Iglesia states that other experts have analyzed the ***Samsung accused products***, and such analyses support his opinion that a nexus exists as to those accused products (as opposed to the ItsOn Solution):

> [S]econdary considerations ***must have a nexus*** to the claimed invention to be relevant to the issue of obviousness, and it is my opinion that the secondary considerations described herein, including each factor I discuss below, do have such a nexus. I understand that another Headwater expert, Dr. Rick Wesel, has analyzed ***the Samsung accused products*** and concluded that they practice the asserted claims. I understand that Dr. Wesel has also analyzed what technical benefits are provided by the claimed inventions and reflected ***in the accused products***. I further understand that Headwater's damages expert, Mr. Kennedy, has analyzed sales information for ***the accused products***

███████████████████████████████████████

and economic benefits provided by the claimed inventions. And I understand that another Headwater expert, Dr. Andreas Groehn, has analyzed survey information regarding battery life improvement and its value to customers. I have not personally analyzed all of these issues but note *that the conclusions of Dr. Wesel, Mr. Kennedy, and Dr. Groehn indicate that there is a nexus between the claimed features and associated secondary considerations discussed further below* (e.g., commercial success, praise, long felt need and failure by others, as examples).

*Id.* ¶ 1322.

### 1.    Opines on Four Bases for Requisite Nexus

Mr. de la Iglesia offers four bases for an alleged nexus supporting secondary considerations: (1) the technical benefits of the claimed inventions and accused features (§19.1.1); (2) Samsung's inability to remove accused android features (§19.1.2); (3) carrier requirements and Samsung's history with ItsOn (§19.1.3); and (4) surveys and customer feedback (§19.1.4).  Nos. 1, 2, and 4 do not deal with the ItsOn Solution (and are not the subject of this motion); rather, Mr. de la Iglesia opines on an alleged nexus between the asserted claims and the accused features of the Samsung products. Ex. 1 (de la Iglesia Rebuttal Report) ¶¶ 1324-1332, 1337-1341.

No. 3 (carrier requirements and Samsung's history with ItsOn) deals (in part) with an alleged nexus between the asserted claims and the ItsOn Solution.  *Id.* ¶¶ 1333-1336.  While Mr. de la Iglesia's nexus opinion here relies on the ItsOn Solution—with its many variations, iterations, and code bases, practicing asserted claims from all asserted patents (and the other ~80 patents on the ItsOn marking website)—he provides no basis for this opinion or any analysis of the ItsOn Solution.  Instead, he:

- States ████████████████████████████
  ████████████████████████████ *Id.* ¶ 1334.  Mr. de la Iglesia does not provide the basis for his understanding or tie it to any actual asserted patent or claim.

- States ████████████████████████████
  ████████████████████ *Id.* ¶ 1336.  Mr. de la Iglesia does not provide the basis for his opinion that the ItsOn Solution embodied HW's technology or tie it to any actual

PUBLIC VERSION

████████████████████████████████████████████

asserted patent or claim.

- Compares the alleged benefits of the ItsOn Software to the (i) **Sprint** roaming reduction requirements and/or (ii) the accused features in **Samsung's products**, bootstrapping the alleged embodiment/infringement of those requirements/products to opine that the ItsOn Solution allegedly embodied the asserted claims of the asserted patents: ██████████████████████████████████████████████ *Id.* ¶¶ 1335, 1333.

- Alleges that because the ItsOn Solution generally addressed roaming reduction, and roaming reduction was ██████████████████████ that the ItsOn Solution embodied the asserted claims of the asserted patents. *Id.* ¶¶ 1336, 1333.  Mr. de la Iglesia does not provide the basis for this opinion that a solution that addresses roaming reduction necessarily practiced the asserted claims of the asserted patents, nor tie this theory to an actual asserted patent or claim.

### 2.     Nexus based on ItsOn Solution Applied to Secondary Considerations

Mr. de la Iglesia "incorporate[s]" his nexus opinion regarding the ItsOn Solution into his "secondary considerations analysis" (*id.* ¶1323), which consists of four secondary considerations: commercial success (§19.2); long-felt need (§19.3); praise, awards, and industry recognition (§19.3); and copying (§19.4).  *Id.* ¶¶ 1342-1378.

Commercial Success:   While Mr. de la Iglesia states that his "opinions regarding commercial success are based on the Samsung accused products, not the ItsOn software" (*id.* ¶ 1352), the very next sentence restates his opinion that "nexus" exists because the ItsOn Solution met Sprint's roaming reduction requirements.  *Id.*

Long Felt Need: Mr. de la Iglesia opines that "the history between ItsOn, Sprint, and Samsung shows that others, including Samsung, failed to solve the long-felt need for the claimed inventions and the benefits they provide." *Id*. § 19.3.2.  Mr. de la Iglesia's opinion relies on an alleged "nexus" existing because the ItsOn Solution allegedly embodied the asserted patents.  *Id.* ¶ 1362 ████████████████████████████████████████

████████████████████████████████████████

used internally

███████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████   Mr. de la Iglesia does not provide any bases for these assertions or tie his secondary consideration opinion to an asserted patent/claim.  *Id.*

<u>Praise</u>:  Mr. de la Iglesia opines that ████████████████████████████████ ████████████████████████   *Id.* § 19.4.1.  Mr. de la Iglesia's opinion again relies on an alleged "nexus" existing because the ItsOn Solution allegedly embodied the asserted patents.  *Id.* ¶ 1368 ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████   Mr. de la Iglesia does not provide any bases for his opinion that ████████████████████████████████████   or tie his secondary consideration opinion to an asserted patent/claim.  *Id.*

<u>Copying</u>:  Mr. de la Iglesia opines that ████████████████████████████ ████████   that █████████████████████████████████████   *Id.* §§ 19.5.1, 19.5.  Mr. de la Iglesia's opinion again relies on a "nexus" existing because the ItsOn Solution allegedly embodied the asserted patents:



…

**PUBLIC VERSION**

███████████████████████████████████

*Id.* ¶¶ 1372, 1375.  Again, Mr. de la Iglesia does not provide any bases for his opinion that the ItsOn software implemented/embodied the asserted patents or tie his secondary considerations opinion to an asserted patent/claim.  *Id*

### D. Deposition: ItsOn Solution Nexus based Entirely on "Marking"

At his May 2-3, 2024 deposition, Mr. de la Iglesia testified that ███████████████████ ████████████████████████████████████ Ex. 10 (5-3-24 de la Iglesia Dep. Tr.) at 19:1-14.  Rather, his ***sole*** basis for asserting that the ItsOn Solution embodied all asserted claims of the eight asserted patents is that he understood that the ItsOn Solution had been marked with the asserted patents.  Ex. 7 (5-2-24 de la Iglesia Dep. Tr.) at 108:19-25, 111:2-8.  Mr. de la Iglesia did not have conversations with anyone or do any analysis as to the basis for these patents being placed on the ItsOn marking website.  *Id.* at 97:9-21, 104:13-105:22.  Mr. de la Iglesia does not mention this marking basis in his report.

Mr. de la Iglesia further testified that he did not know how many versions of the ItsOn Solution code have existed or over what period of time they existed/were implemented.  *Id.* at 111:12-112:21, 122:20-25.

## II.  LEGAL STANDARDS

### A.  Rule 702/*Daubert*

An expert may testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).  The proponent of expert opinions must demonstrate admissibility by a preponderance of the evidence.  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).  While

PUBLIC VERSION

███████████████████████████

"[t]he inquiry envisioned by Rule 702 is . . . a flexible one," Rule 702 also "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

"The relevance prong requires . . . demonstrat[ing] that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong mandates that expert opinion 'be . . . more than unsupported speculation or subjective belief." *Id.* Although a "proponent need not prove . . . that the expert's testimony is correct . . . she must prove by a preponderance of the evidence that the testimony is reliable." *Id.* (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

### B. Nexus

As to reliability, this Court has held that "[s]econdary consideration evidence that bears no possible nexus to the inventions of the asserted patents does not constitute sufficiently reliable 'facts or data' upon which an expert can base an opinion under Fed. R. Evid. 702." *Genband US LLC v. Metaswitch Networks Corp.*, 2016 WL 98745, at *2 (E.D. Tex. Jan. 8, 2016).

As to relevance, "[e]vidence of [objective indicia] is only relevant to the obviousness inquiry 'if there is a nexus between the claimed invention and the [objective indicia].'" *Bosch Automotive Service Solutions, LLC v. Matal*, 878 F.3d 1027, 1036 (Fed. Cir. 2017) (internal quotations omitted); *Volvo Penta of the Americas, LLC v. Brunswick Corp.*, 81 F.4th 1202, 1210 (Fed. Cir. 2023) ("For objective evidence of secondary considerations to be relevant, there must be a nexus between the merits of the claimed invention and the objective evidence.").

"A showing of nexus can be made in two ways: (1) via a presumption of nexus, or (2) via a showing that the evidence is a direct result of the unique characteristics of the claimed invention." *Volvo*, 81 F.4th at 1210.

PUBLIC VERSION

███████████████████

A patent owner is "entitled to a [rebuttable] presumption of nexus when it shows that the asserted objective evidence is tied to a specific product that embodies the claimed features, and is coextensive with them." *Id.* (internal quotation omitted).

"[T]he coextensiveness requirement" cannot be reduced "to an inquiry into whether the patent claims broadly cover the product that is the subject of the evidence of secondary considerations." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1377 (Fed. Cir. 2019). Rather, "[w]here a product embodies claims from [multiple] patents, a presumption of nexus can be appropriate **only** if the claims of [the] patents generally cover the same invention." *Id.* If the patents' "claims cover different inventions," then "[t]he same evidence of secondary considerations cannot be presumed to be attributable" to the different inventions. *Id.* at 1378. "In such situations, the patentee retains the burden of proving the degree to which evidence of secondary considerations tied to a product is attributable to a particular claimed invention." *Id.* This is so even where the patents are related. *Id.* at 1377.

## III.   DE LA IGLESIA'S ITSON SOLUTION-BASED SECONDARY CONSIDERATION OPINIONS LACK THE REQUIRED NEXUS AND SHOULD BE STRICKEN AS IRRELEVANT AND UNRELIABLE

Mr. de la Iglesia effectively fails to opine as to any nexus between his alleged secondary considerations based on the ItsOn Solution and the claimed inventions. This renders his opinions inadmissible. *Datatreasury Corp. v. Wells Fargo & Co*., 2010 U.S. Dist. LEXIS 150694, *62 (E.D. Tex. Feb. 26, 2010) (striking secondary considerations opinions where no nexus shown).

*First,* there is no presumption that the ItsOn Solution is "coextensive" with the eight asserted patents. Mr. de la Iglesia's sole basis for opining that the ItsOn Solution embodied the asserted patents is that he believed the ItsOn Solution had been marked with those patents. *See* Sect. I.D., *supra.* By his reasoning, the ItsOn Solution (and all its iterations and versions) allegedly embodied the claims of more than eighty patents on the ItsOn marking website (over at least four

PUBLIC VERSION

████████████████████

years). Neither HW nor any of its experts have made any showing or even argued that the claims of all eighty patents—let alone the twenty-seven asserted claims of the eight asserted patents—generally cover the same invention. Indeed, as Dr. Raleigh testified, the asserted patents relate to "████████████." Ex. 2 (11-15-23 Raleigh Dep. Tr.) at 41:10-15. Further, four asserted patents—the '578, '445, '224, and '433 patents—*never* appeared on the ItsOn marking website. *See* Ex. 6. And for the asserted patents that did so appear—the '701, '976, '184, and '544 patents—HW alleged that the ItsOn Solution practiced/embodied *only one claim* from each of these patents, not all asserted claims as Mr. de la Iglesia alleges. Ex. 3 (Resp. to Interrogatory 14). These various assertions, inconsistences, and failures negate any possible coextension presumption. *See generally Fox*, 944 F.3d at 1374-1378.

*Second,* Mr. de la Iglesia has not "show[n] that the evidence of secondary considerations is the direct result of the unique characteristics of the claimed invention," as he must absent a co-extensiveness presumption. *Fox*, 944 F.3d at 1374 (citations omitted). HW retains "the burden of proving the degree to which evidence of secondary considerations tied to a product is attributable to a particular claimed invention." *Id.* To that end, HW will rely on Mr. de la Iglesia at trial to testify about secondary considerations. Mr. de la Iglesia relies on the ItsOn Solution's alleged embodiment of all asserted claims of all asserted patents to support certain of his secondary consideration opinions. This is legally insufficient, as Mr. de la Iglesia did not offer *any* basis for, or analysis of, the degree to which evidence of secondary considerations that he ties to the ItsOn Solution is attributable to any asserted claim, or even an asserted patent.

Mr. de la Iglesia's secondary consideration "evidence" as to the ItsOn Solution is thus wholly untethered to any asserted claims of any asserted patent as required under Federal Circuit law. "There must be 'a legally and factually sufficient connection' between the evidence and the

patented invention." *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) (quoting *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).)  Here—with no (i) presumption or (ii) analysis tying the ItOn Solution to the asserted claims—there is ***none***.  And without tying the ItsOn Solution as a whole, or the specific at-issue feature, to the asserted claims, Mr. de la Iglesia cannot rely on the alleged (i) commercial success, (ii) long-felt need; (iii) industry praise; or (iv) copying of the ItsOn Solution as a secondary consideration of nonobviousness.  Stated differently, the ItsOn Solution may have experienced commercial success because of an unclaimed feature or had unclaimed features copied; neither is a secondary consideration showing nonobviousness of a ***claimed*** invention.  Without a tie to an asserted claim, any commercial success, long-felt need, praise, or copying of the ItsOn Solution—which allegedly embodied more than eighty patents covering different inventions—cannot be evidence of the asserted claims' nonobviousness.

Therefore, because Mr. de la Iglesia has not articulated a possible nexus between the asserted claims and the theory that he propounds, his opinion regarding secondary considerations that rely on the ItsOn Solution should be stricken. *See Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 98745, at *2 (E.D. Tex. Jan. 8, 2016) ("[s]econdary consideration evidence that bears no possible nexus to the inventions of the asserted patents does not constitute sufficiently reliable 'facts or data' upon which an expert can base an opinion under Fed. R. Evid. 702.").

## IV.    CONCLUSION

Based on the foregoing, Samsung respectfully requests that the Court strike the following paragraphs from Mr. de la Iglesia's expert report: 1334-1336, 1352, 1362-1365, 1367-1378.

**PUBLIC VERSION**

████████████████████████████████

Dated: May 10, 2024                    Respectfully submitted,

By:  */s/ Benjamin K. Thompson*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman (*pro hac vice*)
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Nicholas A. Gallo (*pro hac vice*)
GA Bar No. 546590
gallo@fr.com
Steffen Lake (*pro hac vice*)
GA Bar No. 512272
lake@fr.com
Sara Fish
sfish@fr.com
GA Bar No. 873853
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Katherine H. Reardon
NY Bar No. 5196910
reardon@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600

14

PUBLIC VERSION

ldavid@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
Harry L. Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Grant Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
Jon Hyland

PUBLIC VERSION

████████████████████████████

jhyland@hilgersgraben.com
Texas Bar No. 24046131
Theodore Kwong
tkwong@hilgersgraben.com
Texas Bar No. 4087871
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 469-751-2819

PUBLIC VERSION

███████████████████████████

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on Plaintiff through its counsel of record via email on May 10, 2024.

*/s/ Benjamin K. Thompson*
Benjamin K. Thompson

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on May 9, 2024. The parties were unable to reach agreement as to Samsung's requested relief.

*/s/ Benjamin K. Thompson*
Benjamin K. Thompson

## CERTIFICATE OF AUTHORIZATION TO SEAL

The undersigned hereby certifies that pursuant to the protective order in the above-captioned case, this document contains confidential information. Accordingly, this document is to be filed under seal.

*/s/ Benjamin K. Thompson*
Benjamin K. Thompson