**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC | |
| *Plaintiff*, | |
| v. | Case No. 2:2-00422-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC., | |
| *Defendants*. | |

**SAMSUNG'S OPPOSITION TO HEADWATER'S MOTION TO STRIKE CERTAIN PORTIONS OF THE EXPERT OPINIONS OF DR. SCHONFELD (DKT. 240)**

**PUBLIC VERSION**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   Argument .............................................................................................................2

      A.    Dr. Schonfeld's '976 Patent Non-infringement Opinion Applying the Plain Meaning of the Claims Should Not Be Stricken.......................................... 2

            1.    Dr. Schonfeld's and Samsung's Non-infringement Position on '976 Patent Claim 1 ..............................................................................3

            2.    Dr. Schonfeld's Non-infringement Opinion Applies the Plain Meaning of the Relevant Claim Language As Understood by a POSITA..................4

            3.    Headwater Adopted Dr. Schonfeld's Interpretation as the Plain Meaning in Proceedings at the PTAB ..............................................................6

            4.    Headwater Repeatedly Misstates Samsung's Non-Infringement Position to Manufacture the Appearance of a Claim Construction Argument .........8

            5.    Dr. Schonfeld's Plain Meaning Interpretation is Consistent with Intrinsic Evidence .......................................................................10

            6.    Neither Judicial Estoppel Nor Waiver Applies..........................................12

             7.    Headwater Provides No Other Valid Basis to Strike Dr. Schonfeld's Non-infringement Analysis.............................................................14

      B.    Headwater Provides No Valid Basis for Striking Dr. Schonfeld's Opinions on Non-infringing Alternatives ............................................................... 16

            1.    Dr. Schonfeld's Technical Analysis of the Non-Infringing Alternatives is More Than Sufficient ..............................................................16

             2.    All of Dr. Schonfeld's Identified Non-Infringing Alternatives Were "Available" At the Relevant Time .....................................................18

             3.    The Non-Infringing Alternatives Are Relevant to Damages ....................21

      C.    Dr. Schonfeld's Opinions on ██████████████████████ Are Supported by Sufficient Evidence ................................................... 22

            1.    The Scope of Headwater's Request to Strike Dr. Schonfeld's Opinion on ████████████ ...............................................22

             2.    Dr. Schonfeld Relies on Multiple Evidentiary Sources to Understand How the ██████████████████████ ..............................24

III.   CONCLUSION......................................................................................................25

i

**PUBLIC VERSION**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                             **Page(s)**

*Alacritech Inc. v. CenturyLink, Inc.*,
    No. 2:16-CV-00693-RWS-RSP, 2023 U.S. Dist. LEXIS 184171 (E.D. Tex. Oct. 2, 2023)................ 18

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
    No. 2:22-cv-0343-JRG-RSP, 2024 U.S. Dist. LEXIS 54520 (E.D. Tex. Mar. 26, 2024) .......22

*Drone Techs., Inc. v. Parrot S.A.*,
    838 F.3d 1283 (Fed. Cir. 2016)...............................................................................................25

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
    No. 2:22-CV-00125-JRG-RSP, 2023 U.S. Dist. LEXIS 220040
    (E.D. Tex. Nov. 27, 2023) .......................................................................................................18

*Grain Processing Corp. v. Am. Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999)........................................................................................18, 19

*Gree, Inc. v. Supercell Oy*,
    No. 2:19-cv-00200-JRG-RSP, 2021 U.S. Dist. LEXIS 80998 (E.D. Tex. Apr. 28, 2021)......14

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).......................................................25

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    No. 2:06-CV-348, 2011 U.S. Dist. LEXIS 5422 (E.D. Tex. Jan. 20, 2011)...........................18

*Network Prot. Scis., LLC v. Fortinet, Inc.*,
    No. C 12-01106 WHA, 2013 WL 5402089 (N.D. Cal. Sept. 26, 2013)................................25

*Owens v. W. & S. Life Ins. Co.*,
    717 F. App'x 412 .....................................................................................................................12

*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys.*,
    No. 2:19-cv-00225-JRG, 2020 U.S. Dist. LEXIS 85561 (E.D. Tex. May 15, 2020).............10

**PUBLIC VERSION**

## EXHIBIT INDEX & NOTES

| Exhibit | Description |
|---|---|
| 1 | Excerpts from Samsung's Amended Non-Infringement Contentions, dated March 15, 2024 |
| 2 | Excerpts from the Expert Report of Dr. Richard D. Wesel, dated March 29, 2024 |
| 3 | IPR2023-01253, Decision Denying '976 Institution |
| 4 | Excerpts from the Deposition Transcript of Mr. David Kennedy, May 14, 2024 |
| 5 | Excerpts from the Rebuttal Expert Report of Keith R. Ugone, Ph.D., dated April 19, 2024 |

\*      Emphasis added unless otherwise noted.

\*\*     Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\*    In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

PUBLIC VERSION

## I.      INTRODUCTION

Headwater's broad motion to strike portions of Samsung's technical expert's opinions seeks to exclude: (1) Dr. Schonfeld's primary non-infringement defense for the '976 Patent; (2) his entire non-infringing alternatives analysis, and (3) eight paragraphs from Dr. Schonfeld's Opening Expert Report containing opinions supporting his invalidity analysis.[1]  Headwater lacks a sufficient basis for striking any of the opinions at issue.

First, Headwater seeks to strike a '976 Patent non-infringement argument from Dr. Schonfeld's rebuttal report by falsely claiming it requires claim construction.  In doing so, Headwater repeatedly misstates Dr. Schonfeld's actual opinion, which is based on nothing more than the plain claim language.  Notably, Headwater had no issues with this non-infringement opinion, which both parties agree was timely disclosed during discovery, until Dr. Schonfeld pointed out that his application of the plain claim language was consistent with Headwater's representations to the Patent Trials and Appeal Board (PTAB) about the plain meaning of the relevant claim terms.  Thus, Headwater's true concern is not so much about Dr. Schonfeld's non-infringement argument, but about being confronted with its own statements to the PTAB, which contradict Headwater's expert's infringement analysis.  Headwater provides no valid basis to exclude Dr. Schonfeld's non-infringement argument.

Second, Dr. Schonfeld's extensive non-infringing alternatives analysis is legally and technically sufficient.  Headwater seeks to strike Dr. Schonfeld's opinion by proposing an unsupported bright-line rule as to what is required for a non-infringing alternative to have been considered "available," and by seeking to impose requirements on an expert's technical analysis of a non-infringing alternative that have no basis in law.  Headwater also wrongly claims that

---

[1]      In this portion of its motion, Headwater seeks to strike paragraph nos. ¶¶ 284, 410, 597, 710, 816, 900, 1013, and 1147 of Dr. Schonfeld's Opening Report.  Mot. at 20, f.n. 7.

**PUBLIC VERSION**

Samsung's damages expert did not opine that the non-infringing alternatives would have an effect on the hypothetical negotiation.  Ultimately, Headwater's complaints about Dr. Schonfeld's non-infringing alternatives analysis, at best, go to the weight of this opinion, not its admissibility.

Third, Headwater requests the Court strike eight paragraphs from Dr. Schonfeld's invalidity analysis because Headwater argues Dr. Schonfeld cannot have those opinions without having had source code access to ████████████████████.  To the contrary, Dr. Schonfeld's analysis is supported by multiple, sufficient, non-source code sources.  Again, Headwater's gripes go to the weight, not admissibility of Dr. Schonfeld's opinions, which Headwater is free to challenge via cross examination at trial.

Headwater's motion to strike should be denied in its entirety.

## II.  ARGUMENT

### A.  Dr. Schonfeld's '976 Patent Non-infringement Opinion Applying the Plain Meaning of the Claims Should Not Be Stricken

Dr. Schonfeld's non-infringement opinion on the '976 Patent that is the subject of Headwater's motion is based on the plain claim language.  No claim construction is required.  Headwater attempts to manufacture a claim construction dispute by repeatedly mischaracterizing Dr. Schonfeld's opinion.  Headwater provides no valid basis to strike his *actual* opinion.

Also, although Headwater's motion indicates that it concerns a "'976 Patent Non-Infringement Argument," Mot. at 1, the non-infringement opinion at issue (and the corresponding paragraphs identified in Headwater's motion (Section XI.B (¶¶ 332-379) and ¶ 384)) address *six of the eight asserted patents*.  See Dkt. 239-2 (Schonfeld Rebuttal Rpt.) at ¶¶ 333-334.  Headwater's motion does not address any of the patents other than the '976 Patent and thus provides no basis for its sweeping request to strike Dr. Schonfeld's opinions as they apply to all six Headwater patents to which the defense applies.

### 1. Dr. Schonfeld's and Samsung's Non-infringement Position on '976 Patent Claim 1

'976 Patent claim 1 recites a "wireless end-user device," like a cellular phone, having a "WWAN modem" to communicate over a WWAN network (e.g. a cellular network) and a "WLAN modem" to communicate over a WLAN network (e.g. a Wi-Fi network).  Dkt. 42-6 ('976 Patent) at claim 1.  Claim 1 then recites, in the limitation Headwater refers to as claim 1[f][2], "*for a time period when data for Internet service activities is communicated through a WWAN modem* connection to the at least one WWAN, *apply a first differential traffic control policy* to Internet service activity." *Id.*[3]  Dr. Schonfeld's non-infringement opinion on limitation 1[f] is the subject of Headwater's motion to strike.

Samsung disclosed months ago, in response to Headwater's interrogatory seeking Samsung's non-infringement positions, Samsung's argument as to why the accused products do not satisfy limitation 1[f].  Samsung stated specifically that its products do not satisfy limitation 1[f] because ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████ .

Despite having been put on notice of Samsung's non-infringement position many months ago, Headwater never argued that it believed Samsung's argument was based on an untimely claim

---

[2]      For ease of readability, Samsung will likewise refer to the '976 patent claim limitation which begins "for a time period when data for Internet service activities is communicated through WWAN" as limitation 1[f].

[3]      Emphasis is added to quotations unless otherwise noted.

construction.  Headwater never cried foul, nor waiver, nor estoppel, as it does now.  In fact, Headwater's technical expert directly addressed Samsung's argument in his opening report—without any allegation that claim construction was required to resolve the dispute:



Ex. 2 (Wesel Op. Rpt.) at ¶ 396; see also *id.* at ¶¶ 395-399 (addressing Samsung's non-infringement argument).  And even after Dr. Schonfeld served his rebuttal report including his non-infringement opinion on '976 Patent limitation 1[f], Headwater's expert served an unsanctioned reply report further attempting to respond to Dr. Schonfeld's analysis of limitation 1[f].  *See generally*, Dkt. 239-9 (4/25 Supp. Wesel Report).

Headwater does not dispute that Samsung timely disclosed during discovery the very non-infringement argument Headwater now seeks to strike, or that its expert responded to Dr. Schonfeld's opinions.

### 2.     Dr. Schonfeld's Non-infringement Opinion Applies the Plain Meaning of the Relevant Claim Language As Understood by a POSITA

Dr. Schonfeld's rebuttal report offered the same non-infringement position Samsung disclosed during discovery, and that Headwater's expert, Dr. Wesel, addressed in his opening and "supplemental" reports. *See supra* § II.A.1.  Namely, Dr. Schonfeld opined that the plain language of limitation 1[f] of the '976 Patent "requires at least that the claimed device apply a differential traffic control policy / network service activity control policy ***based on network type***," and the accused features do not meet that requirement.  Dkt. 239-2 (Schonfeld Rebuttal Rpt.) at ¶ 336.

Headwater's motion makes clear that its true gripe concerns the fact that Dr. Schonfeld's

rebuttal expert report pointed to Headwater's statements during the '976 IPR proceedings—merely as corroboration for his understanding of the plain meaning of limitation 1[f].   Only after Headwater was confronted with its representations to the PTAB, which contradict Headwater's infringement allegations, did Headwater first contend that Samsung's non-infringement argument, as espoused by Dr. Schonfeld, constituted claim construction.

Contrary to Headwater's argument, Dr. Schonfeld's non-infringement opinion for limitation 1[f] applies the plain claim language.   Limitation 1[f] expressly requires a condition to be evaluated: "[f]or a time period when data for Internet service activities is communicated through the WWAN modem," followed by a result when the condition is satisfied: "apply[ing] a first differential traffic control policy."   In other words, the plain claim language mandates that the application of the network policy is ***based on the network type***, i.e. WWAN.   Dr. Schonfeld confirmed his application of the plain claim language during his deposition:

> And so the condition is, [As read] [f]or a time period when data for internet service activities is communicated through a WWAN modem connection to the at least one WWAN.   And so there is a condition.   So there needs to be a determination whether that condition is satisfied or not.   If it's determined that that condition is satisfied, then you apply a first differential traffic control policy to internet service activity on behalf of the first end-user application.

Dkt. 239-3 (Schonfeld (5/7/24) Dep. Tr.) at 105:4-14.   Dr. Schonfeld also pointed out during deposition that it is Headwater who is trying to rewrite the claim so that it can be satisfied when a policy is applied by happenstance at a time when the WWAN modem is used:

> Q.   And Claim 1 expressly requires applying a first differential traffic control policy to end-user application, quote, for a time period when data for internet service activities is communicated through a WWAN modem connection to the at least one WWAN, end quote; correct?
>
> A.   Yeah.   I didn't read -- I didn't follow your reading as you were going through because ***I think you shuffled the condition and made it a result.   So I think you reversed the order of the two***, if I'm not mistaken, unless you were reading from somewhere else.

*Id.* at 104:9-21.  Notably Headwater's motion adopts the same reversal of the plain claim language. Mot. at 9 ("Headwater maintains that the plain meaning of 'for a time period' requires what it says—applying the policy for a time period of WWAN connectivity," i.e. the reverse of how the claim actually reads).  If anyone is deviating from the plain claim language, it is Headwater.

Headwater questioned Dr. Schonfeld on this limitation during deposition (using three separate attorneys over three days).  Dr. Schonfeld consistently made clear that his non-infringement opinion on this limitation applied only the plain meaning of the claim language:

- "I would note that there is a notion of a first differential traffic control policy in Claim 1.  And so there is a notion of having different policies for at least WWAN network compared to other networks, just from the ***plain meaning of the -- of Claim 1***." Dkt. 239-3 (Schonfeld (5/7/24) Dep. Tr.) at 100:22-101:2.

- "And my understanding is, at this point, the court has construed the terms that were requested, and all of the terms, including the disputed terms, are understood to be -- are to be ***interpreted according to their plain and ordinary meaning*** to a POSITA, or to a person of ordinary skill in the art.  And so that's what I have applied.  ***I have not applied any other -- anything other than the plain and ordinary meaning***."  *Id.* at 93:3-12.

- "***I required just what the plain meaning is***, which is one policy when you have WWAN connectivity and some other policy when you don't." *Id.* at 114:10-12.

Headwater's motion to strike Dr. Schonfeld's opinion on limitation 1[f] is based entirely on the false premise that Dr. Schonfeld's opinion applies something other than plain meaning.  It does not.  Headwater's request to strike this opinion can be denied for this reason alone.

### 3. Headwater Adopted Dr. Schonfeld's Interpretation as the Plain Meaning in Proceedings at the PTAB

Headwater's argument that Dr. Schonfeld's non-infringement opinion does not apply the plain meaning of the claim language directly contradicts Headwater's statements to the PTAB during IPR proceedings on the '976 Patent.

As an initial matter, during the IPR proceedings on the '976 Patent, both parties agreed no claim constructions were required.  Dkt. 238-2 (2023-01253, POPR) at 8.  As such, both parties

PUBLIC VERSION

applied the plain meaning of the claims, including the "plain meaning of claim [1.7]," which corresponds to '976 limitation 1[f], i.e. the subject of Headwater's motion to strike. *Id.* at 15; Mot. at 3, f.n.2.

Applying the plain meaning of limitation 1[f], Headwater told the PTAB in its Patent Owner Preliminary Response ("POPR") that '976 Patent claim 1 requires "condition[ing] the application policies ***based on whether the device is connected to a WWAN***," *i.e.*, the same plain meaning Dr. Schonfeld applies in his expert report:

> As an initial matter, there is no evidence (and the Petition does not assert) that the Rao-Oestvall system conditions the application policies based on whether the device is connected to a WWAN. This is apparent from the Petition's discussion of claim [1.7]. That limitation describes applying a first differential traffic control policy "for a time period when data for Internet service activities is communicated through a WWAN modem connection to the at least one WWAN."

Dkt. 238-2 (2023-01253, POPR) at 32. Headwater later reiterated that limitation 1[f] requires that the claimed policy is applied "because of the WWAN state," *i.e.*, based on the network type:

> [5] Notably, there is no evidence that a POSITA would be motivated to modify Rao-Oestvall to determine *when* the device is connected to a WWAN and then apply traffic control policies *only* during that time. The Petition asserts that the system applies policies because battery conservation is needed—not because of the WWAN state. *See* Pet. at 22. Indeed, "battery conservation" was the Petition's stated rationale for combining Rao with Oestvall. *Id.* at 12 ("Given *Oestvall's focus on battery conservation*, Rao-Oestvall would have therefore enabled prioritization in a manner that *conserves battery power*"). Nothing in Rao or Oestvall teaches or suggests applying policies based on whether the device is connected to a WWAN.

*Id.* at 32-33, f.n. 5. Headwater cannot, on the one hand, tell the PTAB that the plain language of

the claims requires the claimed control policy to be applied based on network type, while on the other hand, calling such an interpretation claim construction when Dr. Schonfeld and Samsung apply the plain claim language in the same way.

Headwater's attempt to distance itself from the representations it made to the PTAB regarding the plain meaning of the claim fails. ███████████████████████████████ ███████████████████████████████████ Mot. at 11. ██████████████. Headwater's statements were expressly directed to **claim limitation 1.7**, which aligns with the limitation 1[f] at issue in Headwater's motion, *i.e.*, that which begins "for a time period when data for Internet service activities is communicated through a WWAN modem…":

> As an initial matter, there is no evidence (and the Petition does not assert) that the Rao-Oestvall system conditions the application policies based on whether the device is connected to a WWAN. This is apparent from the Petition's discussion of claim [1.7]. That limitation describes applying a first differential traffic control policy "for a time period when data for Internet service activities is communicated through a WWAN modem connection to the at least one WWAN."
>
> The Petition's theory for claim [1.7] is that *knowing* the device is in WWAN mode does not matter. *See* Pet. at 22-23. It contends that Rao-Oestvall applies

Dkt. 238-2 (2023-01253, POPR) at 32. Headwater's representations to the PTAB only confirm that Dr. Schonfeld's non-infringement argument applies the plain claim language.

### 4. Headwater Repeatedly Misstates Samsung's Non-Infringement Position to Manufacture the Appearance of a Claim Construction Argument

Because there is nothing improper about Dr. Schonfeld's *actual* application of the plain claim language to his non-infringement analysis, Headwater attempts to manufacture a claim construction dispute by misstating Dr. Schonfeld's opinion—over and over.

**PUBLIC VERSION**

Specifically, Headwater incorrectly represents that Dr. Schonfeld opines that '976 Patent limitation 1[f] "requires that the first differential traffic control policy differentiate between WLAN and WWAN networks and ***only*** and ***exclusively*** apply to a WWAN." Mot. at 1 (emphasis in original). Headwater goes on to repeat this misstatement *ad nauseum* throughout its brief as a strawman for Dr. Schonfeld's true argument:

- "His reading of the claim requires that the policy apply '***exclusively*** in WWAN mode.'" *Id*. at 1.

- Stating that Dr. Schonfeld's position "require[s] applying the differential traffic control policy '***only' or 'exclusively'*** when connected to a WWAN. *Id.* at 2.

- "Samsung seeks to add a claim limitation specifying that the policy is '***only***' and '***exclusively***' for periods of WWAN connectivity" *Id.* at 2.

- "Dr. Schonfeld asserts that claim 1[f] requires 'apply[ing] policies '***exclusively***' in WWAN mode.'" *Id.* at 4.

- Referring to "Dr. Schonfeld's '***exclusively*** in WWAN mode' argument." *Id.* at 5.

In fact, in the fourteen pages Headwater devotes to this portion of its motion to strike, Headwater refers to Dr. Schonfeld's alleged "***exclusively*** in WWAN mode" argument **nineteen times**. *See generally* Mot. at 1-14.

In reality, neither Dr. Schonfeld (nor Samsung) has opined that '976 claim 1 requires that the claimed policy applies "***only*** and ***exclusively*** in WWAN mode." In contrast to Headwater's motion, which refers to the so-called "exclusively" opinion nineteen times in fourteen pages, Dr. Schonfeld's 300+ page rebuttal expert report uses the word "exclusively" once—and only when ***quoting Headwater***. Dkt. 239-2 (Schonfeld Rebuttal Rpt.) at ¶ 376. Headwater's misstatement of Dr. Schonfeld's (and Samsung's) non-infringement position is merely a strawman argument set up to manufacture the appearance of a claim construction dispute where none exists.

As explained above (*see supra* § II.A.2), Dr. Schonfeld's actual opinion is based solely on

9

PUBLIC VERSION

the plain claim language, and merely requires that the claimed system "for a time period when data for Internet service activities is communicated through a WWAN modem, … apply a first differential traffic control policy to Internet service activity," *i.e.* the express claim language.

### 5.  Dr. Schonfeld's Plain Meaning Interpretation is Consistent with Intrinsic Evidence

Headwater's argument that Dr. Schonfeld's application of the plain claim language "lack[s] any intrinsic support," (Mot. at 11) or "contradicts the plain language of the claim" (Mot. 1) is premised on Headwater's false narrative that Dr. Schonfeld made an "exclusively in WWAN mode" argument.  He did not.  *See supra* § II.A.4.  Headwater does not address the merits of Dr. Schonfeld's *actual* application of the plain claim language.

Even so, Dr. Schonfeld's actual plain meaning application of the relevant limitation is consistent with the intrinsic evidence.  It is consistent with the claim language itself.  *See* supra §§ II.A.1 and II.A.2.  It is consistent with the prosecution history, including Headwater's statements to the PTAB about the plain meaning of the claims.  *See supra* § II.A.3; *see Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys.*, No. 2:19-cv-00225-JRG, 2020 U.S. Dist. LEXIS 85561, at *35 (E.D. Tex. May 15, 2020) (relying on a party's representations to the PTAB to find that a term should have its plain and ordinary meaning).  And it is consistent with the patent specification, which states "[f]or a time period when data for Internet service activities is communicated through the WWAN modem, the processors use a differential traffic control policy to selectively block and allow network access…[and] [a] different policy may apply to WLAN modem usage and/or to different WWAN networks."  Dkt. 42-6 at Abstract.

Even Headwater's own claim construction expert, Dr. Chrissan, agreed with Dr. Schonfeld's (and Samsung's) read of the plain claim language.  Dr. Chrissan opined on various patent limitations spanning the asserted patents, including the '976 Patent.  He agreed that the

PUBLIC VERSION

claims "in the disputed patents" "make a distinction to selectively block and allow traffic [e.g. by applying a policy] ***based on a WWAN versus WLAN distinction***," *i.e.*, based on network type:

```
 6              Fair to say that the claims, at
 7    least we're talking about in the disputed
 8    patents, make the distinction to selectively
 9    block and allow traffic based on a WWAN
10    versus WLAN distinction, not based on whether
11    a connection is metered or not?  Can we agree
12    on that?
13         A    Generally, yes.
```

Dkt. 238-4 (Chrissan Dep. Tr.) at 109:6-13.[4]  Headwater claims this testimony was unique to the '701 Patent.  Mot. at 13.  It was not.  The testimony concerned the "disputed patents."  Dkt. 238-4 (Chrissan Dep. Tr.) at 109:6-13.

Dr. Schonfeld's application of the plain meaning of limitation 1[f] is also consistent with the '976 Patent's dependent claims—contrary to Headwater's argument with respect to claims 5, 6, and 7.  Mot. at 10.  Dependent claim 5 of the '976 Patent (from which claims 6 and 7 depend) requires that the "first differential traffic control policy [of claim 1] is ***part of a multimode profile having different policies for different networks***."  Pointing to claim 5, Headwater contends that claim differentiation mandates that claim 1 cannot require that a policy be applied based on network type, *i.e.*, based on whether there exists a WWAN connection.  However, unlike claim 5, Claim 1 says nothing about a "multimode profile."  Also, claim 1 is silent about what must happen when Internet service activities are not communicated through a WWAN modem.  Claim 1 does, however, at least require that the recited condition (i.e. WWAN connectivity) be evaluated and a

---

[4] As pointed out in Headwater's motion, Dr. Chrissan goes on to make an additional follow-up point in his response.  But, contrary to Headwater's suggestion, it does not negate Dr. Chrissan's (i.e. a POSITA's) read of the plain claim language, which is also consistent with Dr. Schonfeld's.

control policy applied as a result, *i.e.*, based on network type.  Dkt. 239-2 (Schonfeld Rebuttal Rpt.) at ¶ 334.  Headwater's claim differentiation argument has no merit.

Dr. Schonfeld's understanding and application of the plain claim language is consistent with the intrinsic evidence, which is likely why Headwater itself applied the same plain meaning during IPR proceedings.

### 6.    Neither Judicial Estoppel Nor Waiver Applies

Headwater's judicial estoppel and waiver arguments are legally and factually insufficient.

***First***, Headwater incorrectly argues that Dr. Schonfeld's non-infringement argument, and plain meaning claim application, are somehow precluded by judicial estoppel, which Headwater contends requires (1) a position that is "clearly inconsistent with its previous one," and (2) that the "party must have convinced the court to accept that previous position." Mot. at 3 (citing *Owens v. W. & S. Life Ins. Co.*, 717 F. App'x 412, 417).  This is an odd argument for Headwater to make given that Headwater is trying to turn its back on the plain meaning it advanced during the '976 IPR proceeding.  Either way, Headwater is wrong on both judicial estoppel elements.

One, Headwater's argument that Dr. Schonfeld's position is inconsistent with Samsung's statements to the PTAB, relies (again) on Headwater's misrepresentation of Dr. Schonfeld's actual opinion.  Indeed, Headwater again contends that Dr. Schonfeld is opining that '976 claim 1 applies policies "only" and "exclusively" in WWAN mode. Mot. at 3.  This is not Dr. Schonfeld's (nor Samsung's position), *see supra* § II.A.4, and Headwater cites no instance where Samsung's representations to the PTAB contradict Dr. Schonfeld's *actual* application of the plain meaning.

Two, contrary to Headwater's argument, Samsung did not "convince" the PTAB to accept Samsung's position.  Mot. at 4.  For starters, Samsung's IPR petition on the '976 Patent was denied. Ex. 3 (Decision Denying '976 Institution).  Thus, Headwater's only argument that this element of judicial estoppel applies is that "Headwater agreed with Samsung's proposed construction for 1[f],

and that is the construction the Board applied in its Decision Denying Institution." Mot. at 4. Headwater's argument is confusing at best. The PTAB did not construe any terms, nor did it accept any party's proposed constructions, in its denial decision. Ex. 3 (Decision Denying '976 Institution) at 5 ("Neither party proposes an express construction for any claim terms. Pet. 2–3; Prelim. Resp. 8. We agree that no claim terms require express construction for purposes of this Decision."). And the PTAB's Decision Denying Institution did not even substantively address limitation 1[f]. *Id.* There can be no judicial estoppel.

***Second***, Headwater's waiver argument is similarly flawed. Like the remainder of Headwater's motion to strike Dr. Schonfeld's non-infringement opinion, Headwater's waiver argument also rests on the faulty premise that Dr. Schonfeld applied an "exclusively in WWAN mode" construction to his non-infringement analysis. Mot. at 5. He did not. The remainder of Headwater's waiver argument only further extends this false narrative to contend that Dr. Schonfeld is advocating a claim construction that needed to be disclosed during Patent Local Rule claim construction exchanges. But again, Dr. Schonfeld's opinions are applied based solely on the plain meaning of the claim—no construction was, or is, required. Headwater also claims that this Court can find waiver based on Samsung allegedly adopting a position at the PTAB that is contrary to that taken in this Court. Mot. at 7. But, contrary to Headwater's misstatement, neither Dr. Schonfeld, nor Samsung is making the alleged "exclusively in WWAN mode" argument here, and it similarly did not make any contradictory argument during the IPR proceedings. If waiver were to apply in this instance, it would be Headwater that would be precluded from renouncing its statements to the PTAB that are consistent with Dr. Schonfeld's opinion. *See supra* § II.A.3.

Headwater's judicial estoppel and waiver arguments have no basis in law or fact.

PUBLIC VERSION

### 7. Headwater Provides No Other Valid Basis to Strike Dr. Schonfeld's Non-infringement Analysis

Headwater launches several additional attacks on Dr. Schonfeld's application of the plain meaning of '976 claim limitation 1[f] to his non-infringement opinion. None of them is sufficient to justify a motion to strike Dr. Schonfeld's opinion.

Headwater contends that Samsung cannot introduce Headwater's POPR statements at trial due to the Court's Standing Order on MILs, No. 6. Mot. at 8. First, Samsung does not interpret that MIL so broadly as to categorically prevent, in all instances, any reference to the substance of proceedings or submissions at the PTAB.[5] Indeed, the MIL appears to have an exception for evidence that "relate[s] directly to an Article III trial in a district court." *Id.* To be certain, Samsung has no intent on introducing evidence or argument regarding the status (institution or denial) of PTAB proceedings on the asserted patents or otherwise referring specifically to PTAB or IPR proceedings. However, Samsung does not believe it should be precluded from, *e.g.*, impeaching Headwater's expert for adopting a plain meaning that is exactly the opposite of that which Headwater has otherwise advanced. Even assuming Samsung is precluded from referring in any way at trial to Headwater's contradictory PTAB representations, that should still not preclude Dr. Schonfeld from advancing a plain meaning non-infringement argument, where his interpretation of the claim does not require (even though it is confirmed by) Headwater's PTAB representations. Mot. at 8-9 (citing Dr. Schonfeld's deposition) ("Q. Do you feel like you need to reference any of

---

[5] For example, Samsung understands that this Court has previously allowed parties to generally discuss certain aspects of the substance of PTAB proceedings so long as it is generically referenced as having taken place "at the Patent Office." *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-00200-JRG-RSP, 2021 U.S. Dist. LEXIS 80998, at *11-12 (E.D. Tex. Apr. 28, 2021) (quoting the Court's pre-trial advice in the *Hillman* case where the Court stated "We're not going to mention *inter partes* review or IPR or the Patent Trial and Appeal Board, but that doesn't mean that the substance of what happened can't be presented to the jury in regard to this relevant issue as long as it's simply referenced as having occurred, quote, at the Patent Office.")

the IPRs to give your full opinions on validity and noninfringement at trial? A. I don't rely on them for anything specific.… I don't need them for anything. I think that I just simply showed that my interpretation of the claim based on the plain meaning, which does not rely on anything other than the claim language in the patents, is consistent with the way Headwater sometimes chose to interpret the claims. But I don't need it for that").

Headwater also wrongly argues that Samsung should not be permitted to rely on Headwater's PTAB statements because Samsung did not disclose its intent to rely on IPR proceedings for the asserted patents during discovery.  Mot. at 13.  This is demonstrably false. First, Headwater does not dispute that Samsung expressly disclosed this non-infringement argument during discovery.  *See e.g.*, Ex. 1 (Amended Non-infringement Contentions) at 52

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████  And, in its non-infringement contentions disclosing the relevant non-infringement position, Samsung expressly disclosed its intent to rely on support from the asserted patent IPR proceedings.  *See id.* at 124 (indicating Samsung's intent to support its non-infringement defenses using "Headwater's and the Patent Office's positions in pending *Inter Partes* Review proceedings at the PTAB.")  In any event, Headwater cannot feign surprise or claim prejudice from Samsung relying on Headwater's own statements to the PTAB, which Headwater knew were contradictory to its expert's opinion. Headwater's lack of prejudice is further shown by the fact that its expert, Dr. Wesel, fully responded to Samsung's non-infringement argument in his expert report and his untimely "supplemental" report.  *See supra* § II.A. 1.  Headwater admits as much. Mot. at 9 (referring to the "opinion of Headwater's technical expert, Dr. Richard Wesel, that claim 1 does not recite a 'based on network type' limitation.").

Finally, Headwater's proposal to invoke an *O2 Micro* resolution is unnecessary. Neither Samsung nor Dr. Schonfeld plan to argue claim construction to the jury. Dr. Schonfeld applies the plain meaning of limitation 1[f] to his non-infringement analysis. Headwater agreed with Dr. Schonfeld's application of the plain meaning during the IPR proceedings on the '976 Patent. Headwater is only now reversing course to mislabel Dr. Schonfeld's application of the plain meaning as claim construction in an effort to conceal its PTAB representations, which support Samsung's non-infringement defense.

Dr. Schonfeld's non-infringement analysis is not based on claim construction and Headwater provides no valid basis to exclude the opinions at issue.

**B.   Headwater Provides No Valid Basis for Striking Dr. Schonfeld's Opinions on Non-infringing Alternatives**

**1.   Dr. Schonfeld's Technical Analysis of the Non-Infringing Alternatives is More Than Sufficient**

Headwater's primary gripe with Dr. Schonfeld's technical analysis of the various non-infringing alternatives is that he "does not analyze *how* Samsung would replace or redesign the accused features. Mot. at 14; see also *id.* at 15 ("Dr. Schonfeld never explains *how* any accused feature would be removed or modified…."). First, Headwater does not cite a single case requiring that a non-infringing alternatives analysis must discuss the technical details of the removal or redesign of the ***accused features***—much less that an expert must testify on this issue. Mot. at 14-18. Second, the baseline premise of a non-infringing alternatives analysis is to identify alternative technologies available to the alleged infringer to use *instead of* the accused technology. That is precisely what Dr. Schonfeld's opinion concerns as he identifies and describes multiple technologies that were available alternatives to using the patented technology. Dkt. 239-1 (Schonfeld Op. Rpt.) at ¶¶ 1237-87; *see also* Dkt. 239-2 (Schonfeld Rebuttal Rpt.) at ¶¶ 651-691.

**PUBLIC VERSION**

At best, Headwater's argument concerning Dr. Schonfeld not opining on precisely *how* Samsung would replace the accused features could go to the weight, not admissibility, of his opinions.

Headwater also contends that certain of Dr. Schonfeld's non-infringing alternatives are not viable because Samsung ███████████████████████████████████████ ████████████████████ Mot. at 17.  Headwater's argument, even if true, would be the subject for cross examination, not a valid basis to exclude Dr. Schonfeld's opinion entirely.  Even so, Headwater's support for its argument that Samsung products must include all Android features, consists merely of Samsung witness testimony that Samsung had no ███████████████████████ ██████████████████████████ ████████████ ██████████████ The accused features do not infringe.  Headwater cites no case law to justify striking Dr. Schonfeld's non-infringing alternatives analysis merely because █████████████████████████████████████████ ████████████████████████████████.

Finally, Headwater sets up another strawman argument in response to one of Dr. Schonfeld's non-infringing alternatives that concerns using technology present in a prior art version of Android in place of the accused features.  Headwater misstates that Dr. Schonfeld's proposal is to sell current ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ Mot. at 16.  ██████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████ Dkt. 239-1 (Schonfeld Op. Rpt.) at ¶¶ 1282-87.  Headwater

provides no reason why this would not be technically feasible, much less any valid basis to strike such an opinion.

Headwater is free to explore its gripes with Dr. Schonfeld's technical analysis at trial.

> **2.    All of Dr. Schonfeld's Identified Non-Infringing Alternatives Were "Available" At the Relevant Time**

Headwater proposes a bright-line rule for determining "availability" of a non-infringing alternative such that a feature not commercially on the market at the time of the hypothetical negotiation cannot serve as non-infringing alternative. Mot. at 14.  No such bright line rule exists.

Instead, a non-infringing alternative "must be available **or** on the market at the time of infringement." *LaserDynamics, Inc. v. Quanta Comput., Inc*., No. 2:06-CV-348, 2011 U.S. Dist. LEXIS 5422, at *10 (E.D. Tex. Jan. 20, 2011) (citing *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999).  In other words, the mere fact that a feature has not yet been released to the market as of the hypothetical negotiation, does not exclude that technology from being considered as a non-infringing alternative.  In fact, "[t]he Federal Circuit has instructed that where a product is not available on the market during the damages period, the relevant inquiry is whether '(1) the defendant could readily obtain all of the material needed to implement the non-infringing alternative; (2) the non-infringing alternative was well known in the field at the time of infringement; and (3) the defendant had all of the necessary equipment, know-how, and experience to use the non-infringing alternative.'" *Alacritech Inc. v. CenturyLink, Inc*., No. 2:16-CV-00693-RWS-RSP, 2023 U.S. Dist. LEXIS 184171, at *16 (E.D. Tex. Oct. 2, 2023) (citing LaserDynamics, 2011 U.S. Dist. LEXIS 5422, [WL] at *3).  As this Court recognized "[t]he Federal Circuit reasoned that where an alleged infringer could have 'readily obtained all the materials needed for' the non-infringing alternative, it could be considered despite not being in use until much later." *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc*., No. 2:22-CV-00125-JRG-

RSP, 2023 U.S. Dist. LEXIS 220040, at \*6 (E.D. Tex. Nov. 27, 2023) (citing *Grain Processing*, 185 F.3d at 1351-1352).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████   ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████.

Further, as Headwater acknowledges, ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Dkt. 239-1 (Schonfeld Op. Rpt.) at 611 (citing SAM-HW00155714).  Indeed, as Dr. Schonfeld opines, ███████████████████████████████████████████████████

PUBLIC VERSION

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

████████████████████████████████████████████████████████████

████████████████████████ No party is arguing that Samsung lacked the materials, knowledge, or experience to have developed ████████ before or at the time of the currently-applicable hypothetical negotiation date. ████████████████████████████████████

████████ ████████████ ██ ████████ ██ ████████ ████████ ██ ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ .

Finally, Headwater's proposed 2016 cutoff for all non-infringing alternatives also ignores the fluidity of the hypothetical negotiation date in this case—given the volume of asserted patents and accused features, which are bound to be reduced before trial. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ . Indeed, the issue dates of the asserted patents span from 2015 to 2022. ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ . Depending on which patents/features Headwater drops in advance of trial (Samsung assumes Headwater does not plan to proceed on all eight patents and all accused features), the applicable hypothetical negotiation date could be affected.

In short, Headwater's bright line rule on "availability" of Samsung's non-infringing alternatives is inconsistent with the law and inapplicable to most of Samsung's non-infringing alternatives.

**PUBLIC VERSION**

### 3.      The Non-Infringing Alternatives Are Relevant to Damages

Headwater contends that Dr. Schonfeld's opinions on all non-infringing alternatives should

be excluded because "they play no role in the calculation of damages."  Mot. at 18.  This is false.

Ex. 4 (Kennedy Dep. Tr.) at 153:5-15.  Headwater does not cite any case that requires the financial

experts to have placed a precise quantification on the increase/reduction of the royalty amount

attributed to each non-infringing alternative.

The cases Headwater does cite, the *Correction Transmission* cases (Mot. at 18), do not

justify striking Dr. Schonfeld's non-infringing alternatives analysis.  In those cases, the relevant

financial expert(s) offered "**no opinions** regarding how the non-infringing alternatives should factor into the hypothetical negotiation" and "**no damages opinion** tying any non-infringing alternative to a proper damages analysis." *Correct Transmission, LLC v. Nokia of Am. Corp*., No. 2:22-cv-0343-JRG-RSP, 2024 U.S. Dist. LEXIS 54520, at *11 (E.D. Tex. Mar. 26, 2024); *see also Correct Transmission, LLC v. Nokia of Am. Corp*., No. 2:22-cv-0343-JRG-RSP, Dkt. 244 at 7 (E.D. Tex. Mar. 26, 2024). ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████ As such, Headwater provides no basis to exclude Dr. Schonfeld's non-infringing alternative analysis.

    C.    **Dr. Schonfeld's Opinions on ████ ██████ ████ ██████████ Are Supported by Sufficient Evidence**

        1.    **The Scope of Headwater's Request to Strike Dr. Schonfeld's Opinion ████████████**

Headwater's motion to strike seeks to exclude eight identical paragraphs from Dr. Schonfeld's opening Report, where he states the following (applied to each asserted patent):

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████

Mot. at 19 (citing Schonfeld Opening Report at ¶¶ 284, 401, 597, 710, 816, 900, 1013, and 1147) ("Challenged Paragraphs"). As explained in the following section, Headwater wrongly contends

that Dr. Schonfeld cannot offer the above opinion without having examined ███████████

(to which the parties lacked access) and thus the opinion must be stricken. *See e.g.,* Mot. at 18-19.

Notably, Headwater's motion also references ¶ 410 of Dr. Schonfeld's Opening Report.
Mot. at 20.   Samsung does not understand Headwater to be seeking to strike that additional
paragraph, at least because that opinion is unrelated to the basis for Headwater's motion.
Headwater's motion seeks to preclude Dr. Schonfeld's ████████████████████

████████████████████   Mot. at 18.  But, Dr. Schonfeld's ¶ 410 concerns open source code
to which Dr. Schonfeld did have access; he quotes, cites, and excerpts such code as part of
paragraph 410 (as excerpted below).

```
240    /**
241     * Returns the value of the setting for background data usage. If false,
242     * applications should not use the network if the application is not in the
243     * foreground. Developers should respect this setting, and check the value
244     * of this before performing any background data operations.
245     * <p>
246     * All applications that have background services that use the network
247     * should listen to {@link #ACTION_BACKGROUND_DATA_SETTING_CHANGED}.
248     *
249     * @return Whether background data usage is allowed.
250     */
251    public boolean getBackgroundDataSetting() {
252        try {
253            return mService.getBackgroundDataSetting();
254        } catch (RemoteException e) {
255            // Err on the side of safety
256            return false;
```

SAMSUNG_PRIORART0005350, ConnectivityManager, lines 240-256; *see also* Appendix B

█████████████████████████████████████████████

Dkt. 239-1 (Schonfeld Op. Rpt.) at ¶ 410.  Thus, none of the arguments Headwater makes in its
motion apply to ¶ 410.  To the extent Headwater requests to strike paragraph 410, it provides no
basis to do so in its motion, nor did Headwater meet and confer with Samsung regarding any intent
to seek relief on this paragraph or similar paragraphs.

**PUBLIC VERSION**

    **2.**    **Dr. Schonfeld Relies on Multiple Evidentiary Sources to Understand How the** ████████████████████████████ **Operate**

Headwater contends that the Challenged Paragraphs describing the operation of certain prior art ████████████████ must be stricken from Dr. Schonfeld's Opening Report only because Dr. Schonfeld did not have access to the ***source code*** for those applications.  This argument fails for multiple reasons.

First, Headwater does not acknowledge all the evidence Dr. Schonfeld does cite evidencing the operation of ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████  Dr. Schonfeld likewise relies on the presentation ████████████

████████████████████████████████████████████████████████████████████

████████████████████████.  *See, e.g.*, Dkt. 239-1 (Schonfeld Op. Rpt.) at ¶ 400 (citing SAM-

HW00678150). Thus, Dr. Schonfeld's opinions on the ███████████ are based at least on

████████████████████████████████████████████████████████████

████████████████████████████████████████ and supporting technical

documentation referenced by ██████████████████. Dr. Schonfeld's testimony is far from

"baseless," contrary to Headwater's argument. Mot. at 19.

Second, Headwater identifies no law mandating reliance on "source code" where, as here,

Dr. Schonfeld analyzed the operation of the relevant prior art applications based on the evidence

described above.  As various courts have held, "citation of source code is not necessary when

equivalent information is available from other sources." *Network Prot. Scis., LLC v. Fortinet, Inc.*,

No. C 12-01106 WHA, 2013 WL 5402089, at *4 (N.D. Cal. Sept. 26, 2013); *see also Drone Techs.,*

*Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 (Fed. Cir. 2016) ("source code is not necessary in every

case"); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848 (Fed. Cir. 2010) (noting fact that

accused infringer's invalidity expert did not rely on source code was something the jury could

consider), *aff'd*, 564 U.S. 91, (2011).

Headwater is free to cross examine Dr. Schonfeld to the extent Headwater believes his

analysis was insufficient.  However, Headwater's misbelief as to the weight Dr. Schonfeld's

testimony should be afforded is not fatal to its admissibility. Headwater provides no basis to strike

Dr. Schonfeld's opinions.

## III.   CONCLUSION

For the foregoing reasons, Headwater's motion to strike certain of Dr. Schonfeld's opinions

should be denied.

**PUBLIC VERSION**

Dated: May 24, 2024                    Respectfully submitted,

                                       By:   */s/ Benjamin K. Thompson*
                                             Ruffin B. Cordell
                                             TX Bar No. 04820550
                                             Michael J. McKeon
                                             DC Bar No. 459780
                                             mckeon@fr.com
                                             Jared Hartzman (*pro hac vice*)
                                             DC Bar No. 1034255
                                             hartzman@fr.com
                                             **FISH & RICHARDSON P.C.**
                                             1000 Maine Avenue, SW, Ste 1000
                                             Washington, D.C. 20024
                                             Telephone: (202) 783-5070
                                             Facsimile: (202) 783-2331

                                             Thad C. Kodish
                                             GA Bar No. 427603
                                             tkodish@fr.com
                                             Benjamin K. Thompson
                                             GA Bar No. 633211
                                             bthompson@fr.com
                                             Nicholas A. Gallo (*pro hac vice*)
                                             GA Bar No. 546590
                                             gallo@fr.com
                                             Steffen Lake (*pro hac vice*)
                                             GA Bar No. 512272
                                             lake@fr.com
                                             Sara Fish
                                             sfish@fr.com
                                             GA Bar No. 873853
                                             Noah C. Graubart
                                             GA Bar No. 141862
                                             graubart@fr.com
                                             Katherine H. Reardon
                                             NY Bar No. 5196910
                                             reardon@fr.com
                                             **FISH & RICHARDSON P.C.**
                                             1180 Peachtree St. NE, Fl. 21
                                             Atlanta, GA 30309
                                             Telephone: (404) 892-5005
                                             Facsimile: (404) 892-5002

                                             Leonard E. Davis
                                             TX Bar No. 05521600

ldavid@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
Harry L. Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
James Travis Underwood
State Bar No. 24102587
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450

**PUBLIC VERSION**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Facsimile: (903) 934-9257

Grant Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
Jon Hyland
jhyland@hilgersgraben.com
Texas Bar No. 24046131
Theodore Kwong
tkwong@hilgersgraben.com
Texas Bar No. 4087871
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 469-751-2819

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**

**PUBLIC VERSION**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on May 24, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Benjamin K. Thompson*
Benjamin K. Thompson

<u>**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Benjamin K. Thompson*
Benjamin K. Thompson