IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:22-CV-00422-JRG-RSP |

**SAMSUNG'S OPPOSITION TO HEADWATER'S MOTION (DKT. 253) TO EXCLUDE
OR STRIKE CERTAIN REBUTTAL EXPERT OPINIONS OF PHILIP W. KLINE**

**PUBLIC VERSION**

██████████████████████████████████████

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | LEGAL STANDARD | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | Mr. Kline is Qualified to Critique Dr. Groehn's Survey As It Affects Overall Economic Reliability of Dr. Groehn's Opinions | 2 |
| | B. | Mr. Kline's Econometric Opinions Require Discussion of the Underlying Survey | 7 |
| | C. | Mr. Kline Will Not Offer Opinions Contrary to Dr. Groehn's Own Subsequently-Provided Explanations for Intended Prices | 9 |
| III. | CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Convolve, Inc. v. Dell, Inc.*,
No. 2:08-CV-244-CE, 2011 WL 13091767 (E.D. Tex. July 8, 2011) ....................................... 6

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .............................................................................................................. 10

*Droplets, Inc. v. Yahoo! Inc.*,
No. 12-CV-03733-JST, 2021 WL 9038355 (N.D. Cal. Aug. 9, 2021) ..................................... 5

*Johnson v. Arkema, Inc.*,
685 F.3d 452 (5th Cir. 2012) ................................................................................................... 2

*Marquette Transportation Co. Gulf-Inland, LLC v. Navigation Mar. Bulgarea*,
No. CV 19-10927, 2022 WL 158681 (E.D. La. Jan. 18, 2022) ............................................... 9

*Metaswitch Networks Ltd. v. Genband US LLC*,
No. 2:14-CV-744-JRG-RSP, 2016 WL 874775 (E.D. Tex. Mar. 7, 2016) ............................... 2

*Niblock v. Univ. of Kentucky*,
No. CV 5:19-394-KKC, 2023 WL 4842315 (E.D. Ky. July 28, 2023) ..................................... 5

*Senne v. Kansas City Royals Baseball Corp.*,
591 F. Supp. 3d 453 (N.D. Cal. 2022) ..................................................................................... 5

*State of New York v. United Parcel Serv., Inc.*,
No. 15-CV-1136 (KBF), 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) ................................. 5

*Thomas v. T.K. Stanley, Inc.*,
No. 9-12-CV-158, 2014 WL 12814614 (E.D. Tex. Oct. 28, 2014) .......................................... 9

*Williams v. Manitowoc Cranes, L.L.C.*,
898 F.3d 607 (5th Cir. 2018) ................................................................................................... 1

**Other Authorities**

Fed. R. Evid. 403 ....................................................................................................................... 8, 9

Fed. R. Evid. 702 ................................................................................................................... 1, 6, 8

## EXHIBIT INDEX & NOTES

| Exhibit | Description |
|---|---|
| 1 | Excerpts from the Amended Report of Dr. Andreas Groehn, dated April 22, 2024 |
| 2 | Excerpts from the Deposition of Philip Kline, taken May 10, 2024 |
| 3 | Excerpts from the Deposition of Dr. Andreas Groehn, taken May 13, 2024 |

\*       Emphasis added unless otherwise noted.

\*\*      Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\*     In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

Trying to shield its own experts from criticism, Headwater challenges Samsung's econometrics expert, Mr. Philip Kline, even though it was Mr. Kline who identified the "embarrassing" errors in the conjoint analysis done by Headwater's expert, Dr. Groehn. Dkt. 217 at 3. Indeed, Dr. Groehn admits he was unaware of his errors until he reviewed Mr. Kline's critical analysis, which forced Dr. Groehn and Mr. Kennedy to issue substantially corrected reports. Mr. Kline's rebuttal opinions to Dr. Groehn are thoroughly supported by his 17 years of experience providing economic analysis of intellectual property, including ample experience using data from surveys and other similar modeling in his economic analysis. Because Headwater must acknowledge the robustness and legitimacy of Mr. Kline's criticisms, they then improperly seek to preclude Mr. Kline from discussing the underlying survey data that formed part of his—and Dr. Groehn's—analysis because Samsung's survey expert criticized the survey that created that data. Accordingly, none of Headwater's requests require exclusion of Mr. Kline's opinions under Fed. R. Evid. 702, but instead can all be properly tested on cross-examination.

## I.     LEGAL STANDARD

"The district court has wide latitude when navigating the expert-qualification process," and the Fifth Circuit "will reverse only 'manifestly erroneous' determinations." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018). "[N]o Fifth Circuit case [has] held that a district court abused its discretion by qualifying someone as an expert on the basis of an imprecise match between the expert's qualifications and the issue she planned to testify about. [Defendant's] conception of expertise could turn the expert-qualification process into a 'battle of labels' where expertise is defined so narrowly that qualified experts are irrationally excluded from testifying. . . . . We decline to adopt this approach. As long as there are 'sufficient indicia' that an individual will 'provide a reliable opinion' on a subject, a district court may qualify that individual as an expert." *Id.* (admitting opinion from "a mechanical engineer with a background in warnings and

1

small-crane design" and allowing testimony "about warnings for a crawler crane" noting that "quibbles about qualifications are better characterized as arguments about the weight . . . not about its admissibility"). "The proponent need not prove to the judge that the expert's testimony is correct, but she 'must prove by a preponderance of the evidence that the testimony is reliable.'" *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-744-JRG-RSP, 2016 WL 874775, at *1 (E.D. Tex. Mar. 7, 2016) (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)).

## II. ARGUMENT

### A. Mr. Kline is Qualified to Critique Dr. Groehn's Survey As It Affects Overall Economic Reliability of Dr. Groehn's Opinions

Mr. Kline offers only rebuttal opinions to Dr. Groehn well within the scope for which Mr. Kline's extensive academic and professional experience qualifies him. Dr. Groehn designed and conducted a conjoint survey, then provided a conjoint analysis using the survey data together with other tools such as regressions to calculate purported incremental values. Ex. 1 (Groehn Rep.) ¶¶ 21-25. Samsung offers Ms. Sarah Butler's opinions to respond to Dr. Groehn's survey specifically, and further offers Mr. Kline's opinions to respond to Dr. Groehn's larger economic conjoint analysis, including the underlying survey data on which the conjoint analysis relies.[1] Headwater's motion does not identify any issue on which Mr. Kline is not qualified to opine, has gone beyond his qualifications, or has gone beyond any opinions further supported by Ms. Butler.

At the outset, Mr. Kline is qualified. Mr. Kline does not need to separately hold expertise in the field of general survey design to offer his critiques of Dr. Groehn's conjoint analysis based on a conjoint survey. Indeed, through his expertise in evaluating conjoint survey and conjoint

---

[1] Mr. Kline also provides opinions in response to some of Mr. Kennedy's opinions, which Headwater does not seek to exclude.

design, Mr. Kline was the first expert in this case to identify the major errors in Dr. Groehn's underlying conjoint analysis, which led to Dr. Groehn and Mr. Kennedy's "corrected" reports. Dr. Groehn repeatedly conceded that it was Mr. Kline who brought the error in the conjoint survey and analysis to Dr. Groehn's attention. Dkt. 253-6 (Groehn Errata Stmt) at ¶¶ 1-3.

As the results in this case show, Mr. Kline has experience performing and using econometric analyses such as conjoint analysis and regressions in the intellectual property context, of which he has substantial experience. Dkt. 253-2 (Kline Rep.) at Appen. A (CV). Based on this experience, Mr. Kline explains that the economic calculations output from Dr. Groehn's conjoint analysis is rendered unreliable by his underlying survey choices. As an economist who regularly uses survey and other modeling data, Mr. Kline understands what attributes such data must have in order to be reliable for use in econometric analysis, such as conjoint analysis. As his deposition testimony and reports make readily clear, Mr. Kline has more than sufficient experience, evidence, and analysis to permit Mr. Kline to provide his opinions to the jury on issues of survey design that alter the reliability of Dr. Groehn's survey.

Mr. Kline has a degree in economics and is a certified public accountant. Dkt. 253-2 (Kline Rep.) at Appendix A (CV). Mr. Kline has been working in the field of "intellectual property licensing, support, valuation, and quantification of damages in litigation" for "the last 17 years." Ex. 2 (Kline Dep.) at 17:14-22. Mr. Kline studied survey, survey data, and the use of surveys in his classes on statistics and econometrics while earning his economics degree at University of Southern California. *Id.* at 9:25-11:2; *see also* Ex. 3 (Groehn Dep.) at 211:9-24 (confirming Ph.D. not required to design or conduct surveys). During Mr. Kline's career working at different economic consulting firms focusing on intellectual property licensing, valuation, and IP damages, he has worked on projects where he helped develop "consumer surveys for the purposes of

assisting clients and understanding the value of their IP," including considering appropriate populations and question design. Ex. 2 (Kline. Dep.) at 13:4-14:1. He has also advised clients on the appropriate use of consumer surveys. *Id.* at 15:14-25. Mr. Kline was clear that, in several instances, he has "worked with others to develop consumer surveys," *id.* at 18:3-8, including advising on survey design "as someone who would be using the survey data" that was output from the survey. *Id.* at 18:9-22. In fact, when Headwater specifically asked Mr. Kline about his qualifications during deposition, Mr. Kline confirmed "I have both academic and professional experience in the use of survey data and the limitations that come into play" with use of such data. *Id.* at 20:18-21:1. Mr. Kline also added that he has "worked with a lot of sampling techniques and sample data in the past," similar to the sample data sets generated by a conjoint survey. *Id.* at 46:5-12. Headwater appears unaware that econometrics regularly uses survey data because Headwater implies an academic background in economics would not have any relation to surveys, when Mr. Kline confirmed it was included even in his undergraduate course work. Dkt. 253 at 3-4; Ex. 2 (Kline Dep.) at 9:25-11:1. Moreover, Mr. Kline was readily able to answer all questions posed to him during deposition regarding requirements, use of, and attributes of conjoint survey and conjoint analysis. *See, e.g., id.* at 25:21-26:19, 31:6-33:15, 36:6-37:10, 47:10-49:5, 96:14-98:17, 121:20-123:11.

Mr. Kline does not go beyond these qualifications by critiquing aspects of Dr. Groehn's underlying survey. Headwater ignores the necessary relationship between Mr. Kline's critiques of the design of Dr. Groehn's survey and Mr. Kline's experience in "the use of survey data" in economic analyses, which Headwater acknowledges. Ex. 2 (Kline Dep.) at 20:18-21:1. Certain survey design aspects will alter the economic reliability, usability, and applicability of the data output from the survey. It is these design choices that Mr. Kline critiques as altering the reliability

4

of the survey data, which Dr. Groehn uses in his subsequent conjoint analysis. For example, in Mr. Kline's critique of Dr. Groehn's failure to include all relevant attributes from the pilot survey in his final conjoint survey, Mr. Kline observes "[o]mission of such attributes may have substantially skewed the results." Dkt. 253-2 (Kline Rep.) at ¶ 69; *see also id.* ¶ 89 (discussing population demographics skew, concluding "the results of his Conjoint Survey are biased due to unequal representation, which affects the accuracy of the results.") These underlying design errors by Dr. Groehn are relevant not only to the reliability of the survey itself but also to Dr. Groehn's economic calculations based on the survey results, and therefore is appropriate for inclusion in Mr. Kline's opinions critiquing the economic/econometric reliability of Dr. Groehn's report.

As illustrated above, Mr. Kline is distinguishable from the expert excluded in the class action matter of *Senne v. Kansas City Royals Baseball Corp.,* 591 F. Supp. 3d 453, 487 (N.D. Cal. 2022), where the offered expert directly "concedes that she is not an expert in 'survey design' or 'fielding' surveys," she could not "provide any details" as to her coursework on surveys, and she did not appear to be further supported by any other survey expert offered by defendants. *See also Droplets, Inc. v. Yahoo! Inc.,* No. 12-CV-03733-JST, 2021 WL 9038355, at *12 (N.D. Cal. Aug. 9, 2021) (excluding expert who opined on survey and human perception abilities "[b]ecause Dr. Mody specifically disclaims any expertise in these areas, the opinions are not admissible"); *Niblock v. Univ. of Kentucky*, No. CV 5:19-394-KKC, 2023 WL 4842315, at *4 (E.D. Ky. July 28, 2023) ("Lopiano's expertise in other areas of Title IX does not render her an expert on survey methodology—a fact she admitted.") Headwater's citation to *State of New York v. United Parcel Serv., Inc.*, No. 15-CV-1136 (KBF), 2016 WL 4735368, at *4 (S.D.N.Y. Sept. 10, 2016), is similarly not applicable as the excluded expert "designed a consumer survey" and offered his own

affirmative survey despite that he had "never before designed a consumer survey," which Mr. Kline does not do.

Here, Mr. Kline certainly did not admit that he is not a survey expert, and he did not concede he is not qualified to offer the survey-related opinions in his report. To the contrary, Mr. Kline explained his coursework and experience, and he conferred with Ms. Sarah Butler (whom Headwater agrees is a qualified survey expert) to ratify several of Mr. Kline's survey design-related opinions. Dkt. 253-2 (Kline Rep.) at ¶ 69, n.102 and ¶ 81, n.116. In fact, Mr. Kline made clear he discussed all of his now-complained about survey opinions with Ms. Butler. Ex. 2 (Kline Dep.) at 24:17-25:16. Mr. Kline also reiterated clearly and repeatedly during deposition that while he had formed his own opinions concerning the survey design issues prior to speaking with Ms. Butler, Ms. Butler also confirmed she viewed the issues with Dr. Groehn's survey design similarly. Ex. 2 (Kline Dep.) at 34:23-35:9, 45:3-46:4, 47:20-50:2. In fact, this Court has previously confirmed that econometric experts may similarly rely on and offer parallel survey-related opinions if supported by an additional survey expert. *See Convolve, Inc. v. Dell, Inc.*, No. 2:08-CV-244-CE, 2011 WL 13091767, at *1 (E.D. Tex. July 8, 2011) (limiting challenged econometrics expert Dr. Kaplan to survey opinions "identified by Convolve's survey expert, Dr. Gelb," but holding "Dr. Kaplan is not, however, precluded from relying on deficiencies identified by Dr. Gelb to opine that the alleged deficiencies render Dr. Leonard's econometric analysis unreliable or invalid.")

Accordingly, Headwater has not identified any issue on which Mr. Kline is not qualified, has gone beyond his area expertise, or has gone beyond any opinions fully supported by Ms. Butler. Thus, all of Mr. Kline's opinions should be permitted to be provided to the jury as "specialized knowledge [that] will help the trier of fact to understand the evidence." Fed. R. Evid. 702.

B.  **Mr. Kline's Econometric Opinions Require Discussion of the Underlying Survey**

Headwater strangely complains that Ms. Butler and Mr. Kline offer duplicative opinions with respect to certain survey topics, ignoring that they are responding to Dr. Groehn's multi-part conjoint report, namely, a conjoint survey and the regression **based on the survey**. As explained above, Ms. Butler and Mr. Kline each respond to aspects of Dr. Groehn's conjoint report based on their areas of expertise, and Mr. Kline must be allowed to explain how the flawed survey relates to the regression. Indeed, Headwater ignores that it was Mr. Kline who identified the Groehn errors precisely because Mr. Kline analyzed the interplay between the regression and the underlying survey. The Court should deny Headwater's attempt to shield its own flaws by prohibiting Mr. Kline from referencing the survey.

Tellingly, Headwater's motion only lists high-level aspects of Dr. Groehn's survey that both Mr. Kline and Ms. Butler discuss, Dkt. 253 at 5—Headwater does not list the many different survey-based or econometrics-based conclusions that Ms. Butler and Mr. Kline each separately drew from these high-level aspects. For example, Ms. Butler's discussion of Dr. Groehn's population (Dkt. 253-5 (Butler Report) ¶¶ 90-91) raises a concern with Dr. Groehn's failure to poll respondents as to "whether they were considering purchasing a smartphone" so that they would have been "in a purchasing mindset" because based on her survey experience, "[r]espondents who are not in a purchasing mindset may be inattentive or make unrealistic selections." *Id.* In comparison, Mr. Kline raises a concern with the representativeness of the population of Dr. Groehn's survey respondents, explaining from an economics perspective that "[f]or the results of a conjoint survey to be reliable, it is necessary that the survey population be randomly sampled and–if the sample is skewed–that the results be re-weighted to address such skew. Notably, Dr.

7

Groehn's sample population was not reflective of actual and potential Samsung purchasers, or of the U.S. population in general." Dkt. 253-2 (Kline Rep.) at ¶ 85.[2]

Similarly, as to the definition of battery life, Ms. Butler explains from a survey perspective that Dr. Groehn's failure to clearly define 'battery life' and the relating levels creates two primary problems. First, it forces respondents to deal with the burdensome task of independently defining a concept in a manner inconsistent with respondents normal use, which respondents are not good at. Second, it forces respondents to calculate percentages, which respondents are also not good at, both of which are confirmed by academic articles relating to survey and research methods. Dkt. 253-5 (Butler Report) ¶¶ 39-41; *see, e.g., id.* at ¶ 41 ("Educational research finds that percentages are notoriously difficult to interpret and come with inherent 'complexity, subtlety, and ambiguity.'") Mr. Kline then separately critiques Dr. Groehn's presentation of battery life from an economic and market perspective emphasizing that Dr. Groehn's survey does not present battery life in such a way as actual purchasers would encounter in the smartphone marketplace. Dkt. 253-2 (Kline Rep.) at ¶¶ 90-102. Mr. Kline's opinion rests on several conjoint analysis articles (cited by Dr. Groehn himself) and real-world marketing materials from smartphone manufacturers, including Samsung. *See, e.g., id.* at ¶¶ 94-95. These are not cumulative or duplicative opinions critiquing Dr. Groehn and each opinion is offered from their respective area of expertise to provide the jury with helpful information to weigh the credibility of Dr. Groehn's opinions.

Headwater also acknowledges that its concern here regarding duplication of expert opinions is not a Fed. R. Evid. 702 or *Daubert* argument, but rather is based on Fed. R. Evid. 403

---

[2] Indeed, half of the survey respondents were Apple users.

concerns. Headwater cites *Thomas v. T.K. Stanley, Inc.,* No. 9-12-CV-158, 2014 WL 12814614, at *2 (E.D. Tex. Oct. 28, 2014), a car accident case, where the court excluded one of two different damages experts where each offered differing "alternative forecasts of the future" for some of the exact same sets of damages ("medical damages and household services"). In *Thomas*, the court excluded the second cumulative expert because "the methods that Stevens applied are inaccurate and unreliable," in addition to finding his testimony unnecessarily cumulative and confusing under Fed. R. Evid. 403. *Id.* at *2. Here, Mr. Kline and Ms. Butler neither suffer from any underlying methodological problems (Headwater has not raised any as to either Samsung expert) and their opinions do not contradict one another, thus there is no risk of presenting unreliable expert opinion and no risk of confusion as was present in *Thomas*. "[T]he Fifth Circuit instructs that '[t]he exclusion of evidence under Rule 403 should occur only sparingly' [and] a decision to reject 'expert testimony is the exception rather than the rule.'" *Marquette Transportation Co. Gulf-Inland, LLC v. Navigation Mar. Bulgarea*, No. CV 19-10927, 2022 WL 158681, at *4 (E.D. La. Jan. 18, 2022) (declining to exclude "overlapping" experts as cumulative, holding any concerns about cumulative evidence "can be addressed at trial").

### C. Mr. Kline Will Not Offer Opinions Contrary to Dr. Groehn's Own Subsequently-Provided Explanations for Intended Prices

Headwater relies on Dr. Groehn's May 13, 2024 deposition to assert that "the record is therefore clear that Dr. Groehn did not intend to show the prices in his original report to survey respondents," but rather that Dr. Groehn "intended to (and did) show [survey respondents] the prices in his amended report." Dkt. 253 at 6-7. Prior to Dr. Groehn's deposition occurring, the record was far from clear as to Dr. Groehn's many errors and possible **intentions** as to which set

9

of operative prices he intended to use for this case.[3] Based on this previously opaque record, Mr. Kline included in his supplemental report a discussion attempting to piece together Dr. Groehn's possible intentions for which price points he intended to use in the survey. However, now, in light of Dr. Groehn's deposition testimony indicating that he reused prices from another recent conjoint survey, Ex. 3 (Groehn Dep.) at 67:15-23, Samsung confirms Mr. Kline will not offer the opinions in paragraphs 20-23 of Mr. Kline's Supplemental Report that discuss Dr. Groehn's possible intentions as to price point selection.[4]

As to Headwater's issue with Mr. Kline's critique of Dr. Groehn's specific price point of $1,119, nothing about Mr. Kline's opinion here requires exclusion. Headwater's disagreement with Mr. Kline's opinion regarding whether the use of this specific price point was an economically appropriate choice is a mere difference of expert opinion, which can be tested through vigorous cross-examination at trial. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" for testing admissible evidence). That Headwater was unable to change Mr. Kline's opinions during deposition by showing him a public web site[5] does not indicate any lack of expertise or lack of reliable methodology requiring exclusion of Mr. Kline's opinions.

---

[3] Indeed, in his deposition, Dr. Groehn was originally refusing to admit where the errors came from. *Compare* Ex. 3 (Groehn Dep.) at 47:4-53:4 with *id.* at 64:24-68:17.

[4] For clarity, Samsung does not agree to withdraw Mr. Kline's opinions within ¶¶ 20-23 that do not directly address Dr. Groehn's intentions. Specifically, in ¶ 23, Mr. Kline's offers other opinions in this paragraph regarding the economic consequences of using larger price level increments between the corrected price points. Such opinion can still be provided without commenting on Dr. Groehn's intentions as to price points.

[5] Headwater suggests in its brief and during Mr. Kline's deposition that Dkt. 254-1 (Ex. 8) was the same web page cited by Dr. Groehn in his reports (original and corrected) at footnote 40; however,

### III.   CONCLUSION

For the foregoing reasons, Samsung respectfully submits the Court should deny Headwater's motion to exclude or strike portions of Mr. Kline's expert opinions.

Dated: May 30, 2024               Respectfully submitted,

By:   */s/ Thomas H. Reger II*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman (*pro hac vice*)
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Nicholas A. Gallo (*pro hac vice*)
GA Bar No. 546590
gallo@fr.com
Steffen C. Lake (*pro hac vice*)
GA Bar No. 512272
lake@fr.com
Sara C. Fish
sfish@fr.com
GA Bar No. 873853
Noah C. Graubart

---

the web site listed at n.40 now appears unavailable and does not match the URL in the footer of Dkt. 254-1 (Ex. 8). *Compare* Dkt. 253-7 at 10, n.40.  So, it is not clear that Headwater has demonstrated that Dr. Groehn relied on this specific Samsung web page to select the $1119 price point, nor that this web page was directly cited in Dr. Groehn's report.

11

GA Bar No. 141862
graubart@fr.com
Katherine H. Reardon
NY Bar No. 5196910
reardon@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavid@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
Harry L. Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com

12

**PUBLIC VERSION**

                James Travis Underwood
                State Bar No. 24102587
                travis@gillamsmithlaw.com
                **GILLAM & SMITH, LLP**
                102 N. College, Ste. 800
                Tyler, Texas 75702
                Telephone: (903) 934-8450
                Facsimile: (903) 934-9257

                Grant Schmidt
                Texas Bar No. 24084579
                gschmidt@hilgersgraben.com
                Jon Hyland
                jhyland@hilgersgraben.com
                Texas Bar No. 24046131
                Theodore Kwong
                tkwong@hilgersgraben.com
                Texas Bar No. 4087871
                **HILGERS GRABEN PLLC**
                7859 Walnut Hill Lane, Suite 335
                Dallas, Texas 75230
                Telephone: 469-751-2819

                *Attorneys for Defendants*
                *Samsung Electronics Co., LTD and*
                *Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on May 30, 2024. As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Thomas H. Reger II*
Thomas H. Reger II

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Thomas H. Reger II*
Thomas H. Reger II