IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:22-CV-00422-JRG-RSP |

**SAMSUNG'S OPPOSITION TO HEADWATER'S MOTION TO EXCLUDE OR
STRIKE CERTAIN REBUTTAL EXPERT OPINIONS OF SARAH BUTLER (DKT. 257)**

## **TABLE OF CONTENTS**

I.  ARGUMENT ................................................................................................................... 1

    A.  Ms. Butler Is Qualified To Opine Regarding Survey Design, Consumer Behavior, and Market Research ................................................................................. 1

    B.  Ms. Butler's Opinions Finding Dr. Groehn's Results "Vastly Larger" than Samsung Internal Research on Battery Life Are Supported by Reliable Methods and Evidence ............................................................................................. 3

    C.  Ms. Butler's Opinions Regarding Respondent Confusion of "Battery Life" Are Supported by Expertise and Evidence ............................................................ 7

II. CONCLUSION ............................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Cases** Page(s)

*ClearPlay, Inc. v. Dish Network, LLC*,
No. 2:14-CV-00191-DN-CMR, 2023 WL 121278 (D. Utah Jan. 6, 2023) ...............................2

*Freeny v. Murphy Oil Corp.*,
No. 2:13-CV-791-RSP, 2015 WL 11089600 (E.D. Tex. June 4, 2015) ..................................10

*ImprimisRx, LLC v. OSRX, Inc.*,
No. 21-CV-01305-BAS-DDL, 2023 WL 7390842 (S.D. Cal. Nov. 8, 2023) ..........................2

*Maxell, Ltd. v. Apple Inc.*,
No. 5:19-CV-00036-RWS, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) .............................8

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
No. 2:13-CV-213-JRG-RSP, 2015 WL 604577 (E.D. Tex. Jan. 29, 2015),
*aff'd,* 853 F.3d 1370 (Fed. Cir. 2017) ......................................................................................9

*Scrum All., Inc. v. Scrum, Inc.*,
No. 4:20-CV-227, 2021 WL 1725564 (E.D. Tex. Apr. 30, 2021) ............................................6

*Woodbine Prod. Corp. v. Eagle Tubulars, L.L.C.*,
No. 6:16-CV-01152-JDL, 2017 WL 4999551 (E.D. Tex. Nov. 1, 2017) .................................6

**Other Authorities**

Fed. R. Evid. 702 ..........................................................................................................................10

**EXHIBIT INDEX & NOTES**

| Exhibit | Description |
|---|---|
| 1 | Expert Report of Sarah Butler, with attachments, dated April 19, 2024 |
| 2 | Excerpts from the Deposition of Sarah Butler, taken April 23, 2024 |
| 3 | Excerpts from the Deposition of Dr. Andreas Groehn, taken May 13, 2024 |
| 4 | SAM-HW01007397 |
| 5 | Excerpts from the Deposition Transcript of Mr. David Kennedy, May 14, 2024 |

\*       Emphasis added unless otherwise noted.

\*\*     Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\*   In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

Headwater's Motion to exclude two portions of Ms. Sarah Butler's opinions must be denied in full. At the outset, Headwater admits that Ms. Butler is qualified to offer her rebuttal opinions to the jury. Dkt. 253 at 1 ("Sarah Butler, who is qualified as a survey expert and who has provided her own rebuttal opinions criticizing the design of Dr. Groehn's surveys"). The two limited topics Headwater now seeks to exclude are well within her admitted expertise and meet the legal standards for *Daubert*. First, Ms. Butler's opinion finding Dr. Groehn's results are "inflated and upwardly biased" are supported by Ms. Butler's experience designing and interpreting surveys, and Ms. Butler has explained her methodology. Ex. 1 (Butler Rep.) at ¶ 84; Ex. 2 (Butler Dep.) at 8:12-21, 82:9-24, 92:18-110:24. Second, Ms. Butler's opinions regarding the survey respondents' likely confusion regarding the survey term "battery life" are based on her extensive experience designing and running surveys and her work with Samsung's technical expert, as well as supported by **Headwater's** damages expert. Thus, Headwater has no legitimate complaints that challenge the admissibility of any of Ms. Butler's opinions.

I.  ARGUMENT

   A.  **Ms. Butler Is Qualified To Opine Regarding Survey Design, Consumer Behavior, and Market Research**

Ms. Butler is "an expert in survey research, consumer behavior, market research." Ex. 2 (Butler Dep.) at 8:12-21; *id.* at 82:9-24 (explaining one of her specific opinions, stating in part that "I think we, as survey experts and experts in consumer behavior, know that if you provide somebody with a description of a particular feature or benefit that has no limitations or fewer limitations than actually exist, the value for that particular feature may be inflated"); *see also* Ex. 1 (Butler Rep.) at ¶ 2 ("I conduct survey research and market research and design and implement statistical samples for matters involving business and consumer decision-making, consumer choice, and consumer behavior."). Indeed, Headwater repeatedly represented to this Court that

1

Ms. Butler is a qualified expert in Headwater's parallel motion to strike portions of Mr. Kline's opinions. Dkt. 253 at 1, 5 ("who the parties agree is qualified to offer survey-design opinions"). Ms. Butler has conducted conjoint surveys (the kind done by Headwater's Dr. Groehn), including within the cell phone market (for pricing plans). Ex. 2 (Butler Dep.) at 59:7-19; 60:4-25. Further, Ms. Butler's work experience expressly includes expertise examining consumer perception and confusion. Ex. 1 (Butler Rep.), Exhibit A at 17-18 (listing publications and presentations relating to "confusion survey threshold" and "consumer perceptions"). Prior to joining her current firm, she also "worked in market research, conducting survey research, focus groups and in-depth interviews," meaning she directly interviewed survey respondents to understand how respondents understood and interpreted the surveys. *Id.* at 2.

Accordingly, Ms. Butler's experience qualifies her to critique Dr. Groehn's conjoint survey,[1] including the two issues Headwater now seeks to exclude. *See, e.g., ImprimisRx, LLC v. OSRX, Inc.*, No. 21-CV-01305-BAS-DDL, 2023 WL 7390842, at *5 (S.D. Cal. Nov. 8, 2023) ("Finding Butler sufficiently qualified to render her opinion," court denied motion noting that "trier of fact can weigh that issue when assessing the persuasiveness of Butler's survey evidence"); *ClearPlay, Inc. v. Dish Network, LLC*, No. 2:14-CV-00191-DN-CMR, 2023 WL 121278, at *2 (D. Utah Jan. 6, 2023) ("Butler is qualified to testify as an expert on surveys and market research, including survey and market research methodologies and consumer decision making, choice, and behavior in the context of surveys and market research"). Ms. Butler is qualified to interpret and compare Dr. Groehn's estimates based on his survey with Samsung's own internal survey results

---

[1] Ms. Butler has further illustrated her expertise and ability to critique Dr. Groehn's survey design because Ms. Butler independently identified Dr. Groehn's errors that led to substantial corrections to his report. Ex. 1 (Butler Rep.) Fig. 2, n.34, ¶ 29; Ex. 2 (Butler Dep.) at 148:3-149:12.

due to her experience designing surveys, including conjoint surveys, and experience "design[ing] and implement[ing] statistical samples for matters involving business and consumer decision-making." Ex. 1 (Butler Rep.) at ¶ 2. Ms. Butler is fully qualified to identify respondents' likely confusion regarding the poorly defined "battery life" feature of interest due to her experience in consumer behavior, market research, and conducting focus groups.

### B. Ms. Butler's Opinions Finding Dr. Groehn's Results "Vastly Larger" than Samsung Internal Research on Battery Life Are Supported by Reliable Methods and Evidence

Headwater first tries to protect Dr. Groehn's intentional discarding of a relevant Samsung survey, which Ms. Butler challenged in ¶¶ 85-87. Specifically, Dr. Groehn tries to distinguish his conjoint survey from a Samsung internal study ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[2] Needless to say, the results from this pre-litigation internal Samsung survey are quite different from Dr. Groehn's litigation opinions.

---

[2] As Ms. Butler summarizes it, the Samsung study reports ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

PUBLIC VERSION

Dr. Groehn believed these Samsung results are "not directly comparable" to his own results because he is not clear as ███████████████████████ Dkt. 196-3 (Groehn Rep.) at ¶ 145(d).[3]  To critique this, Ms. Butler converted Dr. Groehn's results into the same format as the Samsung study to permit the apples-to-apples comparison that Dr. Groehn implied was not possible.  Dkt. 196-3 (Groehn Rep.) at ¶ 145 ███████████████████████████████████████████████████████████████████████████████████████);  Ex. 2 (Butler Dep.) at 92:18-93:4 (explaining why she performed this analysis by saying Dr. Groehn "doesn't actually provide a – an actual comparison" so she provides this "to at least provide some kind of reference point" that is "a little more concrete").  Importantly, Ms. Butler does not offer an affirmative calculation of the actual share attributable to battery life, nor does she offer that Samsung's internal study reflects the correct battery life valuation.  *Id.* at 42:15-25 ("So I'm not saying that this is what the number ought to be"); *id.* at 46:3-12.  In other words, she was not sponsoring or verifying the Samsung survey—she was instead showing the clear discrepancy between a Samsung survey conducted in the ordinary course of business and Dr. Groehn's later survey conducted for litigation (damages) purposes.

Ms. Butler's methodology for comparing and contrasting the two sets of results is a reliable, disclosed method.  Ms. Butler explained during her deposition that she based her understanding of SAM-HW00544387 on the document itself, and Ms. Butler was readily able to provide her understandings during deposition.  *See, e.g.,* Ex. 2 (Butler Dep.) at 41:4-42:25.  Ms. Butler also confirmed that she did not need the underlying data from the Samsung study in SAM-

---

[3] Dr. Groehn's report complains he has not seen the underlying questionnaire and data for Samsung's internal survey summarized in SAM-HW00544387, Dkt. 196-3 (Groehn Rep.) at ¶ 145(b), but during deposition he confirmed that "I did not need the [underlying] data to conduct the analysis that I performed."  Ex. 3 (Groehn Dep.) at 138:19-22.

4

HW00544387 because she is "not using these data as a point estimate. So I'm not saying that this is what the number ought to be." *Id.* at 42:15-25.  Because SAM-HW00544387 provides ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ms. Butler uses the Sawtooth software (also used by Dr. Groehn) to roughly translate Dr. Groehn's results into preference shares as opposed to the incremental dollar profit value per unit used in his report. Ex. 1 (Butler Rep.) at ¶¶ 85-86 (citing Dkt. 196-3 (Groehn Rep.) at ¶¶ 144-146 and Dkt. 257-5 (SAM-HW00544387)); *see also* Ex. 2 (Butler Dep.) at 93:5-95:7.

      Ms. Butler produced the records of her Sawtooth calculations, which were used during her deposition.  Ex. 2 (Butler Dep.) at 95:12-110:24; Ex. 4 (SAM-HW01007397). Specifically, Ms. Butler explained her Sawtooth records during deposition: she used Dr. Groehn's produced work papers as the input to Sawtooth (Ex. 2 (Butler Dep.) at 99:16-23); she selected "share of preference" output report from Sawtooth because that is what "we're comparing this to from the Samsung data," *id.* at 100:4-25; and she included a none option for some preference share because Dr. Groehn included the same option in his survey, *id.* at 101:6-22.  Ms. Butler was also able to explain how the Sawtooth program performed the requested calculations, saying the software "is evaluating how consumers make their choices based on the different features and levels, and then is looking at the probabilities of selection given those different features and levels and calculating the shares based on those data," *id.* at 109:16-21, and that the software did so using "an HB analysis; so hierarchical Bayesian" model that looks at "the distribution of preferences across these different choice and features and estimating the share of preferences…." Ex. 2 (Butler Dep.) at 109:25-110:6. Headwater has not identified anything in this overall methodology that is unreliable or unexplained.

Instead, Headwater asks the Court to exclude all of this analysis responding to Dr. Groehn's blind disregard for Samsung's relevant internal evidence because Ms. Butler needed more time to explain the meaning of one row in an excel spreadsheet relating to a "Competitor 3" during her deposition. Courts in this district have declined to exclude expert opinions on such minimal grounds. *See Woodbine Prod. Corp. v. Eagle Tubulars, L.L.C.*, No. 6:16-CV-01152-JDL, 2017 WL 4999551, at *4 (E.D. Tex. Nov. 1, 2017) (denying motion strike, stating "Defendant points to deficiencies in Jones's testimony based on his lack of knowledge to some of the factors in this event and a faulty comparison between two companies' work-strings and pipes," holding "such alleged deficiencies go to the weight to be assigned to his opinion, not the admissibility"). Because Headwater has not shown that the presence of Competitor 3 substantially altered the results and because Ms. Butler has otherwise fulsomely disclosed and explained her methodology, Headwater can raise its issue with the Competitor 3 row in Ms. Butler's calculations through cross-examination as an issue going to weight and not admissibility. *See Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-227, 2021 WL 1725564, at *3 (E.D. Tex. Apr. 30, 2021) (denying motion strike, stating "Plaintiff's overarching criticism of d'Almeida's testimony is that 'it is founded on unreliable and unverified data'. But even if such is the case, 'the conventional devices of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof'" are sufficient).

Ms. Butler should be permitted to provide her rebuttal observations to the jury that: Dr. Groehn was aware of certain Samsung evidence, Dr. Groehn cited and discussed said Samsung evidence, said Samsung internal evidence shows ███████████████████████████████████████████████ Dr. Groehn ignored the Samsung evidence because it was "not directly comparable to [his] results," but he did so despite possessing and using

the exact software tools needed to easily convert his own results into comparable preference shares. Dr. Groehn's failure to adequately check his results against actual Samsung evidence must be presented to the jury. Headwater can raise any of its concerns with weight to be accorded to Dr. Butler's rebuttal opinion through cross-examination.

      **C.    Ms. Butler's Opinions Regarding Respondent Confusion of "Battery Life" Are Supported by Expertise and Evidence**

Forgetting that Headwater's **own damages expert** testified that Dr. Groehn's survey term "battery life" is vague,[4] Headwater attempts to recharacterize Ms. Butler's similar conclusion as mere speculation about respondent state of mind. Ms. Butler's opinions in her report at ¶¶ 10, 48, 49, 50, 51, 56, 60 are based solidly on Ms. Butler's many years' experience working on consumer perception and "in market research, conducting survey research, focus groups and in-depth interviews." Ex. 1 (Butler Rep.), Exhibit A at 2, 17-18. Moreover, Ms. Butler's opinions are supported by citations to public evidence of consumer behavior and consumer preferences regarding smartphone battery life, and conversations with Samsung's technical expert, Dr. Schonfeld. Ms. Butler did not offer any admissions during deposition that render her opinion inadmissible. Accordingly, Ms. Butler's opinions critiquing Dr. Groehn's "Battery Life" feature as vague and unclear are fully supported and admissible.

As explained in Section A above, Ms. Butler's experience working directly with survey respondents such as through focus groups qualifies Ms. Butler to offer opinions such as "it is likely that some respondents attributed additional battery improvements to the feature as described," Ex. 1 (Butler Rep.) at ¶ 46, "respondents would have assumed…" and "may have assumed," *id.* at ¶

---

[4] Ex. 5 (Kennedy Dep.) at 143:22-144:8 (█████████████████ ████████████ █████████████████████████.

7

48, and "respondents may have readily assumed that increases in Battery Life were a proxy for or also suggested an improvement in battery capacity, a feature typically advertised and shown to be important to consumers." *Id.* at ¶ 51.  Ms. Butler's experience, supported by her cited evidence, allows her to reliably opine that Dr. Groehn's vague battery life feature may have been interpreted by some respondents as including other concepts like battery capacity.  It further allows her to opine that Dr. Groehn's vague battery life feature was insufficiently differentiated from other commonly marketed features like battery capacity and the lifespan of the battery, and likely is interrelated with other untested battery aspects like battery capacity and/or time to charge.  *Id.* at ¶¶ 10, 48, 49, 50, 51, 56, 60.

Ms. Butler provides citations to supporting evidence to further confirm her opinions based on her extensive experience.  As to ¶ 48, Headwater admits Ms. Butler cites public documents relating to the smartphone market corroborating Ms. Butler's opinion that respondents would likely misperceive "battery life" to include a better battery capacity because battery capacity is a primary feature prominently advertised to consumers.  Dkt. 257 at 5-6.  As to ¶ 50, Headwater again admits Ms. Butler cites public documents relating to the smartphone market corroborating Ms. Butler's opinion that consumers in this market consider the interplay of and tradeoffs of battery capacity, battery life, and charging time.  Dkt. 257 at 6.  As to ¶ 56, Ms. Butler is discussing again public documents relating to the smartphone market corroborating her opinions that there is further a range of factors that impact battery life which "may have overvalued increases in" battery life as surveyed.  Ex. 1 (Butler Rep.) at ¶¶ 55-56.  To the extent Headwater disagrees that Ms. Butler's cited evidence adequately supports her opinions, Headwater is free to explore this disagreement through cross-examination.  *See, e.g., Maxell, Ltd. v. Apple Inc.,* No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *17 (E.D. Tex. Nov. 11, 2020) (denying motion exclude survey expert opinions).

8

To the extent Headwater's concern here is that Ms. Butler goes beyond her technical understanding of smartphone battery life performance, Ms. Butler discussed the challenged opinions with Dr. Schonfeld to confirm her understanding of the technical aspects. *See* Ex. 1 (Butler Rep.) at ¶ 49, n.70; ¶ 56, Table 3, n.82; and ¶ 60, n.88 (citing "Discussion with Dr. Dan Schonfeld, April 19, 2024"). *See, e.g., Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.,* No. 2:13-CV-213-JRG-RSP, 2015 WL 604577, at *3 (E.D. Tex. Jan. 29, 2015), *aff'd,* 853 F.3d 1370 (Fed. Cir. 2017) (denying motion to exclude, finding challenged expert could "rely on a technical expert to support his opinions," and "[a]lthough Defendants may disagree with the underlying analysis [] performed . . . any perceived deficiencies . . . should be addressed during cross-examination of one or both of these designated experts").

Headwater cites several portions of Ms. Butler's deposition characterizing them as admissions, when Ms. Butler's statements do not admit anything relevant to the admissibility of her opinions in ¶¶ 10, 48, 49, 50, 51, 56, 60 of her report. For example, Ms. Butler's opinion is in part that "I don't think, again, we can tell what any given respondents took away from this feature description [of battery life]. And problematically, again, because I think there is no indication that this does or does not have anything to do with battery capacity, different respondents may have been drawing different conclusions from this kind of ill-defined description." Ex. 2 (Butler Dep.) at 38:1-14. Not only is this consistent with the testimony from Headwater's own expert, this is a wholly different opinion from what Headwater implies Ms. Butler admitted when she agreed she did not have evidence of affirmative specific consumer "preferences for a particular means in which longer battery life is achieved." Dkt. 257 at 6 (quoting Butler Dep. at 36:19-37:15). Headwater also points to Ms. Butler's testimony as "telling[]" when the citation actually confirms Ms. Butler's offered opinion. *Compare* Dkt. 257 at 6 (citing Butler Dep. at 58:18-25 (which asks

9

only in the abstract technically whether time after charge relates to battery longevity)) *with* Ex. 2 (Butler Dep.) at 57:13-58:17 ("Q [W]hat portion of Dr. Groehn's description of battery life leads you to conclude the battery longevity could've been encompassed by this definition?  A. **Well, again, all of the definition because it includes all of these vague, undefined terms are -- and there's no reference point for consumers as to what is not included**….").  Ultimately, even if Ms. Butler's deposition statements were admissions that were directly applicable to the opinions Headwater seeks to exclude from ¶¶ 10, 48, 49, 50, 51, 56, 60 of her report, such inconsistencies between her report opinions and her deposition testimony can be fully presented through rigorous cross-examination.  Such alleged inconsistencies are not sufficient to require exclusion under Fed. R. Evid. 702.  *Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, 2015 WL 11089600, at *2 (E.D. Tex. June 4, 2015) ("any perceived inconsistencies between [expert's] report and testimony . . . implicate the credibility of this witness and not the reliability of his methodology" and "may be adequately addressed through vigorous cross-examination of this witness").

## II.     CONCLUSION

Accordingly, Headwater has failed to identify any opinion or methodology offered by Ms. Butler that should be excluded under Fed. R. Evid. 702.  Each of Headwater's disagreements with Ms. Butler's opinions and underlying evidence are appropriate only for use during cross-examination.

Dated: May 30, 2024            Respectfully submitted,

By:    */s/ Thomas H. Reger II*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman (*pro hac vice*)
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Nicholas A. Gallo (*pro hac vice*)
GA Bar No. 546590
gallo@fr.com
Steffen C. Lake (*pro hac vice*)
GA Bar No. 512272
lake@fr.com
Sara C. Fish
sfish@fr.com
GA Bar No. 873853
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Katherine H. Reardon
NY Bar No. 5196910
reardon@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600

11

ldavid@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
Harry L. Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
James Travis Underwood
State Bar No. 24102587
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

        Grant Schmidt
        Texas Bar No. 24084579
        gschmidt@hilgersgraben.com
        Jon Hyland
        jhyland@hilgersgraben.com
        Texas Bar No. 24046131
        Theodore Kwong
        tkwong@hilgersgraben.com
        Texas Bar No. 4087871
        **HILGERS GRABEN PLLC**
        7859 Walnut Hill Lane, Suite 335
        Dallas, Texas 75230
        Telephone: 469-751-2819

        *Attorneys for Defendants*
        *Samsung Electronics Co., LTD and*
        *Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on May 30, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Thomas H. Reger II*
Thomas H. Reger II

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Thomas H. Reger II*
Thomas H. Reger II