**PUBLIC VERSION**

███████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

HEADWATER RESEARCH LLC

       *Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD and
SAMSUNG ELECTRONICS AMERICA, INC.,

       *Defendants*.

Case No. 2:22-CV-00422-JRG-RSP

**SAMSUNG'S OPPOSITION TO HEADWATER'S MOTION TO
STRIKE CERTAIN OPINIONS OF SAMSUNG'S DAMAGES
<u>EXPERT DR. KEITH R. UGONE (DKT. 255)</u>**

**PUBLIC VERSION**

████████████████████████████████████

## <u>TABLE OF CONTENTS</u>

I.     DR. UGONE'S COMPARABLE LICENSE ANALYSIS IS RELIABLE ...................... 2

     A.     Dr. Ugone's Reliance on Samsung's ██████████████ Agreements
           is Proper in a Comparable License Analysis ........................................................ 2

     B.     Dr. Ugone's Adjustments to Account for Differences Between the
           Agreements and the Hypothetical Negotiation are Methodologically Sound ........ 5

II.    DR. UGONE'S ANALYSIS OF ████████████████████████
      IS AN APPROPRIATE BENCHMARK AS TO THE REASONABLENESS
      OF HIS ROYALTY OPINIONS ...................................................................................... 7

III.   HEADWATER PROVIDES NO VALID BASIS FOR STRIKING DR. UGONE'S
      OPINIONS ON NON-INFRINGING ALTERNATIVES ............................................... 10

     A.     Samsung's Non-Infringing Alternatives Are Relevant to the Hypothetical
           Negotiation ......................................................................................................... 10

     B.     The Non-Infringing Alternatives Were Acceptable and Available At the
           Relevant Time ..................................................................................................... 12

     C.     The "Other Alternatives" are Also Relevant to the Hypothetical
           Negotiation ......................................................................................................... 14

IV.   CONCLUSION ................................................................................................................ 15

███████████████████

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                           **Page(s)**

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed.Cir.2014)............................................................................7

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015).....................................................................4, 10

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015)......................................................................2, 3

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
   No. 2:22-cv-0343-JRG-RSP, Dkt. 244 (E.D. Tex. Mar. 26, 2024) ..................9, 11

*Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*,
   2017 WL 2651618 (E.D. Tex. June 20, 2017)......................................................13

*Ericsson, Inc. v. D-Link Systems, Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)...........................................................................3

*Fiskars, Inc. v. Hunt Mfg. Co.*,
   279 F.3d 1378 (Fed. Cir. 2002)..........................................................................12

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
   331 F.3d 860 (Fed. Cir. 2003...............................................................................8

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)............................................................................4

*Parthenon Unified Memory Architecture LLC v. Apple Inc.*,
   2016 WL 7670833 (E.D. Tex. Sept. 21, 2016) ....................................................8

*Personal Audio, LLC v. Apple, Inc.*,
   2011 WL 3269330 (E.D. Tex. July 29, 2011) ...................................................8, 9

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017)............................................................................4

*Riles v. Shell Exploration & Prod. Co.*,
   298 F.3d 1302 (Fed. Cir. 2002).........................................................................10

*Spectralytics, Inc. v. Cordis Corp.*,
   650 F. Supp. 2d 900 (D. Minn. 2009)................................................................8, 9

*Spreadsheet Automation Corp. v. Microsoft Corp.*,
   587 F. Supp. 2d 794 (E.D. Tex. 2007)...............................................................10

**PUBLIC VERSION**

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015).......................................................................................5

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*
   609 F.3d 1308 (Fed. Cir. 2010).......................................................................................3

**Other Authorities**

Fed. R. Evid. 702 .................................................................................................................7

**PUBLIC VERSION**

████████████████████████

## EXHIBIT INDEX & NOTES

| Exhibit | Description |
|---------|-------------|
| 1 | Excerpts from the Rebuttal Expert Report of Keith R. Ugone, Ph.D., April 19, 2024 |
| 2 | Excerpts from the Deposition Transcript of Han Kwak, taken February 28, 2024 |
| 3 | Excerpts from the Corrected Expert Report of Mr. David Kennedy, dated April 22, 2024 |
| 4 | Excerpts from the Deposition of Dr. Richard D. Wesel, taken May 1, 2024 |
| 5 | Excerpts from the Deposition of Dr. Keith Ugone, taken May 14, 2024 |
| 6 | Excerpts from the Deposition of Mr. David Kennedy, taken May 14, 2024 |
| 7 | ████████████████ SAM-HW00688966 |
| 8 | ████████████ SAM-HW00690963 |
| 9 | ████████████ HW_00067573 |
| 10 | Excerpts from Expert Report of Dr. Richard D. Wesel, dated March 29, 2024 |
| 11 | Excerpts from Expert Report of Erik de la Iglesia, dated April 19, 2024 |

\*       Emphasis added unless otherwise noted.

\*\*      Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\*     In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

**PUBLIC VERSION**

██████████████████████████████████

Headwater's broad motion is nothing more than an attempt to exclude Dr. Ugone from presenting a rebuttal damages analysis grounded in the facts of this case and the realities known to the parties at the hypothetical negotiation. Specifically, Headwater seeks to strike Dr. Ugone's "affirmative opinions" based on (1) Samsung license agreements; (2) Headwater's ████ ████ ██████████████; and (3) non-infringing alternatives, and Headwater expressly does **not** seek to strike Dr. Ugone's "rebuttal" opinions. Dkt. 255 at 1 ("This motion is directed to Dr. Ugone's affirmative opinion . . . and not to his criticisms of Mr. Kennedy"). But these "affirmative" opinions are all expressly part of Dr. Ugone's rebuttal to Mr. Kennedy's wholly invented damages theory, and the Court should deny Headwater's motion on this basis alone. *See* Ex. 1 (Ugone Rpt.) at ¶¶ 211, 224-225, 235-236, 222 (in identifying inadequacies of Mr. Kennedy's opinions, opining on and incorporating the analyses Headwater seeks to exclude).

None of Headwater's arguments provide a legally sound reason to exclude any portion of Dr. Ugone's affirmative opinions. Headwater's Motion goes on for pages about the propriety Dr. Ugone's decision to make, and not make, certain adjustments to two ██████ Samsung license agreements, which is precisely the type of fodder appropriate for cross examination—not exclusion. Headwater next attacks Dr. Ugone's reliance on a ████████████████ ████████████████████ on relevance grounds, but Headwater ignores that ████████████ ████████████████████████████. Indeed, Headwater does not claim that the parties would be unaware of that ██████ at the hypothetical negotiation. Finally, Headwater quibbles with Dr. Ugone's—and by extension. Dr. Schonfeld's—opinions on available non-infringing alternatives, despite its own experts testifying that Samsung's non-infringing alternatives would be considered at the hypothetical negotiation. At best, Headwater's objections

1

**PUBLIC VERSION**

████████████████████████████████

go to the weight, not admissibility, of Dr. Ugone's opinions, which Headwater is free to challenge

at trial.  Headwater's motion to strike should be denied in its entirety.

I.      **DR. UGONE'S COMPARABLE LICENSE ANALYSIS IS RELIABLE**

The Court should reject Headwater's attempt to make way for Mr. Kennedy's fantastical

damages theory by asking this Court to prevent the jury from hearing evidence regarding the only

market-tested values of technically comparable patents.   The Federal Circuit has held that

comparable license agreements are often the best evidence of comparable value.  *See*

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, ("*CSIRO*") 809 F.3d 1295,

1303–04 (Fed. Cir. 2015) ("[C]omparable license valuations . . . may be the most effective method

of estimating the asserted patent's value.")).)  Indeed, as noted by Dr. Ugone, ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████   ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ As such, Dr. Ugone presents a comparable

analysis related to the technology at issue and connected with the economic realities of the case.

A.      **Dr. Ugone's Reliance on Samsung's** ████████████████ **Agreements is**
        **Proper in a Comparable License Analysis**

Dr. Ugone's market comparables approach using the ████████████████████ is

consistent with Federal Circuit precedent emphasizing the importance of basing patent damages

on real-world market pricing.  Headwater wrongly seems to suggest that ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ are not comparable to the hypothetical negotiation because of ▮▮▮▮▮▮▮

▮▮▮▮▮▮.  Dkt. 255 at 2-3.  For example, in *Ericsson, Inc. v. D-Link Systems, Inc.*, 773

F.3d 1201 (Fed. Cir. 2014), the Federal Circuit explained "[m]aking real world, relevant licenses

inadmissible on the grounds D-Link urges would often make it impossible for a patentee to resort

to license-based evidence." *Id.* at 1228.  The Federal Circuit continued with the same theme

in *Commonwealth Scientific & Indus. Research Org. v. Cisco Sys.*, 809 F.3d 1295, 1303-04 (Fed.

Cir. 2015).  There, the Federal Circuit held that excluding agreements because they did not use the

smallest saleable practicing unit as the base "would necessitate exclusion of comparable license

valuations that—at least in some cases—may be the most effective method of estimating the

asserted patent's value." *Id.*  Thus, a proper analysis "begins with rates from comparable licenses

and then 'account[s] for differences in the technologies and economic circumstances of the

contracting parties.'" *Id.* at 1303.  That is exactly what Dr. Ugone did here.

Focusing only on economic comparability, Headwater's Motion does not take issue with

Dr. Ugone's understanding that the agreements are technically comparable—Headwater's own

experts, Dr. Wesel and Mr. Kennedy, even tacitly concede ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 3 (Kennedy Rpt.) at ¶¶ 240-

249; Ex. 4 (Wesel Dep. Tr.) Vol. 2, 256:4-258:22 (confirming he did not review ▮▮▮▮▮▮▮

▮▮▮ in technical comparability analysis).  **First**, Headwater cites no authority to support its

claim that, for a lump sum agreement to be comparable, there must be evidence of "how the lump

sum royalties were calculated." Dkt. 255 at 2.  The *Wordtech Systems, Inc. v. Integrated Networks

Solutions, Inc.* case (609 F.3d 1308 (Fed. Cir. 2010)), on which Headwater relies, has no such

requirement, and has no bearing on Dr. Ugone's analysis.  In *Wordtech,* the plaintiff attempted to

**PUBLIC VERSION**

███████████████████████████████████

introduce its own lump sum licenses, but there was no evidence of how the lump sum agreements compared to the hypothetical negotiation because the plaintiff "**offered no expert opinion on damages**," and provided no analysis of comparability. *Id.* at 1319-20. The plaintiff offered "little more than a recitation of royalty numbers." *Id.* (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009)). Unlike *Wordtech*, Dr. Ugone provided an expert opinion based on the facts of the agreements, including that the covered Samsung sales would be the same or broader in the agreements as compared to the hypothetical negotiation, thus ███████████████ ██████████████████████████ was appropriate. *See* Ex. 1 (Ugone Rpt.) at ¶¶ 177(b)(iii); 181(b)(iii).

**Second**, Headwater contends that because ████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████ makes them unusable. Dkt. 255 at 2-3. But there is no bar on comparability simply because an otherwise comparable agreement was entered into, in part, to settle litigation. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017) ("prior settlements can be relevant to determining damages."). Dr. Ugone specifically considered the settlement nature ████████████████████████████████████████████████ ███████████████and concluded this risk would have weighed on both parties in entering the agreement. Ex. 1 (Ugone Rpt.) at ¶¶ 177(b)(v); 181(b)(v); *see also* Ex. 5 (Ugone Dep. Tr.) at 74:13-76:4 (explaining ██████████████████████████████████████ ██████████████████████████████████████████"). Consideration of the agreements' settlement nature is all that is required for Dr. Ugone to properly use them as part of his market comparables analysis. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1335 (Fed. Cir. 2015) (holding that the district court did not err in its analysis of other, comparable

4

**PUBLIC VERSION**

████████████████████████████████

licenses and settlements because it accounted for "similarities and differences between those

negotiations and the hypothetical negotiations"); *see also Summit 6, LLC v. Samsung Elecs. Co.*,

802 F.3d 1283, 1299 (Fed. Cir. 2015) (determining that it was appropriate to use a prior license to

gauge damages because it involved comparable technology and similarly situated companies).

████████████████████████████████████

████████████████████████████. Real-world licenses are always negotiated

under circumstances different than the hypothetical negotiation.  Parties negotiating a license in

the real world do not have "all of the cards on the table" like in the hypothetical negotiation.  *See*

Ex. 6 (Kennedy Dep. Tr.) at 9:10-23. ██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████Similarly, executed patent license agreements almost

never recount how the terms were calculated.  Here, ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████.  Therefore, the jury should be permitted to consider Dr. Ugone's comparable license

analysis █████████████████████████.

**B.    Dr. Ugone's Adjustments to Account for Differences Between the Agreements and the Hypothetical Negotiation are Methodologically Sound**

Headwater's motion goes on for pages, mischaracterizing Dr. Ugone's decisions to

adjust—and not adjust—██████████████████████████ based on five factors identified by

Dr. Ugone: number of patents, scope, settlement nature, term, and covered products. Dkt. 255 at

**PUBLIC VERSION**

██████████████████████████████████████████████████████

3-11.  Headwater's complaints gloss over the fact that Dr. Ugone expressly considered all five

factors and decided **not** to adjust the value **downward** to account for the number of patents, scope,

and settlement nature.  Ex. 1 (Ugone Rpt.) at ¶¶ 177, 181.  For example, Dr. Ugone specifically

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████     ████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████.[1]  In other words, Headwater criticizes Dr.

Ugone for **overestimating** the value of the Headwater patents from these agreements.  Thus,

Headwater's critiques of Dr. Ugone's ultimate "adjustments" to ███████████████████████

████████are nothing more than disagreement over the relevant applicable facts to those

adjustments—not Dr. Ugone's market comparables methodology.

Turning next to Dr. Ugone's adjustments, Headwater's claims they "lack support" and "are

not tied to the facts"—this challenge is appropriate fodder for cross examination, not exclusion.

And regardless, Headwater's critiques are misguided.  As to Dr. Ugone's term adjustments,

Headwater misses the point in arguing that it was improper for Dr. Ugone to assume that the

infringement period began six years prior to the filing of the complaints.  Dkt. 255 at 4.  Both the

███████████████████████████████████████████████████████████

---

[1] Dr. Ugone does not "admit" anywhere that this "must be accounted for" as a mathematical
adjustment in the way that Headwater implies.  Dkt. 255 at 10.

**PUBLIC VERSION**

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ Therefore, Dr. Ugone's adjustment

to account ████████████████████████ is appropriate and connected to the facts of the

case.

Ultimately, these critiques do not amount to any sort of methodological error for exclusion

under Fed. R. Evid. 702. *See Apple Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1326

(Fed.Cir.2014) ("whether these licenses are sufficiently comparable such that Motorola's

calculation is a reasonable royalty goes to the weight of the evidence, not its admissibility.").

## II.   DR. UGONE'S ANALYSIS OF ████████████████████████ IS AN APPROPRIATE BENCHMARK AS TO THE REASONABLENESS OF HIS ROYALTY OPINIONS

The ██████████████████████████████████████ is a

relevant, compelling datapoint for Dr. Ugone to consider as part of his reasonable royalty analysis.

In its attempt to exclude Dr. Ugone's opinions related ████████████████, Headwater ignores

precisely what makes it an important indicator of value: ████████████████████

███████████████ ██ ████████ ███████ ██ ██ ██████ ██████ ███████

███████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

Evidence of agreed upon purchase prices are appropriate for experts to evaluate and are "unquestionably relevant" for the jury to consider in assessing damages. *See, e.g., Parthenon Unified Memory Architecture LLC v. Apple Inc.*, 2016 WL 7670833, at *1 (E.D. Tex. Sept. 21, 2016) ("The first part of PUMA's Daubert motion rests on an incorrect premise, i.e., that a damages expert cannot consider a patent purchase agreement to help calculate a reasonable royalty because such agreements do not explicitly fall within the *Georgia-Pacific* framework. Such notion, however, has no support in law."); *see also Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 914 (D. Minn. 2009), *aff'd in part, vacated in part*, 649 F.3d 1336 (Fed. Cir. 2011) ("[T]he Court did not err in allowing the jury to hear evidence related to the proposed sale of Spectralytics in 1996 and the actual sale of the company in 2003. That evidence was unquestionably relevant."); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003) (considering evidence of purchase price as relevant to the hypothetical negotiation and to damages), *vacated & remanded on other grounds*, 545 U.S. 193 (2005).  In fact, the jury is permitted to give substantial weight to a patent owner's own offer to sell the asserted patents.  *See Personal Audio, LLC v. Apple, Inc.*, 2011 WL 3269330, at *10 (E.D. Tex. July 29, 2011) ("In analyzing the sufficiency of the evidence, the court concludes that, . . . the jury could, and should, have given substantial weight

████████████████████████████████████████████████████

to [the inventor's] offer to sell the [asserted patents]. This was an offer to sell, not merely a license, the actual patents-in-suit, not merely comparable technology.") (citations omitted).  Dr. Ugone should be allowed to present his opinions on ███████████████████████████████████ ████████████████████. *Spectralytics*, 649 F.3d at 1347.

The *Correct Transmission, LLC v. Nokia of Am. Corp.* decision (No. 2:22-cv-00343, 2024 WL 1327906 (E.D. Tex. Mar. 26, 2024)) relied on by Headwater has no relevance to Dr. Ugone's analysis of the Interdigital LOI.  In *Correct Transmission*, defendant's damages expert relied on an unconsummated offer as an indicator of value in her damages analysis that was made between third parties—the plaintiff was not a party and never agreed to it.  *Id.* at *2.  Here, ███████████

████████████████████████████████████████████████████

███████████████████████████   ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████   Ex. 1 (Ugone Rpt.) at ¶ 189(a).

Despite the broad scope of its request to exclude ████████████████████████ as "irrelevant" (Dkt. 255 at 12), Headwater's argument for exclusion only focuses on the propriety of Dr. Ugone's discrete opinions as to ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████  Dr. Ugone is not trying to "read minds" and instead should be allowed to testify as to these clearly

**PUBLIC VERSION**



supported and relevant facts.  Indeed, Dr. Ugone should be permitted to observe these facts

particularly given that Headwater will ███████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████ *See Spreadsheet Automation Corp. v. Microsoft Corp.*, 587

F. Supp. 2d 794, 803 (E.D. Tex. 2007) (allowing expert to testify as to underlying facts relevant to

parties' intent).  And Headwater can cross-examine Dr. Ugone on these discrete facts suggesting

████████████████████████████████████████████.

Ultimately, even if the Court strikes Dr. Ugone's reliance on these specific facts that took

place **after** ███████ ████████ █████████████████████ a  legally—and

economically—appropriate benchmark that the jury should consider in evaluating a reasonable

royalty to the Asserted Patents in this case.

## III.   HEADWATER PROVIDES NO VALID BASIS FOR STRIKING DR. UGONE'S OPINIONS ON NON-INFRINGING ALTERNATIVES

### A.   Samsung's Non-Infringing Alternatives Are Relevant to the Hypothetical Negotiation

Headwater contends that Dr. Ugone's opinions on non-infringing alternatives should be

excluded because he "does not opine that the NIAs would affect the royalty rate."  Dkt. 255 at 13.

This is false.  Even Mr. Kennedy admits that non-infringing alternatives would have played a role

in the parties' hypothetical negotiation.  Ex. 6 (Kennedy Dep. Tr.) at 153:5-15.  The mere existence

of NIAs would be an important negotiation point raised by Samsung in assessing a reasonable

royalty. *See, e.g., Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015)

("When an infringer can easily design around a patent and replace its infringing goods with non-

infringing goods, the hypothetical royalty rate for the product is typically low."); *Riles v. Shell Exploration & Prod. Co*., 298 F.3d 1302, 1312 (Fed. Cir. 2002).

Headwater does not cite any case that requires a precise quantification of the costs of each non-infringing alternative, or the specific adjustment required to the royalty calculation attributable to each non-infringing alternative, in order for the non-infringing alternatives to be relevant to the hypothetical negotiation. *See* Dkt. 255 at 13-14. The case Headwater does cite, *Correction Transmission II* (Dkt. 255. at 14), does not justify striking Dr. Ugone's non-infringing alternatives opinion. In that case, the relevant financial expert(s) offered "**no opinions** regarding how the non-infringing alternatives should factor into the hypothetical negotiation" and "**no damages opinion** tying any non-infringing alternative to a proper damages analysis." *Correct Transmission, LLC v. Nokia of Am. Corp*., No. 2:22-cv-0343-JRG-RSP, Dkt. 244 at 7 (E.D. Tex. Mar. 26, 2024) ("*Correct Transmission II*"). To the contrary, here, Dr. Ugone, after comparing the non-infringing alternatives against the patented technology and accused features and relying on Dr. Schonfeld's technical expertise, opined that the non-infringing alternatives would have required a downward adjustment on the rate Samsung would otherwise pay for a license to the asserted patents. Ex. 1 (Ugone Rpt.) at ¶¶ 149-150, 166-168, 235, 237 ████████████

████████████████████████████████████████

██████████ ); *see also* Ex. 5 (Ugone Dep. Tr.) at 166:13-168:18 ██████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ *id.* at 168:19-170:15.  As such, Headwater provides no

legitimate basis to exclude Dr. Ugone's non-infringing alternative analysis.

### B. The Non-Infringing Alternatives Were Acceptable and Available At the Relevant Time

Headwater fails to acknowledge that even its own experts confirm the acceptability of

Samsung's proposed non-infringing alternatives.  *See, e.g.*, Ex. 10 (Wesel Rpt.) at ¶¶ 2354-2361

(████████████████████████████████████████████████████████

████████████████████████████████████████); *see also* Ex. 11 (de la Iglesia

Rpt.) at ¶ 1348 ██████████████████████████████████████████

██████████████████████████████████████████████████████████

██████).  Dr. Ugone similarly concludes that the non-infringing alternatives he relies on were

acceptable and available as of the date of the hypothetical negotiation, and Headwater challenges

Dr. Ugone's opinion on both counts.  As Dr. Ugone testified, the fact that the non-infringing

alternatives were introduced into the marketplace alongside the accused features is demonstrative

of their **acceptability**.  Ex. 5 (Ugone Dep. Tr.) at 160:6-161:23.  *See Fiskars, Inc. v. Hunt Mfg.*

*Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002) ("market acceptance of a non-infringing alternative may

provide significant evidence that the alternative was acceptable to consumers.") And relying on

Dr. Schonfeld specifically, Dr. Ugone further notes each of the alternatives were acceptable,

including confirming he had seen and cited actual usage data for products such as GreenPower and

JuiceDefender. Ex. 1 (Ugone Rpt.) at ¶ 168; *see, e.g., id.* at ¶ 149 ("had over 10 million downloads

as of 2015").  Notably, Headwater did not move to exclude Dr. Schonfeld's opinions regarding

Samsung's non-infringing alternatives based on a lack of acceptability.  *See generally* Dkt. 240.

Headwater provides no valid basis to exclude Dr. Ugone's non-infringing alternatives analysis—

at best, its criticisms of Dr. Ugone's acceptability analysis go to weight, not admissibility.

Headwater's gripes about Dr. Ugone's opinions as to the **availability** of Samsung's non-infringing alternatives actually lie with Dr. Schonfeld, not Dr. Ugone, who exclusively relies on Dr. Schonfeld for his opinions on this issue.  Dkt. 255 at 14 ("Dr. Schonfeld failed to show the NIAs would be available substitutes for the infringing products at the time of the hypothetical negotiation in 2016.")  Headwater argues that Dr. Schonfeld does not show how the non-infringing alternatives would be available substitutes for the infringing products as of 2016.  Dkt. 255 at 19-20. But as set forth in Samsung's Opposition to Headwater's Motion to exclude certain of Dr. Schonfeld's opinions, the majority of the non-infringing alternatives on which Dr. Schonfeld opines—and Dr. Ugone relies—were indisputably on the market as of the 2016 hypothetical negotiation date.  Dkt. 269 at 18-20.  Indeed, Headwater does not contest the availability as of the time of the hypothetical negotiation of: (1) ██████████ (2) Android 1.6's Background Data and Sync settings, (3) Samsung's Sleeping feature, (4) Juice Defender, (5) Ultimate Juice, and (6) GreenPower.  Dkt. 240 at 15-17.  Further, as Headwater acknowledges, Samsung's ██████████ feature was ██████████, *i.e.*, shortly after the 2016 hypothetical negotiation date. Dkt. 240 at 15.  Even ██████████████████████████████████████████

████████████████████████████████████████████████

██████████████  Additionally, at least two of the asserted patents in suit issued after ████ ██████████ release date, and it certainly stands to reason that ████████ development was well under way many months prior to its ██████████████. Dr. Ugone explains that because these alternatives were already developed and available on Samsung devices, ██████████

████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

Again, aside from the fact that Headwater's primary complaints as to the availability of Samsung's non-infringing alternatives lie with Dr. Schonfeld, its gripes go to the weight, not admissibility, of Dr. Ugone's opinions, which Headwater is free to challenge via cross examination at trial. *See Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC,* 2017 WL 2651618, at *18 (E.D. Tex. June 20, 2017) (the dispute over NIAs "is one that will be resolved by the jury when they determine which alternatives, if any, are adequate noninfringing substitutes, and what affect that may have on any damages award.")  At best, Headwater's criticisms go to the weight, not admissibility.

### C.    The "Other Alternatives" are Also Relevant to the Hypothetical Negotiation

The "Other Alternatives" available to Samsung that Dr. Ugone opines on are similarly relevant at the hypothetical negotiation.  Relying on Dr. Schonfeld, Dr. Ugone specifically opines that ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████  During his deposition, Dr. Ugone reiterated the relevance of the availability of the other options to consumers as of the hypothetical negotiation, stating ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████  Dr. Ugone concludes that this availability of a number of different options ████████████████████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████  In short, Dr. Ugone has detailed in his report and deposition how these "other alternatives" are relevant.

Headwater suggests that Dr. Ugone provides no basis that these alternatives would be available substitutes, but Dr. Ugone, relying on Dr. Schonfeld, expressly opines that these alternative options to save power and/or increase battery life would be available to Samsung "[a]s of the date of the hypothetical negotiation."  Ex. 1 (Ugone Rpt.) at ¶ 150.  Tellingly, Headwater has not moved to exclude Dr. Schonfeld's underlying opinions discussing these numerous alternative solutions that were available in the market.  Headwater is free to examine Dr. Ugone about whether these alternatives are adequate "substitutes" for the accused features, but Headwater has not articulated any legal basis for exclusion of these opinions under *Daubert*.

## IV.    CONCLUSION

For the reasons set forth above, the Court should deny Headwater's motion to strike portions of Dr. Ugone's report.

**PUBLIC VERSION**

███████████████████████████████████

Dated: May 30, 2024                    Respectfully submitted,

                                       By:   */s/ Thomas H. Reger II*
                                             Ruffin B. Cordell
                                             TX Bar No. 04820550
                                             Michael J. McKeon
                                             DC Bar No. 459780
                                             mckeon@fr.com
                                             Jared Hartzman (*pro hac vice*)
                                             DC Bar No. 1034255
                                             hartzman@fr.com
                                             **FISH & RICHARDSON P.C.**
                                             1000 Maine Avenue, SW, Ste 1000
                                             Washington, D.C. 20024
                                             Telephone: (202) 783-5070
                                             Facsimile: (202) 783-2331

                                             Thad C. Kodish
                                             GA Bar No. 427603
                                             tkodish@fr.com
                                             Benjamin K. Thompson
                                             GA Bar No. 633211
                                             bthompson@fr.com
                                             Nicholas A. Gallo (*pro hac vice*)
                                             GA Bar No. 546590
                                             gallo@fr.com
                                             Steffen C. Lake (*pro hac vice*)
                                             GA Bar No. 512272
                                             lake@fr.com
                                             Sara C. Fish
                                             sfish@fr.com
                                             GA Bar No. 873853
                                             Noah C. Graubart
                                             GA Bar No. 141862
                                             graubart@fr.com
                                             Katherine H. Reardon
                                             NY Bar No. 5196910
                                             reardon@fr.com
                                             **FISH & RICHARDSON P.C.**
                                             1180 Peachtree St. NE, Fl. 21
                                             Atlanta, GA 30309
                                             Telephone: (404) 892-5005
                                             Facsimile: (404) 892-5002

                                             Leonard E. Davis
                                             TX Bar No. 05521600

16

**PUBLIC VERSION**

ldavid@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
Harry L. Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
James Travis Underwood
State Bar No. 24102587
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

17

**PUBLIC VERSION**

Grant Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
Jon Hyland
jhyland@hilgersgraben.com
Texas Bar No. 24046131
Theodore Kwong
tkwong@hilgersgraben.com
Texas Bar No. 4087871
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 469-751-2819

*Attorneys for Defendants*
*Samsung Electronics Co., LTD and*
*Samsung Electronics America, Inc.*

**PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on May 30, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Thomas H. Reger II*
Thomas H. Reger II

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Thomas H. Reger II*
Thomas H. Reger II