**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, § § *Plaintiff*, § § v. § § SAMSUNG ELECTRONICS CO., LTD. § and SAMSUNG ELECTRONICS § AMERICA, INC., § § *Defendants*. § | CIVIL ACTION NO. 2:22-CV-00422-JRG-RSP |

**REPORT AND RECOMMENDATION**

Before the Court is Defendants' Motion for Summary Judgment re Notice, Marking, and Pre-Suit Damages (Dkt. No. 232). For the following reasons, the motion should be DENIED.

**I.   BACKGROUND**

Headwater was founded in conjunction with another entity, ItsOn, with the intent that they operate in conjunction. Headwater operated as a research and development entity for technology ItsOn would license and commercialize.

ItsOn licensed the asserted patents from Headwater and then worked with at least Sprint to commercialize an embodiment of the patents. The parties agree that two Sprint products practiced the patents: "post-paid" phones and pre-paid "Virgin" branded phones. No marking was ever undertaken regarding the "post-paid" phones and ItsOn alleges it virtually marked the "Virgin" phones.

The virtual marking website linked to in the "Virgin" phones provides:

1

> **Patent Notices**
>
> ItsOn services and devices are protected by patents in the U.S. and elsewhere. This notice is provided to satisfy the virtual patent marking provisions of various jurisdictions, including the virtual patent marking provisions of 35 U.S.C. Â§ 287 as amended by the America Invents Act. The ItsOn service, and the devices that provide the ItsOn service, embody technology claimed in the following U.S. Patents:

Followed by a listing of patents. (Dkt. No. 232-21.)

The parties agree that Headwater did not actually provide notice to Samsung of any infringement prior to the Complaint.

## II. APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his

articles or notify infringers of his patent in order to recover [pre-suit] damages." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) ("*Arctic Cat I*"). Section 287(a) provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

"If a patentee who makes, sells, offers for sale, or imports his patented articles has not given notice of his right by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." *Arctic Cat I*, 876 F.3d at 1365 (internal quotations omitted).

"[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked "patented articles" subject to § 287. **To be clear, this is a low bar.** The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id*. at 1368 (emphasis added). To prevent gamesmanship, the Court cannot "[p]ermit[] infringers to allege failure to mark without identifying any products . . . . Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention" or are marked. *Id*.

Compliance with § 287 is a question of fact, the patentee however, bears the burden of showing he/she complied with § 287(a). *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). However, "[a] patentee's licensees must also comply with § 287, because the statute extends to persons making or selling any patented article for or under [the patentee]." *Arctic Cat I*, 876 F.3d at 1365 (alteration in original) (internal quotations omitted). When "third parties are involved, courts may consider 'whether

3

the patentee made reasonable efforts to ensure compliance with the marking requirements.'" *Id*. at 1366 (quoting *Maxwell*, 86 F.3d at 1111–12). Again, non-compliance by either the patentee or its licensees "preclude recovery of damages only . . . for any time prior to compliance with the marking or actual notice requirements of the statute. *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).

### III. ANALYSIS
#### A. SAMSUNG'S INITIAL BURDEN

Samsung sent counsel for Headwater a letter detailing alleged marking deficiencies at issue in the present motion on June 23, 2020. (Mot. at 10-11.) The letter notes that Headwater contends that ItsOn Software, Solution, and application practice the asserted patents. (Dkt. No. 232-33 at 1.) The letter then goes on to discuss that Headwater has represented certain products include the ItsOn software and points to the complaint, Headwater's interrogatory response, and license agreements. (*Id.* at 2.) The letter itself only generally identifies Samsung and Sprint phones as including the ItsOn software in the same manner described by Headwater's complaint.

Headwater broadly complains that Samsung's notice fails to specifically identify any unmarked products but instead only mentions some 8 million units. (Opp. at 11.) Headwater contends because Samsung does not name specific products Samsung has not met its initial burden under *Arctic Cat*. (*Id.*)

The Court finds that Samsung has sufficiently identified the "post-paid" and pre-paid "Virgin" phones for purposes of *Arctic Cat*. The alleged infringer's initial burden of production under *Arctic Cat* is of notice. Here, Headwater identified certain products as practicing its patents. Samsung then contended those products should have been marked. To say Headwater did not have notice of those products is not availing. While Samsung's notice is broad and the groupings Samsung has used, "postpaid" and "Virgin" phones, may, without context, not line up with particular product numbers used by Sprint, the Court finds they are nonetheless specifically identified in the context of this case.[1]

---

[1] Further, while the Court does not rely on it here, the Court finds it material that Headwater allegedly never responded to Samsung's notice. The notice described under *Arctic Cat* is primarily a discovery issue upon which the Court expects the parties to timely confer as to any disputes. The Court does not condone the tactic of withholding the identification of alleged deficiencies until they can no longer be addressed, such as the contention that an *Artic Cat* notice identifies no product.

## B. MARKING OF THE POSTPAID PHONES

First, Samsung contends that the vast majority of the practicing Sprint phones, the "post-paid" phones, were never marked. (Mot. at 16.) Further, Samsung points out that the agreement between ItsOn and Sprint had no requirement to mark, only that Sprint not remove marking. (*Id*.) Samsung contends this along with the fact that ItsOn's software was "headless" with no user interface that could be marked demonstrates that there was no reasonable effort to mark. (*Id*. (citing *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.,* 950 F.3d 860, 864-66 (Fed. Cir. 2020)).)

Headwater responds that the identified products were first sold in 2013 before any of the asserted patents were issued. (Opp. at 14.) Headwater contends these sales are irrelevant as they do not trigger any obligation to mark. (*Id*.)

Headwater further contends it was under no obligation to mark post-paid phones in late 2015. (*Id*. at 15.) Headwater contends that despite the Asserted Patents beginning to issue in September 2015 marking does not require a patentee commence marking immediately upon patent issue. (*Id*.) Plaintiff points to *American Medical, supra,* to support this contention. (*Id*. at 16.) Headwater argues that there is a clear factual dispute as to when the marking obligation was triggered and the jury must determine the earliest date that unmarked articles could have been marked. (*Id*.) Headwater contends Sprint terminated its agreement with ItsOn regarding the post-paid products in October 2015 and stopped selling the phones. (*Id*. at 17.) Headwater further contends that the number of "Active Devices" with ItsOn software dropped to zero after January 2016 showing that Sprint stopped making or selling unmarked products. (*Id*.)

Additionally, Headwater points to *Maxwell v. J. Baker, Inc.* which provides "[w]ith third parties unrelated to the patentee … [w]hen the failure to mark is caused by someone other than the patentee, the court may consider whether the patentee made reasonable efforts to ensure compliance with the marking requirements." 86 F.3d 1098, 111-12 (Fed. Cir. 1996). Headwater contends it had an agreement with ItsOn requiring ItsOn to mark and ItsOn had an agreement with Sprint requiring Sprint to mark its products

which included the ItsOn software. The agreement between Sprint and ItsOn provides that "Sprint will not remove, obscure or alter, and shall reproduce on each copy, any notice of patent, copyright, or other proprietary right in or on the Platform, Client Software or Documentation." Headwater contends that this evidences reasonable efforts to mark.

Further, Headwater argues ItsOn had been in discussions with Sprint years before the first patent was issued. Headwater contends the evidence shows ItsOn sought to include a link to the marking website in the settings menu and other proposals, but Sprint pushed back. Further, Headwater contends these efforts were mooted when Sprint terminated the agreement with ItsOn shortly before the issuance of the first patents.

The Court finds that Headwater has presented a genuine question of material fact that it made reasonable efforts to mark the identified products. First, the Court finds that Headwater is incorrect in how it reads *American Medical*. In that case the Federal Circuit overruled a holding that the shipment and sale of practicing products after the issuance of the relevant patent prevented recovery of all past damages including after practicing products were appropriately marked. *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993). Headwater overreads the discussion of pre-issuance products to allow it to not mark post-issuance products, it does not. Rather, *American Medical*'s holding is that an initial failure to mark does not wholesale prevent past damages, it only prevents past damages until practicing products are properly marked. *Id*. at 1537. As such, the Court finds Headwater was obliged to make reasonable efforts to mark as soon as its patents were issued.

On this point the Court finds there is a genuine question of material fact. Headwater has shown that Sprint began the termination of its agreement with ItsOn as to the post-paid phones shortly before the first patent was issued. This began the process of removing ItsOn's software from post-paid phones. If Headwater's evidence is believed, there was no reasonable way for ItsOn to comply with the marking

statute either by marking the post-paid phones or, if not, to stop practicing any sooner than was done. While Headwater had an obligation to begin marking with the issuance of its patent, that marking was in the control of Sprint who was already in the process of terminating its practice of the patents. Likewise, ItsOn's agreement provided Sprint "shall reproduce on each copy, any notice of patent." Both evidence reasonable efforts to comply with the marking statute.

Further, as to the patents issued after January 2016, the Court finds that Headwater has created a fact issue. Headwater has presented evidence that, if believed, shows that the post-paid phones no longer practiced the patents after this time. If the products no longer practiced the ItsOn software as Headwater contends, there is no obligation to mark them.

### C. MARKING OF THE VIRGIN PHONES

The Virgin branded phones, by contrast, had a user interface that included a link to "http://www.itsoninc.com/patent-notices." Samsung raises two issues with this method of marking. First, Samsung argues the website fails to "associate[] the patented article with the number of the patent" as required by the marking statute. Second, Samsung argues there is no evidence that the website was appropriately and timely updated as patents were granted.

On the first point, Samsung complains that the text of the website does not associate particular patents with particular products. Samsung contends this is material where there were several different versions and releases of the ItsOn software.

On the second point, Samsung points to Wayback Machine printouts produced by Samsung that show significant delays in the addition of various patents to the marking website. Further, Samsung contends others were never added. Samsung summarizes the alleged delays in the below chart:

| Patent | Issue Date | ItsOn Website Post |
|---|---|---|
| 9,137,701 | 9/15/15 | 7/3/16 or 6/17/17 |
| 9,143,976 | 9/22/15 | 7/3/16 or 6/17/17 |
| 9,271,184 | 2/23/16 | 7/3/16 or 6/17/17 |
| 9,277,433 | 3/1/16 | Never |
| 9,277,445 | 3/1/16 | Never |
| 9,521,578 | 12/13/16 | Never |
| 9,609,544 | 3/21/17 | 4/21/17 or 6/17/17 |

[2]

Headwater agrees with the earlier dates Samsung identifies above but contests that the Marking website did not properly associate the patented product with practiced patents. Headwater contends the website clearly associates the ItsOn service and devices providing the ItsOn service embody the claims of the listed patents. Headwater further contends the phones themselves directly associate the particular version of the software with the patents by linking users of the software to those patents.

Headwater further argues that the Virgin branded phones and ItsOn never practiced the '433, '445, and '544 patents. (Dkt. No. 285 at 29.) Samsung does not reply to this point.

The Court largely agrees with Headwater here. While virtual marking requires a website "that associates the patented article with the number of the patent," 35 U.S.C. §287(a), the Court does not find

---

[2] Samsung seems to invite the Court to determine which date to choose for marking based on some testimony by Dr. Raliegh that the earlier Wayback Machine date is unreliable. The Court finds that this creates a fact issue between the two dates and is a basis to deny this request by Samsung.

that this must include an exacting recitation of every version or release of software or every particular product running the same software. The language that "[t]he ItsOn service, and the devices that provide the ItsOn service, embody technology claimed in the following U.S. Patents" is sufficient to associate the ItsOn service with the listed patents. While "the ItsOn service" may appear to broadly refer to all manner of offerings from ItsOn this refers only to a single offering, the ItsOn service. As such, while generally contending a variety of different services practice a long list of patents might not properly associate the marked article with practiced patents, the Court is not convinced that is the case here.

Further, the Court finds that Samsung's motion should be denied here as to the '433, '445, and '544 patents. On the evidence presented in this Motion, the Court cannot find there is no genuine question of material fact that the identified products practiced these patents and thus should have been marked. Samsung only points to general allegations in Headwater's complaint that ItsOn's software practiced Headwater's patents. But these allegations only broadly reference Headwater patents. While Headwater's showing that the patents are not practiced is similarly threadbare, the Court cannot find the identified products are practicing articles that should have been marked.

### IV.     CONCLUSION

For the reasons provided above, the Court recommends that Samsung's motion be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). Any objection to this Report and Recommendation

must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 13th day of July, 2024.**

                    ROY S. PAYNE
                    UNITED STATES MAGISTRATE JUDGE