IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>  *Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.<br>and SAMSUNG ELECTRONICS<br>AMERICA, INC.,<br><br>  *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 2:22-CV-00422-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is Samsung's Motion to Strike Certain Opinions Offered by Dr. Richard D. Wesel. (Dkt. No. 165.) [1] For the reasons provided below, the Motion is **DENIED**.

**I. APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations

---

[1] Samsung also filed a motion to specifically strike the battery testing opinions of Dr. Wesel along with a motion for leave to file such a motion. (*See* Dkt. Nos. 231, 234.) The Court denied Samsung leave to file the additional motion but granted additional briefing that is addressed herein. The Court separately finds that Samsung's motion at Dkt. No. 234 is **DENIED** as an improper second *Daubert* motion on a single expert.

of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. ANALYSIS

Samsung raises two separate issues with Dr. Wesel's report. First, Samsung contends that Headwater has inserted new theories of infringement into Dr. Wesel's report that were not included in

Headwater's infringement contentions. Second, Samsung contends Dr. Wesel's battery testing opinions are unreliable and improperly obtained.

### A. INFRINGEMENT CONTENTIONS

Samsung contends Dr. Wesel's report introduces new infringement allegations against "Samsung's Roaming Reduction" feature, allegations against previously unconsidered features, and new allegations against "Samsung's Network Policy mechanism."

Samsung contends that neither Headwater's operative complaint nor Headwater's operative infringement contentions ever accuse the Roaming Reduction feature of infringement, but Dr. Wesel's report includes such allegations. Samsung contends Headwater had the code for the feature and knew of the Roaming Reduction feature for months but never sought to properly add the feature to the case.

Further, Samsung contends Dr. Wesel added accusations against Power Saving Mode, NET_CAPABILITY_NOT_CONGESTED, CarrierConfigs and PCO Value for the '976 patent. [2]

Last, Samsung argues the Court should strike Dr. Wesel's accusations against Samsung's Network Policy Mechanism. Samsung contends Headwater's failure to earlier assert such a claim is not excusable given that the files Dr. Wesel citations were publicly available before Headwater even filed its complaint.

Headwater responds that its contentions did accuse Roaming Reduction as additional proof that the Data Saver feature infringes. Headwater points to the '976 chart that provides "users can enable Data Saver on a device-wide basis in order to optimize their device's data usage, and use less data. This ability is especially useful when roaming." Headwater contends the Roaming Reduction feature uses the same code as Data Saver and infringes for the same reasons.

As to Samsung's list of wrongly accused features, Headwater first responds that Samsung failed to meet and confer on these issues in violation of Local Rule 7(h). Headwater contends that during the

---

[2] Samsung's Motion also contained further arguments as to several no longer asserted patents. (*See* Dkt. Nos. 385, 405.) Samsung's Motion as to these patents is **DENIED AS MOOT**.

meet and confer, Samsung refused to list the issues it sought to strike from Dr. Wesel's report and instead only provided two examples.

Substantively, Headwater contends that Power Saving was included in its contentions. Headwater first points to a what appears to be a screen shot in the contentions which depicts a "Power saving" toggleable option as a disclosure of the Power Saving mode. Headwater contends its contentions provide this as an example of limitation 1[e].[3] Next, Headwater contends Samsung must have known that Power Saving was accused because Samsung's non-infringement contentions include it. Last, Headwater contends the '976 contentions clearly describe "power saving features" in relation to the "powerManager API" and others which are used to implement the Power Saving feature citing a portion of the contentions that provide "[b]eing on the power allowlist means that the system will not apply most powers saving features to the app." Headwater argues there is no prejudice to Samsung as all accused features infringe in the same manner following the same source code and thus there is no material change between Headwater's contentions and Dr. Wesel's report. As to NET_CAPABILITY_NOT_CONGESTED, CarrierConfigs, and PCO Value, Headwater contends these citations merely provide evidentiary support for the contention that Samsung receives information from a "network element" by receiving messages from a cellular carrier.

As to "Network Policy," Headwater contends this is merely evidence that Data Saver, Power Saving, Doze, and App Standby infringe, not a new theory. Headwater points to the section of Dr. Wesel's report stating "the Samsung accused products' network Policy mechanism to evaluate application state changes, and whether an application is interacting in the device display foreground with the user," and explains "battery saver, doze mode, app standby" and "data saver" use Network Policy code. Headwater

---

[3] Notably directly after the section cited by Headwater, the contentions provide a list of accused modes "including without limitation 'Adaptive batter,' 'Doze' and 'App standby' modes," but does not list "Power Saving" mode. (*See* Dkt. No. 165-3 at 29-30.)

contends this was clear from the outset of the case where its contentions cited to a link that discussed the "Network Policy Manager."

The Court finds that Headwater accused the Roaming Reduction feature of infringing in its contentions. The contentions reference to "roaming" in the context of the Data Saver functionality is sufficient to preserve Headwater's infringement position that the Roaming Reduction feature infringes as part of the operation of the Data Saver functionality. As Headwater's infringement argument is cabined to the Data Saver code, the Court finds that Headwater made sufficient allegations against the Roaming Reduction feature to preserve its argument.

The Court similarly finds Headwater contended that the Power Saving feature infringed the '976 patent prior to Dr. Wesel's report. First, the Power Saving feature appeared in the contentions, highlighted in a screen shot. As with the Roaming Reduction feature, while Headwater's contentions do not list Roaming Reduction with the other features Headwater contends operate in the same way, but the contentions clearly reference the Power Saving feature in the same way. It should have been clear to Samsung that Headwater intended to accuse the Power Saving feature in the same way as the other features. Further, while the Court is not convinced that Samsung's non-infringement contentions show that it understood Headwater's contentions in this manner, they do show Samsung is prepared to defend against this theory. As such, to the extent Headwater did not include this accusation previously, it is now harmless.

Further, the Court is convinced by Headwater's argument that its citations to NET_CAPABILITY_NOT_CONGESTED, CarrierConfigs, and PCO Value are merely evidence supporting the theory that was disclosed in its contentions. As this does not introduce a new theory, but provides additional evidence in support of a disclosed theory, it will not be stricken.

As to Network Policy, while the Court is satisfied that it is evidence of infringement rather than a

5

new theory, the Court is unimpressed by Headwater's contention that it was included in its contentions through citation to a website. It is the role of the contentions to provide accused infringers with notice of how they are alleged to infringe, not to be a scavenger hunt map.

Finally, the Court has reviewed the email correspondence between the parties regarding their meet and confer and finds that it is not so deficient as to warrant denial of Samsung's motion. While it is preferred that the moving party provide a fulsome explanation of the issues it seeks to address in a motion, it is not required that the moving party provide excruciating detail when a sufficiently representative exemplary issue is discussed.

### B. BATTERY TESTING

As to battery testing, Samsung argues that Dr. Wesel did not perform the testing he opines on, failed to properly control variables or indeed perform the testing appropriately, and improperly projected from the testing he performed to other devices.

First, Samsung complains that Dr. Wesel only performed two tests and left the remaining tests to an undisclosed "consultant." In deposition Dr. Wesel was unable to identify the "consultant" but clarified he had an advanced degree in physics or mathematics. Samsung conjectured that the "consultant" was counsel for Headwater and as such the testing is unreliable. Samsung contends this is particularly alarming where Dr. Wesel has no prior experience in battery testing and was unsure what checking he performed of the testing that he did not himself perform.

Second, Samsung contends the testing itself was substantively flawed. Samsung contends Dr. Wesel's testing failed to take into effect factors, such as battery temperature and signal strength, that Dr. Wesel agrees impacts battery usage. Likewise, Samsung contends Dr. Wesel's testing also failed to align with the Average Usage Profile that it purports to rely.

Last, Samsung complains how Dr. Wesel projects results from his testing is inappropriate. Samsung contends that Dr. Wesel, despite conceding they are different, applies the test results from one

phone to all accused products. Samsung contends this is particularly striking when different cellular modems have different power demands and the tested device is 10-years old. Samsung also argues that because Dr. Wesel's test addressed only one of the accused features it cannot apply to all other features.

Headwater responds that Samsung is incorrect as to Dr. Wesel's testing. Headwater contends that Dr. Wesel provided that the consultant who performed the testing was not an attorney for Headwater but had a Ph.D. from Cal Tech and contends the consultant was disclosed to Samsung per the protective order months previously. Headwater further contends the case law is clear that Dr. Wesel may rely on the testing performed by others under FRE 703. Last, Headwater contends Dr. Wesel, as an accomplished electrical engineering professor with degrees from Standford and MIT, is entirely qualified to perform battery testing.

Headwater likewise contends there is no substantive problems with Dr. Wesel's testing. Headwater contends that Dr. Wesel tested different phone models and found similar behavior and thus Dr. Wesel's projections where appropriate. Headwater further contends while Dr. Wesel departed from the Average Usage Profile, his departures were not material and his testing still effectively tested the patented features. Headwater contends these complaints plainly go to weight of Dr. Wesel's testimony, not admissibility.

The Court finds that Samsung has not demonstrated that Dr. Wesel's testing opinions should be excluded. The law does not require that Dr. Wesel personally perform all testing. Here it appears that Dr. Wesel was in control of the testing and directed the specific parameters used. Samsung will have a full opportunity to cross-examine Dr. Wesel on those parameters and how well they were followed at trial.

Likewise, the Court is unconvinced by Samsung's other arguments. While there will always be a myriad of relevant factors that could be considered, this does not mandate that an expert address each and every one in detail. As Samsung has not demonstrated that the cited factors somehow dominate all other factors such that omitting them would render all testing irrelevant, such concerns are best left for cross-

examination. The same is the case for Samsung projection complaints. While Samsung has identified material concerns with how Dr. Wesel chose to interpret his testing results, Samsung has not shown that such concerns invalidate Dr. Wesel's testimony wholesale.

### III. CONCLUSION

For the reasons provided above, the Court recommends that the motion should be **DENIED**.

**SIGNED this 7th day of November, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE