IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| HEADWATER RESEARCH LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00422-JRG-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. | § | |
| and SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM ORDER**

Before the Court is Headwater's Motion to Strike Portions of the Expert Opinions of Dr. Dan Schonfeld (Dkt. No. 240). For the reasons provided below, the Motion is **GRANTED** only in part.

**I.  APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether

1

particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

II. ANALYSIS

A. NETWORK TYPE NON-INFRINGEMENT ARGUMENTS

First, the parties dispute the plain meaning of limitation 1[f] of the '976 Patent. That

limitation provides: "for a time period when data for Internet service activities is communicated through a WWAN modem connection to the at least one WWAN, apply a first differential traffic control policy to Internet service activity on behalf of the first end-user application …" Headwater argues Dr. Schonfeld applies an improper claim construction that he calls the plain meaning of the term and that such a construction is barred by judicial estoppel and waiver. Headwater also argues Dr. Schonfeld's support for his claim construction opinion should also be stricken under the Court's standing order on motions *in limine* as it is largely based on Headwater's POPR from Samsung's non-instituted '976 IPR. Samsung responds that Dr. Schonfeld applies the correct plain meaning of the term and Headwater largely misconstrues Dr. Schonfeld's opinions.

The Court finds that the parties' dispute is first and foremost a claim construction dispute that the Court is required to resolve under *O2 Micro* and is not to be presented to the jury. As such, the Court agrees that Dr. Schonfeld will not be permitted to argue claim construction or reference Headwater's IPR statements in support of such an argument.

Next, the Court finds that Samsung is not barred from making its claim construction arguments by judicial estoppel or waiver. First, Headwater's estoppel argument is based on statements Samsung made to the PTAB in an IPR proceeding. While Samsung presented an entirely different claim construction to the PTAB more in line with what Headwater now proffers, the PTAB denied institution. As such, the PTAB clearly did not meaningfully accept Samsung's position. Likewise, Headwater's waiver argument is insufficient. As a general matter waiver is disfavored. Waiver is even more disfavored when, as here, it was not apparent there was need for earlier resolution as both parties believed they were advocating for the same position, here plain meaning, only to later determine they understood that position differently. While Samsung should have brought a motion for further claim construction and will not be permitted to raise claim

3

construction to the jury, the Court will not take these procedural failures to mandate waiver.

The parties' dispute is two-fold, first, whether 1[f] involves a "based on network type" determination to apply the "first differential traffic control policy" and second, if the application of a "first differential traffic control policy" is exclusive to the network type triggering it.[1]

Headwater's argument is largely that the language of the claim only requires applying the policy for a time period in which there is WWAN connectivity, and does not require applying the policy only when connected to a WWAN and not when connected to WLAN. Headwater also argues claim differentiation based on dependent claims 5, 6, and 7 requiring "different policies for different networks," "based at least in part on the type of network connection," and "when the type of the network connection is at least one type of WLAN connection" respectively. Headwater argues that these are the limitations Samsung intends to read into the plain meaning of the independent claim. As such a reading would render the dependent claims redundant, Headwater argues such a construction is incorrect.

Samsung contends limitation 1[f] expressly requires a condition to be evaluated, "communicated through the WWAN modem," followed by a result when the condition is satisfied, applying the policy. Samsung contends this means the policy is applied based on the network type. Samsung also points to the '976 abstract that largely recited the language of 1[f] and adds that a "different policy may apply to WLAN modem usage and/or to different WWAN networks."

Samsung further argues Headwater adopted Samsung's construction of the term during the IPR proceedings. Samsung points to statements by Headwater that the prior art did not "condition[] the application policies based on whether the device is connected to the WWAN" as required by

---

[1] Notably, Samsung contends Dr. Schonfeld does not make this argument. However, as Headwater contends this is effectively what Dr. Schonfeld argues, the Court will address the construction so as to avoid any further disputes or need for claim construction.

4

limitation 1[f].

Next, Samsung argues that its construction of the term is consistent with the dependent claims. Samsung argues that because claim 5 requires the policy of claim 1 be "part of a multimode profile having different policies for different networks" and claim 1 does not have "a multimode profile" limitation, claim differentiation is inapposite. As claims 6 and 7 depend from claim 5, Samsung argues they also do not support claim differentiation.[2]

Headwater responds that Samsung misconstrues its IPR statement. Headwater contends it argued that the petition's theory for limitation 1[g]-[i] was faulty for failing to stratify the "indicating" limitation. Headwater argues it only noted the petition did not allege for 1[f] that there was knowledge of whether the service was "available via the WWAN modem" in support of its "indicating" criticism.

The Court finds Headwater's construction of the plain meaning is correct.

First, the Court is not convinced that Headwater is being inconsistent with its prior statements to the PTAB. Upon review of the arguments Headwater presented to the PTAB, as cited by Samsung, Headwater was criticizing Samsung's prior art combination's failure to demonstrate the "indicating" limitations rather than 1[f]. The Court finds Headwater's statements at Dkt. 238-2[3] at 33 illustrative, where Headwater explains:

> But the Petition's treatment of claim [1.7] falls apart when it comes to claim [1.8(b) & 1.8(c)]. Those limitations require sending network access conditions "to the first application" that indicate the unavailability or availability of "Internet data service *that is available via the WWAN modem.*" And the Petition's proposed system, as discussed for claim [1.7], simply has no idea whether and when the device is even connected to a WWAN. Therefore, it does not—and cannot—send any "indication" about the unavailability or availability of WWAN Internet data service.

---

[2] Samsung also argues Headwater's claim construction expert supports Samsung's construction, but it is unclear what claim or patent, his testimony referred to. As such, that testimony does not weigh one way or another in this dispute.
[3] The '976 IPR POPR submitted by Headwater.

Given that the statements highlighted by Samsung merely describe the combination system Samsung's petition puts forward rather than what the claims demand, the Court is not convinced that Headwater has supported Samsung's proposed construction.

However, the Court agrees with Samsung that claim differentiation does not mandate the construction proposed by Headwater. Samsung is correct in observing that claim 5 adds a further limitation, the "multimode profile," that provides another basis for differentiating claim 5 from Samsung's construction of claim 1. Thus, while claim 5 does show the patentee possessed a means for expressly claiming different policies for different networks, it does not mandate a particular construction for claim 1.

The Court thus turns to the language of the claim itself.[4] The first question is whether the language "one or more processors configured to … for a time period when data for Internet service activities is communicated through a WWAN modem connection to the at least one WWAN, apply a first differential traffic control policy…" can be satisfied without an express determination that "data for Internet service activities is communicated through a WWAN modem…" or if merely operating a wireless end-user device in such a way satisfies the limitation. The Court finds the claims do not require an express determination. First, simply, there is no language calling for a determination based on network type as Dr. Schonfeld discusses. While he contends that is the plain meaning of 1[f] the fact remains that he resolves to add the language "based on network type" to the claims.  Such language is not in claim 1 though similar language appears in claim 5. Both the necessity to add express language for clarity and that the express language is found in the patent but not in the claim at issue weigh against Samsung's construction. Further, the language

---

[4] The Court finds Samsung's citation to the abstract does not support its construction here. The abstract used the language of 1[f] but the language supportive of Samsung's construction is different and set apart. This suggests the abstract and the claim are describing different embodiments.

"for a time period…" is phrased in a passive manner, so as not to suggest a particular operation is undertaken but rather the claim only covers a particular domain of use. In the prior limitation, and later in limitation 1[f] itself, the language calls for the "one or more processors" to perform a classification of "a first end-user application." No such determination is called for "for a time period…" Where the claim calls for a determination as to some conditions but does not for a WWAN modem connection, the Court declines to import one.

The Court also finds that "first differential traffic control policy" is not exclusive to a particular network type. Claim 1 clearly does not mandate that a "first differential traffic control policy" is exclusive to any particular network type. A "comprising" claim, such as claim 1 does not, without further language, mandate exclusive treatment of the limitations. As such while 1[f] only contemplates WWAN connection, without language limiting the "first differential traffic control policy" the Court will not import such an understanding.

Dr. Schonfeld's opinions not aligned with the Court's construction of 1[f] such as requiring a determination "based on network type" or that the "first differential traffic control policy" is exclusive to a network type are hereby **STRICKEN**.

### B. NON-INFRINGING ALTERNATIVES

Headwater next contends Samsung has not met its burden to prove the existence of available and acceptable non-infringing alternatives at the time of the hypothetical negotiation. Broadly, Headwater argues that Dr. Schonfeld failed to opine on the removal of any infringing features, only the addition of features, and fails to show availability of the specific alternatives he puts forward.

Headwater argues that because Samsung's App Freezer was not developed by Samsung until 2017 but the hypothetical negotiation was in 2016, App Freezer was not available. Likewise, Google's App Freezer was not developed until 2021 and third-party App Freezers were not

7

developed until 2022. Headwater contends Dr. Schonfeld does not make any showing as to App Locker or the prior art Android alternatives which Headwater contends would be incompatible with the 2016 version of Android. Headwater also contends Dr. Schonfeld's opinions about removing the infringing features is conclusory and does not explain it would even be possible.[5]

Samsung responds that it is not required to put forth expert testimony detailing the redesign of accused features and Headwater misconstrues the availability requirement. Samsung contends the non-infringing alternative analysis is focused on identifying an alternative to the accused technology and at best discussion on the precise mechanism for replacing the infringing functionality goes to weight. Samsung argues that Headwater's contention that the accused features cannot be removed as they are integral to the Android OS is subject to cross examination and the Court need not take it as true at this stage.

As to availability, Samsung argues the required showing is that the alternative must be available or on the market but Headwater's showing is focused exclusively on market presence, not availability. Samsung contends it may show availability by demonstrating the requisite components were readily obtained even if the applications were not developed until later. Samsung contends despite App freezer not being commercially released until 2017 it was merely an extension of the already available App Locker using well-known technology.

The Court finds Headwater has not made a sufficient showing that Dr. Schonfeld's non-infringing alternatives opinions should be stricken. The Court does not agree that there needs to be a specific showing by an expert on the removal of the accused features merely because they

---

[5] Headwater also argues that Dr. Schonfeld's opinions should be stricken because Samsung's damages expert does not opine on the mathematical impact of non-infringing alternatives. As Samsung's damages expert performs qualitative analysis on the impact of non-infringing alternatives, and the existence of non-infringing alternatives tends to rebut specific showings of Headwater's damages experts, this is not grounds to strike Dr. Schonfeld's opinions.

8

make up a portion of the operating system. While Headwater has pointed to deposition testimony from Samsung engineers that removal is not available, the Court is satisfied that such testimony did not fully appreciate the alternative reality hypothetical presented by the hypothetical negotiation and thus cannot be taken as an absolute. Likewise, the Court agrees that the fact that many of the alternatives were not developed prior to the hypothetical negotiation does not foreclose the possibility that they would be available. As Samsung has presented evidence that the materials and know-how was available, Samsung may present the question of availability to the jury. Finally, the Court finds Headwater's argument as to the Android prior art, that it is not compatible with the current Android version, does not foreclose Samsung's ability to present it to the jury.

### C.  GOOGLE APPLICATION OPINIONS

Headwater contends Dr. Schonfeld has no proper basis for his opinions regarding the operation of certain closed source Google applications for invalidity. Headwater contends the presentation and testimony Dr. Schonfeld relies upon is improper as Dr. Schonfeld did not review the source code, and the evidence he does rely upon is insufficient.

As the Court has already addressed this issue in Headwater's motion for summary judgment and found the evidence Samsung and Dr. Schonfeld rely upon to be sufficient for Samsung to present to the jury the question of invalidity. The Court finds the same here.

### III.  CONCLUSION

For the reasons provided above, the Court **GRANTS** the Motion only as provided above as to the claim construction of limitation 1[f].  It is otherwise denied.

**SIGNED this 8th day of November, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE