# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC<br><br>*Plaintiff*,<br>v.<br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:22-CV-00422-JRG-RSP |

**SAMSUNG'S OBJECTIONS TO MEMORANDUM ORDER
RE: SAMSUNG'S MOTION TO STRIKE CERTAIN OPINIONS OFFERED
BY DR. ANDREAS GROEHN AND MR. DAVID KENNEDY (DKT. 434)**

1

Magistrate Judge Payne's memorandum order (Dkt. 434, hereinafter "Order") denied Samsung's Motion to Strike the Expert Testimony of Dr. Groehn (Dkt. 251), and also denied Samsung's Motion to Strike the Expert Testimony of Mr. David Kennedy (Dkt. 252), granting Samsung's Motion only as to the running royalty analysis on post-trial sales. Samsung respectfully objects to and seeks *de novo* review with respect to certain of the Court's opinions declining to strike Dr. Groehn's and Mr. Kennedy's opinions.

**A. Dr. Groehn's Use of Conjoint Analysis for Incremental Profit is Unreliable**

The Order erred in holding Dr. Groehn's use of conjoint analysis here was permissible on the basis that "[t]here is no rule that [conjoint] analysis is *per se* unreliable. . . ." Order at 6. Samsung did not argue for the categorical inadmissibility of conjoint analyses. Instead, Samsung specifically challenged how Dr. Groehn applied conjoint analysis in this instance, which, as the literature supports, exceeds the methodology's accepted use. Dkt. 251 at 6. Samsung presented strong evidence demonstrating that conjoint analysis is widely accepted only for measuring consumer preferences—**not for calculating incremental profits**. *Id.* The Order mischaracterized Samsung's argument as asserting a blanket challenge to conjoint analysis in general. Order at 6.

As Dr. Groehn's own sources unequivocally state, "[i]t should be emphasized that conjoint analysis can only estimate demand. Conjoint survey data, alone, **cannot be used to compute market equilibrium outcomes such as market prices**," precisely what Dr. Groehn has done here. Dkt. 251 at 6 (citing Ex. D (Dkt. 251-4) (Allenby 2019) at -81 (emphasis added)). Dr. Groehn himself admitted that **no smartphone maker in the world uses conjoint analysis this way**. Dkt. 251 at 6 (citing Ex. B (Dkt. 251-1) (Groehn Rough Tr.) at 121:22-122:4). The Order erred by failing to scrutinize whether Dr. Groehn's application of conjoint analysis to calculate market equilibrium incremental price is admissible under Rule 702, especially in light of Samsung's unrebutted evidence that conjoint data alone cannot fully account for the real-world market

2

complexities of the smartphone consumer market today such as structured purchase plans, discounts, layers of retailers, and many other factors that separate Dr. Groehn's average sales price from the revenues (and thus incremental profit) actually realized by Samsung. By doing so, the Order improperly allowed a methodologically flaw analysis to be presented to the jury, rather than excluding testimony that fails *Daubert*'s reliability standard.

### B. Change Caused by an Irrelevant Decoy Attribute Illustrates the Deeper Methodological Issue

The Order further erred in treating Dr. Groehn's "correction to the decoy variables" as a mere "credibility determination [for] the jury." Order at 7. The Order reasoned that "[w]hile mathematical errors in a report raise concerns, Samsung has not identified mathematical errors in the operative report." *Id.* However, the Order erred in framing the issue: Samsung's objection is not based on the existence of a "mathematical error" per se but rather on the magnitude of the error's effect given that the irrelevant parameter (different prices dictated by different screen sizes) is **unrelated** to the feature of interest: battery life. Specifically, the correction to an irrelevant parameter caused the damages figure to increase by ███████████, more than doubling the resultant damages. Dkt. 251 at 8. This dramatic sensitivity underscores the fundamental flaws in Dr. Groehn's methodology.

At his deposition, Dr. Groehn confirmed that the significant price shift between his original and amended reports was caused by the inclusion of a "screen size" attribute in the survey. Dkt. 251 at 9 (citing Ex. B (Dkt. 251-2) (Groehn Rough Tr.) at 63:23-64:16; 93:1-8). Despite screen size being a "decoy attribute," unrelated to the feature of interest (battery life), this simple change more than doubled the ultimate damages figure, increasing it by ███████████. Dkt. 251 at 9-10 (citing Ex. E (Dkt. 251-5) (Groehn Redlines) at Table 6; *compare* Ex. G (Dkt. 251-7) (Kennedy Opening Rpt. Ex. 1) *with* Ex. H (Dkt. 251-8) (Kennedy Corrected Rpt. Ex. 1)). This

3

extreme sensitivity to an irrelevant survey attribute highlights not merely a "mathematical error," but a deeper, fundamental flaw in Dr. Groehn's methodology showing that his calculations cannot truly have isolated the value of battery life alone, as he opines. Rule 702 requires courts to address such foundational methodological issues as a matter of admissibility, not defer them to the jury.

### C. Dr. Groehn's Survey Lacks a Nexus to the Patent

The Order further erred finding Dr. Groehn's testimony admissible based on the conclusion that his "survey was specifically crafted to focus on the battery-saving advantages provided **by the patented technology**." Order at 7 (emphasis added). Dr. Groehn's survey focused on "battery life" generally and was not tailored to specific advantages provided by the patented technology. In fact, Dr. Groehn admitted to having no knowledge of the asserted patents nor specific understanding of any purported technical benefit provided by the asserted patents. Dkt. 251-2 (Groehn Dep.) at 109:4-20, 113:7-14. Neither Headwater nor the Order identified a nexus between Dr. Groehn's attribute of interest, "battery life," and any element of any asserted claim. A conjoint survey is irrelevant if the evaluated benefit (battery life) is not demonstrably tied to the asserted patents, particularly in combination with a failure to adequately and objectively define the evaluated benefit.

For example, in *Fractus, S.A. v. Samsung,* the court excluded conjoint surveys that failed to measure the value of the patented type of internal antenna, instead evaluating the generic consumer value of cell phones with any internal antennas. No. 6:09-CV-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011); *see also Unwired Planet, LLC v. Apple Inc.*, No. 14-cv-04134-VC, 2017 WL 589195, at *1 (N.D. Cal. Feb. 14, 2017) (excluding conjoint survey results and all damages analysis derived therefrom because survey's feature descriptions were so different from the patented features that survey was effectively "targeted at an invention other than the one at issue in this litigation"). The Order's reliance on other experts to supplement Dr. Groehn's

4

disconnected analysis fails to meet *Daubert*'s requirement that each expert's testimony be independently reliable and relevant.

### D. The Subjective Definition of "Battery Life" Requires Exclusion Under Rule 702

The Order further erred in concluding that Dr. Groehn's definition of "battery life" is a matter "best left for cross examination," relying only on the assertion that "Headwater has put forth a sufficient explanation for using its definition in this instance" without further elaboration. Order at 7. Dr. Groehn's definition of "battery life" is subjective and respondent-dependent, making it inherently unreliable and indicative of a methodological flaw requiring exclusion under Rule 702—not a jury question.

Rather than providing an objective measure of battery life, such as time in hours or milliampere-hours as is common in the industry, Dr. Groehn allowed survey respondents to define "standard battery life" based on their own interpretations. Dkt. 251 at 13 (citing Ex. A (Dkt. 251-1) (Groehn Rpt.) ¶¶ 72. This vague and subjective framing of battery life—and of its further undefined incremental levels of increase (5% and 10%)—forced each respondent to individually define the term, and estimate the increase above an uncertain baseline, rendering the survey results meaningless for determining quantifiable "profit" or "price." This flaw undermines the reliability of Dr. Groehn's opinions, particularly given that objective, advertised battery life metrics were available for the phones he analyzed. Dkt. 251 at 14 (citing Ex. B (Dkt. 251-2) (Groehn Rough Tr.) at 172:22-173:14).

### E. The Court's Order Does Not Address That Mr. Kennedy Takes Dr. Wesel's Testing on One Feature and Applies To All Features

Setting aside whether Dr. Wesel's testing data is reliable such that it should be presented to the jury (which Samsung separately objects to in its Objections to the Order on Samsung's Motion to Strike Certain Opinions of Dr. Wesel), the Court's Order does not address whether it was proper

for Mr. Kennedy to base the entirety of his damages opinion on the Dr. Wesel's evaluation of only one feature. Mr. Kennedy takes Dr. Wesel's testing results on **Power Savings Mode**, and applies them only through estimated calculations to **Doze Mode**. Dkt. 252-1, Ex. A (Kennedy Rpt.) at ¶ 108. But there are four other features at issue that Dr. Groehn never tested, including Doze Mode, and the only evidence Mr. Kennedy relies on to apply Dr. Wesel's analysis to his own feature of interest is the *ipse dixit* of Dr. Wesel, not his testing results. Because this is the fundamental basis on which Mr. Kennedy basis his "upper bound" royalty rate opinions, all of Mr. Kennedy's damages based on this methodology are unreliable.

### F. Mr. Kennedy's Corrected Report Raises More Than a Question of Credibility

Mr. Kennedy's corrected opinions raise more than "a question of credibility" (Order at 10), but rather go to the heart of the *Daubert* standard itself. The fundamental unreliability of Mr. Kennedy's opinion is proven by the fact that Mr. Kennedy originally concluded "upper bound" damages of ▮▮▮▮ based on the very same methodology, and stated this "**upper bound is an economically reasonable price for Samsung to pay for the Hypothetical License.**" Dkt. 252-2, Ex. B (Kennedy Original Rpt.) at ¶ 424. Mr. Kennedy first analyzed the *Georgia-Pacific* factors that "prudent" and "reasonable" parties at the hypothetical negotiation and concluded that the parties would have agreed to ▮▮▮▮ as an "upper bound." Weeks later, and only after being informed of Dr. Groehn's fundamental error, did Mr. Kennedy effectively redo his damages calculation which added another nearly ▮▮▮▮ in alleged reasonable royalty damages. *See* Dkt. 252-1, Ex. A (Kennedy Rpt.) at ¶ 424 (emphasis added). Mr. Kennedy made no revisions or updates to his *Georgia-Pacific* factor analysis whatsoever to support his ▮▮▮▮ change in opinion. That Mr. Kennedy's damages demand could change so drastically without any explanation proves that his analysis lacks the rigor, review, and reliability required for analysis to survive Fed. R. Evid. 702 and *Daubert*.

6

### G. Mr. Kennedy's Further Apportionments are Divorced From the Facts of the Case

Mr. Kennedy's further "apportionment" methodologies are not grounded in the facts of the case. As the Court acknowledges, Mr. Kennedy's apportionment opinions on SG&A and R&D adjustments are derived from company-wide values, and his Bargaining Outcome Share Adjustment is supported only by his own experience. Dkt. 434 at 10-11. Mr. Kennedy does not articulate why these company-wide values are the best available evidence, and does not articulate why the gross margin of Samsung would reflect the value of the asserted patents as it relates to Samsung's smartphones. His ***only*** justification that this data is sufficient and his adjustments are appropriate is his own *ipse dixit*, where he claims that "[i]n [his] experience, [these are the] most effective metrics available to the parties to assess Samsung's contributions." Dkt. 252-1, Ex. A (Kennedy Rpt.) at ¶ 416. These bare allegations are "untethered to the facts" of this case and violates the Federal Circuit's instruction that his opinions cannot be "too crude a generalization." *Apple v. Wi-LAN*, 25 F.4th 960, 973-74 (Fed. Cir. 2022) (holding Mr. Kennedy's opinion "untethered to the facts," requiring a new trial); *VirnetX*, 767 F.3d at 1332.

### H. The Court's Order Is Silent on Whether It Was Proper For Mr. Kennedy to Rely on the Non-Comparable ▮▮▮▮▮

The Court's Order issues no opinion as to whether it was proper for Mr. Kennedy to rely on the non-comparable ▮▮▮▮▮. *See generally* Dkt. 434. Despite summarizing the parties' positions as to Mr. Kennedy's use of the ▮▮▮▮▮, the Order is otherwise silent as to whether Mr. Kennedy's use of the agreements should be stricken. Mr. Kennedy's analysis improperly relies on a license agreement (and its amendments) that he implicitly admits is not comparable, and that the Court already found was not negotiated at arm's length. Dkt. 198 ("▮▮▮▮▮.") But critically, Mr. Kennedy's ultimate reasonable royalty opinions are not at all based on the ▮▮▮▮▮

7

███████████████████████████████

███████████████. Mr. Kennedy relies on the agreement only to opine that ████████████ "demonstrate[] the reasonableness of the rate" he proposes. Dkt. 252-1, Ex. A (Kennedy Rpt.) at ¶ 427. Mr. Kennedy goes on to claim that although ████████████

████████████████████████████████████████████████████

████████████████████████████████████████ is the most relevant rate to the hypothetical negotiation.— Mr. Kennedy offers this opinion despite being fully aware that there is no evidence anyone has ever paid this rate, and despite having no idea how those "market" rates were calculated. *Id.* at ¶ 428, fn. 467; Dkt. 252-4, Ex. D (Kennedy Rough Tr.) at 82:4-6; 82:20-83:4. Given that the agreement was not negotiated at arms-length, the market rates are self-serving and prejudicial. and that For these reasons and because Mr. Kennedy does not rely on the rates as part of his damages calculation, Mr. Kennedy should not be permitted to rely on the ████████████████ as comparable. *See VLSI Technology LLC v. Intel Corporation*, 87 F.4th 1332, 1349 (Fed. Cir. 2023); *see also Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (reversing on this basis).

Dated: November 21, 2024                    Respectfully submitted,

By: */s/ Thomas H. Reger II*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Nicholas A. Gallo (*pro hac vice*)
GA Bar No. 546590
gallo@fr.com
Steffen C. Lake (*pro hac vice*)
GA Bar No. 512272
lake@fr.com
Sara C. Fish
sfish@fr.com
GA Bar No. 873853
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Katherine H. Reardon
NY Bar No. 5196910
reardon@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavid@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh

9

CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
Harry L. Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
James Travis Underwood
State Bar No. 24102587
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Grant Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
Jon Hyland
jhyland@hilgersgraben.com
Texas Bar No. 24046131
Theodore Kwong
tkwong@hilgersgraben.com
Texas Bar No. 4087871
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 469-751-2819

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

*Attorneys for Defendants
Samsung Electronics Co., LTD and
Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on November 21, 2024. As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Thomas H. Reger II*
Thomas H. Reger II

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Thomas H. Reger II*
Thomas H. Reger II