**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| Plaintiff, | Case No. 2:22-cv-00422-JRG-RSP |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | ▬▬▬▬▬▬▬ |

**PLAINTIFF HEADWATER RESEARCH LLC'S**
**RESPONSE TO SAMSUNG'S OBJECTIONS TO MEMORANDUM ORDER RE:**
**SAMSUNG'S MOTION TO STRIKE CERTAIN OPINIONS ORDERED BY DR.**
**ANDREAS GROEHN AND MR. DAVID KENNEDY**

**SAMSUNG'S OBJECTIONS APPLY THE WRONG LEGAL STANDARD**

Samsung objects to Judge Payne's denial of its motions to strike expert testimony of two of Headwater's experts, Dr. Andreas Groehn (Headwater's survey expert) and David Kennedy (Headwater's damages expert). Dkt. No. 447 ("Objs."). Motions to strike are <u>non-dispositive</u> motions, but yet Samsung incorrectly requests *de novo* review by this Court, which is the standard of review for <u>dispositive</u> motions. *See* Fed. R. Civ. P. 72(b)(3).[1] This Court should instead review Judge Payne's order on these non-dispositive motions to determine if "any part of the order … is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). In any event, for the reasons below and in Headwater's prior brief on these issues (Dkt. Nos. 279, 281, 317, 318), under either standard of review, this Court should adopt Judge Payne's order (Dkt. No. 434 ("Order")) in its entirety.

**A.     Dr. Groehn's conjoint analysis uses standard economic methodologies.**

Judge Payne found "that Dr. Groehn is sufficiently familiar with the use of conjoint surveys to be permitted to opine on them ***and their use***." Order at 6-7 (emphasis added); *see also* Dkt. No. 279-2 at 220:9-19 (Dr. Groehn has conducted approximately 100 conjoint surveys.). Samsung claims this finding is incorrect because "[c]onjoint survey data, alone, cannot be used to complete market equilibrium outcomes such as market prices." Objs. at 2 (emphasis removed). But as Headwater explained numerous times, this is simply not what Dr. Groehn does. Rather, he uses the survey data *in combination with* Samsung's real-world financial data to compute the value of improved battery life to Samsung, and uses an approach to do so that follows well-accepted economic principles and methods. *See* Dkt. No. 279 at 5-7; Dkt. No. 317 at 1-3.

---

[1] Under this Court's rules, objections to non-dispositive orders are limited to 5 pages. Local Rule CV-72(a). Because Samsung's objections exceed this limitation, the Court should either deny Samsung's objection on this basis or only consider the first 5 pages of its objections. Headwater has properly limited its response to 5 pages.

2737f1377dcc81ac

**B.     The corrections that Dr. Groehn made are not rooted in his decoy attributes.**

Samsung claims the magnitude of the changes in Dr. Groehn's results are due to his selection of screen size as a decoy attribute, and "[t]his dramatic sensitivity underscores the fundamental flaws in Dr. Greohn's methodology." Objs. at 3. Samsung offers no support for this assertion, and it makes no logical sense. Dkt. No. 279 at 10-11; Dkt. No. 317 at 3-5. The survey response data was always based on what was shown to the survey respondents—the correct price points set out in Dr. Groehn's amended report. When Dr. Groehn used the incorrect price point data in his original report, the results of his calculations were therefore meaningless—prior to his correction, his computations used price points not shown to the survey respondents and thus were irrelevant to any analysis of that survey. Any comparison of the "original" results with the "amended" results is nothing more than an attempt by Samsung to confuse the issues. And to be clear, Dr. Groehn did not change the decoy attributes in his amended report – the only changes were to simply correct a data entry error in his programming code to use the correct prices.

**C.     Dr. Groehn's survey is sufficiently tied to the facts of the case.**

Samsung agrees that "Dr. Greohn's survey was focused on 'battery life' generally." Objs. at 4. Judge Payne found that the survey's focus was appropriate because Headwater's technical expert "Dr. Wesel provides sufficient testimony tying battery life to the asserted claims." Order at 7. Judge Payne also recognized that "[w]hile there are other technologies that can also improve battery life [other than the accused features], that does not render Dr. Groehn's focus inappropriate. It will be for Mr. Kennedy, Dr. Wesel, and Samsung itself to explore how else battery life can be improved and the comparable benefit of the claimed invention." *Id.* That is exactly right. Critically, Dr. Groehn is not calculating damages or even a per unit royalty rate—that is analysis that Mr. Kennedy does using Dr. Groehn's results as one of many inputs. *See* Dkt. No. 279 at 11-14.

**D.      Dr. Groehn sufficiently defined "battery life" for his survey respondents.**

Dr. Groehn defined "battery life" in his survey as "the length in time in hours that a device can operate under battery power after being fully charged," and set forth three levels: "Standard battery life" and two percentages increase over standard. Dkt. No. 279-1 ¶88. Samsung takes issue with the fact "standard battery life" is "respondent-dependent." Objs. at 5. As Headwater has previously explained, that is the entire point; it is critical the survey taker consider what standard battery life is *for them* for the results to be meaningful. *See* Dkt. No. 279 at 14-15. As Dr. Groehn explained in deposition, what standard battery life means for a given respondent "depends on the situation of each individual respondent. … Each respondent will experience battery life in a different way depending on what apps they are using on their phone, whether they use the processor for intensive apps like video games, how far away from the cell phone tower they are or what the cli[mate] is where they are, whether they are in an air conditioned room or outside." Dkt. No. 279-2 at 172:4-18; *see also id.* at 175:22-176:8, 178:1-20, 179:6-181:5.

**E.      Mr. Kennedy relied on analysis by Dr. Wesel addressing all accused features**

Samsung claims Judge Payne fails to address its claim that Mr. Kennedy takes Dr. Wesel's testing on Doze and applies it to all accused features. Samsung misrepresents both the Court's order and Mr. Kennedy's opinions. Samsung's criticism of Mr. Kennedy is really an attack on Dr. Wesel, and the Court addressed this criticism of Dr. Wesel's opinion in detail in his Order on Samsung's separate motion to exclude that opinion. Dkt. No. 431. Moreover, the Court held that "Dr. Wesel provides sufficient testimony tying battery life to the asserted claims," and further it was appropriate for Mr. Kennedy to rely on Dr. Wesel's technical opinions. Order at 7, 10.

Dr. Wesel performed a separate analysis for Power Saver and Doze Mode features, and opined that these modes function similarly to the other accused features. Dkt. No. 252-1, Kennedy Rpt. ¶¶ 107, 111. Mr. Kennedy considered these results as they related to all accused features, but

concluded that the parties to the hypothetical negotiation would focused on the lower Doze Mode results as they applied to 100% of the accused devices. *Id.* ¶¶ 113. Samsung has never explained why focusing on the low end of the range of battery savings provided by the accused features, a benefit applying to all accused products, is methodological error.

### F. Mr. Kennedy's correction proves his methodological consistency.

Mr. Kennedy opined the parties to the hypothetical negotiation would look to the incremental benefit to Samsung from its infringement of the patent in suit, and in particular the specific battery savings provided by the patent in suit to Samsung, and the economic value of that battery savings. The resulting per-unit rate was "economically reasonable" because it reflected the incremental benefit Samsung received from its infringement and Samsung's extent of use of the patented technology, not because of the specific amount of this benefit. It was appropriate for Mr. Kennedy to rely on Dr. Groehn's analysis of that economic value, and thus it was entirely consistent with his original opinion to correct his per-unit rate when the input from Mr. Groehn was corrected. Moreover, for products with an average selling price of around $▮ (Dkt. No. 251-1 ¶140), the magnitude of this change in Mr. Kennedy's royalty is hardly astounding, as it represents a change from a range of 1-1.3% of ASP to a range of 2-2.9%. That the application of these rates to the royalty base of infringing units results in such large numbers, so that any change in the former results in a large change in the latter, is a function of the massive extent of Samsung's infringement – ▮▮▮▮ units – not some problem with Mr. Kennedy's methodology.

### G. As Mr. Kennedy explains in his report, his apportionment is based on case specific evidence and calculations.

Mr. Kennedy's report describes in detail, citing to academic studies, that SG&A and R&D are measures of investment in growth, *i.e.*, what a specific company has historically been willing to pay for additional economic benefit (Dkt. No. 252-1 ¶¶ 417-422), and that Samsung's gross

margin, like return on investment, "generally represent[s] the financial returns that Samsung expects from its operations" (*id.* ¶ 425).  These measures are thus directly relevant to the specific question of what Samsung would be willing to spend as a royalty payment to Headwater to get the additional economic benefit provided by the patents, based on what Samsung has been willing to invest in the past for economic returns.  Moreover, the measure of incremental benefit based on the combination of Dr. Wesel and Dr. Groehn's analyses show the specific benefit of Samsung's infringement of the patent in suit in the accused products in this case. Any further apportionment or analysis of how that benefit would be split between the parties is thus necessarily grounded in the facts of this case and would result in a reasonable royalty specific to this case.

### H.    The Court ruled on Mr. Kennedy's reliance on the later, arms-length ██ Licenses.

Samsung complains that the Order does not address Mr. Kennedy's opinions on the only licenses to the patent in suit, Headwater's licenses with ██ .  However, the Order describes the basis for Mr. Kennedy's opinion, noting Dr. Wesel's technical comparability opinion, and that:

> Headwater contends Mr. Kennedy accounts for the non-comparable economic aspects such as that the license was not negotiated as an arms-length contract. In particular, Headwater contends ██ and Headwater diverged over time and entered into certain amendments accounting for that divergence. Headwater contends Mr. Kennedy focuses on the last amendment.

Order at 9; *see also* Dkt. 281 at 9-10 (describing Mr. Kennedy's opinion and the evidence supporting it in detail).  The Court then denied Samsung's motion on all issues but one, thereby clearly rejecting Samsung's arguments on this issue.  Moreover, Samsung's Objection ignores that prior to issuing his Order on Samsung's motion to strike Mr. Kennedy's opinions on the ██ licenses, Judge Payne heard many of the same arguments and ruled on the admissibility of the later, arms-length ██ licenses on which Mr. Kennedy relies.  Dkt. 351, 172:6-178:4.  It is therefore not surprising that the Court did not reiterate its ruling in detail in the Order.

Dated:  December 5, 2024

Respectfully submitted,

*/s/ Reza Mirzaie*
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Brian Ledahl
CA State Bar No. 186579
Ben Wang
CA State Bar No. 228712
Paul Kroeger
CA State Bar No. 229074
Neil A. Rubin
CA State Bar No. 250761
Kristopher Davis
CA State Bar No. 329627
James S. Tsuei
CA State Bar No. 285530
Philip Wang
CA State Bar No. 262239
Amy Hayden
CA State Bar No. 287026
James Milkey
CA State Bar No. 281283
Jason M. Wietholter
CA State Bar No. 337139
James N. Pickens
CA State Bar No. 307474
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
headwater@raklaw.com

Andrea L. Fair
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF,
Headwater Research LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System under seal, and served defendants with a copy via electronic mail.

*/s Reza Mirzaie*_____
Reza Mirzaie